E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, and AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.<br><br>        Defendants. | CASE NO. _____<br><br><br><br><br>**ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT:   AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.

You are notified that a petition has been filed in the office of the clerk of this court naming you as the defendant in this action. A copy of the Petition (and any documents filed with it) is attached to this notice. The attorneys for the Plaintiff are Guy R. Cook, Adam D. Zenor, Michael C. Kuehner, and Michael D. Currie, whose address is Grefe & Sidney, P.L.C., 500 E. Court Avenue, Suite 200, Des Moines, Iowa, 50309. The attorneys' telephone number is 515-245-4300; and the facsimile number is 515-245-4452.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion

**EX A, PART 1**

or answer with the Clerk of Court for Johnson County, at the county courthouse in Iowa City, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (319) 398-3920 ext. 1105.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

**IMPORTANT: YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.**

**EX A, PART 1**

E-FILED  2018 NOV 05 8:43 AM JOHNSON - CLERK OF DISTRICT COURT

# STATE OF IOWA JUDICIARY

*Case No.* LACV080354

*County* Johnson

*Case Title* JOHN DOE V. GREGORY SCOTT STEPHEN, ET AL.

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile

*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(319) 398-3920** . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued* 11/05/2018 08:43:19 AM



*District Clerk of* Johnson          *County*

/s/ Wanda Sedivec

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, and AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.<br><br>    Defendants. | CASE NO. _____<br><br><br>**ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT:  BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA.

You are notified that a petition has been filed in the office of the clerk of this court naming you as the defendant in this action.  A copy of the Petition (and any documents filed with it) is attached to this notice.  The attorneys for the Plaintiff are Guy R. Cook, Adam D. Zenor, Michael C. Kuehner, and Michael D. Currie, whose address is Grefe & Sidney, P.L.C., 500 E. Court Avenue, Suite 200, Des Moines, Iowa, 50309.  The attorneys' telephone number is 515-245-4300; and the facsimile number is 515-245-4452.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion

**EX A, PART 1**

or answer with the Clerk of Court for Johnson County, at the county courthouse in Iowa City, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (319) 398-3920 ext. 1105.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

**IMPORTANT: YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.**

**EX A, PART 1**

E-FILED  2018 NOV 05 8:43 AM JOHNSON - CLERK OF DISTRICT COURT

# STATE OF IOWA JUDICIARY

*Case No.* LACV080354

*County* Johnson

*Case Title* JOHN DOE V. GREGORY SCOTT STEPHEN, ET AL.

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile

---

*Scheduled Hearing:*




---

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(319) 398-3920**  . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued*  11/05/2018 08:43:19 AM



*District Clerk of* Johnson          *County*
/s/ Wanda Sedivec

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated, | CASE NO. _____ |
| Plaintiffs, | |
| v. | ORIGINAL NOTICE |
| GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, and AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC. | |
| Defendants. | |

TO THE ABOVE-NAMED DEFENDANT: GREGORY SCOTT STEPHEN.

You are notified that a petition has been filed in the office of the clerk of this court naming you as the defendant in this action. A copy of the Petition (and any documents filed with it) is attached to this notice. The attorneys for the Plaintiff are Guy R. Cook, Adam D. Zenor, Michael C. Kuehner, and Michael D. Currie, whose address is Grefe & Sidney, P.L.C., 500 E. Court Avenue, Suite 200, Des Moines, Iowa, 50309. The attorneys' telephone number is 515-245-4300; and the facsimile number is 515-245-4452.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Johnson County, at the county courthouse in

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

Iowa City, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (319) 398-3920 ext. 1105.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

**IMPORTANT: YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.**

{00252262}

**EX A, PART 1**

E-FILED  2018 NOV 05 8:43 AM JOHNSON - CLERK OF DISTRICT COURT

# STATE OF IOWA JUDICIARY

*Case No.*  **LACV080354**

*County*  **Johnson**

*Case Title*  **JOHN DOE V. GREGORY SCOTT STEPHEN, ET AL.**

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile

*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(319) 398-3920** . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued*  **11/05/2018 08:43:19 AM**



*District Clerk of* Johnson          *County*

**/s/ Wanda Sedivec**

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, and AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.<br><br>Defendants. | Case No.<br><br><br>**CLASS ACTION, PETITION AT LAW & JURY DEMAND** |

COMES NOW Plaintiff, John Doe, on behalf of himself and all others similarly situated, by and through the undersigned counsel, and for this class action, petition at law, and jury demand, against Defendants Gregory Scott Stephen ("Stephen"), Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa, ("BBI"), and Amateur Athletic Union of the United States, Inc. ("AAU"), states as follows:

## **NATURE OF THE ACTION**

1.      Sports organizations owe a duty of care to the minor children involved in their programs to avoid and prevent conduct that presents an unreasonable risk of danger or harm.

2.      The duty of care encompasses the obligation of sports organizations to especially protect children and other vulnerable individuals, from the harm of sexual exploitation that might arise in their programs and activities.

3.      The organizations must anticipate children's vulnerability, innocence and deference to authority.

1

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

4.      Defendants Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa ("BBI") and the Amateur Athletic Union of the United States ("AAU") knew of the risks to youth athletes and the steps necessary to protect the safety and welfare of youth athletes, yet failed to protected vulnerable youth athletes from the despicable conduct of Defendant Gregory Scott Stephen. Had the Defendants BBI and AAU discharged their duties, vulnerable youth athletes would not have been victimized by Defendant Stephen.

5.      Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa ("BBI") was founded in 2005 and is one of the most successful youth basketball organizations in the state of Iowa. BBI boasts of its success in preparing its student-athletes to play at the collegiate level.[1] Barnstormers Basketball of Iowa is a subordinate of the Amateur Athletic Union of the United States, Inc. ("AAU") and is subject to the general supervision and control of the AAU.

6.      Defendant Gregory Scott Stephen is a co-founder of Barnstormers Basketball, Inc. and served as a coach and co-director for BBI since its inception. In his position as co-director for BBI, Defendant Stephen regularly organized travel arrangements for BBI's student-athletes to attend AAU-sanctioned youth basketball tournaments across the country. In this capacity, Defendant Stephen regularly made hotel reservations for himself and BBI's student-athletes. Defendant Stephen regularly stayed in the same hotel rooms as BBI's student-athletes and frequently shared a bed with BBI's student-athletes.

7.      Defendant Stephen used his position of authority in BBI to secretly record nude videos of BBI's student-athletes. On February 22, 2018, during an interview with Special Agent Ryan Kedley of the Iowa Division of Criminal Investigation, Defendant Stephen admitted to making secret video recordings of three BBI student-athletes, ages 12, 13, and 14, via multiple

---

[1] *See https://www.barnstormersbasketball.com/alumni.*

2

E-FILED 2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

covert USB recording devices that he hid in a hotel bathroom he was sharing with the boys during a basketball trip. On the same day as the interview, search warrants were executed on Stephen's two residences resulting in the seizure of thirty-four electronic items, including multiple covert digital recording devices.

8.     On April 5, 2018, Defendant Stephen was indicted by a Grand Jury in the United States District Court for the Northern District of Iowa and was charged with violating Title 18 U.S.C. §§ 2252(a)(1) and 2252(b)(1), for acts related to the transportation of child pornography. Stephen pled not guilty to these charges.

9.     A superseding indictment was filed on June 27, 2018.

10.     On June 28, 2018, Stephen was arraigned and charged with seven counts, including five counts of Sexual Exploitation of minor – Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) & (e), one count of possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and one count of Transporting Child Pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(2). Stephen pleaded not guilty at this time.

11.     On October 9, 2018, Stephen changed his plea to guilty.

12.     On October 18, 2018, a plea agreement was filed wherein Stephen admitted he committed the crimes charged against him. In pleading guilty, Stephen admitted that he used a hidden camera device to secretly record several nude minor boys in hotel rooms.

13.     Defendant BBI was negligent in its hiring, retention, and supervision of Defendant Stephen. Defendant BBI owed a duty to protect the safety and ensure the privacy of its athletes, all of whom are minors. Despite these duties, Defendant BBI failed to implement or enforce any procedures, policies, or protocols to oversee Defendant Stephen's nearly constant interaction with BBI's minor-athletes, even though BBI knew, or should have known, that Defendant Stephen had

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

access to their hotel rooms and sometimes shared a room and often the same bed with BBI's minor-athletes.

14.     Defendant AAU also owed a duty to protect the safety and ensure the privacy of its members, all of whom are minors. Defendant AAU was negligent in its failure to enforce procedures, polices, or protocols regarding its members' association with BBI.

## PARTIES

15.     Plaintiff John Doe is a natural person and citizen of the State of Iowa. Plaintiff Doe is a former BBI student-athlete, who last associated with BBI in 2016.

16.     Defendant Gregory Scott Stephen ("Stephen") is a natural person and a citizen of the State of Iowa. Stephen is a co-founder of Defendant Barnstormers Basketball, Inc. Stephen is also a former coach and co-director of BBI.

17.     Defendant Barnstormers Basketball, Inc. is a non-profit corporation organized under the laws of the State of Iowa with its principal place of business located at 1235 Deerfield Drive, North Liberty, Johnson County, Iowa, 52317.

18.     Amateur Athletic Union of the United States, Inc. ("AAU") is not-for-profit corporation organized under the laws of the State of New York with its principal place of business located at 1910 Hotel Plaza Blvd., Lake Buena Vista, Florida, 32830-1000. The AAU is a national organization that sanctions amateur sports tournaments, establishes the integrity of amateur sports by verifying the age of its members, and sets standards for amateur sports in the United States. The AAU has over 700,000 members nationwide.

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

## JURISDICTION & VENUE

19.     This court has personal and subject matter jurisdiction of this matter. Defendants conduct business in Johnson County, Iowa. The amount of damages in controversy exceeds the jurisdictional amount for the Iowa Small Claims Court.

20.     Accordingly, venue is proper in the Iowa District Court for Johnson County, Iowa.

## BACKGROUND FACTS

**BBI**

21.     BBI is an Iowa non-profit organization that was co-founded by Stephen in 2005.

22.     BBI declares it provides a "unique 'family' atmosphere" to its student-athletes.

23.     BBI fields more than a dozen boys' AAU basketball teams for 4th grade through 12th grade student-athletes and girls' AAU basketball teams for 7th through 11th grade student-athletes.

24.     BBI's high school teams participate in approximately 10 basketball tournaments annually, while its youth teams participate in approximately 16 tournaments every year.

25.     In the past, BBI's teams have traveled to tournaments in South Dakota, Missouri, Minnesota, Wisconsin, Indiana, Kansas, Kentucky, Tennessee, Florida, and Nevada.

26.     BBI is sponsored by athletic clothing brand adidas®, and boasts that it is the only program in Iowa that is part of the adidas® Gauntlet Series, an elite nationwide youth basketball circuit.

27.     BBI boasts of its success in placing its student-athletes in collegiate basketball programs of all levels.

**AAU**

5

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

28.     The AAU is a non-profit organization that was established in 1888.

29.     The AAU declares that it is "committed to improving the development, safety and welfare of athletes and participants involved in the sport."

30.     The AAU also declares that it is "committed to creating a safe and positive environment for athletes' physical, emotional and societal development and to ensuring that it promotes an environment free of misconduct."

31.     The AAU verifies the age of all member athletes via the examination of the athlete's birth certificate. This verification provides reliable assurance that amateur athletes are actually the age they claim to be, thus providing integrity to amateur sports leagues.

32.     The AAU sanctions events across the country, including many events Plaintiff Doe and the Class Members participated in while members of BBI.

33.     BBI required that all of its student-athletes become AAU members.

34.     The AAU failed to enforce procedures, policies, or protocols regarding the training, supervision, background checks, or treatment of its members by individual club coaches or administers, including BBI.

**Gregory Scott Stephen**

35.     Defendant Stephen co-founded BBI in 2005.

36.     Since 2005, Stephen has acted as a coach for BBI's various boys' basketball teams and as a co-director of BBI's operations.

37.     One of Stephen's roles in BBI was to organize the travel logistics for BBI's teams to attend AAU-sanctioned basketball tournaments throughout the Midwest and across the country, including the adidas® Gauntlet Series.

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

38.     In his capacity as travel coordinator, Stephen was responsible for reserving hotel rooms for BBI's student-athletes.

39.     Upon information and belief, Stephen regularly arrived to the BBI-reserved hotels before BBI's student-athletes, thereby gaining access to all of the student-athletes' rooms prior to their arrival.

40.     Upon information and belief, Stephen usually shared a room with BBI's student-athletes and frequently shared a bed with BBI's student-athletes.

**Investigation & Arrest of Defendant Gregory Scott Stephen**

41.     On February 18, 2018, Monticello Police were contacted by Stephen's former brother-in-law, V.E.

42.     While providing construction services at Stephen's home in Monticello, Iowa, V.E. found a black 1-inch by 1-inch by 1-inch cube, which he identified as a 32-gigabit USB covert recording device.

43.     Upon inspection of the contents of the device, V.E. discovered video files of three (3) nude adolescent boys in a hotel bathroom. These videos showed the boys disrobing and entering/exiting a hotel bathroom shower.

44.     V.E. turned the device over to Monticello Police on February 19, 2018.

45.     On the morning of February 22, 2018, Stephen was interviewed by DCI Special Agents Ryan Kedley and Matt George.

46.     During this conversation Stephen admitted to making the videos of the three boys at the Courtyard Hotel in Ankeny, Iowa. Defendant Stephen later stated that the videos were made in a hotel in Lombard, Illinois.

7

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

47.     Stephen told investigators that he was only looking at the boys' growth and sexual development, including the boys' genitalia and amount of body hair. Stephen admitted he does not have a medical degree and acknowledged it was "dumb" for him to make the secret video recordings.

48.     Stephen admitted to being sexually aroused by the videos, despite also claiming he made the videos for purposes of exploring his curiosity related to sexual development.

49.     On the same morning of the interview, two search warrants were executed on Stephen's residences in Monticello, Iowa and Delhi, Iowa.

50.     Execution of the search warrants at Stephen's two residences resulted in the seizure of thirty-four (34) electronic items, including three additional cube-style USB covert recording devices consistent with the device given to Monticello Police, one covert USB recording device which appeared to double as a mountable bath towel hanging hook, and one smoke detector/possible covert recording device.

51.     Upon examination of the contents of the USB recording device provided to Monticello Police, Special Agent Kedley observed more than 100 videos clips in the device's storage. The video clips were organized into folders using the underage boys' names. All of these videos appeared to be taken in the same Illinois hotel room.

52.     Special Agent Kedley also observed two videos of a fourth prepubescent boy that appeared to be taken in a different hotel room. Investigation revealed that the bathroom visible in these videos was consistent in appearance with hotel bathrooms of the Courtyard Hotel in Ankeny, Iowa.

53.     On February 27, 2018, Special Agent Kedley interviewed an individual ("Witness 1") who was an active player with the Barnstormers in the summer of 2016.

8

**EX A, PART 1**

E-FILED 2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

54.     Witness 1 indicated that in the summer of 2016, while attending the Las Vegas tournament, he and two other BBI players shared a hotel room with Stephen.

55.     Witness 1 stated that during one night of the trip he shared a bed with Stephen.

56.     Witness 1 stated that he was awakened by the sound of Stephen's heavy breathing behind him in bed and a repeated up-and-down movement underneath the bed's comforter.

57.     Soon after, Witness 1 then heard the sound of multiple facial tissues being removed from a tissue box.

58.     Witness 1 stated that his reaction and observations was that Stephen had just masturbated in the bed he was sharing with him.

**Indictment and Plea Agreement**

59.     On April 5, 2018, Stephen was indicted by a Grand Jury in the United States District Court for the Northern District of Iowa and was charged with violating Title 18 U.S.C. §§ 2252(a)(1) and 2252(b)(1), for acts related to the transportation of child pornography.

60.     A superseding indictment was filed on June 27, 2018.

61.     On June 28, 2018, Stephen was arraigned and charged with seven counts, including five counts of Sexual Exploitation of minor – Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) & (e), one count of possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and one count of Transporting Child Pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(2). Stephen pleaded not guilty at this time.

62.     On October 9, 2018, Stephen changed his plea to guilty.

63.     On October 18, 2018, a plea agreement was filed wherein Stephen admitted that he committed the crimes of five counts of Sexual Exploitation of minor – Production of Child Pornography in violation of 18 U.S.C. § 2251(a) & (e), one count of possession of Child

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

Pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and one count of Transporting Child Pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(2).

64.    In pleading guilty, Stephen admitted that he used a hidden camera device to record secretly nude minor boys in hotel rooms.

65.    In pleading guilty, Stephen admitted he invited the boys, and then escorted the boys, to attend basketball games or play in basketball tournaments. Stephen placed the recording device in hotel bathrooms, pointed towards the shower area, so that it recorded minors coming in and out of the shower exposing their genitals.

66.    In pleading guilty, Stephen admitted these recordings produced by him involve minors engaged in sexually explicit conduct, including the lascivious display of the genitals of the minors. None of the boys were aware that they were being recorded.

67.    In pleading guilty, Stephen admitted that on February 22, 2018, law enforcement officers searched two residences owned or used by Stephen; one residence was Stephen's primary residence in Monticello, Iowa and the other was a "lake house" in Delhi, Iowa. From the Monticello residence, officers seized eleven (11) electronic devices that had been shipped and transported in interstate commerce, including a LaCie Porsche Design external hard drive ("LaCie Hard Drive"), found in Stephen's office.

68.    In pleading guilty, Stephen admitted that three additional covert recording devices similar in style to the one used by Stephen in hotel rooms were found as well as a covert recording device designed to look like, and operate as, a mountable bath towel hook. These devices all belonged to Stephen.

69.    In pleading guilty, Stephen admitted that from the Delhi residence, officers seized twenty-two (22) electronic devices that had been shipped and transported in interstate commerce

10

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

including a covert recording device designed to look like a smoke detector. This device was in the bathroom of the residence. It was plugged in to an electrical outlet and charging. The mount for the device was located directly above the toilet.

70.     In pleading guilty, Stephen admitted that a review of the recovered items revealed that from 2008 or earlier, Stephen had access to minors from age 9 to age 17 through basketball programs commonly referred to as Barnstormers or by other team names. Through Stephen's connection to these programs as a coach and administrator, Stephen had the personal information of many of the minors, and some of their minor friends and acquaintances.

71.     In pleading guilty, Stephen admitted that he traveled to various sporting events, including basketball games and tournaments, with the minors and many times had the minors stay in hotel rooms with him and sleep in the same bed with him.

72.     In pleading guilty, Stephen admitted that the LaCie Hard Drive was found to contain more than 400 electronic file folders with titles in the last and then first names of the different minor boys hereinafter referred to as victims.

73.     In pleading guilty, Stephen admitted that approximately 400 of these file folders contain visual depictions of nude minor males displaying their genitalia and many involve masturbation by the minor boys.

74.     In pleading guilty, Stephen admitted the victims include basketball players (and friends of players) from as recent as 2018 and former basketball players and their friends from past seasons going back several years and also includes minors involved in other sports.

75.     In pleading guilty, Stephen admitted there were three different genre of visual depictions found in the folders on the LaCie hard drive: (1) nude minor males secretly recorded in various bathrooms (such as those discussed above); (2) visual depictions, including still images

11

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

and videos, of minor males taken by the minors themselves and depicting the minors masturbating and/ or displaying their penises - these minors were persuaded, induced, or enticed by Stephen to produce these visual depictions; and (3) visual depictions produced by Stephen of minor males unconscious with their pants pulled down and their genitals exposed.

76.     In pleading guilty, Stephen admitted that in some of these depictions, he recorded himself touching the genitals of the unconscious victims. Some of the file folders have only one type of visual depiction whereas some have all three types.

77.     In pleading guilty, Stephen admitted that in addition to locating file folders bearing the names of minor males, officers located on the LaCie Hard Drive two file folders with the file names "Kylie Leonard" ("Leonard") and "Mikayla Timm" ("Timm"). These file folders each contained photos (nude and clothed) of teenaged females, as well as video of what appears to be female teenager masturbating with no face visible.

78.     In pleading guilty, Stephen admitted that he assumed the identity of these two girls and another young female named Calynn to initiate contact with the boys on social media or otherwise. Stephen established Facebook and Snapchat profiles using the identities of these females and used these profiles to contact minor boys.

79.     In pleading guilty, Stephen admitted that once contact was made, Stephen used the female personae to persuade, induce, and entice the minor boys to provide sexually explicit images of themselves. For instance, Stephen posed as a teenaged girl, made contact, and then offered to exchange nude images with the victims.

80.     In pleading guilty, Stephen admitted that as a female teenager, Stephen suggested the types of sexually explicit image the victim should produce and then recorded and saved the

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

pornographic images the minors sent to him. Unbeknownst to the victims, Stephen used a software application to record live transmissions made by the minor boys.

81.     In pleading guilty, Stephen admitted that he also saved chats between Leonard and/ or Timm and some of the victims as well as account log-in information for the Leonard and Timm profiles. With respect to Victim 1, who was either 14 or 15 years old at the time, whose status as a minor was known to Stephen, Stephen persuaded, induced, and enticed Victim 1 to produce visual depictions of Victim 1 displaying his erect penis. Stephen admits that the visual depictions are of sexually explicit conduct.

82.     In pleading guilty, Stephen admitted that with respect to Victim 2, who was 14 to 17 years old at the time, whose status as a minor was known to Stephen, Stephen persuaded, induced, and enticed Victim 2 to produce visual depictions of Victim 2 displaying his erect penis and masturbating. Stephen admits that the visual depictions are of sexually explicit conduct.

83.     In pleading guilty, Stephen admitted that with respect to Victim 3, who was 11 or 12 years old at the time, whose status as a minor was known to Stephen, Stephen persuaded, induced, and enticed Victim 3 to produce visual depictions of Victim 3 displaying his erect penis and masturbating. Stephen admits that the visual depictions are of sexually explicit conduct. In addition, Victim 3 traveled to basketball tournaments and games with Stephen on several occasions, and went to Stephen's house in Delhi, Iowa. On the LaCie Hard Drive, officers found a visual depiction with a date stamp in August of 2017, that shows Stephen with his mouth on or near Victim 3's penis while Stephen touched Victim 3's penis with his hand. This visual depiction was produced by Stephen, depicts sexually explicit conduct. Prior to producing the visual depiction, Stephen gave Victim 3 medication which made him drowsy.

**EX A, PART 1**

E-FILED 2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

84.     In pleading guilty, Stephen admitted that with respect to Victim 4, who was 13 or 14 years old at the time, whose status as a minor was known to Stephen, Stephen persuaded, induced, and enticed Victim 4 to produce visual depictions of Victim 4 displaying his erect penis and masturbating. Stephen admits that the visual depictions are of sexually explicit conduct.

85.     In pleading guilty, Stephen admitted that with respect to Victim 5, who was 15 years old at the time, whose status as a minor was known to Stephen, and who is referred to in Count 5, Stephen persuaded, induced, and enticed Victim 5 to produce visual depictions of Victim 5 displaying his erect penis and masturbating. Stephen admits that the visual depictions are of sexually explicit conduct and were produced using materials that had traveled across state lines.

86.     In pleading guilty, Stephen admits that he produced, or caused the production of, all of the images of the victims (minor boys) depicted in the LaCie Hard Drive.

**Plaintiff Doe**

87.     Plaintiff Doe tried out for a Barnstormers' basketball team in September of 2013.

88.     During periods from March 2014 through July of 2016, Plaintiff Doe participated as a team member on various Barnstormers' teams.

89.     In July 2016, Plaintiff Doe attended a basketball tournament in Las Vegas, Nevada as a member of a Barnstormer team.

90.     Plaintiff Doe stayed in a hotel room with four to five other members of a Barnstormers' team.

91.     Plaintiff Doe and his teammates occupied the room for approximately seven nights.

92.     During this period, Plaintiff Doe used the room every day to dress, undress, and shower.

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

93.     Upon information and belief, Defendant Gregory Scott Stephen made reservations for the hotel rooms occupied by all of BBI's student-athletes, including the room occupied by Plaintiff Doe and his teammates.

94.     Upon information and belief, Defendant Greg Scott Stephen arrived to the hotel before Plaintiff Doe and his teammates.

95.     Upon information and belief, Defendant Gregory Scott Stephen had access to Plaintiff Doe's hotel room before Plaintiff Doe occupied the room.

96.     Upon information and belief, Plaintiff Doe believes he and his roommates' bathroom may have been secretly recorded by Defendant Gregory Scott Stephen during his stay in BBI's hotel room during the Las Vegas tournament.

97.     On August 14, 2018, Plaintiff Doe's father received a letter from the United States Attorney's Office for the Southern District of Iowa, notifying him that Plaintiff Doe had been identified as a victim of Defendant Gregory Scott Stephen's admittedly unlawful acts.

## CLASS ALLEGATIONS

98.     Class Definition: Plaintiff John Doe brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a class defined as follows:

> All Barnstormers Basketball, Inc. student-athletes in the United States who, from 2005 to present, traveled with Barnstormers Basketball, Inc. and occupied hotel rooms reserved by and/or were accessible by Gregory S. Stephen, including rooms shared with Gregory S. Stephen.

99.     **Numerosity**: The exact number of members in the Class is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, more than four hundred (400) individuals could fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

15

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

100.    **Adequate Representation**: Plaintiff Doe will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff Doe has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff Doe.

101.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards the Class's members, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' actions and practices challenged herein apply to and affect the Class's members uniformly, and Plaintiff Doe's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to the Plaintiff.

102.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Doe and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

A. Whether Stephen's secret recording unlawfully invaded upon the seclusion and solicitude of Plaintiff Doe and the members of the Class.

B. Whether BBI was negligent in its retention or supervision of Stephen while he was employed by BBI and attending AAU-sanctioned events with BBI's minor student-athletes.

16

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

C.  Whether AAU was negligent in its failure to enforce any procedures, policies, or protocols regarding the training, supervision, background checks, or treatment of its members by individual club coaches or administers, including BBI.

103.  **Typicality**: Plaintiff Doe's claims are typical of the claims of the other members of the Class, in that Plaintiff Doe and the members of the Class sustained damages arising out of the Defendants' uniformly wrongful conduct.

104.  **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Even if members of the Class sustain individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**COUNT I: INTRUSION UPON SECLUSION**
**Gregory Scott Stephen**

105.  Plaintiff repleads the preceding paragraphs as though fully set forth herein.

106.  Defendant Stephen's secret recording of Plaintiff Doe and members of the Class intentionally interferes with Plaintiff Doe's and the Class members' interest in their solitude or seclusion as to their persons.

107.  Defendant Stephen's interference with Plaintiff Doe's and the Class members' solitude or seclusion would be highly offensive to a reasonable person.

17

**EX A, PART 1**

108.   Consequently, Defendant Stephen is liable for damages to Plaintiff Doe and the Class Members for intruding upon their seclusion and solitude.

## COUNT II: NEGLIGENT HIRING, SUPERVISION, AND RETENTION
### Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa

109.   Plaintiff repleads the preceding paragraphs as though fully set forth herein.

110.   Defendant Stephen was an employee and director of BBI from 2005 to early 2018.

111.   Defendant BBI owed a legal duty to Plaintiff Doe and other members of the Class, all minors, to protect their personal safety and to ensure their privacy against sexual predators like Stephen.

112.   BBI breached these duties by failing to implement or enforce any precautionary, preventative, or mitigating procedures, policies, or protocols, or provide any supervision whatsoever regarding Defendant Stephen's access to the hotel rooms of all of BBI's minor-athletes or prevent Stephen's regular bedsharing with BBI's minor-athletes.

113.   BBI failed to properly and appropriately screen Defendant Stephen to serve as a coach, event organizer, or volunteer.

114.   BBI failed to follow AAU published practices for team travel and prohibit, regardless of gender, a coach from sharing a hotel room or other sleeping arrangement with athletes in accordance with appropriate athlete safety.

115.   BBI failed to exercise reasonable to prevent Defendant Stephen's sexually predatory practices of secretly recording BBI's minor male athletes in hotel bathrooms.

116.   Defendant Stephen's sexually predatory practices was the cause of Plaintiff Doe's and the Class Members' damages.

117.   BBI's negligence was the direct and proximate cause of Plaintiff Doe's and the Class Members' damages.

18

**EX A, PART 1**

E-FILED   2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

118.    Defendant BBI is liable for damages to Plaintiff Doe and the Class members.

## COUNT III: NEGLIGENCE
**Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa**

119.    Plaintiff Doe repleads the preceding paragraphs as though fully set forth herein.

120.    Barnstormers Basketball of Iowa, as a subordinate of the Amateur Athletic Union of the United States, is subject to the supervision and control of Amateur Athletic Union of the United States, Inc.

121.    The Amateur Athletic Union declares that it is "committed to creating a safe and positive environment for athletes' physical, emotional and societal development and to ensuring that it promotes an environment free of misconduct."

122.    The Amateur Athletic Union holds itself out as "committed to improving the development, safety and welfare of athletes and participants involved in the sport."

123.    BBI stands in the position of knowledge regarding the risks associated with the safety and welfare of athletes and participants involved in AAU sports.

124.    BBI with its special knowledge has accepted a duty to protect the safety and welfare of its athletes and participants involved in sport.

125.    Defendant BBI has failed to exercise reasonable care in fulfilling these duties.

126.    BBI has failed to discharge its duty to protect the safety and welfare of athletes and participants involved in sports.

127.    BBI failed to establish and enforce appropriate travel policy provisions to protect the safety and welfare of athletes.  Specifically, BBI failed to follow AAU's published practices for team travel and prohibit, regardless of gender, a coach from sharing a hotel room or other sleeping arrangement with athletes in accordance with appropriate athlete safety.

**EX A, PART 1**

E-FILED 2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

128.    Defendant BBI's negligence was the direct and proximate cause of Plaintiff Doe's and the Class Members' damages.

129.    Accordingly, Defendant BBI is liable for damages to Plaintiff Doe and the Class Members.

### COUNT IV: NEGLIGENCE
### Amateur Athletic Union of the United States, Inc.

130.    Plaintiff Doe repleads the preceding paragraphs as though fully set forth herein.

131.    The Amateur Athletic Union of the United States, Inc. ("AAU") declares that "the safety of our athletes is paramount and in many instances we make the athletic space safer through appropriate physical contact."

132.    The AAU declares that it is "committed to improving the development, safety and welfare of athletes and participants involved in the sport."

133.    The AAU also declares that it is "committed to creating a safe and positive environment for athletes' physical, emotional and societal development and to ensuring that it promotes an environment free of misconduct."

134.    The AAU is in a position of knowledge regarding the potential for sexual abuse and sexual misconduct or other inappropriate behaviors, yet took no action to ensure Defendant Stephen did not engage in inappropriate behavior, sexual abuse or sexual misconduct.

135.    The AAU stands in a position of knowledge regarding the risks associated with the safety and welfare of athletes and participants involved in AAU sports.

136.    The AAU with its special knowledge and in declaring these commitments has accepted a duty to protect the safety and welfare of its athletes and participants involved in sport.

137.    Defendant AAU sanctioned many of the tournaments that Plaintiff Doe and the Class Members attended while playing for BBI.

20

**EX A, PART 1**

138.   The AAU has failed to discharge its duty to protect the safety and welfare of athletes and participants involved in sports.

139.   As such, Defendant AAU owed a legal duty to Plaintiff Doe and the Class Members—all members of the AAU—to protect their personal safety and to ensure their privacy against sexual predators.

140.   Defendant AAU failed to exercise reasonable care in fulfilling these duties.

141.   Specifically, AAU breached these duties by failing to enforce or require BBI to implement any precautionary, preventative, or mitigating procedures, policies, or protocols whatsoever regarding the individuals, including Defendant Stephen, that Defendant BBI employed to coach or chaperone Plaintiff Doe and the Class Members.

142.   Defendant AAU's negligence was the direct and proximate cause of Plaintiff Doe's and the Class Members' damages.

143.   Therefore, Defendant AAU is liable for damages to Plaintiff Doe and the Class Members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff John Doe, on behalf of himself and a Class of similarly situated individuals, respectfully requests the Court issue an order:

A.   Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff John Doe as Class Representative, and appointing his counsel as Class Counsel;

B.   Declaring that Defendant Gregory Scott Stephen's actions, as set out above, constitute an intrusion of Plaintiff Doe's and the Class Members' privacy rights in seclusion or solitude as to their persons;

**EX A, PART 1**

C.     Declaring Defendants BBI's and AAU's breach of their duty to protect the safety and ensure the privacy of its student-athletes, as set out above, constitutes negligence;

D.     Awarding damages, including actual, statutory, and punitive damages where applicable, to the Plaintiff and the Class;

E.     Awarding Plaintiff and the Class pre- and post-judgment interest; and

F.     Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

**Dated: November 2, 2018**

**EX A, PART 1**

E-FILED  2018 NOV 02 5:16 PM JOHNSON - CLERK OF DISTRICT COURT

GREFE & SIDNEY, P.L.C.

By: /s/  Guy R. Cook
      Guy R. Cook, AT0001623

By: /s/  Adam D. Zenor
      Adam D. Zenor, AT0009698

By: /s/  Michael C. Kuehner
      Michael C. Kuehner, AT0010974

By: /s/  Michael D. Currie
      Michael D. Currie, AT0012256

    500 E. Court Ave., Ste. 200
    Des Moines, IA  50309
    Phone:  515-245-4300
    Fax: 515-245-4452
    gcook@grefesidney.com
    azenor@grefesidney.com
    mkuehner@grefesidney.com
    mcurrie@grefesidney.com

ATTORNEYS FOR PLAINTIFF

**EX A, PART 1**

E-FILED  2018 NOV 08 11:52 AM JOHNSON - CLERK OF DISTRICT COURT

**AFFIDAVIT OF SERVICE**    *JOHNSON COUNTY*

Case #: *LACV080364*

|  |  |  |
|---|---|---|
| STATE OF IOWA | ) | PLAINTIFF *John Doe, and all others similarly* |
|  | ) ss: | v.                                                *situated* |
| POLK COUNTY | ) | DEFENDANT *Gregory Scott Stephen Barnstormers* |

*Basketball ... dba Barnstormers Basketball of Iowa, et al*

THE UNDERSIGNED DAVID V. BEANE, being first duly sworn upon oath, does hereby depose and affirm as follows:

1.   I did serve the described Notice(s) upon the *7th* day of *November* 20*18*, by delivering a true copy thereof to: *Barnstormers Basketball, Inc.*
*dba Barnstormers Basketball of Iowa by serving*
*Jamie Michael Johnson at 3964 MacBride PL NE, Solon Iowa*
*52333*

☑ By Personal Service Upon Defendant(s)

☐ Posted according to court order and sent by regular mail and certified mail.

☐ Posted and sent by certified mail according to Iowa Rules of Civil Procedure and/or Iowa Code 2009 and Senate Rule 2300 (2010).
     Two or more attempts were made to serve Defendant(s) before posting _____
     Also sent to Defendant(s) by regular first class mail.

☐ I further certify that the Defendant and the person to whom the copy was delivered are residents of the same household and the person to whom a copy was delivered is 18 years of age or older.

☐ Person served is manager of apartment complex where Defendant(s) resides.

☐ Upon Defendant's spouse at her or his place of employment.

☐ Person or Corporation served are Registered agents for Defendant.

2.   That services consisted of:

| | |
|---|---|
| ☐ Original Notice (Action for Forcible Entry & Detainer) and Attachments | ☐ Three (3) day notice to quit |
| ☐ Original Notice (Action for Money Judgment) | ☐ Three (3) day notice to cure |
| ☐ Original Notice and Petition at Law and Jury Demand | ☐ Notice of Non Payment of Rent |
| ☐ Civil Citation for Municipal Infraction | ☐ Fourteen (14) day notice to cure |
| ☐ District Court Subpoena (Duces Tecum) | ☐ Ninety (90) day notice of Relocation |
| ☐ Notice of Forfeiture of Real Estate Contract | ☐ Notice of Termination of Lease Agreement, Serious or Repeated Lease Violation |

☐ Application for Condemnation, Notice of Meeting of Commissioners and Appointment of Commissioners and Alternates by Chief Judge

☒ *Original Notice, Class Action Petition at law and*
*Jury Demand*

*David V Beane*

Legal Couriers of Iowa
P.O. Box 13137
Des Moines, IA 50310-0137 (515-250-5768)

Subscribed and sworn to before me this *8th* day of *November*, 20*18*.

*Becky Anderson*
Notary Public in and for the State of Iowa

BECKY ANDERSON
Commission Number 809378
My Commission Expires
March 12, 2021

Service Fee: $ *125 00*
Mileage:      $ *144 00*
Total:         $ *269 00*

*To RPD Solon*
*& return 288 x 50¢/R*

**EX A, PART 1**

E-FILED  2018 NOV 08 11:53 AM JOHNSON - CLERK OF DISTRICT COURT

## AFFIDAVIT OF SERVICE *JOHNSON COUNTY*
*LACV080354*

Case #:_____

STATE OF IOWA )     PLAINTIFF *John Doe and all others similarly*
            ) ss:     v. *situated*
POLK COUNTY )     DEFENDANT *Gregory Scott Hopkins,*
*Amateur Athletic Union of the United States Inc,*

THE UNDERSIGNED DAVID V. BEANE, being first duly sworn upon oath, does hereby, *e sai*
depose and affirm as follows:

1.     I did serve the described Notice(s) upon the *8th* day of *November*
20 *18*, by delivering a true copy thereof to *Amateur Athletic Union of*
*the United States Inc by serving Registered Agent (Incorp*
*Services) Inc at 400 Locust st Suite 400, Des Moines, Iowa*
*50309*

- ☐ By Personal Service Upon Defendant(s)
- ☐ Posted according to court order and sent by regular mail and certified mail.
- ☐ Posted according to Rules of Civil Procedures and sent by certified mail.
  Three attempts were made to serve Defendant before posting _____
- ☐ I further certify that the Defendant and the person to whom the copy was delivered are residents of the same household and the person to whom a copy was delivered is 18 years of age or older.
- ☐ Person served is manager of apartment complex where Defendant(s) resides.
- ☐ Upon Defendant's spouse at her or his place of employment.
- ☑ *Served Registered Agent of Defendant, Amateur Athletic Union of*
  *the United States*
2.     That services consisted of:

- ☐ Original Notice (Action for Forcible Entry & Detainer)
- ☐ Original Notice (Action for Money Judgment)
- ☐ Original Notice and Petition at Law and Jury Demand
- ☐ Original Notice, Petition for Dissolution of Marriage, Order for Mandatory Pretrial Conference and Order Regarding Program for Litigants in Family Court
- ☐ Original Notice and Application for Modification of Decree of Dissolution of Marriage
- ☐ Order for Hearing on Temporary Matters
- ☐ Application for Order for Rule to Show Cause, Rule to Show Cause and Order for Rule to Show Cause
- ☐ U.S. District Court Subpoena

- ☐ Three (3) day notice to quit
- ☐ Three (3) day notice to cure
- ☐ Notice of Non Payment of Rent
- ☐ Fourteen (14) day notice to cure
- ☐ Ninety (90) day notice of Relocation
- ☐ Notice of Termination of Lease Agreement, Serious or Repeated Lease Violation
- ☐ Civil Citation for Municipal Infraction
- ☐ District Court Subpoena (Duces Tecum)
- ☐ Notice of Forfeiture of Real Estate Contract

*Original Notice Class Action Petition at Law and*
*Jury Demand*

*David V Beane*

Legal Couriers of Iowa

Subscribed and sworn to before me this *8th* day of *November*, 20 *18*.

*Becky Anderson*
Notary Public in and for the State of Iowa

[stamp: BECKY ANDERSON Commission Number 809378 My Commission Expires March 12, 2021]

Service Fee: $ *60*
Mileage: $ *0*
Total: $ *60*

**EX A, PART 1**

E-FILED  2018 NOV 20 3:40 PM JOHNSON - CLERK OF DISTRICT COURT

Case Name John Doe, and all others similarly situated vs
Gregory Scott Stephen, et. al.

**RETURN OF SERVICE**
**Service Type: Personal**

Case No.   LACV080354

Date Rcvd: November 6, 2018


STATE OF IOWA

JOHNSON COUNTY          ss.


I certify that I served a copy of Original Notice, Class Action, Petition at Law and Jury Demand to Gregory

Scott Stephen at Linn County Correctional Center Cedar Rapids, IA on 11/6/2018 @ 5:15 PM.


NOTES:


Fees:
Mileage ($1.00) Service Fee ($30.00) Copy Fee ($0.50)
Total: $31.50

Brian D. Gardner, Sheriff, Linn County, Iowa

By  *Alan Johnson*          115

Deputy Sheriff

Fees charged to/paid by Atty/Party:
Guy R. Cook
500 E Court Ave.
Suite 200
Des Moines, IA 50309


# EX A, PART 1

E-FILED  2018 NOV 28 12:16 PM JOHNSON - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>   Plaintiff,<br><br>vs.<br><br>GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, and AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.,<br><br>   Defendants. | Case No: LACV080354<br><br><br>**APPEARANCE OF MARK SCHULTHEIS ON BEHALF OF DEFENDANT AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.** |

**COME NOW** Attorneys Mark A. Schultheis, of the Firm, Nyemaster Goode, P.C., and hereby enters his appearance on behalf of Defendant Amateur Athletic Union of the United States, Inc.

/s/ Mark A. Schultheis
Mark A. Schultheis          AT0007133
NYEMASTER, GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA  50309-3899
Telephone: (515) 283-3100
Facsimile:  (515) 283-8045
E-Mail: maschultheis@nyemaster.com
**ATTORNEY FOR DEFENDANT AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.**

**EX A, PART 1**

E-FILED  2018 NOV 28 12:16 PM JOHNSON - CLERK OF DISTRICT COURT

## CERTIFICATE OF SERVICE

I hereby certify that on <u>November 28, 2018</u>, I electronically filed the foregoing with the Clerk of the Court using the EDMS which will send notification of such filing to the following:

Guy R. Cook
Adam D. Zenor
Michael C. Kuehner
Michael D. Currie
GREFE & SIDNEY, P.L.C.
500 E. Court Ave., Ste. 200
Des Moines, IA 50309
Phone: 515-245-4300
Fax: 515-245-4452
Email: gcook@grefesidney.com
Email: azenor@grefesidney.com
Email: mkuehner@grefesidney.com
Email: mcurrie@grefesidney.com
ATTORNEYS FOR PLAINTIFF

/s/ Mark A. Schultheis        AT0007133
NYEMASTER, GOODE, P.C.
**ATTORNEY FOR DEFENDANT**
**AMATEUR ATHLETIC UNION OF**
**THE UNITED STATES, INC.**

2

**EX A, PART 1**

E-FILED  2018 NOV 28 12:16 PM JOHNSON - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, and AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.,<br><br>    Defendants. | Case No: LACV080354<br><br><br><br>**APPEARANCE OF MARK SCHULTHEIS ON BEHALF OF DEFENDANT AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.** |

**COME NOW** Attorneys Mark A. Schultheis, of the Firm, Nyemaster Goode, P.C., and hereby enters his appearance on behalf of Defendant Amateur Athletic Union of the United States, Inc.

/s/ Mark A. Schultheis

Mark A. Schultheis        AT0007133
NYEMASTER, GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA  50309-3899
Telephone: (515) 283-3100
Facsimile:  (515) 283-8045
E-Mail: maschultheis@nyemaster.com
**ATTORNEY FOR DEFENDANT AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.**

1

**EX A, PART 1**

E-FILED  2018 NOV 28 12:16 PM JOHNSON - CLERK OF DISTRICT COURT

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2018, I electronically filed the foregoing with the Clerk of the Court using the EDMS which will send notification of such filing to the following:

Guy R. Cook
Adam D. Zenor
Michael C. Kuehner
Michael D. Currie
GREFE & SIDNEY, P.L.C.
500 E. Court Ave., Ste. 200
Des Moines, IA 50309
Phone: 515-245-4300
Fax: 515-245-4452
Email: gcook@grefesidney.com
Email: azenor@grefesidney.com
Email: mkuehner@grefesidney.com
Email: mcurrie@grefesidney.com
ATTORNEYS FOR PLAINTIFF

/s/ Mark A. Schultheis        AT0007133
NYEMASTER, GOODE, P.C.
**ATTORNEY FOR DEFENDANT**
**AMATEUR ATHLETIC UNION OF**
**THE UNITED STATES, INC.**

2

**EX A, PART 1**

E-FILED  2018 NOV 28 1:28 PM JOHNSON - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, and AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.,<br><br>    Defendants. | Case No: LACV080354<br><br><br><br><br>**APPEARANCE** |

Debra Hulett submits this appearance on behalf of Amateur Athletic Union of the United States, Inc.

/s/ Debra Hulett, AT0003665
Nyemaster Goode, P.C.
700 Walnut St., Suite 1600
Des Moines, IA 50309
Telephone: 515-283-3114
Fax: 515-283-3108
Email: dlhulett@nyemaster.com
ATTORNEYS FOR DEFENDANT AMATEUR
ATHLETIC UNION OF THE UNITED
STATES, INC.

1

**EX A, PART 1**

E-FILED  2018 NOV 28 1:28 PM JOHNSON - CLERK OF DISTRICT COURT

### Certificate of service

I hereby certify that on November 28, 2018, I presented the foregoing document to the Clerk of the Court for filing and uploading into the EDMS system, which will send notification to the following EDMS system participants:

Guy R. Cook
Adam D. Zenor
Michael C. Kuehner
Michael D. Currie
GREFE & SIDNEY, P.L.C.
500 E. Court Ave., Ste. 200
Des Moines, IA 50309
Phone: 515-245-4300
Fax: 515-245-4452
Email: gcook@grefesidney.com
Email: azenor@grefesidney.com
Email: mkuehner@grefesidney.com
Email: mcurrie@grefesidney.com
ATTORNEYS FOR PLAINTIFF

/s/ Debra Hulett

**EX A, PART 1**

E-FILED  2018 DEC 04 9:37 AM JOHNSON - CLERK OF DISTRICT COURT

IOWA DISTRICT COURT IN AND FOR JOHNSON  COUNTY

| | |
|---|---|
| JOHN DOE<br>　　　　　Plaintiff(s)<br><br>VS.<br><br>AMATEUR ATHLETIC UNION US INC<br>GREGORY SCOTT STEPHEN<br>BARNSTORMERS BASKETBALL, INC<br>BARNSTORMERS BASKETBALL OF IOWA<br><br>　　　　　Defendant(s) | CASE NO: 06521  LACV080354<br><br>**NOTICE OF CIVIL TRIAL-<br>SETTING CONFERENCE** |

To the parties or their attorneys of record:

In accordance with Iowa Rule of Civil Procedure 1.906, notice is hereby given that a **Trial Scheduling Conference is scheduled on 01/17/2019 at 10:30 AM at the Johnson County Courthouse, Iowa City, Iowa.**
This date shall be no earlier than 35 days after and not later than 50 days after any Defendant/ Respondent has answered or appeared unless set sooner by special order on application of one or more parties.

This conference shall be held:
**By TELEPHONE with the conference call to be initiated by Plaintiff(s).  The court administrator shall be connected to the call at 319-356-6070, Ext. 3313.**

Attorneys for all parties appearing in the case shall participate at this conference.  A party will participate in person if the party does not have an attorney.

At this trial-setting conference, every case will be set for trial within the time periods provided by Iowa Court Rules Chapter 23, Time Standards for Case Processing.

**Prior to the trial-setting conference, the parties must file a Trial Scheduling and Discovery Plan, Iowa Court Rule 23.5-Form 2 (Form 3 for Expedited Civil Actions).**

The trial date that is agreed upon at this conference shall be a firm date.  Continuances will not be granted, even if all parties agree, unless for a crucial cause that could not have been foreseen.

The Clerk of Court shall notify all counsel of record and parties not represented by counsel.

1 of 3

**EX A, PART 1**

E-FILED  2018 DEC 04 9:37 AM JOHNSON - CLERK OF DISTRICT COURT

Dated 12/04/18

If you need assistance to participate in court due to a disability, call the disability coordinator at (319) 398-3920. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.**

**EX A, PART 1**

E-FILED  2018 DEC 04 9:37 AM JOHNSON - CLERK OF DISTRICT COURT



State of Iowa Courts

| | |
|---|---|
| **Case Number** | **Case Title** |
| LACV080354 | JOHN DOE V. GREGORY SCOTT STEPHEN, ET AL. |
| **Type:** | ORDER FOR TRIAL SCHEDULING CONFERENCE |

So Ordered

*Alissa Kron*
_____
Alissa Kron, Court Attendant,
Sixth Judicial District of Iowa

Electronically signed on 2018-12-04 09:37:31

**EX A, PART 1**

E-FILED 2019 JAN 16 4:07 PM JOHNSON - CLERK OF DISTRICT COURT

THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated, | Case No.  LACV080354 |
| Plaintiffs, | |
| v. | **PLAINTIFF'S MOTION TO CONTINUE TRIAL-SETTING CONFERENCE** |
| GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, and AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC. | |
| Defendants. | |

COMES NOW Plaintiff, John Doe, by and through the undersigned counsel, and moves the court to continue the civil trial-setting conference:

1.       Plaintiff filed his Class Action, Petition at Law & Jury Demand on November 2, 2018.

2.       Counsel for Defendant Amateur Athletic Union of the United States, Inc. filed appearances on November 28, 2018.

3.       The court issued a Notice of Civil Trial-Setting Conference on December 4, 2018, setting the telephonic conference for 10:30 a.m. on January 17, 2019.

4.       Personal counsel for Defendant Gregory Scott Stephen and business counsel for Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa have advised Plaintiff's counsel multiple insurance carriers are reviewing multiple policies to determine where there might be responsibility for defense.

5.       Plaintiff's counsel has granted extensions for answers up to and including January 31, 2019, to accommodate the insurance carriers as they review policies.

1

**EX A, PART 1**

6.      As a result of counsel not yet determined for Defendants Gregory Scott Stephen and Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa, Plaintiff has not yet filed a Trial Scheduling and Discovery Plan.

7.      Continuing the civil trial-setting conference would be in the interest of justice and would allow for all parties to participate fully in setting the trial date and related deadlines.

WHEREFORE, Plaintiff, John Doe, respectfully requests the court grant his motion to continue the trial-setting conference to a date after January 31, 2019.

**Certificate of Service**
The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys listed as receiving notice on January 16, 2019, by EDMS.

*/s/ Guy R. Cook*

Copies to:

Mark A. Schultheis
Debra Hulett
NYEMASTER GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50309
maschultheis@nyemaster.com
dlhulett@nyemaster.com

ATTORNEYS FOR DEFENDANT AMATEUR ATHLETIC
UNION OF THE UNITED STATES, INC.

GREFE & SIDNEY, P.L.C.

By: */s/ Guy R. Cook*
        Guy R. Cook, AT0001623

By: */s/ Adam D. Zenor*
        Adam D. Zenor, AT0009698

By: */s/ Michael C. Kuehner*
        Michael C. Kuehner, AT0010974

By: */s/ Michael D. Currie*
        Michael D. Currie, AT0012256

    500 E. Court Ave., Ste. 200
    Des Moines, IA  50309
    Phone: 515/245-4300
    Fax: 515/245-4452
    gcook@grefesidney.com
    azenor@grefesidney.com
    mkuehner@grefesidney.com
    mcurrie@grefesidney.com

ATTORNEYS FOR PLAINTIFF

2

**EX A, PART 1**

E-FILED  2019 JAN 17 10:25 AM JOHNSON - CLERK OF DISTRICT COURT

THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, and AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.<br><br>Defendants. | Case No.  LACV080354<br><br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO CONTINUE TRIAL SETTING CONFERENCE** |

Plaintiff has filed a Motion to Continue Trial Setting Conference, currently set for January 17, 2019, at 10:30 a.m.

The Court having reviewed the motion finds good cause for continuance.

Court Administration will reset the civil trial-setting conference for a date after January 31, 2019.

1

**EX A, PART 1**

E-FILED  2019 JAN 17 10:25 AM JOHNSON - CLERK OF DISTRICT COURT



State of Iowa Courts

**Type:**          ORDER FOR CONTINUANCE

**Case Number**     **Case Title**
LACV080354      JOHN DOE V. GREGORY SCOTT STEPHEN, ET AL.

So Ordered

Andrew Chappell, District Court Judge
Sixth Judicial District of Iowa

Electronically signed on 2019-01-17 10:25:11    page 2 of 2

**EX A, PART 1**

E-FILED  2019 JAN 17 11:43 AM JOHNSON - CLERK OF DISTRICT COURT

IOWA DISTRICT COURT IN AND FOR JOHNSON  COUNTY

| | |
|---|---|
| JOHN DOE <br>       Plaintiff(s) <br><br> VS. <br><br> AMATEUR ATHLETIC UNION US INC <br> GREGORY SCOTT STEPHEN <br> BARNSTORMERS BASKETBALL, INC <br> BARNSTORMERS BASKETBALL OF IOWA <br><br>       Defendant(s) | CASE NO: 06521  LACV080354 <br><br> **NOTICE OF CIVIL TRIAL-** <br> **SETTING CONFERENCE** |

To the parties or their attorneys of record:

In accordance with Iowa Rule of Civil Procedure 1.906, notice is hereby given that a **Trial Scheduling Conference is scheduled on 02/04/2019 at 10:00 AM at the Johnson County Courthouse, Iowa City, Iowa.**

This conference shall be held:
**By TELEPHONE with the conference call to be initiated by Plaintiff(s).  The court administrator shall be connected to the call at 319-356-6070, Ext. 3313.**

Attorneys for all parties appearing in the case shall participate at this conference.  A party will participate in person if the party does not have an attorney.

At this trial-setting conference, every case will be set for trial within the time periods provided by Iowa Court Rules Chapter 23, Time Standards for Case Processing.

**Prior to the trial-setting conference, the parties must file a Trial Scheduling and Discovery Plan, Iowa Court Rule 23.5-Form 2 (Form 3 for Expedited Civil Actions).**

The trial date that is agreed upon at this conference shall be a firm date.  Continuances will not be granted, even if all parties agree, unless for a crucial cause that could not have been foreseen.

The Clerk of Court shall notify all counsel of record and parties not represented by counsel.

Dated 01/17/19

**EX A, PART 1**

If you need assistance to participate in court due to a disability, call the disability coordinator at (319) 398-3920. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.**

**EX A, PART 1**

E-FILED  2019 JAN 17 11:43 AM JOHNSON - CLERK OF DISTRICT COURT



State of Iowa Courts

| | |
|---|---|
| **Case Number** | **Case Title** |
| LACV080354 | JOHN DOE V. GREGORY SCOTT STEPHEN, ET AL. |
| **Type:** | ORDER FOR TRIAL SCHEDULING CONFERENCE |

So Ordered

*Alissa Kron*
_____
Alissa Kron, Court Attendant,
Sixth Judicial District of Iowa

Electronically signed on 2019-01-17 11:43:28

**EX A, PART 1**

E-FILED  2019 JAN 28 9:26 AM JOHNSON - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated, | CASE NO. LACV080354 |
| Plaintiffs, | |
| v. | ORIGINAL NOTICE |
| GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, and AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC. | |
| Defendants. | |

TO THE ABOVE-NAMED DEFENDANT:   AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.

You are notified that a petition has been filed in the office of the clerk of this court naming you as the defendant in this action.  A copy of the Amended Class Action Petition at Law & Jury Demand (and any documents filed with it) is attached to this notice.  The attorneys for the Plaintiff are Guy R. Cook, Adam D. Zenor, Michael C. Kuehner, and Michael D. Currie, whose address is Grefe & Sidney, P.L.C., 500 E. Court Avenue, Suite 200, Des Moines, Iowa, 50309.  The attorneys' telephone number is 515-245-4300; and the facsimile number is 515-245-4452.

**EX A, PART 1**

E-FILED  2019 JAN 28 9:26 AM JOHNSON - CLERK OF DISTRICT COURT

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Johnson County, at the county courthouse in Iowa City, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (319) 398-3920 ext. 1105.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

**IMPORTANT: YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.**

{00252262}

**EX A, PART 1**

E-FILED  2019 JAN 28 10:48 AM JOHNSON - CLERK OF DISTRICT COURT

# STATE OF IOWA JUDICIARY

*Case No.* LACV080354

*County* Johnson

*Case Title* JOHN DOE V. GREGORY SCOTT STEPHEN, ET AL.

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:** http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile

*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(319) 398-3920** . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued* 01/28/2019 10:48:41 AM



*District Clerk of* Johnson        *County*

/s/ Wanda Sedivec

**EX A, PART 1**

E-FILED  2019 JAN 28 9:26 AM JOHNSON - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, and AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.<br><br>      Defendants. | CASE NO. LACV080354<br><br><br>**ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT:  BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA.

You are notified that a petition has been filed in the office of the clerk of this court naming you as the defendant in this action.  A copy of the Amended Class Action Petition at Law & Jury Demand (and any documents filed with it) is attached to this notice.  The attorneys for the Plaintiff are Guy R. Cook, Adam D. Zenor, Michael C. Kuehner, and Michael D. Currie, whose address is Grefe & Sidney, P.L.C., 500 E. Court Avenue, Suite 200, Des Moines, Iowa, 50309.  The attorneys' telephone number is 515-245-4300; and the facsimile number is 515-245-4452.

**EX A, PART 1**

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Johnson County, at the county courthouse in Iowa City, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (319) 398-3920 ext. 1105. (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

**IMPORTANT: YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.**

**EX A, PART 1**

E-FILED  2019 JAN 28 10:48 AM JOHNSON - CLERK OF DISTRICT COURT

# STATE OF IOWA JUDICIARY

*Case No.* LACV080354

*County* Johnson

*Case Title* JOHN DOE V. GREGORY SCOTT STEPHEN, ET AL.

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:
http://www.iowacourts.state.ia.us/Efile

FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16: http://www.iowacourts.state.ia.us/Efile

*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(319) 398-3920** . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued*  01/28/2019 10:48:41 AM



*District Clerk of* Johnson                    *County*

/s/ Wanda Sedivec

**EX A, PART 1**

E-FILED  2019 JAN 28 9:26 AM JOHNSON - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated, | CASE NO. LACV080354 |
| Plaintiffs, | |
| v. | ORIGINAL NOTICE |
| GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, and AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC. | |
| Defendants. | |

TO THE ABOVE-NAMED DEFENDANT: GREGORY SCOTT STEPHEN.

You are notified that a petition has been filed in the office of the clerk of this court naming you as the defendant in this action. A copy of the Amended Class Action Petition at Law & Jury Demand (and any documents filed with it) is attached to this notice. The attorneys for the Plaintiff are Guy R. Cook, Adam D. Zenor, Michael C. Kuehner, and Michael D. Currie, whose address is Grefe & Sidney, P.L.C., 500 E. Court Avenue, Suite 200, Des Moines, Iowa, 50309. The attorneys' telephone number is 515-245-4300; and the facsimile number is 515-245-4452.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion

**EX A, PART 1**

or answer with the Clerk of Court for Johnson County, at the county courthouse in Iowa City, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (319) 398-3920 ext. 1105.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

**IMPORTANT: YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.**

{00252262}

**EX A, PART 1**

E-FILED  2019 JAN 28 10:48 AM JOHNSON - CLERK OF DISTRICT COURT

# STATE OF IOWA JUDICIARY

*Case No.* LACV080354

*County* Johnson

*Case Title* JOHN DOE V. GREGORY SCOTT STEPHEN, ET AL.

THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:
http://www.iowacourts.state.ia.us/Efile

FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16: http://www.iowacourts.state.ia.us/Efile

*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(319) 398-3920** . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued*  01/28/2019 10:48:41 AM



*District Clerk of* Johnson              *County*

/s/ Wanda Sedivec

**EX A, PART 1**

E-FILED  2019 JAN 28 9:26 AM JOHNSON - CLERK OF DISTRICT COURT

THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GREGORY SCOTT STEPHEN,<br>BARNSTORMERS BASKETBALL, INC.<br>d/b/a BARNSTORMERS BASKETBALL<br>OF IOWA, and AMATEUR ATHLETIC<br>UNION OF THE UNITED STATES, INC.<br><br>Defendants. | Case No. LACV080354<br><br><br>**AMENDED CLASS ACTION,<br>PETITION AT LAW &<br>JURY DEMAND** |

COMES NOW Plaintiff, John Doe, on behalf of himself and all others similarly situated, by and through the undersigned counsel, pursuant to Iowa Rule of Civil Procedure 1.402(4), and for this amended class action, petition at law, and jury demand, against Defendants Gregory Scott Stephen ("Stephen"), Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa, ("BBI"), and Amateur Athletic Union of the United States, Inc. ("AAU"), states as follows:

## NATURE OF THE ACTION

1.      Sports organizations owe a duty of care to the minor children involved in their programs to avoid and prevent conduct that presents an unreasonable risk of danger or harm.

2.      The duty of care encompasses the obligation of sports organizations to especially protect children, and other vulnerable individuals, from the harm of sexual exploitation that might arise in their programs and activities.

3.      The organizations must anticipate children's vulnerability, innocence, and deference to authority.

1

**EX A, PART 1**

4.    Defendants Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa ("BBI") and the Amateur Athletic Union of the United States ("AAU") knew of the risks to youth athletes and the steps necessary to protect the safety and welfare of youth athletes, yet failed to protect vulnerable youth athletes from the despicable conduct of Defendant Gregory Scott Stephen. Had the Defendants BBI and AAU discharged their duties, vulnerable youth athletes would not have been victimized by Defendant Stephen.

5.    Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa ("BBI") was founded in 2005 and is one of the most successful youth basketball organizations in the state of Iowa. BBI boasts of its success in preparing its student-athletes to play at the collegiate level.[1] Barnstormers Basketball of Iowa is a subordinate of the Amateur Athletic Union of the United States, Inc. ("AAU") and is subject to the general supervision and control of the AAU.

6.    Defendant Gregory Scott Stephen is a co-founder of Barnstormers Basketball, Inc. and served as a coach and co-director for BBI since its inception. In his position as co-director for BBI, Defendant Stephen regularly organized travel arrangements for BBI's student-athletes to attend AAU-sanctioned youth basketball tournaments across the country. In this capacity, Defendant Stephen regularly made hotel reservations for himself and BBI's student-athletes. Defendant Stephen regularly stayed in the same hotel rooms as BBI's student-athletes and frequently shared a bed with BBI's student-athletes.

7.    Defendant Stephen used his position of authority in BBI to secretly record nude videos of BBI's student-athletes. On February 22, 2018, during an interview with Special Agent Ryan Kedley of the Iowa Division of Criminal Investigation, Defendant Stephen admitted to making secret video recordings of three BBI student-athletes, ages 12, 13, and 14, via multiple

---

[1] See https://www.barnstormersbasketball.com/alumni.

2

**EX A, PART 1**

covert USB recording devices that he hid in a hotel bathroom he was sharing with the boys during a basketball trip. On the same day as the interview, search warrants were executed on Stephen's two residences resulting in the seizure of thirty-four electronic items, including multiple covert digital recording devices.

8.     On April 5, 2018, Defendant Stephen was indicted by a Grand Jury in the United States District Court for the Northern District of Iowa and was charged with violating Title 18 U.S.C. §§ 2252(a)(1) and 2252(b)(1), for acts related to the transportation of child pornography. Stephen pled not guilty to these charges.

9.     A superseding indictment was filed on June 27, 2018.

10.     On June 28, 2018, Stephen was arraigned and charged with seven counts, including five counts of Sexual Exploitation of Minor – Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) & (e), one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and one count of Transporting Child Pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(2). Stephen pleaded not guilty at this time.

11.     On October 9, 2018, Stephen changed his plea to guilty.

12.     On October 18, 2018, a plea agreement was filed wherein Stephen admitted he committed the crimes charged against him. In pleading guilty, Stephen admitted that he used a hidden camera device to secretly record several nude minor boys in hotel rooms.

13.     Defendant BBI was negligent in its hiring, retention, and supervision of Defendant Stephen. Defendant BBI owed a duty to protect the safety and ensure the privacy of its athletes, all of whom are minors. Despite these duties, Defendant BBI failed to implement or enforce any procedures, policies, or protocols to oversee Defendant Stephen's nearly constant interaction with BBI's minor-athletes, even though BBI knew, or should have known, that Defendant Stephen had

3

**EX A, PART 1**

access to their hotel rooms and sometimes shared a room and often the same bed with BBI's minor-athletes.

14.    Defendant AAU also owed a duty to protect the safety and ensure the privacy of its members, all of whom are minors. Defendant AAU was negligent in its failure to enforce procedures, polices, or protocols regarding its members' association with BBI.

## PARTIES

15.    Plaintiff John Doe is a natural person and citizen of the State of Iowa. Plaintiff Doe is a former BBI student-athlete, who last associated with BBI in 2016. Plaintiff Doe, and all others similarly situated, became aware of Gregory Scott Stephen's invasion of privacy and the negligent acts of BBI and AAU in the summer of 2018 after meeting with the FBI and being identified as victims of illicit images created or solicited by Gregory Scott Stephen.

16.    Defendant Gregory Scott Stephen ("Stephen") is a natural person and a citizen of the State of Iowa. Stephen is a co-founder of Defendant Barnstormers Basketball, Inc. Stephen is also a former coach and co-director of BBI.

17.    Defendant Barnstormers Basketball, Inc. is a non-profit corporation organized under the laws of the State of Iowa with its principal place of business located at 1235 Deerfield Drive, North Liberty, Johnson County, Iowa, 52317.

18.    Amateur Athletic Union of the United States, Inc. ("AAU") is a not-for-profit corporation organized under the laws of the State of New York with its principal place of business located at 1910 Hotel Plaza Blvd., Lake Buena Vista, Florida, 32830-1000. The AAU is a national organization that sanctions amateur sports tournaments, establishes the integrity of amateur sports by verifying the age of its members, and sets standards for amateur sports in the United States. The AAU has over 700,000 members nationwide.

4

**EX A, PART 1**

E-FILED 2019 JAN 28 9:26 AM JOHNSON - CLERK OF DISTRICT COURT

## JURISDICTION & VENUE

19.    This court has personal and subject matter jurisdiction of this matter. Defendants conduct business in Johnson County, Iowa. The amount of damages in controversy exceeds the jurisdictional amount for the Iowa Small Claims Court.

20.    Accordingly, venue is proper in the Iowa District Court for Johnson County, Iowa.

## BACKGROUND FACTS

**BBI**

21.    BBI is an Iowa non-profit organization that was co-founded by Stephen in 2005.

22.    BBI declares it provides a "unique 'family' atmosphere" to its student-athletes.

23.    BBI fields more than a dozen boys' AAU basketball teams for 4th grade through 12th grade student-athletes and girls' AAU basketball teams for 7th through 11th grade student-athletes.

24.    BBI's high school teams participate in approximately 10 basketball tournaments annually, while its youth teams participate in approximately 16 tournaments every year.

25.    In the past, BBI's teams have traveled to tournaments in South Dakota, Missouri, Minnesota, Wisconsin, Indiana, Kansas, Kentucky, Tennessee, Florida, and Nevada.

26.    BBI is sponsored by athletic clothing brand adidas®, and boasts that it is the only program in Iowa that is part of the adidas® Gauntlet Series, an elite nationwide youth basketball circuit.

27.    BBI boasts of its success in placing its student-athletes in collegiate basketball programs of all levels.

28.    BBI is an AAU Member Club and requires all of its participants to register as AAU athletes.

**EX A, PART 1**

29.     At all times relevant to this case, BBI selected and accepted Gregory Scott Stephen as a director of its organization and as coach and chaperone for BBI's minor athletes. As a director and coach, Gregory Scott Stephen's duties included educating, mentoring, befriending, and training young boys in the sport of organized amateur basketball.

30.     At all times relevant to this case, BBI retained the right to control and had actual control of the means, methods, and physical details of Gregory Scott Stephen's performance of his duties.

31.     BBI empowered Gregory Scott Stephen to use his position as a director and coach to select which athletes would start games, to determine how much playing time each player would receive, and ultimately, the amount of exposure each player would get to collegiate recruiters, including NCAA Division I recruiters.

32.     BBI empowered Gregory Scott Stephen to use this power dynamic inherent to his position to intimidate players from speaking out about his wrongful actions, including his sexual molestation of these players.

33.     BBI had a duty to Plaintiff Doe, and all others similarly situated, to warn of the dangers of sexual molestation and predation of adult coaches, volunteers, and chaperones by undertaking to care for minor children in BBI's program.

34.     While in the exclusive control of BBI and the absence of BBI's athletes' parents/guardians, BBI's directors, coaches, volunteers, and chaperones acted in loco parentis and took on the responsibility to protect BBI's athletes from the dangers of sexual predation and molestation.

EX A, PART 1

35.    BBI failed to warn parents or BBI athletes of the risk of sexual predation within youth sports, failed to implement child sex abuse or exploitation policies, and failed to adopt a process for selecting and monitoring coaches, volunteers, and chaperones.

36.    BBI's failure to warn and failure to alter its programs in response to the obvious threat directly, foreseeably, reasonably, and proximately caused Plaintiff Doe's, and all others' similarly situated, damages.

37.    Warnings, alternate policies and procedures, or additional screening and supervision of its directors, coaches, volunteers, and chaperones would have resulted in some or all of Plaintiff Doe's, and all others' similarly situated, damages to be avoided.

**AAU**

38.    The AAU is a non-profit organization that was established in 1888.

39.    The AAU declares that it is "committed to improving the development, safety and welfare of athletes and participants involved in the sport."

40.    The AAU also declares that it is "committed to creating a safe and positive environment for athletes' physical, emotional and societal development and to ensuring that it promotes an environment free of misconduct."

41.    The AAU verifies the age of all member athletes via the examination of the athlete's birth certificate. This verification provides reliable assurance that amateur athletes are actually the age they claim to be, thus providing integrity to amateur sports leagues.

42.    The AAU sanctions events across the country, including many events Plaintiff Doe and the Class Members participated in while members of BBI.

43.    At all times relevant to this case, the AAU has published an annual Codebook.

7

**EX A, PART 1**

44.   AAU requires all of its Members to accept the terms and conditions of the AAU Codebook, however, as minors, none of BBI's athletes had capacity under Iowa law to enter into a contract with AAU.

45.   Moreover, none of BBI's minor athletes' parents could contractually bind their children to the AAU Codebook and waive personal injury claims on behalf of their minor children pursuant to the Iowa Supreme Court's decision in *Galloway v. State*, 790 NW.2d 252 (Iowa 2010).

46.   Furthermore, the terms and conditions contained in the AAU Codebook, including its provisions regarding arbitration, mediation, and class waiver, are nonnegotiable and thus, constitute contracts of adhesion, rendering its arbitration provision unenforceable under Iowa law.

47.   The AAU Codebook provides, in part, a Youth Protection Handbook, which it has adopted as its official "National Policy."

48.   The Youth Protection Handbook outlines numerous policies, procedures, and protocols to protect AAU athletes from sexual exploitation and predation at the hands of Club Members' directors, coaches, volunteers, and chaperones.

49.   AAU fails to mandate that Club Members implement any of the policies, procedures, and protocols outlined in the Youth Protection Handbook. AAU does nothing to ensure the safety and privacy of its youth Members.

50.   As part of its membership registration process, the AAU requires all AAU member registrants to aver that he/she has never been convicted of any sex offenses or felonies.

51.   AAU had a duty to Plaintiff Doe and all others similarly situated, to warn of sexual exploitation and predation dangers by inviting and undertaking to care for minor children in AAU's programs.

**EX A, PART 1**

52.    AAU failed to warn parents or BBI athletes of the risk of sexual predation within youth sports, failed to implement child sex abuse or exploitation policies, and failed to adopt a process for its Member Clubs to select and monitor coaches, volunteers, and chaperones.

53.    AAU's failure to warn and failure to alter its programs in response to this obvious threat directly, foreseeably, reasonably, and proximately caused Plaintiff Doe's, and all others' similarly situated, damages.

54.    Warnings, alternate policies and procedures, or additional screening and supervision would have resulted in some or all of Plaintiff Doe's, and all others' similarly situated, damages to be avoided.

55.    The AAU failed to enforce procedures, policies, or protocols regarding the training, supervision, background checks, or treatment of its members by individual club coaches or administers, including BBI.

**Gregory Scott Stephen**

56.    Defendant Stephen co-founded BBI in 2005.

57.    Since 2005, Stephen has acted as a coach for BBI's various boys' basketball teams and as a co-director of BBI's operations.

58.    One of Stephen's roles in BBI was to organize the travel logistics for BBI's teams to attend AAU-sanctioned basketball tournaments throughout the Midwest and across the country, including the adidas® Gauntlet Series.

59.    In his capacity as travel coordinator, Stephen was responsible for reserving hotel rooms for BBI's student-athletes.

**EX A, PART 1**

E-FILED  2019 JAN 28 9:26 AM JOHNSON - CLERK OF DISTRICT COURT

60.    Upon information and belief, Stephen regularly arrived to the BBI-reserved hotels before BBI's student-athletes, thereby gaining access to all of the student-athletes' rooms prior to their arrival.

61.    Upon information and belief, Stephen usually shared a room with BBI's student-athletes and frequently shared a bed with BBI's student-athletes.

**Investigation & Arrest of Defendant Gregory Scott Stephen**

62.    On February 18, 2018, Monticello Police were contacted by Stephen's former brother-in-law, V.E.

63.    While providing construction services at Stephen's home in Monticello, Iowa, V.E. found a black 1-inch by 1-inch by 1-inch cube, which he identified as a 32-gigabit USB covert recording device.

64.    Upon inspection of the contents of the device, V.E. discovered video files of three (3) nude adolescent boys in a hotel bathroom. These videos showed the boys disrobing and entering/exiting a hotel bathroom shower.

65.    V.E. turned the device over to Monticello Police on February 19, 2018.

66.    On the morning of February 22, 2018, Stephen was interviewed by DCI Special Agents Ryan Kedley and Matt George.

67.    During this conversation Stephen admitted to making the videos of the three boys at the Courtyard Hotel in Ankeny, Iowa. Defendant Stephen later stated that the videos were made in a hotel in Lombard, Illinois.

68.    Stephen told investigators that he was only looking at the boys' growth and sexual development, including the boys' genitalia and amount of body hair. Stephen admitted he does not

10

**EX A, PART 1**

have a medical degree and acknowledged it was "dumb" for him to make the secret video recordings.

69.     Stephen admitted to being sexually aroused by the videos, despite also claiming he made the videos for purposes of exploring his curiosity related to sexual development.

70.     On the same morning of the interview, two search warrants were executed on Stephen's residences in Monticello, Iowa and Delhi, Iowa.

71.     Execution of the search warrants at Stephen's two residences resulted in the seizure of thirty-four (34) electronic items, including three additional cube-style USB covert recording devices consistent with the device given to Monticello Police, one covert USB recording device which appeared to double as a mountable bath towel hanging hook, and one smoke detector/possible covert recording device.

72.     Upon examination of the contents of the USB recording device provided to Monticello Police, Special Agent Kedley observed more than 100 video clips in the device's storage. The video clips were organized into folders using the underage boys' names. All of these videos appeared to have been taken in the same Illinois hotel room.

73.     Special Agent Kedley also observed two videos of a fourth prepubescent boy that appeared to have been taken in a different hotel room. Investigation revealed that the bathroom visible in these videos was consistent in appearance with hotel bathrooms of the Courtyard Hotel in Ankeny, Iowa.

74.     On February 27, 2018, Special Agent Kedley interviewed an individual ("Witness 1") who was an active player with the Barnstormers in the summer of 2016.

75.     Witness 1 indicated that in the summer of 2016, while attending the Las Vegas tournament, he and two other BBI players shared a hotel room with Stephen.

11

**EX A, PART 1**

76.    Witness 1 stated that during one night of the trip he shared a bed with Stephen.

77.    Witness 1 stated that he was awakened by the sound of Stephen's heavy breathing behind him in bed and a repeated up-and-down movement underneath the bed's comforter.

78.    Soon after, Witness 1 then heard the sound of multiple facial tissues being removed from a tissue box.

79.    Witness 1 stated that his reaction and observations were that Stephen had just masturbated in the bed he was sharing with him.

**Indictment and Plea Agreement**

80.    On April 5, 2018, Stephen was indicted by a Grand Jury in the United States District Court for the Northern District of Iowa and was charged with violating Title 18 U.S.C. §§ 2252(a)(1) and 2252(b)(1), for acts related to the transportation of child pornography.

81.    A superseding indictment was filed on June 27, 2018.

82.    On June 28, 2018, Stephen was arraigned and charged with seven counts, including five counts of Sexual Exploitation of Minor – Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) & (e), one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and one count of Transporting Child Pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(2). Stephen pleaded not guilty at this time.

83.    On October 9, 2018, Stephen changed his plea to guilty.

84.    On October 18, 2018, a plea agreement was filed wherein Stephen admitted that he committed the crimes of five counts of Sexual Exploitation of minor – Production of Child Pornography in violation of 18 U.S.C. § 2251(a) & (e), one count of possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and one count of Transporting Child Pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(2).

**EX A, PART 1**

85.     In pleading guilty, Stephen admitted that he used a hidden camera device to record secretly nude minor boys in hotel rooms.

86.     In pleading guilty, Stephen admitted he invited the boys, and then escorted the boys, to attend basketball games or play in basketball tournaments. Stephen placed the recording device in hotel bathrooms, pointed towards the shower area, so that it recorded minors coming in and out of the shower exposing their genitals.

87.     In pleading guilty, Stephen admitted these recordings produced by him involve minors engaged in sexually explicit conduct, including the lascivious display of the genitals of the minors. None of the boys knew they were being recorded.

88.     In pleading guilty, Stephen admitted that on February 22, 2018, law enforcement officers searched two residences owned or used by Stephen; one residence was Stephen's primary residence in Monticello, Iowa and the other was a "lake house" in Delhi, Iowa. From the Monticello residence, officers seized eleven (11) electronic devices that had been shipped and transported in interstate commerce, including a LaCie Porsche Design external hard drive ("LaCie Hard Drive"), found in Stephen's office.

89.     In pleading guilty, Stephen admitted that three additional covert recording devices similar in style to the one used by Stephen in hotel rooms were found as well as a covert recording device designed to look like, and operate as, a mountable bath towel hook. These devices all belonged to Stephen.

90.     In pleading guilty, Stephen admitted that from the Delhi residence, officers seized twenty-two (22) electronic devices that had been shipped and transported in interstate commerce including a covert recording device designed to look like a smoke detector. This device was in

13

**EX A, PART 1**

the bathroom of the residence. It was plugged into an electrical outlet and charging. The mount for the device was located directly above the toilet.

91.    In pleading guilty, Stephen admitted that a review of the recovered items revealed that from 2008 or earlier, Stephen had access to minors from age 9 to age 17 through basketball programs commonly referred to as Barnstormers or by other team names. Through Stephen's connection to these programs as a coach and administrator, Stephen had the personal information of many of the minors, and some of their minor friends and acquaintances.

92.    In pleading guilty, Stephen admitted that he traveled to various sporting events, including basketball games and tournaments, with the minors and many times had the minors stay in hotel rooms with him and sleep in the same bed with him.

93.    In pleading guilty, Stephen admitted that the LaCie Hard Drive was found to contain more than 400 electronic file folders with titles in the last and then first names of the different minor boys hereinafter referred to as victims.

94.    In pleading guilty, Stephen admitted that approximately 400 of these file folders contain visual depictions of nude minor males displaying their genitalia and many involve masturbation by the minor boys.

95.    In pleading guilty, Stephen admitted the victims include basketball players (and friends of players) from as recent as 2018 and former basketball players and their friends from past seasons going back several years and also includes minors involved in other sports.

96.    In pleading guilty, Stephen admitted there were three different genre of visual depictions found in the folders on the LaCie hard drive: (1) nude minor males secretly recorded in various bathrooms (such as those discussed above); (2) visual depictions, including still images and videos, of minor males taken by the minors themselves and depicting the minors masturbating

**EX A, PART 1**

and/or displaying their penises - these minors were persuaded, induced, or enticed by Stephen to produce these visual depictions; and (3) visual depictions produced by Stephen of minor males unconscious with their pants pulled down and their genitals exposed.

97.   In pleading guilty, Stephen admitted that in some of these depictions, he recorded himself touching the genitals of the unconscious victims. Some of the file folders have only one type of visual depiction whereas some have all three types.

98.   In pleading guilty, Stephen admitted that in addition to locating file folders bearing the names of minor males, officers located on the LaCie Hard Drive two file folders with the file names "Kylie Leonard" ("Leonard") and "Mikayla Timm" ("Timm"). These file folders each contained photos (nude and clothed) of teenaged females, as well as video of what appears to be female teenager masturbating with no face visible.

99.   In pleading guilty, Stephen admitted that he assumed the identity of these two girls and another young female named Calynn to initiate contact with the boys on social media or otherwise. Stephen established Facebook and Snapchat profiles using the identities of these females and used these profiles to contact minor boys.

100.   In pleading guilty, Stephen admitted that once contact was made, Stephen used the female personae to persuade, induce, and entice the minor boys to provide sexually explicit images of themselves. For instance, Stephen posed as a teenaged girl, made contact, and then offered to exchange nude images with the victims.

101.   In pleading guilty, Stephen admitted that as a female teenager, Stephen suggested the types of sexually explicit image the victim should produce and then recorded and saved the pornographic images the minors sent to him. Unbeknownst to the victims, Stephen used a software application to record live transmissions made by the minor boys.

**EX A, PART 1**

102.   In pleading guilty, Stephen admitted that he also saved chats between Leonard and/or Timm and some of the victims as well as account log-in information for the Leonard and Timm profiles. With respect to Victim 1, who was either 14 or 15 years old at the time, whose status as a minor was known to Stephen, Stephen persuaded, induced, and enticed Victim 1 to produce visual depictions of Victim 1 displaying his erect penis. Stephen admits that the visual depictions are of sexually explicit conduct.

103.   In pleading guilty, Stephen admitted that with respect to Victim 2, who was 14 to 17 years old at the time, whose status as a minor was known to Stephen, Stephen persuaded, induced, and enticed Victim 2 to produce visual depictions of Victim 2 displaying his erect penis and masturbating. Stephen admits that the visual depictions are of sexually explicit conduct.

104.   In pleading guilty, Stephen admitted that with respect to Victim 3, who was 11 or 12 years old at the time, whose status as a minor was known to Stephen, Stephen persuaded, induced, and enticed Victim 3 to produce visual depictions of Victim 3 displaying his erect penis and masturbating. Stephen admits that the visual depictions are of sexually explicit conduct. In addition, Victim 3 traveled to basketball tournaments and games with Stephen on several occasions, and went to Stephen's house in Delhi, Iowa. On the LaCie Hard Drive, officers found a visual depiction with a date stamp in August of 2017, that shows Stephen with his mouth on or near Victim 3's penis while Stephen touched Victim 3's penis with his hand. This visual depiction was produced by Stephen, depicts sexually explicit conduct. Prior to producing the visual depiction, Stephen gave Victim 3 medication which made him drowsy.

105.   In pleading guilty, Stephen admitted that with respect to Victim 4, who was 13 or 14 years old at the time, whose status as a minor was known to Stephen, Stephen persuaded,

**EX A, PART 1**

induced, and enticed Victim 4 to produce visual depictions of Victim 4 displaying his erect penis and masturbating. Stephen admits that the visual depictions are of sexually explicit conduct.

106.    In pleading guilty, Stephen admitted that with respect to Victim 5, who was 15 years old at the time, whose status as a minor was known to Stephen, and who is referred to in Count 5, Stephen persuaded, induced, and enticed Victim 5 to produce visual depictions of Victim 5 displaying his erect penis and masturbating. Stephen admits that the visual depictions are of sexually explicit conduct and were produced using materials that had traveled across state lines.

107.    In pleading guilty, Stephen admits that he produced, or caused the production of, all of the images of the victims (minor boys) depicted in the LaCie Hard Drive.

**Plaintiff Doe**

108.    Plaintiff Doe tried out for a Barnstormers' basketball team in September of 2013.

109.    During periods from March 2014 through July of 2016, Plaintiff Doe participated as a team member on various Barnstormers' teams.

110.    In July 2016, Plaintiff Doe attended a basketball tournament in Las Vegas, Nevada as a member of a Barnstormer team.

111.    Plaintiff Doe stayed in a hotel room with four to five other members of a Barnstormers' team.

112.    Plaintiff Doe and his teammates occupied the room for approximately seven nights.

113.    During this period, Plaintiff Doe used the room every day to dress, undress, and shower.

114.    Upon information and belief, Defendant Gregory Scott Stephen made reservations for the hotel rooms occupied by all of BBI's student-athletes, including the room occupied by Plaintiff Doe and his teammates.

17

**EX A, PART 1**

115.    Upon information and belief, Defendant Gregory Scott Stephen arrived to the hotel before Plaintiff Doe and his teammates.

116.    Upon information and belief, Defendant Gregory Scott Stephen had access to Plaintiff Doe's hotel room before Plaintiff Doe occupied the room.

117.    Upon information and belief, Plaintiff Doe believes his and his roommates' bathroom may have been secretly recorded by Defendant Gregory Scott Stephen during his stay in BBI's hotel room during the Las Vegas tournament.

118.    On August 14, 2018, Plaintiff Doe's father received a letter from the United States Attorney's Office for the Southern District of Iowa, notifying him that Plaintiff Doe had been identified as a victim of Defendant Gregory Scott Stephen's admittedly unlawful acts.

## CLASS ALLEGATIONS

119.    Class Definition: Plaintiff John Doe brings this action pursuant to Iowa Rule of Civil Procedure 1.261, *et seq.*, on behalf of himself and a class defined as follows:

> All Barnstormers Basketball, Inc. student-athletes in the United States from 2005 to present who  have been identified by the Federal Bureau of Investigation, the Iowa Department of Criminal Investigations, or the United States Attorney's Office, as victims of the crimes to which Gregory Scott Stephen has admitted his guilt.

120.    **Numerosity**: The exact number of members in the Class is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, more than four hundred (400) individuals could fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

121.    **Adequate Representation**: Plaintiff Doe will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex

**EX A, PART 1**

litigation and class actions. Plaintiff Doe has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff Doe.

122.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards the Class's members, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' actions and practices challenged herein apply to and affect the Class's members uniformly, and Plaintiff Doe's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to the Plaintiff.

123.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Doe and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   A. Whether Stephen's secret recording unlawfully invaded upon the seclusion and solicitude of Plaintiff Doe and the members of the Class.

   B. Whether BBI was negligent in its retention or supervision of Stephen while he was employed by BBI and attending AAU-sanctioned events with BBI's minor student-athletes.

   C. Whether BBI was negligent in its failure to screen its coaches, volunteers, and chaperones or establish or enforce any travel policy provisions to protect the safety and welfare of athletes, including AAU's published practices for team travel and prohibit,

19

**EX A, PART 1**

regardless of gender, a coach from sharing a hotel room or other sleeping arrangement with athletes in accordance with appropriate athlete safety.

D. Whether AAU was negligent in its failure to enforce any procedures, policies, or protocols regarding the training, supervision, background checks, or treatment of its members by individual club coaches or administrators, including BBI.

124.    **Typicality**: Plaintiff Doe's claims are typical of the claims of the other members of the Class, in that Plaintiff Doe and the members of the Class sustained damages arising out of the Defendants' uniformly wrongful conduct.

125.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Even if members of the Class sustain individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

## COUNT I: INTRUSION UPON SECLUSION
### Gregory Scott Stephen

126.    Plaintiff repleads the preceding paragraphs as though fully set forth herein.

127.    Defendant Stephen's secret recording of Plaintiff Doe and members of the Class intentionally interferes with Plaintiff Doe's and the Class members' interest in their solitude or seclusion as to their persons.

20

**EX A, PART 1**

128.    Defendant Stephen's interference with Plaintiff Doe's and the Class members' solitude or seclusion would be highly offensive to a reasonable person.

129.    Consequently, Defendant Stephen is liable for damages to Plaintiff Doe and the Class Members for intruding upon their seclusion and solitude.

## COUNT II: NEGLIGENT HIRING, SUPERVISION, AND RETENTION
### Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa

130.    Plaintiff repleads the preceding paragraphs as though fully set forth herein.

131.    Defendant Stephen was an employee and director of BBI from 2005 to early 2018.

132.    Defendant BBI owed a legal duty to Plaintiff Doe and other members of the Class, all minors, to protect their personal safety and to ensure their privacy against sexual predators like Stephen.

133.    BBI breached these duties by failing to implement or enforce any precautionary, preventative, or mitigating procedures, policies, or protocols, or provide any supervision whatsoever regarding Defendant Stephen's access to the hotel rooms of all of BBI's minor-athletes or prevent Stephen's regular bed-sharing with BBI's minor-athletes.

134.    BBI failed to properly and appropriately screen Defendant Stephen to serve as a coach, event organizer, or volunteer.

135.    BBI failed to follow AAU published practices for team travel and prohibit, regardless of gender, a coach from sharing a hotel room or other sleeping arrangement with athletes in accordance with appropriate athlete safety.

136.    BBI failed to exercise reasonable care to prevent Defendant Stephen's sexually predatory practices of secretly recording BBI's minor male athletes in hotel bathrooms.

137.    Defendant Stephen's sexually predatory practices were the cause of Plaintiff Doe's and the Class Members' damages.

**EX A, PART 1**

138.    BBI's negligence was the direct and proximate cause of Plaintiff Doe's and the Class Members' damages.

139.    Defendant BBI is liable for damages to Plaintiff Doe and the Class members.

## COUNT III: NEGLIGENCE
### Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa

140.    Plaintiff Doe repleads the preceding paragraphs as though fully set forth herein.

141.    Barnstormers Basketball of Iowa, as a subordinate of the Amateur Athletic Union of the United States, is subject to the supervision and control of Amateur Athletic Union of the United States, Inc.

142.    The Amateur Athletic Union declares that it is "committed to creating a safe and positive environment for athletes' physical, emotional and societal development and to ensuring that it promotes an environment free of misconduct."

143.    The Amateur Athletic Union holds itself out as "committed to improving the development, safety and welfare of athletes and participants involved in the sport."

144.    BBI stands in the position of knowledge regarding the risks associated with the safety and welfare of athletes and participants involved in AAU sports.

145.    BBI with its special knowledge has accepted a duty to protect the safety and welfare of its athletes and participants involved in sport.

146.    Defendant BBI has failed to exercise reasonable care in fulfilling these duties.

147.    BBI has failed to discharge its duty to protect the safety and welfare of athletes and participants involved in sports.

148.    BBI failed to establish and enforce appropriate travel policy provisions to protect the safety and welfare of athletes. Specifically, BBI failed to follow AAU's published practices

**EX A, PART 1**

for team travel and prohibit, regardless of gender, a coach from sharing a hotel room or other sleeping arrangement with athletes in accordance with appropriate athlete safety.

149.   Defendant BBI's negligence was the direct and proximate cause of Plaintiff Doe's and the Class Members' damages.

150.   Accordingly, Defendant BBI is liable for damages to Plaintiff Doe and the Class Members.

## COUNT IV: NEGLIGENCE
### Amateur Athletic Union of the United States, Inc.

151.   Plaintiff Doe repleads the preceding paragraphs as though fully set forth herein.

152.   The AAU declares that "the safety of our athletes is paramount and in many instances we make the athletic space safer through appropriate physical contact."

153.   The AAU declares that it is "committed to improving the development, safety and welfare of athletes and participants involved in the sport."

154.   The AAU also declares that it is "committed to creating a safe and positive environment for athletes' physical, emotional and societal development and to ensuring that it promotes an environment free of misconduct."

155.   The AAU is in a position of knowledge regarding the potential for sexual abuse and sexual misconduct or other inappropriate behaviors, yet took no action to ensure Defendant Stephen did not engage in inappropriate behavior, sexual abuse or sexual misconduct.

156.   The AAU stands in a position of knowledge regarding the risks associated with the safety and welfare of athletes and participants involved in AAU sports.

157.   The AAU with its special knowledge and in declaring these commitments has accepted a duty to protect the safety and welfare of its athletes and participants involved in sport.

23

**EX A, PART 1**

158.   Defendant AAU sanctioned many of the tournaments that Plaintiff Doe and the Class Members attended while playing for BBI.

159.   Defendant AAU requires membership registrants aver that they have never been convicted of any sex offense nor felony.

160.   The AAU has failed to discharge its duty to protect the safety and welfare of athletes and participants involved in sports.

161.   As such, Defendant AAU owed a legal duty to Plaintiff Doe and the Class Members—all members of the AAU—to protect their personal safety and to ensure their privacy against sexual predators.

162.   Defendant AAU failed to exercise reasonable care in fulfilling these duties.

163.   Specifically, AAU breached these duties by failing to enforce or require BBI to implement any precautionary, preventative, or mitigating procedures, policies, or protocols whatsoever regarding the individuals, including Defendant Stephen, that Defendant BBI employed to coach or chaperone Plaintiff Doe and the Class Members.

164.   Defendant AAU's negligence was the direct and proximate cause of Plaintiff Doe's and the Class Members' damages.

165.   Therefore, Defendant AAU is liable for damages to Plaintiff Doe and the Class Members.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff John Doe, on behalf of himself and a Class of similarly situated individuals, respectfully requests the Court issue an order:

**EX A, PART 1**

E-FILED 2019 JAN 28 9:26 AM JOHNSON - CLERK OF DISTRICT COURT

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff John Doe as Class Representative, and appointing his counsel as Class Counsel;

B.      Declaring that Defendant Gregory Scott Stephen's actions, as set out above, constitute an intrusion of Plaintiff Doe's and the Class Members' privacy rights in seclusion or solitude as to their persons;

C.      Declaring Defendants BBI's and AAU's breach of their duty to protect the safety and ensure the privacy of its student-athletes, as set out above, constitutes negligence;

D.      Awarding damages, including actual, statutory, and punitive damages where applicable, to the Plaintiff and the Class;

E.      Awarding Plaintiff and the Class pre- and post-judgment interest; and

F.      Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

**Dated: January 28, 2019**

**EX A, PART 1**

E-FILED  2019 JAN 28 9:26 AM JOHNSON - CLERK OF DISTRICT COURT

**Certificate of Service**

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys listed as receiving notice on January 28, 2019 by EDMS.

/s/ Guy R. Cook                    x

Copy to:

Mark Schultheis
Debra Hulett
Nyemaster Goode, P.C.
Des Moines, IA 50309
700 Walnut, Suite 1600
T: 515-283-3114
F: 515-283-3108
mschultheis@nyemaster.com
dhulett@nyemaster.com

ATTORNEYS FOR DEFENDANT AMATEUR
ATHLETIC UNION OF THE UNITED STATES, INC.

GREFE & SIDNEY, P.L.C.

By: /s/ Guy R. Cook
    Guy R. Cook, AT0001623

By: /s/ Adam D. Zenor
    Adam D. Zenor, AT0009698

By: /s/ Michael C. Kuehner
    Michael C. Kuehner, AT0010974

By: /s/ Michael D. Currie
    Michael D. Currie, AT0012256

500 E. Court Ave., Ste. 200
Des Moines, IA  50309
Phone:  515/245-4300
Fax: 515/245-4452
gcook@grefesidney.com
azenor@grefesidney.com
mkuehner@grefesidney.com
mcurrie@grefesidney.com

ATTORNEYS FOR PLAINTIFF

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, and AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.,<br><br>Defendants. | Case No: LACV080354<br><br><br><br>**DEFENDANT AAU'S MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS FOR IMPROPER VENUE** |

Defendant Amateur Athletic Union of the United States, Inc. ("AAU") moves to compel arbitration, or in the alternative, to dismiss for improper venue, and states:

1.     Plaintiff Doe pleaded Count IV, negligence, against AAU. Plaintiff Doe has not pleaded any other claims against AAU.

2.     The AAU is a not-for-profit organization that licenses athletic events throughout the United States. *Petition* ¶ 18; *Amended Petition* ¶ 18. To compete in an AAU-licensed event, the competitor must have a current AAU membership. *Declaration of Debra Kimbrell* ("Kimbrell Affidavit") ¶ 6. The AAU requires membership renewal on an annual basis. *Kimbrell Declaration* ¶ 9.

1

**EX A, PART 1**

3.      Plaintiff pleaded that he was an AAU member in 2014, 2015, and 2016. *Petition* ¶¶ 32–33, 88–89, 137, 139; *Amended Petition* ¶¶ 42, 109–110, 158, 161.

4.      As a private organization, AAU is under no obligation to accept Plaintiff Doe or anyone else as a member. *Exhibits B, D–E.* To secure an AAU membership, Plaintiff Doe had to complete an online membership application. *Kimbrell Declaration* ¶ 7. He would have had to renew his AAU membership annually. *Kimbrell Declaration* ¶ 9. To become an AAU member, Plaintiff Doe would have had to expressly agree, by submitting his online application for membership or membership renewal, to be bound by the AAU Code Book and membership policies. *Kimbrell Declaration* ¶¶ 10–13, 16–17, 20–22.

5.      Through the online application process in the 2014 membership year, Plaintiff Doe had to manually check a box indicating that "I accept all terms and conditions for this AAU membership application as laid out by the AAU code book (available here) and this application." *Kimbrell Declaration* ¶ 13; *Exhibit B.* In that statement, the words "available here" contained a hyperlink, which when clicked, would have directed Plaintiff Doe to the AAU Codebook in effect at the time. *Kimbrell Declaration* ¶ 13; *Exhibit B; Exhibit F.*

6.      Plaintiff Doe would have had immediate access to the AAU Codebook through the hyperlink before completing his application. *Kimbrell Declaration* ¶ 14.

**EX A, PART 1**

7.      Plaintiff Doe would have had a reasonable opportunity to understand the terms and conditions of AAU Membership as referenced in the Codebook. *Kimbrell Declaration* ¶ 15.

8.      If Plaintiff Doe had not checked the box expressly agreeing to be bound by the AAU Codebook and its membership policies, his application process would not have gone forward, and he could not have completed the AAU membership process. *Kimbrell Declaration* ¶¶ 16–17.

9.      Therefore, if Plaintiff Doe had not checked the box on his online application and agreed to the terms of the AAU membership, no AAU membership would have been granted to him. *Kimbrell Declaration* ¶ 17.

10.     After Plaintiff Doe became an AAU member, Plaintiff Doe would have received his 2014 membership card. *Kimbrell Declaration* ¶ 18. The 2014, 2015, and 2016 membership cards each contained a statement that "AAU members agree to be bound by the AAU Code, including National Policies and sports rules." *Kimbrell Declaration* ¶ 18; *Exhibit C*.[1]

11.     AAU requires its members to submit disputes to binding arbitration administered by the American Arbitration Association ("AAA"). *Exhibit F*, pp. 41–42; *Exhibit G*, pp. 41–42; *Exhibit H*, pp. 41–42. By completing his membership, Plaintiff Doe

---

[1] AAU submits a blank membership card for the 2014, 2015, and 2016 membership years because Plaintiff Doe has not disclosed his identity. When Plaintiff Doe reveals his name, AAU will be able to submit Plaintiff Doe's membership cards to the Court. *Kimbrell Declaration* ¶ 19.

**EX A, PART 1**

expressly agreed to the mandatory arbitration provision contained in the AAU Codebook.

12.     The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, mandates that the Court enforce the contract between AAU and Plaintiff Doe. The FAA applies here because the contract at issue involves interstate commerce. Plaintiff Doe pleaded that her participated in "many" AAU-licensed events "across the country." *Petition* ¶ 32; *Amended Petition* ¶ 42. He further pleaded he participated as a team member on a basketball team from March 2014 through July 2016. *Petition* ¶ 88; *Amended Petition* ¶ 109. According to Plaintiff Doe, in July 2016, he attended a basketball tournament in Las Vegas, Nevada, as a member of a Barnstormer basketball team. *Petition* ¶ 89; *Amended Petition* ¶ 110.

13.     The FAA's provisions apply in state court and preempt inconsistent state laws. *Rent-A-Center, Inc. v. Iowa Civil Rights Comm'n*, 843 N.W.2d 727, 733 (Iowa 2014).

14.     The 2014 AAU Codebook, as well as the 2015 and 2016 AAU Codebooks, unequivocally require the parties to submit any and all civil disputes to binding arbitration. *Exhibit F*, p. 41; *Exhibit G*, p. 41; *Exhibit H*, p. 41. Agreement to the terms and conditions for AAU membership, as outlined by the AAU Codebook, constitutes a binding contract.

15.     The 2014 AAU Codebook clearly made binding arbitration mandatory as a condition of AAU membership: "**BY APPLYING FOR AAU MEMBERSHIP (OR**

4

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

HAVING A THIRD PARTY SUBMIT AN APPLICATION FOR MEMBERSHIP IN THE AAU ON BEHALF OF THE APPLICANT), OR UPON ENTERING ANY AAU EVENT, THE APPLICANT/MEMBER/ENTRANT AND THE AAU AGREE TO SUBMIT ALL CIVIL DISPUTE(S) TO BINDING ARBITRATION." *Exhibit F*, p. 41. *See also Exhibit G*, p. 41 (2015 AAU Codebook); *Exhibit H*, p. 41 (2016 AAU Codebook).

16.     Additionally, the binding arbitration provision in the 2014 AAU Codebook stated: "**THE PARTIES AGREE THAT THE BINDING ARBITRATION SHALL BE IN LIEU OF ANY LITIGATION BY AND BETWEEN ALL OF THE PARTIES RELATED TO THE DISPUTE**." *Exhibit F*, p. 41. *See also Exhibit G*, p. 41 (2015 AAU Codebook); *Exhibit H*, p. 41 (2016 AAU Codebook).

17.     Furthermore, "[b]y submitting or authorizing an application for membership in the AAU, the applicant agrees and stipulates" to the specified terms and conditions including binding arbitration. *Exhibit F*, p. 41. *See also Exhibit G*, p. 41 (2015 AAU Codebook); *Exhibit H*, p. 41 (2016 AAU Codebook).

18.     Plaintiff Doe's claim against AAU in this lawsuit falls squarely within the scope of the binding arbitration provision. Consequently, the Court should enter an order compelling arbitration between all parties and dismissing this action.

19.     The 2015 and 2016 AAU Codebooks contain similar provisions regarding binding arbitration. The 2015 Codebook states in pertinent part:

BY APPLYING FOR AAU MEMBERSHIP (OR HAVING A THIRD PARTY SUBMIT AN APPLICATION FOR MEMBERSHIP IN THE AAU

**EX A, PART 1**

ON BEHALF OF THE APPLICANT), OR UPON ENTERING ANY AAU EVENT, THE APPLICANT/MEMBER/ENTRANT AND THE AAU AGREE TO SUBMIT ALL CIVIL DISPUTE(S) ARISING OUT OF OR DURING THE TERM OF MEMBERSHIP TO BINDING ARBITRATION. . . . THE PARTIES AGREE THAT THE BINDING ARBITRATION SHALL BE IN LIEU OF ANY LITIGATION BY AND BETWEEN ALL OF THE PARTIES RELATED TO THE DISPUTE.

*Exhibit G*, p. 41.

20.     Additionally, the 2015 AAU Codebook states that: "[b]y submitting or authorizing and application for membership in the AAU, the applicant agrees and stipulates" to the specified terms and conditions that include binding arbitration. *Exhibit G*, p. 41.

21.     The 2016 AAU Codebook contains comparable language regarding binding arbitration. *Exhibit H*, p. 41.

22.     The 2015 online application process would have required Plaintiff Doe to check a box acknowledging that he understood and agreed to all terms and conditions listed, including that: "I accept all terms and conditions for this AAU membership application as laid out by the AAU code book (available here) and this application." *Kimbrell Declaration* ¶¶ 20–21; *Exhibit D*.

23.     Similarly, the 2016 online application process contained a similar requirement that the applicant check a box expressly agreeing to be bound by the AAU Codebook and membership policies. *Kimbrell Declaration* ¶ 22; *Exhibit E*.

**EX A, PART 1**

E-FILED 2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

24.     In the alternative, the Court should enforce the mandatory forum-selection clause contained in the Codebook and dismiss the AAU because the Iowa venue is improper. *Exhibit F*, p. 42; *Exhibit G*, p. 42; *Exhibit H*, p. 42.

25.     If arbitration is not ordered, the forum-selection clause agreed to the by the parties in the 2014 Codebook requires any legal dispute between the parties to be litigated in the Ninth Judicial District for Orange County, Florida, stating:

> **IF, HOWEVER, FOR ANY REASON, (SUCH) ARBITRATION IS DECLARED INVALID BY ANY COURT, IN THE ALTERNATIVE TO ARBITRATION, THE PARTIES AGREE TO WAIVE A JURY AND AGREE THAT ANY LEGAL ACTION BETWEEN THE PARTIES SHALL BE COMMENCED EXCLUSIVELY IN THE CIRCUIT COURT OF THE NINTH JUDICIAL DISTRICT FOR ORANGE COUNTY, FLORIDA, OR TO ANY OTHER COURT SITTING IN THAT COUNTY HAVING SUBJECT MATTER JURISDICTION, PURSUANT TO THIS FORUM SELECTION CLAUSE, WHICH IS AGREED TO BY THE PARTIES.**

*Exhibit F*, p. 42.

26.     The 2015 and 2016 AAU Codebooks contain comparable forum-selection clause language. *Exhibit G*, p. 42; *Exhibit H*, p. 42.

27.     The claims Plaintiff Doe asserts against AAU in this case are within the scope of the forum-selection clause because they involve a civil legal action between the parties.

28.     Because the parties expressly agreed to the forum-selection clause establishing the circuit court of the Ninth Judicial District Court for Orange County,

**EX A, PART 1**

Florida as the exclusive venue for any legal action between the parties, the Iowa venue is improper and this case should be dismissed.

29.    In support of this motion, AAU submits a supporting brief, the Declaration of Debra Kimbrell, and supporting *Exhibits A–L*.

### Conclusion

For these reasons, Defendant Amateur Athletic Union of the United States, Inc. respectfully requests that the Court enter an order compelling arbitration between the parties and dismissing this action. Alternately, Defendant Amateur Athletic Union of the United States, Inc. requests that the Court enter an order dismissing the action based on the forum-selection clause.

/s/ Mark A. Schultheis, AT0007133
/s/ Debra Hulett, AT0003665
Nyemaster Goode, P.C.
700 Walnut St., Suite 1600
Des Moines, IA 50309
Telephone: 515-283-3100
Fax: 515-283-3108
Email: maschultheis@nyemaster.com
Email: dlhulett@nyemaster.com
ATTORNEYS FOR DEFENDANT AMATEUR
ATHLETIC UNION OF THE UNITED STATES,
INC.

8

**EX A, PART 1**

## Certificate of service

I hereby certify that on February 1, 2019, I electronically filed the foregoing with the Clerk of the Court using the EDMS which will send notification of such filing to the following:

Guy R. Cook
Adam D. Zenor
Michael C. Kuehner
Michael D. Currie
GREFE & SIDNEY, P.L.C.
500 E. Court Ave., Ste. 200
Des Moines, IA 50309
Phone: 515-245-4300
Fax: 515-245-4452
Email: gcook@grefesidney.com
Email: azenor@grefesidney.com
Email: mkuehner@grefesidney.com
Email: mcurrie@grefesidney.com
ATTORNEYS FOR PLAINTIFF

/s/ Debra Hulett

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GREGORY SCOTT STEPHEN,<br>BARNSTORMERS BASKETBALL, INC.<br>d/b/a BARNSTORMERS BASKETBALL<br>OF IOWA, and AMATEUR ATHLETIC<br>UNION OF THE UNITED STATES, INC.,<br><br>Defendants. | Case No: LACV080354<br><br><br>**DEFENDANT AAU'S BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS FOR IMPROPER VENUE** |

Defendant Amateur Athletic Union of the United States, Inc. ("AAU") submits

this brief in support of its motion to compel arbitration, or in the alternative, to dismiss

for improper venue.

### Factual Background

The AAU is a not-for-profit organization that licenses athletic events throughout

the United States. *Petition* ¶ 18; *Amended Petition* ¶ 18. To compete in an AAU-licensed

event, the competitor must have a current AAU membership. *Declaration of Debra

Kimbrell* ("Kimbrell Declaration") ¶ 6. The AAU requires membership renewal on an

annual basis. *Kimbrell Declaration* ¶ 9.

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

Plaintiff Doe has alleged that he was an AAU member, competing in AAU-licensed events, in the 2014, 2015, and 2016 membership years. *Petition* ¶¶ 15, 32–33, 88–89, 98, 102(B)–(C), 137–143; *Amended Petition* ¶¶ 15, 42, 109–110, 119, 123(B)–(D), 158, 161.  In 2014 through 2016, when Plaintiff Doe was an AAU member, every version of the AAU Codebook contained an arbitration agreement. *Exhibit F*, p. 41; *Exhibit G*, p. 41; *Exhibit H*, p. 41. As a private organization, AAU was under no obligation to accept Plaintiff Doe as a member. *Exhibits B, D–E.* For Plaintiff Doe to secure AAU membership, he was required to complete an online or paper membership. *Kimbrell Declaration* ¶¶ 5–7, 10. Each year, Plaintiff Doe would have had to reapply for AAU membership application. *Kimbrell Declaration* ¶¶ 9–10.

Each year, in submitting his application for membership renewal, Plaintiff Doe had to expressly agree to be bound by the AAU Codebook containing the Membership Policies. *Kimbrell Declaration* ¶¶ 11–13, 16–17; *Exhibits A–B, D–E.* If Plaintiff Doe submitted a paper membership application or membership renewal, during the application process, Plaintiff Doe would have had to certify that: "The Applicant agrees to be bound by the AAU Code including all AAU Policies, which are available for review on the AAU Web site at www.aausports.org. " *Kimbrell Declaration* ¶ 12; *Exhibit A*. If Plaintiff Doe had not signed the paper membership application or membership renewal certifying that he agreed to be bound by the AAU Code including all AAU

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

Policies, his application process would not have gone forward, and no AAU membership would have been granted. *Kimbrell Declaration* ¶ 12.

For the 2014 membership year, during the online application process, Plaintiff Doe (or a person completing a membership application on his behalf) had to manually check a box certifying that: "I accept all terms and conditions for this AAU membership application as laid out by the AAU code book (available here) and this application." *Kimbrell Declaration* ¶ 13; *Exhibit B.* For the online application, the words "available here" contained a hyperlink, which when clicked, would have directed Plaintiff Doe to the AAU Codebook in effect at the time. *Kimbrell Declaration* ¶ 13; *Exhibit B.* Plaintiff Doe would have had immediate access to the Codebook through the link before completing his application. *Kimbrell Declaration* ¶ 14. Plaintiff Doe would have had a reasonable opportunity to understand the terms and conditions of the Membership Policies, as referenced in the Codebook. *Kimbrell Declaration* ¶ 15. If Plaintiff Doe did not check the box expressly agreeing to be bound by the AAU Codebook, his application process would not have gone forward, and he could not have completed the AAU membership process. *Kimbrell Declaration* ¶ 16. Therefore, had Plaintiff Doe not checked the box on his online application agreeing to the terms of the AAU membership, no AAU membership would have been granted to Plaintiff Doe. *Kimbrell Declaration* ¶ 17.

Plaintiff Doe's consent to be bound by the AAU Codebook is further evidenced by his acceptance of the AAU membership cards. After submitting his application each

3

**EX A, PART 1**

E-FILED 2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

year, Plaintiff Doe would have received AAU membership cards. *Kimbrell Declaration* ¶ 18; *Exhibit C.* Each membership card in 2014, 2015, and 2016 would have contained a statement that "AAU members agree to be bound by the AAU Code, including National Policies and sports rules." *Exhibit C; Kimbrell Declaration* ¶ 17. Because Plaintiff Doe has not disclosed his identity, AAU is not able to submit the membership cards issued to Plaintiff Doe. When Plaintiff Doe reveals his name, AAU will be able to submit such membership cards to the Court. *Kimbrell Declaration* ¶ 19.

## Argument

I.   **The Court should compel arbitration because Plaintiff Doe and AAU agreed to mandatory arbitration.**

The Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1, *et seq.*, mandates that the Court enforce the contract between AAU and Plaintiff. *See Rent-A-Center, Inc. v. Iowa Civil Rights Comm'n,* 843 N.W.2d 727, 732 (Iowa 2014) (citations omitted). ("[U]nder the FAA, parties who have contracted to arbitrate claims arising between them are bound to do so."). "The provisions of the FAA apply in state courts and preempt inconsistent state laws." *Rent-A-Center,* 843 N.W.2d at 733. "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.,* 139 S. Ct. 524, 531 (2019). Under the FAA, "courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc.,* 139 S. Ct. at 529.

4

**EX A, PART 1**

The FAA applies here because the contract at issue involves interstate

commerce.[1] The FAA states in part:

> A written provision in any . . . contract evidencing a transaction involving
> commerce to settle by arbitration a controversy thereafter arising out of
> such contract or transaction, or the refusal to perform the whole or any
> part thereof, or an agreement in writing to submit to arbitration an
> existing controversy arising out of such a contract, transaction, or refusal,
> shall be valid, irrevocable, and enforceable, save upon such grounds as
> exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

A party seeking to compel arbitration under the FAA must demonstrate an

agreement to arbitrate and that the agreement "evidences a transaction involving"

interstate commerce. *Heaberlin Farms, Inc. v. IGF Ins. Co.*, 641 N.W.2d 816, 818–19 (Iowa

2002). The phrase "involving commerce" is interpreted to mean "the functional

equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily

signal the broadest permissible exercise of Congress' Commerce Clause power."

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

Without question, the interstate commerce nexus is established. Plaintiff Doe has

pleaded that he participated in "many" AAU-licensed events "across the country."

*Petition* ¶ 32; *Amended Petition* ¶ 42. Plaintiff Doe pleaded that AAU is a not-for-profit

corporation organized under the laws of the State of New York, with its principal place

of business in Florida. *Petition* ¶ 18; *Amended Petition* ¶ 18. Plaintiff Doe pleaded that he

---

[1] A written agreement to arbitrate "is valid, enforceable, and irrevocable." Iowa Code § 679A.1(1).

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

participated as a team member on a Barnstormers' basketball team from March 2014–

July 2016. *Petition* ¶ 88; *Amended Petition* ¶ 109. In July 2016, Plaintiff Doe attended a

basketball tournament in Las Vegas, Nevada, as a member of a Barnstormer team.

*Petition* ¶ 89; *Amended Petition* ¶ 110. Consequently, the "involving interstate commerce"

requirement is satisfied. The FAA applies. *See Heaberlin Farms, Inc.*, 641 N.W.2d at 822–

23; *Sutcliffe v. Mercy Clinics, Inc.*, No. 13-1974, 2014 WL 4631406, at *3–*4 (Iowa Ct. App.

Sept. 17, 2014).

The 2014 AAU Codebook, as well as the 2015 and 2016 AAU Codebooks,

unequivocally require the parties to submit any and all civil disputes to binding

arbitration. *Exhibit F*, p. 41 (2014 AAU Codebook); *Exhibit G*, p. 41 (2015 AAU

Codebook); *Exhibit H*, p. 41 (2016 AAU Codebook). Specifically, the 2014 Codebook

states:

> **MEMBERSHIP POLICIES.** By submitting or authorizing an application
> for membership in the AAU, the applicant agrees and stipulates to the
> following terms and conditions:
>
> A.      The applicant agrees and consents to receive and accept all written
>         or oral communications, including but not limited to e-mails,
>         facsimiles, mail-outs, advertisements, and telephone calls from the
>         AAU, its employees, Officers, agents, attorneys, volunteers,
>         members, affiliates, subordinates, host organizations and clubs.
>
> B.      **BINDING ARBITRATION.**
>
>         1.   **BY APPLYING FOR AAU MEMBERSHIP (OR HAVING A**
>              **THIRD PARTY SUBMIT AN APPLICATION FOR**
>              **MEMBERSHIP IN THE AAU ON BEHALF OF THE**
>              **APPLICANT), OR UPON ENTERING ANY AAU EVENT,**

6

**EX A, PART 1**

THE APPLICANT/MEMBER/ENTRANT AND THE AAU
AGREE TO SUBMIT ALL CIVIL DISPUTE(S) TO BINDING
ARBITRATION. THE ARBITRATION HEARING SHALL BE
HELD IN THE COUNTY OF THE LOCALE OF THE AAU
NATIONAL OFFICE UNLESS OTHERWISE SO SET BY THE
AMERICAN ARBITRATION ASSOCIATION ("AAA"). THE
PARTIES FURTHER AGREE TO SUBMIT THE MATTER TO
ONE (1) ARBITRATOR PURSUANT TO THE RULES SET
OUT BY THE AAA, INCLUDING THE FEDERAL
ARBITRATION ACT AND TO THE ARBITRATION CODE
OF THE NATIONAL OFFICE'S RESIDENT STATE, WHICH
IS CURRENTLY FLORIDA. DUE TO THE EXPEDITED
NATURE OF ARBITRATION DEPOSITION(S), REQUESTS
FOR ADMISSIONS, AND REQUESTS FOR PRODUCTION
OF DOCUMENTS ARE STRICTLY DISCOURAGED AND
WILL NOT BE ALLOWED WITHOUT AN ORDER FROM
AAA; AND, TO AID EXPEDITING ANY SUCH
ARBITRATION, IN ORDER TO BE CONSIDERED, A
REQUEST FOR ANY SUCH ORDER, IF ANY, SHALL
ACCOMPANY THE FILING OF THE APPLICABLE PARTY'S
FIRST SUBMISSION TO AAA OR SUCH REQUEST SHALL
BE WAIVED AND/OR DENIED. A LIST OF WITNESSES
AND ALL EXHIBITS TO BE INTRODUCED AT THE
HEARING WILL BE EXCHANGED AT LEAST TWENTY (20)
DAYS PRIOR TO THE HEARING. THE PARTIES AGREE
THAT THE BINDING ARBITRATION SHALL BE IN LIEU
OF ANY LITIGATION BY AND BETWEEN ALL OF THE
PARTIES RELATED TO THE DISPUTE. IF ANY PORTION
OF THE ARBITRATION AGREEMENT SHALL BE
DECLARED INVALID OR UNENFORCEABLE, THE REST
OF THE AGREEMENT (TO SO ARBITRATE) SHALL
REMAIN IN FULL FORCE AND EFFECT.

2. THE PARTIES DECLARE THAT IT IS THEIR CLEAR AND
UNMISTAKABLE INTENT FOR THE ARBITRATOR TO
DETERMINE ANY AND ALL QUESTIONS OF
ARBITRABILITY, IF ANY. ANY OBJECTION TO THE
ARBITRATOR'S JURISDICTION, INCLUDING ANY
OBJECTIONS WITH RESPECT TO THE EXISTENCE, SCOPE
OR VALIDITY OF THE ARBITRATION AGREEMENT

7

**EX A, PART 1**

> **SHALL BE DECIDED BY THE ARBITRATOR. IF, HOWEVER, FOR ANY REASON, (SUCH) ARBITRATION IS DECLARED INVALID BY ANY COURT, IN THE ALTERNATE TO ARBITRATION, THE PARTIES AGREE TO WAIVE A JURY AND AGREE THAT ANY LEGAL ACTION BETWEEN THE PARTIES SHALL BE COMMENCED EXCLUSIVELY IN THE CIRCUIT COURT OF THE NINTH JUDICIAL DISTRICT FOR ORANGE COUNTY, FLORIDA, OR TO ANY OTHER COURT SITTING IN THAT COUNTY HAVING SUBJECT MATTER JURISDICTION, PURSUANT TO THIS FORUM SELECTION CLAUSE, WHICH IS AGREED TO BY THE PARTIES.**

*Exhibit F*, pp. 41–42. *See also Exhibit G*, pp. 41–42 (2015 AAU Codebook); *Exhibit H*, pp. 41–42 (2016 AAU Codebook).

When a party moves to enforce an arbitration agreement, the Court's analysis is limited to two inquiries: (1) whether the parties have agreed to arbitrate their claims; and (2) whether the plaintiff's claims fall within the scope of the agreement to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985). Generally, these inquiries are governed by state contract law, *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987), but they are also guided by strong public policies favoring arbitration, as codified in the FAA. *Volt Information Sciences, Inc. v. Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989) (citing *Perry*, 482 U.S. at 493 n.9). Iowa law "favors arbitration as an alternative to civil litigation." *$99 Down Payment, Inc. v. Garard*, 592 N.W.2d 691, 694 (Iowa 1999) (citation omitted).

8

**EX A, PART 1**

A.     **The parties agreed to arbitrate their claims.**

Ordinary contract principles govern whether parties to an arbitration agreement

have agreed to arbitrate. *Bryant v. Am. Exp. Fin. Advisors, Inc.*, 595 N.W.2d 482, 484

(Iowa 1999).

The AAU's membership offer clearly made binding arbitration mandatory and a

condition of AAU membership: "**BY APPLYING FOR AAU MEMBERSHIP (OR**

**HAVING A PARTY SUBMIT AN APPLICATION FOR MEMBERSHIP IN THE AAU**

**ON BEHALF OF THE APPLICANT), OR UPON ENTERING ANY AAU EVENT,**

**THE APPLICANT/MEMBER/ENTRANT AND THE AAU AGREE TO SUBMIT ALL**

**CIVIL DISPUTE(S) TO BINDING ARBITRATION**." *Exhibit F*, p. 41. *See also Exhibit G*,

p. 41 (2015 AAU Codebook); *Exhibit H*, p. 41 (2016 AAU Codebook).  Additionally, "[b]y

submitting or authorizing an application for membership in the AAU, the applicant

agrees and stipulates" to the specified terms and conditions, including binding

arbitration. *Exhibit F*, p. 41. *See also Exhibit G*, p. 41 (2015 AAU Codebook); *Exhibit H*, p.

41 (2016 AAU Codebook).

Plaintiff Doe agreed to, and is bound by, those terms. The provisions plainly

describe the arbitration process required by the agreement. Plaintiff Doe accepted the

terms of the agreement, including the arbitration provision, in its entirety. Plaintiff

Doe's acceptance of the offer to arbitrate is evidenced by the fact that the was an AAU

member in 2014–2016, competed in AAU-licensed events, and to do that, he necessarily

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

obtained a 2014 membership and 2015 and 2016 membership renewals. *Exhibits A–B, D–E.*

Agreement to the terms and conditions for AAU membership as outlined by the AAU Codebook constitutes a binding contract. As discussed, to become a member, Plaintiff Doe would have had to expressly agree by submitting his paper or online application for membership or membership renewal, to be bound by the AAU Codebook containing the membership policies. *Kimbrell Declaration* ¶¶ 5, 8–13, 16–17, 20–22; *Exhibits A–H*. For the 2014 membership year, during the online application process, Plaintiff Doe had to manually check a box certifying that: "I accept all terms and conditions for this AAU membership application as laid out by the AAU code book (available here) and this application." *Kimbrell Declaration* ¶ 13; *Exhibit B*. For the online application, the words "available here" contained a hyperlink, which when clicked, would have directed Plaintiff Doe to the AAU Codebook in effect at the time. *Kimbrell Declaration* ¶ 13; *Exhibit B*. Through that hyperlink, Plaintiff Doe would have had immediate access to the AAU Codebook before completing his online membership application. *Kimbrell Declaration* ¶ 14. Plaintiff Doe would have had a reasonable opportunity to understand the terms and conditions of the membership polices as outlined in the AAU Codebook. *Kimbrell Declaration* ¶ 15. If Plaintiff Doe had not checked the box expressly agreeing to be bound by the AAU Codebook, his application process would not have gone forward, and he could not have completed the AAU

**EX A, PART 1**

membership process. *Kimbrell Declaration* ¶ 16. Had Plaintiff Doe not checked the box on

his online application and agreed to the terms of the membership, no AAU membership

would have been granted. *Kimbrell Declaration* ¶ 17. The process was comparable in 2015

and 2016. *Kimbrell Declaration* ¶¶ 20–22; *Exhibits D–E.*

On the internet, the primary means of forming a contract is through a

"clickwrap" (or "click-through") agreement, in which a website user typically clicks an

"I agree" box after being presented with a list of terms and conditions. *Burcham v.*

*Expedia, Inc.*, No. 4:07 CV 1963 CDP, 2009 WL 586513, at *2–*3 (E.D. Mo. Mar. 6, 2009)

("customer must affirmatively click a box on the website acknowledging receipt of and

assent to the contract terms before he or she is allowed to proceed"). "Such agreements

have been routinely upheld by circuit and district courts." *Id.* at *2. (citing *Specht v.*

*Netscape Comm. Corp.*, 306 F.3d 17, 22 n.7 (2d Cir. 2002); *A.V. v. iPardigms, LLC,* 544 F.

Supp. 2d 473, 480 (E.D. Va. 2008) (citing cases); *DeJohn v. The .TV Corp. Int'l,* 245 F. Supp.

2d 913, 921 (N.D. Ill. 2003)). Courts enforce arbitration agreements based on clickwrap

agreements to arbitrate. *See, e.g., Jia v. Nerium Int'l, LLC,* No. 3:17-CV-03057-S, 2018 WL

4491163, at *3–*9 (N.D. Tex. Sept. 18, 2018) (compelling arbitration based on clickwrap

agreement); *Davis v. USA Nutra Labs,* 303 F. Supp. 3d 1183, 1189–1200 (D.N.M. 2018)

(compelling arbitration based on clickwrap agreement); *Plazza v. Airbnb, Inc.*, 289 F.

Supp. 3d 537, 548–560 (S.D.N.Y. 2018); (compelling arbitration based on clickwrap

agreement); *Rock v. Solar Rating & Certification Corp.*, No. 8:17-CV-3401-DCC-JDA, 2018

11

**EX A, PART 1**

WL 3750617, at *5–*9 (D.S.C. Jul. 23, 2018) (compelling arbitration based on clickwrap agreement); *Rock v. Solar Rating & Certification Corp.*, No. 8:17-CV-3401-DCC-JDA, 2018 WL 3745057 (D.S.C. Aug. 7, 2018) (adopting report and recommendation and compelling arbitration based on clickwrap agreement). As discussed, Plaintiff Doe would have had to check the box expressly agreeing to be bound by the AAU Codebook and its membership policies, or his application process would not have gone forward, and he could not have completed the AAU membership process. *Kimbrell Declaration* ¶¶ 7–13, 16–17, 20–22.

The agreement between Plaintiff Doe and AAU, including the arbitration provision, was supported by consideration. Plaintiff Doe paid an application fee, and received the AAU membership that he sought, which allowed him to play basketball in AAU-licensed events. *Exhibits A–B, D–E*; *Kimbrell Declaration* ¶¶ 6–7, 11–13, 16–18, 20–22.

Courts around the nation have enforced AAU's arbitration provision. In *Powers-Barnhard v. Amateur Athletic Union of the United States, Inc.*, the court ordered arbitration based on the clickwrap agreement, finding "there is a valid, written arbitration clause" and the "AAU Codebook unambiguously requires arbitration of 'all civil disputes' between AAU and its members during and/or regarding membership." No. 2016-CA-005539-O, Circuit Court, Ninth Judicial District in and for Orange County, Florida (January 24, 2018 Order). *Exhibit I*, Order, p. 2.

**EX A, PART 1**

In *AAU v. Bray*, the Texas Court of Appeals held that even though the parties to the lawsuit were not all signatories to the arbitration agreement, they were obligated to arbitrate under the National Policies in the AAU Codebook. 499 S.W.3d 96, 103-05 (Tex. Ct. App. 2016). Additionally, the court concluded that Bray's tort claims, "negligence, intentional infliction of emotional distress, defamation, aiding and abetting, and conspiracy," fell within the arbitration agreement's scope. *Id.* at 105–06. The court compelled arbitration. *Id.* at 106–09.

In *Deloatch v. Jones, et al.*, the court compelled arbitration based on AAU's clickwrap agreement, finding that "by applying on-line for AAU membership, Plaintiff acknowledged that he reviewed the provision requiring consent to all AAU National Policies as a condition of membership and the Plaintiff agreed by proceeding with his membership application and tendering $14.00 to the AAU." No. CL12001651-00, Circuit Court, City of Hampton, Virginia, (January 29, 2013 Order). *Exhibit J*, Order, p. 4. The Virginia Circuit Court further determined: "a valid agreement to arbitrate all civil disputes exists;" "a valid contract existed between the plaintiff and the Amateur Athletic Union;" the plaintiff was not coerced or forced to become an AAU member; and the plaintiff failed to establish fraud or unconscionability. *Id.* The court compelled the parties to arbitrate their claims. *Id.*

In *Puig v. Amateur Athletic Union*, the court ordered arbitration. No. 2012-CA-011791-O, Circuit Court, Ninth Judicial District in and for Orange County, Florida (July

13

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

24, 2013 Order). *Exhibit K*, Order, p. 3. The court concluded a valid contract existed between the plaintiff and AAU; a valid agreement to arbitrate all civil disputes existed; the plaintiff failed to show unconscionability; and the plaintiff's claims fell within the scope of the AAU arbitration provision and National Policies as set forth in the AAU Codebook. *Exhibit K.*

In *Siebert v. Amateur Athletic Union of the United States, Inc.*, the federal district court concluded that "[c]ourts which have previously considered the AAU's arbitration . . . clauses have uniformly enforced them." 422 F. Supp. 2d 1033, 1044 (D. Minn. 2006) (citing cases). The court ordered arbitration. *Id.*

In *Royal v. Pate*, a North Carolina court enforced the arbitration agreement and ordered the parties to arbitration. No. 05-CVS-502, General Court of Justice, Superior Court Division, Lenoir County, North Carolina (October 15, 2005 Order). *Exhibit L*, Order, pp. 3–4.

To secure AAU membership, Plaintiff Doe was required to agree to the terms and conditions of the AAU Codebook. *Kimbrell Declaration* ¶¶ 6–13, 16–17, 20–22; *Exhibits A–B, D–E*. Checking the "I agree" box established a binding contract. His assent to those terms and conditions constituted a binding contract. Because the contract required parties to submit any and all civil disputes to binding arbitration, the Court should compel arbitration.

14

**EX A, PART 1**

**B.      Plaintiff Doe's claims against AAU are within the scope of the arbitration provision.**

As discussed, Plaintiff Doe's claims raised in this lawsuit fall squarely within the scope of the arbitration provision. The scope of the written mandatory arbitration provision includes "all civil dispute(s)." *Exhibit F*, p. 41, *Exhibit G*, p. 41, *Exhibit H*, p. 41. In his pleadings, Plaintiff Doe pleaded a civil negligence claim against AAU, and seeks relief for the claim in this Court. This civil claim is expressly covered by the arbitration provision. Because Plaintiff Doe's claim falls precisely within scope of the arbitration provision, it is subject to and controlled by the written arbitration requirement.

Section 3 of the FAA gives any party the right to move the court for an order staying or dismissing a lawsuit until arbitration has been completed. 9 U.S.C. § 3. Under section 3 of the FAA, an application to arbitrate is properly brought by a motion. 9 U.S.C. § 6. Because a valid arbitration agreement—binding both parties—exists, and the dispute between the parties is within that agreement, the FAA requires this Court to order Plaintiff Doe to submit his claim to arbitration. 9 U.S.C. § 4. Further, because this dispute is subject to arbitration, this Court must dismiss this action, or, at a minimum, stay this action upon compelling the parties to submit to arbitration. *See* 9 U.S.C. § 3.

**II.     In the alternative, the Court should enforce the mandatory forum-selection clause and dismiss the case.**

Iowa courts have long recognized the enforceability of choice-of-forum clauses. *See EFCO Corp. v. Norman Highway Constructors, Inc.*, 606 N.W.2d 297, 299–300 (Iowa

**EX A, PART 1**

2000); *Joseph L. Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317, 329 (Iowa 1977). Mandatory forum-selection clauses are prima facie valid and must enforced. *See Liberty Bank, F.S.B. v. Best Litho, Inc.*, 737 N.W.2d 312, 315 (Iowa Ct. App. 2007); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15–20 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).

The forum-selection clause is enforceable. As discussed, the parties agreed to arbitrate and the proper forum is arbitration. If arbitration is not ordered, the forum-selection clause agreed to by the parties requires that "**ANY LEGAL ACTION BETWEEN THE PARTIES SHALL BE COMMENCED EXCLUSIVELY IN THE CIRCUIT COURT OF THE NINTH JUDICIAL DISTRICT FOR ORANGE COUNTY, FLORIDA**." *Exhibit F*, p. 42. *See also Exhibit G*, p. 42 (2015 AAU Codebook); *Exhibit H*, p. 42 (2016 AAU Codebook). Consequently, the Iowa venue is improper.

The claims Plaintiff Doe asserts against AAU in this case are within the scope of the forum-selection clause because they involve a civil legal dispute between the parties. *See Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (enforcing forum-selection clause in clickwrap agreement); *Salco Distrib., LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22, 2006) (enforcing forum-selection clause in clickwrap agreement); *Witt v. Nation-Wide Horse Transp., Inc.*, 197 F. Supp. 3d 1146, 1153–54 (S.D. Iowa 2016) (enforcing forum-selection clause in clickwrap agreement).

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

## Conclusion

For these reasons, Amateur Athletic Union of the United States, Inc., respectfully

requests that the Court enter an order compelling arbitration between the parties and

dismissing this action. Alternately, Defendant Amateur Athletic Union of the United

States, Inc., requests that the Court enter an order dismissing the action based on

improper venue.

> /s/ Mark A. Schultheis, AT0007133
> /s/ Debra Hulett, AT0003665
> Nyemaster Goode, P.C.
> 700 Walnut St., Suite 1600
> Des Moines, IA 50309
> Telephone: 515-283-3100
> Fax: 515-283-3108
> Email: maschultheis@nyemaster.com
> Email: dlhulett@nyemaster.com
> ATTORNEYS FOR DEFENDANT AMATEUR
> ATHLETIC UNION OF THE UNITED STATES,
> INC.

17

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

## Certificate of service

I hereby certify that on February 1, 2019, I electronically filed the foregoing with the Clerk of the Court using the EDMS which will send notification of such filing to the following:

Guy R. Cook
Adam D. Zenor
Michael C. Kuehner
Michael D. Currie
GREFE & SIDNEY, P.L.C.
500 E. Court Ave., Ste. 200
Des Moines, IA 50309
Phone: 515-245-4300
Fax: 515-245-4452
Email: gcook@grefesidney.com
Email: azenor@grefesidney.com
Email: mkuehner@grefesidney.com
Email: mcurrie@grefesidney.com
ATTORNEYS FOR PLAINTIFF

/s/ Debra Hulett

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GREGORY SCOTT STEPHEN,<br>BARNSTORMERS BASKETBALL, INC.<br>d/b/a BARNSTORMERS BASKETBALL<br>OF IOWA, and AMATEUR ATHLETIC<br>UNION OF THE UNITED STATES, INC.,<br><br>Defendants. | Case No: LACV080354<br><br><br><br><br><br>**DECLARATION OF DEBRA L.<br>KIMBRELL IN SUPPORT OF<br>MOTION TO COMPEL<br>ARBITRATION, OR IN THE<br>ALTERNATIVE, TO DISMISS** |

I, Debra L. Kimbrell, state that I have personal knowledge of the following:

1.     My name is Debra L. Kimbrell and I am over the age of 21 years.

2.     The following facts are of my own personal knowledge, and if called as a witness, I could and would testify completely as to their truth.

3.     I am currently employed by the Amateur Athletic Union (AAU) as Director of Compliance and have been with AAU for nearly 10 years. My job responsibilities include, among other things, to assist in the development of the methods and procedures for the online membership registration process for AAU membership.

1

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

4.      This affidavit is based upon my personal knowledge as well as the

business records of AAU which are kept and maintained in the regular course of

business.

5.      In my position as Director of Compliance, I am personally familiar with

the manner in which youth athletes who compete in AAU-licensed events obtain AAU

membership and signify their consent to the terms and conditions of the AAU Code.

6.      The AAU is a not-for-profit organization that licenses athletic events

throughout the United States. To compete in an AAU-licensed event, the competitor

must have a current AAU membership.

7.      To secure an AAU membership, a competitor must complete an online

membership application, or another person must complete an online membership on

the competitor's behalf. The AAU also has a paper membership application that may be

submitted in lieu of an online membership application.

8.      The 2014 AAU Codebook was in force and effect throughout the 2014

membership year, when Plaintiff Doe contends that he registered for AAU membership.

Similarly, the AAU had a 2015 Codebook and 2016 Codebook. each was in force and

effect throughout the respective 2015 and 2016 membership years. The AAU Codebooks

are attached as Exhibit F (2014 Codebook), Exhibit G (2015 Codebook) and Exhibit H

(2016 Codebook).

9.      The AAU requires membership renewal on an annual basis.

**EX A, PART 1**

E-FILED 2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

10. Each and every year that Plaintiff Doe would have applied for AAU membership, including the 2014, 2015, and 2016 membership years, he would have had to complete the membership application.

11. In applying for AAU membership each and every year, Plaintiff Doe would have had to expressly agree, by submitting his online or paper application for membership and membership renewal, to be bound by the applicable AAU Codebook containing the membership policies.

12. A copy of the AAU paper membership application for youth athletes used during the 2014, 2015, and 2016 membership years is attached and marked as Exhibit A. If Plaintiff Doe submitted a paper membership application or membership renewal, during the application process, Plaintiff Doe (or a person completing a membership application on his behalf) would have had to certify that: "The Applicant agrees to be bound by the AAU Code including all AAU Policies, which are available for review on the AAU Web site at www.aausports.org." If Plaintiff Doe had not signed the paper membership application or membership renewal certifying that he agreed to be bound by the AAU Code including all AAU policies, his application process would not have gone forward and no AAU membership would have been granted.

13. For the 2014 membership year, during the online application process, Plaintiff Doe (or a person completing a membership application on his behalf) had to manually check a box certifying that: "I accept all terms and conditions for this AAU

3

**EX A, PART 1**

membership application as laid out by the AAU code book (available here) and this application." For the online application, the words "available here" contained a hyperlink, which when clicked, would have directed Plaintiff Doe to the AAU Code Book in effect at that time. Screenshots for an online membership application from the 2014 membership year are attached as Exhibit B.

14.     Plaintiff Doe would have had immediate access to the AAU Codebook through the "available here" hyperlink before completing his online membership application.

15.     Plaintiff Doe would have had a reasonable opportunity to understand the terms and conditions of the membership policies as outlined in the AAU Codebook.

16.     If Plaintiff Doe did not check the box expressly agreeing to be bound by the AAU Codebook, his application process would not have gone forward, and he could not have completed the AAU membership process.

17.     Had Plaintiff Doe not checked the box on his online application and agreed to the terms of membership, no AAU membership would have been granted.

18.     After submitting his application each year, and becoming an AAU member, Plaintiff Doe would have received his membership cards. The 2014, 2015, and 2016 membership cards, like other years, each contained a statement that "AAU members agree to be bound by the AAU Code, including National Policies and sports rules." A blank membership card for the 2014, 2015, and 2016 membership years is

4

**EX A, PART 1**

attached as Exhibit C. The AAU membership cards in the 2014, 2015, and 2016 membership years were identical, other than the advertisement and promo code.

19.      Because Plaintiff Doe has not disclosed his identity, AAU is not able to submit the specific membership cards issued to Plaintiff Doe. When Plaintiff Doe reveals his name, AAU will be able to submit such membership cards to the Court.

20.      For the 2015 membership year, during the online application process, Plaintiff Doe or a person completing a membership application on his behalf, had to manually check a box indicating consent to terms and conditions including:

> Membership in the AAU is a privilege granted by the AAU. It is not a right. The AAU at its sole discretion reserve the right to accept or reject any applicant(s) for membership.
>
> Membership in any category may be granted only after an application is submitted and approved. By submitting an application, the applicant agrees to comply with all the provisions of the AAU Code, including its constitution, bylaws, policies, procedures, regulations, and rules.
>
> *I certify that if the prospective member is a minor, I have the athlete's parent's or guardian's consent for the athlete to become an AAU Members.
>
> *I accept all terms and conditions for this AAU membership application as laid out by the AAU code book (available here) and this application.

Exhibit D.

21.      After those terms and conditions, Plaintiff Doe (or a person completing a membership application on his behalf) had to manually check a box indicating that: "I understand and agree all terms and conditions listed." Exhibit D. The AAU Codebook

5

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

was immediately accessible by hyperlink through the words "available here," which when clicked, would have directed Plaintiff Doe to the AAU Codebook in effect at the time. Screenshots for the 2015 membership year online application are attached as Exhibit D.

22.     The 2016 online membership process was similar to the 2015 membership process. Screenshots for the AAU online application for the 2016 membership year are attached as Exhibit E.

I certify under penalty of perjury and pursuant to the laws of the state of Iowa that the preceding is true and correct.

Date: _February 1, 2019_                    _____
                                              Debra L. Kimbrell

**EX A, PART 1**

E-FILED 2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

# AAU **YOUTH ATHLETE** INDIVIDUAL MEMBERSHIP APPLICATION
## Membership cards are emailed only or may be printed after processing at
## www.aausports.org
### AAU Membership Year is September 1 to August 31

**Use Legal Name**

| First | Middle | | Last | | |
|---|---|---|---|---|---|
| Street Address | City | County | | State | Zip |
| Application Date | Primary Phone | | Birth Date (MM/DD/YYYY) | | |

| E-Mail Address Required, Membership cards are emailed or may be printed after processing at www.aausports.org | Gender ☐ Male ☐ Female |
|---|---|

| Club Code (if Known) | Club Name (if Known) | **Sport** |
|---|---|---|

By paying or authorizing payment of my annual membership dues, I certify that: this application is correct in every material aspect, including but not limited to my (street) address and birth date. The Applicant agrees to be bound by the AAU Code, including all AAU Policies, which are available for review on the AAU Web site at www.aausports.org

If athlete/prospective member is a minor, the person completing this Application represents that he/she has the athletes parent's or guardian's consent for the athlete to become an AAU Member.

| Member's Signature or Signature of person completing this application | **Date** |
|---|---|

## YOUTH PROGRAM - (All Sports)

| | | |
|---|---|---|
| Athletics (Track & Field, X Country, Multi Events) | | Soccer |
| Badminton | Flag Football | Softball |
| Baseball | Football-Cheer | Sport Stacking |
| Boys Basketball | Girls & Women's Flag Football | Surfing |
| Girls Basketball | Golf | Swimming |
| Baton Twirling | Gymnastics | Table Tennis |
| Bowling | Gymnastics-Freestyle | Tackle Football |
| Cheerleading | Hockey-Inline & Ice | Taekwondo |
| Chinese Martial Arts | Judo | Target Shooting |
| Cricket | Jump Rope | Tennis |
| Dance | Karate | Trampoline & Tumbling |
| Diving | Lacrosse | Volleyball |
| Field Hockey | Physical Fitness | Water Polo |
| Fishing | Powerlifting | Weightlifting |
| | | Wrestling |

**Regular Membership** ☐ **$14.00**   or   **Extended Benefit Membership*** ☐ **$16.00**

Youth Program consists of athletic participation for ages as defined by AAU Youth sport rules.
Youth Membership allows participation and insurance coverages in any and all AAU youth sports.

* Extended Benefit Membership includes additional insurance coverage in certain programs as defined by AAU.

**Make check payable to AAU.**
**Mail application and fees to:**
**AAU Headquarters**
**P.O. Box 22409**
**Lake Buena Vista, FL 32830**

08/07/15

EXHIBIT A

**EX A, PART 1**

Wednesday, April 22, 2015

rebecca | Logout

MY EVENTS: INSURANCE: GOVERNANCE:

Submit a TICKET | Customer Service

## AAU MEMBERSHIP APPLICATION

### Who are you signing up?

- I am signing up for myself
- My child
- Someone else

As a: Athlete (Youth or Adult)

### Member Details - Who's Being Registered?

If you are registering for someone else, make sure to use THEIR INFORMATION here, NOT YOURS.

NOTE: ALL adults must fill out their own application. Adults are subjected to a background screening and must authorize this themselves, you CANNOT authorize a background screening for someone else. Youth memberships are not subject to background screenings.

| First Name: | |
| Middle Name: | |
| Last Name: | |
| Address: | |
| City: | Winter Garden |
| Country: | United States |
| State / Prov.: | Florida |
| Zip Code: | 34787 |
| Email: | |
| Phone: | |
| Date of Birth: | |
| Gender: | Male |

### What type of membership?

| Program: | Youth Program |
| Sport: | Basketball - Boys |
| Coverage: | Regular - Starting at $14 (varies by sport) |
| Term: | Option 1) EXPIRES ON 8/31/2015 - $14.00 |

Now AAU players have a home where college coaches enroll for athletes to fill their team rosters. More than 4.5 million student-athletes in 51 different sports including basketball, soccer and volleyball have created athletic profiles to showcase their skills to over 20,000 college coaches. Start now by claiming your free athletic profile on beRecruited.

65% of beRecruited committed athletes earn scholarships!

- I would like to register with beRecruited.com after my AAU membership

### Are you a member of a club?

- No, not at this time (can be updated later)

  NOTE: Make sure you update your membership to associate yourself with a club if you join one later on.

- Yes

### Terms and Conditions - Digital Signature

Membership in the AAU is a privilege granted by the AAU. It is not a right. The AAU at its sole discretion reserves the right to accept or reject any application for membership.

Membership in any category may be granted only after an application is submitted and approved. By submitting an application, the applicant agrees to comply with all the provisions of the AAU Code, including its constitution, bylaws, policies, procedures, regulations, and rules.

* I certify that if the prospective member is a minor, I have the athlete's parent's or guardian's consent for the athlete to become an AAU Member

* I accept all terms and conditions for this AAU membership application as filled out by the AAU code book available here and this application

* I hereby certify that all information I have provided is accurate, my name (below) is correct, and I am authorized to apply for membership for the person in this application

- * I understand and agree all terms and conditions listed

NOTE: THIS MUST BE SIGNED BY THE PERSON APPLYING FOR MEMBERSHIP OR A PARENTALLY APPROVED REPRESENTATIVE FOR YOUTH APPLICANTS.

| First Name: | |
| Middle Name: | |
| Last Name: | |

Cancel    Continue

Home Page
Pending Order(s)
Membership
- Apply for Membership
- Import Athlete Membership(s)
- Membership Rep
- Renew Youth Athlete
- Membership(s)
- Import Coach Membership(s)
View Order History
Club Membership
- Club Application
- modify expiration certificate
- Renew Practice Insurance
- Certificate
- Renew Club Building
- Proficiency Agreement
- associate a club with your
- account
Club Membership Listing
Event Licensing
- Event Licensing Form of
- Information
- event Licensing Application
- Renew an Event License
- Gate To Provide Approved Event
- Expense

Privacy Statement · Terms Of Use · Login

EXHIBIT B

EX A, PART 1

# AAU Membership

Membership ID:   59FCDYN9
Kris T Martin
Winter Garden FL, 34787
United States
krismartin@live.com

AT - Track and Field (X-Country, Multi-Events)

District: FL   Club Code:
Adult Non-Athlete

Application Date: 8/15/2018
Expiration Date: 8/31/2019

Go to www.AAUSPORTS.ORG to Reprint/Correct

AAU members agree to be bound by the AAU
Code, including National Policies and sport rules.
For information check www.aausports.org.

**THANK YOU FOR BECOMING AN AAU MEMBER!**

*Eastbay*   **$20**   YOUR NEXT $99
PURCHASE* ON
EASTBAY.COM

**FIND YOUR PERSONAL PROMO CODE BELOW**
*EXPIRES 9/30/19. CERTAIN RESTRICTIONS APPLY. SEE DETAILS AT WWW.EASTBAY.COM/AAU

**Your promo code is: VG36KK8MNJGZ4GJG**

EXHIBIT C

**EX A, PART 1**



EX A, PART 1

E-FILED 2019 FEB 20 3:24 PM POLK - CLERK OF DISTRICT COURT

AAU MEMBERSHIP YEARS RUN FROM SEPTEMBER 1ST THROUGH AUGUST 31ST

Insurance is a benefit of membership and is effective as of the date payment is received for youth athletes.

Memberships must always be paid and member number issued prior to participation in any activity (including practices and try-outs).

## Youth Membership Application

### What type of memberships?

| * Sport: | Karate | ▼ |
|---|---|---|

| * Coverage: | ○ Extended (AB) - $16 |
|---|---|
| | ⦿ Regular - $14 |

| *Term: | ⦿ Current Membership Year - EXPIRES ON 8/31/2017 - $14.00 |
|---|---|
| | ○ 2 years - EXPIRES ON 8/31/2018 - $28.00 |
| | ○ 3 years - EXPIRES ON 8/31/2019 - $42.00 |

### Are they a member of a club?

○ No, not at this time (can be updated later)

⦿ Yes

| Zip Code: | |
|---|---|

| Select your club: | None ▼ |
|---|---|

OR

| Enter your club code: | | Load Club |
|---|---|---|

### Who are you registering?

* Provide full legal name

| First Name | Middle | Last Name | Gender | Date Of Birth | Street Address | Zip | Parent's Email | Parent's Phone |
|---|---|---|---|---|---|---|---|---|
| | | | ▼ | | | | | | X |

Add Another Athlete

### Terms and Conditions - Digital Signature

Membership in the AAU is a privilege granted by the AAU. It is not a right. The AAU at its sole discretion reserves the right to accept or reject any applicant(s) for membership.

Membership in any category may be granted only after an application is submitted and approved. By submitting an application, the applicant agrees to comply with all the provisions of the AAU Code, including its constitution, bylaws, policies, procedures, regulations, and rules.

* I certify that I have the athlete's parent's or guardian's consent for the athlete to become an AAU Member.

* I accept all terms and conditions for this AAU membership application as laid out by the AAU code book (available here) and this application.

* I hereby certify that all information I have provided is accurate, my name (below) is correct, and I am authorized to apply for membership for the youths in this application.

☐ * I understand and agree to all terms and conditions listed

By entering my name below I hereby authorize AAU to create the requested youth memberships, accept and acknowledge all terms and conditions presented to me during the application process.

NOTE: THIS MUST BE SIGNED BY THE PERSON APPLYING FOR MEMBERSHIP OR A PARENTALLY APPROVED REPRESENTATIVE FOR YOUTH APPLICANTS.

| * First Name: | |
|---|---|

| Middle Name: | |
|---|---|

| * Last Name: | |
|---|---|

Cancel

EXHIBIT E

EX A, PART 1

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

# 2014 AAU Codebook



## Sports For All, Forever

*[As of 12/16/13*

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

# THE CODE OF THE
# AMATEUR ATHLETIC UNION
## 2014 EDITION

## TABLE OF CONTENTS

**Preamble**    1

**Article I – Governance of the Union**    1

A. Adoption and Amendments    1
   1. Adoption    1
   2. Amendments    1
     a. Adoption Requirements    1
     b. Presentation    1
     c. Time and Form of Publication    2
     d. Consideration    2
     e. Urgent Amendment    2
     f. Housekeeping    2

B. Membership    2
   1. Conditions for Membership    2
   2. Classes    2
     a. District Member    2
     b. Club Member    2
     c. Individual Member    2
     d. Allied Member    2

C. Congress    3
   1. Composition    3
     a. District Representatives    3
     b. Sport Committee Representatives    3
     c. National Officers    3
     d. Past Officers    3
     e. Affiliate Representatives    3
     f. Members-at-Large    3
   2. Powers    3
   3. Votes    4

D. Board of Directors    4
   1. Composition    4
   2. Powers    4

E. Officers    4
   1. Titles    4
   2. Elections    4
   3. Qualifications    4
   4. Term of Office    5
   5. Duties   
     a. President    5
     b. Vice-Presidents    5
     c. Secretary    5
     d. Treasurer    5

EXHIBIT F

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

6. Vacancies                                                                                6
7. Emergency Powers of Officers                                                             6

F. Committees                                                                               6
   1. Administrative Committees                                                             6
                                         a. Finance Committee                               6
                                         b. Insurance Committee                             6
                                         c. Legislation Committee                           7
                                         d. Nominations and Elections Committee             7
                                         e. Registration Committee                          7
                                         f. Committee Structure & Procedures                7

   2. National Sport Committees           a. Chair                                          8
                                         b. Composition                                     8
                                         c. Removal/Replacement                             8
                                         d. Meetings                                        8
                                         e. Voting                                          8
                                         f. Quorum                                          8
                                         g. Duties                                          8
                                         h. Dissolution                                     9

   3. Special/Ad Hoc Committees                                                            10


**Article II – Governance of the Districts**                                              11

A. Adoption                                                                               11
   1. Amendments to Code not permitted                                                     11

B. Charter                                                                                 11

C. Name, Territory, Jurisdiction                                                           11

D. Objectives                                                                              11

E. Management                                                                              11
   1. Board of Managers                                                                    11
                                         a. Composition                                    11
                                         b. Duties                                          11
                                         c. Voting                                         12
   2. Executive Committee                                                                 12
                                         a. Composition                                   12
                                         b. Duties                                         12

   3. Officers                                                                             13
                                         a. Titles                                         13
                                         b. Eligibility                                    13
                                         c. Term of Office                                 13
                                         d. Duties                                         13
                                         e. Removal                                        14
                                         f. Vacancies                                      14

   4. Meetings                                                                             15

EXHIBIT F

**EX A, PART 1**

E-FILED 2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  |  |  | a. | Biennial |  | 15 |
|  |  |  | b. | Special |  | 15 |
|  |  |  | c. | Executive Committee |  | 15 |
|  |  |  | d. | Notices |  | 15 |
|  |  |  | e. | Quorum |  | 15 |
|  | 5. | Committees |  |  |  | 15 |
|  |  |  | a. | Required Committees |  | 15 |
|  |  |  |  | 1. Finance Committee |  | 15 |
|  |  |  |  | 2. Nominations & Elections Committee |  | 16 |
|  |  |  |  | 3. Review Committee |  | 16 |
|  |  |  |  | 4. District Sport Committees |  | 16 |
|  |  |  |  | 5. Special Committees |  | 18 |
|  |  |  | b. | Voting |  | 18 |
|  | 6. | District Championships |  |  |  | 19 |
|  |  |  | a. | Conduct Of |  | 19 |
|  |  |  | b. | Participation In |  | 19 |
| F. | Dissolution |  |  |  |  | 19 |
|  | 1. | District |  |  |  | 19 |
|  | 2. | District Sport Committee |  |  |  | 19 |

**Article III – Judiciary of the AAU** — 20

| A. | Judicial Entities |  |  |  | 20 |
|---|---|---|---|---|---|
|  | 1. | National Board of Review |  |  | 20 |
|  |  |  | a. | Composition | 20 |
|  |  |  | b. | Powers | 20 |
|  |  |  | c. | Jurisdiction | 20 |
|  |  |  | d. | Eligibility to Serve | 20 |
|  |  |  | e. | Term of Office | 21 |
|  |  |  | f. | Vacancies | 21 |
|  | 2. | Board of Appeals |  |  | 21 |
|  |  |  | a. | Composition | 21 |
|  |  |  | b. | Powers | 21 |
|  |  |  | c. | Standard of Review | 21 |
|  |  |  | d. | Congress Appellate Jurisdiction | 21 |
|  | 3. | District Review Committee |  |  | 21 |
|  |  |  | a. | Composition | 21 |
|  |  |  | b. | Powers | 21 |
|  |  |  | c. | Jurisdiction | 22 |
|  | 4. | Infractions Committees and Disciplinary Officers |  |  | 22 |
| B. | Authority |  |  |  | 22 |
|  | 1. | Fraud |  |  | 22 |
|  | 2. | Competing for Money |  |  | 22 |
|  | 3. | Aid or Abet Disqualification of an Athlete |  |  | 22 |
|  | 4. | Doping |  |  | 22 |
|  | 5. | Aid or Abet Controlled Substance Use |  |  | 22 |
|  | 6. | Unfair Dealing in Competition |  |  | 22 |
|  | 7. | Violation of AAU Rules/Policies |  |  | 22 |
|  | 8. | Aid or Abet Violation of the AAU |  |  | 22 |

Table of Contents — iii

EXHIBIT F

**EX A, PART 1**

Code
9.  Failure to Cooperate with AAU                    22
    Judicial Body
10. Act of Disturbance, Obstruction of a             22
    Competition, Disruption, Disrepute
C.  Procedures                                        23
    1.  Hearings                                      23
    2.  Appeals                                       23
    3.  Reinstatement                                 23

**Bylaws of the AAU**                                 24

1.  Official Emblem, Seal, National Office           24
    1.1  Official Seal                               24
    1.2  Official Emblem                             24
    1.3  National Office                             24

2.  Fiscal and Legal                                 24
    2.1  Fiscal Year                                 24
    2.2  Bonds                                       24
    2.3  Bank Accounts and Depositories              24
    2.4  Checking, Savings & Depository              24
         Accounts
    2.5  Auditor and Auditor Report                  25
    2.6  Budget                                      25
    2.7  Audit Committee                             25
    2.8  Finance Committee Audits                    25
    2.9  Accounts Receivable                         25
    2.10 Investment Sub-Committee                    25
    2.11 General Counsel                             26
    2.12 Special Counsel                             26
    2.13 Contracts                                   26
    2.14 Conflict of Interest                        26
    2.15 Salaries                                    26

3.  Event License                                    26

4. Membership                                        27
    4.1  Individual Membership                       27
    4.2  Club & Individual Membership                27
         Applications
    4.3  Membership and Residency                    27

5. Dues, Fees, Reports and Remittances               28
    5.1  Dues and Fees                               28
    5.2  District Reports                            28

6. Eligibility                                       29
    6.1  Youth Athlete Participation                 29
    6.2  Club Attachment                             29
    6.3  Transfers                                   29

7. Competition                                       30
    7.1  District Championships                      30

**Table of Contents**                                iv

EXHIBIT F

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

| | | | | |
|---|---|---|---|---|
| 7.2 No Championship held in District | | | | 30 |
| 7.3 Multiple Districts in One State | | | | 30 |
| 7.4 Results | | | | 30 |
| 7.5 Special Competition | | | | 30 |
| 7.6 Right of Entry | | | | 30 |
| 7.7 National Championship | | | | 30 |
| | 7.7.1 | Award | | 30 |
| | 7.7.2 | Championship Contracts | | 30 |
| 7.8 Competition Outside the U.S. | | | | 30 |
| 8. Districts and Chartering | | | | **30** |
| 8.1 District Membership | | | | 30 |
| 8.2 District Territories | | | | 30 |
| 8.3 Redistricting Territories | | | | 31 |
| 8.4 Inter-District Sport Management Agreements | | | | 31 |
| 8.5 Names and Territories | | | | 31 |
| 8.6 Zone Alignment | | | | 35 |
| 8.7 Regional Alignment | | | | 35 |
| 9. Meetings, Notices, Voting | | | | **36** |
| 9.1 Meetings of the AAU of the US, Inc. | | | | 36 |
| 9.2 District Representation to Congress | | | | 36 |
| 9.3 National Sport Committee Representation to Congress | | | | 36 |
| 9.4 Notice | | | | 37 |
| 9.5 Order of Meetings | | | | 37 |
| 9.6 Rules of Order | | | | 37 |
| 9.7 Mail or Electronic Voting | | | | 37 |
| 10. Composition of Board of Directors | | | | **38** |
| 10.1 The Officers | | | | 38 |
| 10.2 Zone Representatives | | | | 38 |
| 10.3 Administrative Chairs | | | | 38 |
| 10.4 Council Chairs | | | | 38 |
| 10.5 District Governors' Council | | | | 38 |
| 10.6 National Sport Committee Representation | | | | 38 |
| 10.7 Other National Sport Committee Representation | | | | 38 |
| 10.8 District Representation | | | | 38 |
| 10.9 Other District Representation | | | | 38 |
| 10.10 Non-voting Members | | | | 38 |
| 10.11 Representation limits | | | | 38 |
| 11. National Councils | | | | **38** |
| 11.1 Youth Sports Council | | | | 38 |
| 11.2 Adult Sports Council | | | | 39 |
| 11.3 Past Presidents' Council | | | | 39 |
| 11.4 Zone Councils | | | | 39 |
| 11.5 District Governors' Council | | | | 39 |
| 12. Miscellaneous | | | | **40** |
| 12.1 AAU James E. Sullivan Award | | | | 40 |
| 12.2 Life Membership | | | | 40 |

EXHIBIT F

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

12.3  Indemnification                                                                    40
12.4  Executive Director                                                                 40
12.5  Substantial Compliance                                                             40
12.6  Glossary of Terms                                                                  40

**National Policies of the AAU**                                                         **41**

I.  Membership Policy                                                                    **41**

    A.  Agreement & Consent                                                              41
    B.  Binding Arbitration                                                              41
    C.  Indemnification/Assumption          of                                          42
        Risk
    D.  Administrative Remedies                                                          43
    E.  Membership Limitations                                                           43
    F.  Misrepresentation                                                                44
    G.  Sport Agents, Agencies and                                                       44
        Representatives
    H.  Agency                                                                           45
    I.  Waiver/Release/Authorization        to                                          45
        Use Likeness, Names, Voice and
        Words
    J.  Notice of Claims                                                                 45
    K.  Participation without Modification                                               45
    L.  Residency                                                                        46

II.  Membership Data Policy                                                              **46**

    A.  Introduction                                                                     46
    B.  Use of Membership Data                                                           46
    C.  Procedures                                                                       46
    D.  Third Parties                                                                    46
    E.  Violations                                                                       46

III. Financial Policies                                                                  **47**

    A.  Insufficient Fund Check Policy                                                   47
    B.  Purchasing Guidelines                                                            47
    C.  Solicitation of Funds                                                            47
    D.  Commission Guidelines                                                            48
    E.  National Sport Committee Finances                                                49
    F.  AAU Credit Policy                                                                49
    G.  District Charter Late Fee                                                        49
    H.  Convention Hotel Policy                                                          50

IV. Use of Marks and Logos                                                               **50**

    A.  AAU Registered Marks                                                             50
    B.  Use of Olympic Marks                                                             50

V.   AAU Spokesperson                                                                    51

VI. Television/Webstreaming Rights for                                                   51
    National Events

EXHIBIT F

**EX A, PART 1**

A.  Rights                                                          51
B.  Guidelines for Allocation of                                    51
    Proceeds

VII.    Websites and Social Media                                   51

A.  Website Content                                                 51
B.  Social Media                                                    52

VIII. Defense Policy                                                **52**

IX. Management of Emergency Situations                              **53**

A.  Spokesperson                                                    53
B.  Protocols                                                       53

X.  Procedures    for    Nominations    and                         **54**
    Elections of National Officers, District
    Officers, District Sport Directors, and
    Other      District      Offices      and
    Recommendation of the National Sport
    Chair.

A.  National Officers                                               54
B.  District Officers                                               55
C.  District Sport Directors                                        57
D.  National Sport Chair                                            59

XI. Business Practices                                              **60**

XII.    Event License Policies                                      **60**

A.  Practice                                                        60
B.  Supervision                                                     61
C.  Event License Categories                                        61
D.  Event License Category Limits                                   61
E.  National    Championship    Event                               61
    Licenses

XIII. Sport Committee Policies                                      **61**
A.  Sport Status                                                    61
B.  Procedures to Establish a New                                   62
    Sport
C.  Special Meetings                                                62
D.  Sport Committee Agendas                                         62

XIV.    Judicial Procedures                                         **62**

A.  Introduction                                                    62
B.  Procedures during Hearings                                      63
C.  Infractions  Committees  &  Judicial                            63
    Officers
D.  District Review Committees                                      64
E.  National Board of Review                                        65

**Table of Contents**                                               vii

EXHIBIT F

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

F.   Board of Appeals                                                                66
G.   Interpretation & Application of Policy                                          65


XV. Re-Districting Procedures                                                        66

XVI.   District Management                                                           67

A.  Credentialling Voters for District                                              67
    Board of Managers Meetings
B.  Credentialling Voters for District                                              67
    Sport Committee Meetings

XVII.   Event Policies                                                              67

A.   Schedule Changes                                                               67
B.   Age   Groups/Skill   Levels/Weight                                            67
     Classes
C.   Right of Removal/Denial of Admission                                          67
D.   Medical Emergency                                                             67
E.   Event Housing Policy                                                          68
F.   National   Championship   Event                                              68
     Hosts
G.   District Qualifiers Medals                                                    68

XVIII.  Whistleblower Policy                                                        68

XIX.  Document Retention Policy                                                     68

XX.  Conflict Interest Disclosure Filing                                            69

A.   Disclosure                                                                     69
B.   Notification                                                                   69

**Appendices**                                                                      70

A.  Glossary of Terms                                                              70
B.  Special Committees                                                             72
C.  List of Approved Sports                                                        73
D.  Zone Alignment                                                                 74
E.  Map of Districts                                                               75

EXHIBIT F

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT



## CONSTITUTION OF THE
## AMATEUR ATHLETIC UNION OF THE UNITED STATES INC.
## (AAU)

### *PREAMBLE*

*The AAU, being established to promote the benefits of participation in athletics and sports-related activities, hereby adopts this Constitution and Bylaws for the advancement of that purpose.*

### ARTICLE I

### GOVERNANCE OF THE UNION

#### A. Adoption and Amendments.

1. **Adoption.** This Constitution and Bylaws shall be effective immediately when approved at the Regular Meeting of Congress in accordance with legislative procedures in effect at the time of adoption. Persons holding any National or local office in the AAU organization at the time this Constitution is adopted shall remain in office for the term elected or until removed or replaced according to the provisions of the Code.

2. **Amendments.** The Constitution and Bylaws may be amended only by the Congress of the AAU under the following procedure(s) only:

   a. Amendments to the Constitution may be approved only upon the affirmative vote of three-fourths (3/4) of those members of Congress voting. The Bylaws may be amended upon the affirmative vote of two-thirds (2/3) of those members of Congress voting. Amendments become effective immediately upon approval unless otherwise specified at the time of adoption.

   b. **Presentation.** A proposed amendment may be submitted only by :

      1. A District member, after approval at its Biennial meeting.
      2. An elected Officer of the National AAU.
      3. The Board of Directors.
      4. The Chair of a National Sports or Administrative Committee.

   c. **Time and Form of Publication.** A proposed amendment to the Constitution or Bylaws must be received by the Secretary of the AAU in writing. The proposed amendment must be

**Article I**

**EX A, PART 1**

1

E-FILED 2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

received at least forty-five (45) days before the next held Meeting of the Congress of the AAU at which it is to be submitted. The proposed amendment must be submitted in such a form to show the entire section, subsection or paragraph as it will read if adopted. The proposed amendment shall be forwarded by the Secretary immediately to the Chair of the Legislation Committee. A report of all proposed amendments must be mailed by the Secretary to each delegate to Congress at least thirty (30) days prior to the meeting of Congress.

d. **Consideration.** Proposed amendments to the Constitution and/or Bylaws must be submitted to the Legislation Committee for review. Upon completion of such review, the Legislation Committee shall present its recommendations to Congress.

e. **Urgent Amendment.** If considered urgent and necessary, the Legislation Committee may, by a majority vote, present amendments to the Constitution or Bylaws for consideration at any time during a meeting of Congress. Approval of an urgent amendment requires an affirmative vote of three-fourths (3/4) of those members of Congress voting.

f. **Language, Stylistic, Housekeeping Changes**. The Chair of the Legislation Committee is authorized to make language and stylistic changes to the Constitution and Bylaws to avoid inconsistencies of wording and conflicting provisions, to improve syntax, and correct grammatical and typographical errors. The Congress shall be notified of any changes and shall be presumed to have approved them unless it votes disapproval at its next meeting following notification.

B. **Membership.** Membership in the AAU is a privilege granted by the AAU. It is not a right. The AAU at its sole discretion reserves the right to accept or reject any applicant(s) for membership.

1. **Conditions for Membership.** Membership in any category may be granted only after an application is submitted and approved. By submitting an application, the applicant agrees to comply with all the provisions of the AAU Code, including its Constitution, Bylaws, Policies, procedures, regulations, and rules of the AAU.

2. **Categories**. Categories of membership in the AAU are as follows :

   a. **District Member.** A District member is an organization chartered by the Congress to provide administrative services within a designated geographic area.

   b. **Club Member.** A Club member is an organization or group that has been approved for membership after meeting the registration requirements of the Code.

   c. **Individual Member.** An individual member is a person who has been approved for membership after meeting the registration requirements of the Code. Individual membership categories are :

      1. Youth Athlete.
      2. Adult Athlete
      3. Non-Athlete

   d. **Allied Member.** An organization or group approved by Congress which is engaged in athletics or sports-related activities.

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

C. **Congress.** Congress is the legislative body of the AAU.

    1. **Composition**. The members of Congress shall be at least 18 years of age and shall consist of :

        a. **District Representatives**. Each chartered District shall automatically have as members of Congress three of its Officers of its own designation. In addition, the District shall elect from members of its Board of Managers at its Biennial meeting the number of members to the Congress as it is entitled based upon the formula established in the Bylaws.

        b. **Sport Committee Representatives.** Each National Sport Committee which holds a National Championship shall have as members of Congress such representatives as are appointed by the Chair. The number of members to the Congress is calculated using the formula established in the Bylaws. Sport Committees which have a negative fund balance and have not made satisfactory arrangements approved by a majority of the AAU Officers for payment, may have a voice but no vote in the proceedings of Congress.

        c. **The National Officers**

        d. **Past Officers of the AAU.** Each Past President, Past Vice-President, Past Secretary, and Past Treasurer shall be members of Congress.

        e. **Allied Member Representatives.** Each Allied member may appoint one representative to Congress.

        f. **Members-at-Large.** The President may appoint up to five (5) Members-at-Large to the Congress.

    2. **Powers.** The powers of Congress are to:

        a. Amend the Code of the AAU.

        b. Elect the Officers of the AAU and the Zone Members of the AAU Board of Review.

        c. Establish dues and fees and to approve the budgets of the AAU.

        d. Establish AAU Districts.

        e. Grant, withhold, suspend, or revoke charters for District members.

        f. Approve AAU National Sport Committees, the National Sport Committee budgets and National Championship events.

        g. Remove Officers, Members of Congress, or members of the Board of Review or any other member of the AAU by a three-fourths (3/4) majority of those present and voting.

        h. Call Regular and special meetings of the AAU.

        i. Assume original jurisdiction in any matter or matters.

        j. Impose and enforce penalties for any violation of the Code.

k. Assume appellate jurisdiction to review any decision of the Board of Appeals.

### 3. Vote(s) in Congress.

a. A member of Congress must be present to vote.

b. A member of Congress may simultaneously represent more than one category of membership but may not represent more than one entity in any category. A member of Congress may not have more than two (2) votes.

## D. Board of Directors.

1. **Composition.** The composition of the Board of Directors shall be established in the Bylaw 10.

2. **Powers.** The Board of Directors has the power to :

a. Act for the AAU and on behalf of the Congress, subject to the approval of, or ratification of its actions by Congress, except that it cannot amend the Constitution or Bylaws.

b. Establish by majority vote, national policies and procedures for the AAU which shall remain in effect until modified, amended, or deleted by the Board or Congress.

c. Approve National Sport Committee operating rules and National Championship events.

d. Nominate candidates from the Zones for the Board of Review.

e. Approve the General Counsel of the AAU.

f. Establish the check signing authority.

g. Audit Treasurer's records.

h. Review the budget of the AAU and submit it to Congress for approval.

i. Elect members of the Nominations and Elections Committee.

## E. Officers.

1. **Titles.** The titles of the Officers of the AAU are: President, First Vice-President, Second Vice-President, Secretary, and Treasurer.

2. **Elections.** The Officers will be elected by a majority vote of the members of the Congress casting ballots at the Biennial meeting. Elections for all officers will be conducted by written ballot under the supervision of the Nominations and Elections Committee. If there is only one candidate for a particular office, the vote for that office may be taken by a voice vote.

3. **Qualifications.** Only members of Congress are eligible for election to an office.

4. **Term of Office.** Each Officer shall serve for a term of four (4) years following election and/or until a successor is elected.

    a. **Term Limits.** Each Officer may serve no more than two (2) consecutive terms of four (4) years in the same office. [Note: Term limit begin with the 2014 National Officer election.]

5. **Duties.** The duties of the Officers are:

    a. **President**

        1. The President is the chief executive officer of the AAU.
        2. The President orders meetings of the AAU as provided in the Constitution and Bylaws and presides at all meetings of the AAU.
        3. The President may appoint Special Committees.
        4. The President appoints all Committee Chairs, except where provided otherwise in this Constitution.
        5. The President is an ex-officio member of all committees, except the Nominations and Elections Committee, the Board of Review and the Board of Appeals.
        6. The President, along with the National Secretary, signs all contracts and agreements of the AAU.
        7. The President may appoint at-large members to Congress, the Sport Committees, and Administrative Committees as provided in this Code. The President may appoint no more than five (5) delegates at-large to any Committee.
        8. The President names AAU representatives to organizations in which the AAU is a member.
        9. The President may call special meetings of Congress and/or the Board of Directors.
        10. The President has the right to exercise all the duties pertaining to his office in accordance with the AAU Code.

    b. **Vice-Presidents.** The Vice-Presidents have such duties as assigned to them by the President.

    c. **Secretary**. The Secretary has the responsibility to:

        1. Keep the official records of the AAU including but not limited to Congress and the Board of Directors.
        2. Conduct official correspondence of the AAU.
        3. Issue official notices of all meetings of the AA.
        4. Sign, along with the President, all contracts and agreements of the AAU.

    d. **Treasurer.** The Treasurer shall have the duty and responsibility to oversee the following :

        1. Receipt and deposit of all monies of the AAU in to accounts in the name of the AAU.
        2. Execution of all checks, notes and drafts together with dual signatures when required by the Code.
        3. Payment of all bills approved by an authorized AAU Officer or by the Congress provided such bills are within the authorized current budget of the AAU.

EXHIBIT F

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

    **4.** Furnishing to the Finance Committee and/or Board of Directors when requested all monies, accounts, books, papers, vouchers and records pertaining to his office for audit or other purposes.

**6. Vacancies.** In the event of the death, resignation, removal or incapacity of an Officer, the vacancies shall be filled as follows :

  **a. President.** The First Vice-President becomes the President.

  **b. First Vice-President**. The Second Vice-President becomes the First Vice-President.

  **c. Second Vice-President.** The office remains vacant until the next meeting of the Congress, at which time Congress will fill the office for the remainder of any unexpired term.

  **d. Secretary.** The Board of Directors elects a successor to hold office until the next meeting of Congress at which time Congress will fill the office for the remainder of any unexpired term.

  **e. Treasurer.** The Board of Directors elects a successor to hold office until the next meeting of Congress at which time Congress will fill the office for the remainder of any unexpired term.

**7. Emergency Powers of Officers.** In the event of actual or potential emergency situations that require timely action, the Officers may by majority agreement assume emergency powers to act in the best interest of the AAU in any manner necessary, which includes but is not limited to:

  **a.** Modify or suspend any rule, regulation or section of the AAU Code.

  **b.** Assume original jurisdiction in any matter materially affecting the AAU.

  **c.** Any action taken under this emergency provision will be effective until the next meeting of the Board of Directors. All emergency actions exercised shall be reported in writing in full detail by the Officers to the Board of Directors. The Board may ratify, modify, rescind, suspend, or revoke any such action(s).

**F. Committees.** The types of Committees of the AAU are Administrative, Sport and Special (Ad Hoc).

  **1. Administrative Committees.** The Administrative Committees of the AAU are :

    **a. Finance Committee**.

      **1. Composition.** The Committee will consist of up to five (5) members who are appointed by the President. The National Officers are Ex-Officio members of the Committee.
      **2. Duties.** To ensure the financial integrity of the Union by overseeing the financial matters of the AAU.

    **b. Insurance Committee.**

      **1. Composition.** The Committee will consist of up to five (5) members who are appointed by the President and the Chairs of the Legislative Committee, Finance Committee, and the Registration Committee shall be members.

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

2. **Duties.** The Committee shall assess the insurance needs of the AAU and evaluate and recommend to the President insurance programs.

### c. Legislation Committee

1. **Composition.** The Committee will consist of a representative appointed by each District and up to five (5) at-large members appointed by the President.

2. **Duties:**

   a. To Committee receive, review and/or modify and/or initiate proposals for amendments to the Constitution and Bylaws consider and evaluate those proposals and present its recommendations to Congress.

   b. To consider and recommend to Congress all proposals on changes to Districts and Zones.

### d. Nominations and Elections Committee

1. **Composition.** The Committee will consist of up to three (3) members who are elected to a four (4) year term in odd-numbered years by the Board of Directors.

2. **Duties :**
   a. To develop procedures for elections which upon approval by the Board of Directors shall become National Policy.
   b. To oversee and conduct all elections and matters which require a ballot.
   c. To review and approve or disapprove all campaign materials (including but not limited to eblasts, flyers, handouts, t-shirts, etc.).

### e. Registration Committee.

1. **Composition.** The Committee will consist of the elected Registrar of each District or a representative designated by the District Governor, plus the National Legislation Chair and in addition thereto up to five (5) at-large members appointed by the President.

2. **Duties.** To develop, review, and coordinate membership registration procedures and issue event licenses as provided by Bylaws and Policies.

### f. Committee Structure and Procedures.

1. **Chairs.** The President of the AAU, upon approval by a majority of the National Officers, appoints the Chairs.

2. **Meetings.**
   a. Regular committee meetings are held in conjunction with the AAU Convention. They may be observed by any person registered for the Convention; however, such observers shall have no voice unless recognized by the Committee Chair. This shall not affect the Committee's right to meet in executive session whereupon observers may be excluded at the sole discretion of the Chair.
   b. Special meetings of a Committee are scheduled at the request of the Chair or upon the written request of at least one-half (1/2) of the committee members.
   c. **Voting.** At all meetings, only members of the Committee are permitted to vote. There shall be no voting by proxy. Each member of the Committee will have one vote.

7

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

    **d. Quorum.** A quorum consists of those voting members of the Committee that are present at the meeting.

    **e. Vacancies.** Vacancies occurring on any committee may be filled with the same procedure as provided for in the original appointment.

2. **National Sport Committees.** A Committee may be established to conduct the program in each sport approved by Congress. Criteria for the formation of a National Sport Committee shall be established by policy.

    **a. Chair.** The President appoints the Chairs from the recommendation of the National Sport Committee after approval of a majority of the National Officers.

    **b. Composition.** The Committee will consist of the following all of whom must be at least 18 years of age:

        1. The elected or appointed Sports Director of each District or a representative designated by the District Governor;
        2. National Sports Chair;
        3. The elected or appointed Executive Committee or committee chairs as defined by the sports operating rules;
        4. One (1) appointed representative from each Allied member that registers members in the sport;
        5. The President may appoint up to five (5) members-at-large.

    **c. Removal/Replacement.** A member of a Committee may be removed or replaced by the same procedure as provided in the original selection.

    **d. Meetings.**

        1. **Regular.** Regular sports committee meetings shall be held in conjunction with the AAU Convention and as the Committee determines.
        2. **Special.** Special meetings of a Committee are scheduled at the request of the Chair or upon the written request of at least one half (1/2) of the Committee members.

    **e. Voting.** Voting in the Committee shall be the National Sports Chair, the elected or appointed Executive Committee or committee chairs as defined by the sports operating rules, the elected or appointed Sports Director of each District or a representative designated by the District Governor and one appointed representative from each Alliedd member that registers members in the sport. The President may appoint up to five (5) members-at-large. Only representatives from Districts which registered a minimum of .5% (a half percent) of the total number of athletes in that sport, in the previous year, shall be allowed to vote in the National Sport Committee meeting. [Rev. 10/07]

    **f. Quorum.** A quorum consists of the voting members of the Committee that are present at the meeting.

    **g. Duties.** A National Sport Committee has the duty to :

**EX A, PART 1**

E-FILED 2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

1. Adopt rules, procedures and operating policies relative to the conduct of the sport (including but not limited to competition rules, establishing National Championship qualification criteria, Committee governance, disciplinary procedures) and submits them to the Board of Directors for approval. If the Committee has established an Executive Committee, that Committee may review and approve competition rules for the sport in between meeting of the Committee.

   a. The National Sport Committee operating rules and procedures may only be amended by the National Sport Committee under the following procedure:

      1. Amendments may be approved only upon the affirmative vote of two-thirds (2/3) of those members of the National Sport Committee voting. Amendments become effective immediately upon approval unless otherwise specified at the time of adoption.

      2. Presentation. A proposed amendment may be submitted only by:
      a. A District Sport Committee after approval at its Biennial District Sport Committee meeting. Such approval must be reflected in the District Sport Committee meeting minutes).
      b. The applicable National Sport Chair.
      c. The National Sport Committee Executive Committee. Such approval must be reflected in the National Sport Executive Committee meeting minutes.

      3. Time and Form. A proposed amendment must be received by the National Secretary in writing. The proposed amendment must be received at least forty-five (45) days before the meeting of the National Sport Committee at which it is to be submitted. The proposed amendment must be submitted in such form to show the entire section, subsection or paragraph as it will read if adopted. The proposed amendment shall be forwarded at the direction of the Secretary immediately to the National Sport Chair. A report of all proposed amendments must be mailed by the Secretary to each member of the National Sport Committee at least thirty (30) days prior to the meeting.

      4. Other/Floor Amendment. Amendments may be presented to the National Sport Committee for consideration at the time of the meeting. Approval of these amendments requires an affirmative vote of three-fourths (3/4) of those members of the National Sport Committee voting.

2. Prepare an annual budget to be reviewed by the Finance Committee and President and approved by Congress.

3. Conduct National Championships and other activities of the National Committee.

4. Establish an Executive Committee, the composition of which shall be established in the Committee Operating Rules. The Executive Committee shall act in behalf of the National Sport Committee between National Sport Committee meetings subject to the approval of the Committee except that it may not amend Sections of the National Sport Committee handbook that are incorporated from the Code.

5. Shall create and maintain a National Sport Committee handbook in which the operating rules, procedures and policies of the committee are set out. Handbooks shall be standardized for all sport committees.

h. **Dissolution.** Upon the dissolution of any National Sport Committee, the net assets of the Committee shall be transferred to the general fund of the AAU.

EXHIBIT F

**EX A, PART 1**

E-FILED 2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

3. **Special Committees/Ad Hoc Committees.** The President or Congress may appoint Special Committees or Ad Hoc Committees and designate the responsibilities to further the interests of the AAU. The President shall appoint the Chair.

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

## ARTICLE II
## GOVERNANCE OF THE DISTRICTS

A. **Adoption.** Each District member shall adopt the provisions of this Article which are mandatory in their entirety and must be incorporated as each District's governance.

   1. **Amendments.** This Article cannot be amended by a District. Amendments adopted by the Congress shall be automatically binding upon each District.

B. **Charter.** The District shall comply with the terms of its charter, the AAU Constitution, Bylaws, and National Policies.

C. **Name, Territory and Jurisdiction.** The District shall operate with the name and territory designated by Congress. Districts shall exercise jurisdiction over its territory for the purpose of conducting the business of the AAU.

D. **Objectives.** The objectives of the District is to foster the mission of the AAU, protect and promote the mutual interests of AAU members, provide administrative services to sports-oriented groups, and conduct sport programs in approved sports.

E. **Management.**

   1. **Board of Managers.** The Board of Managers governs the District.

      a. **Composition.** The members of the Board of Managers shall be at least eighteen (18) years of age and shall consist of:

         1. Clubs representatives.
         2. Officers of the District.
         3. District Sport Directors.
         4. **At-Large.** Up to five at-large members appointed by the Governor.

      b. **Duties.** The management of the business affairs of the District is the sole responsibility of the Board of Managers. At the Biennial Legislative meeting, the Board of Managers shall have the power and the duty to:

         1. Elect the following:
            a. Officers of the District;
            b. The Review Committee;
            c. The Nominations and Elections Committee and approve procedures for District elections;
            d. Delegates to the Congress of the AAU;
         2. Review and approve the budget of the District;
         3. Establish the dates of the Biennial Legislative and special meetings of the District.
         4. Establish policies and rules consistent with the Code and necessary for the management of the District;
         5. Approve action of the Executive Committee;

**Article II**

EXHIBIT F

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

6. Nominate, by a majority vote, candidates for National Office; a nd
7. By a majority vote, propose to Congress amendments to the AAU Code.

## c. Voting.

1. Each club which has registered at least five (5) individual members during the current year shall appoint one representative to serve on the Board of Managers. The representative shall be designated on the club membership application.
   a. The club may by written notice to the District Secretary withdraw its representative and substitute a new representative.
   b. Written notice to the District Secretary for the withdrawal of its representative and substitution of a new club representative must be received seven (7) days prior to the meeting date.
   c. Replacement representative shall be at least 18 years old on the date of the meeting.
2. There shall be no voting by proxy.
3. Each member of the Board of Managers shall have one vote unless the District selects weighted voting as set out below.
   a. The following system of weighted voting may be adopted by a District by a 2/3 vote at a District Biennial Legislative Meeting.
   b. Districts may assign weighted voting privileges to club representatives based on registered membership. One representative may cast all the votes to which the club is entitled.
      1. Each club shall receive one vote for the first five (5) members attached to the club. The club shall receive one additional vote for each additional fifteen (15) members attached.
4. A member of the Board of Managers is limited to voting for a maximum of two entities (i.e. Club Representative and in an individual capacity, such as a Committee Chair).

## 2. Executive Committee.

a. **Composition.** The Executive Committee shall be comprised of the following members:

1. Elected Officers of the District;
2. The Director, or designee, of the District Sport Committee whose District Sport Committee has registered one percent (1%) or more of the total membership of the District. (Membership numbers will be determined utilizing the year-end total as supplied by the AAU National Office for the previous year.)
3. The Chair of the Finance Committee.

b. **Duties.** The Executive Committee has the power and duty to:

1. Act for the District and the Board of Managers during the interval between meetings of the Board of Managers subject to the approval of the Board.
2. Approve the date, time and location of the Biennial District Sport Committee Meeting;
3. Approve the District Sport Committee operating rules.

EXHIBIT F

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

4.  Fill a vacancy occurring in an elected office. The appointment shall be effective until the next Board of Managers meeting where an election will be held to fill the balance of the unexpired term.
5.  Schedule the time and location of the Board of Managers Biennial Legislative Meeting.
6.  Review accounts of the District Treasurer.
7.  Receive and file District Sport Committee budgets.

## 3. Officers.

a. **Titles.** The District Officers are Governor, Lieutenant Governor, Registrar, Secretary, and Treasurer. The Board of Managers may approve the establishment of additional District Officers. No individual may hold more than one office at the same time.

c. **Eligibility.** Only members of the Board of Managers are eligible to hold office.

d. **Term of Office.** Each Officer shall serve a term of four years or until his successor is chosen.

e. **Duties.** The duties of the Officers are:

1.  **Governor.** The Governor presides at all meetings, appoints Committees, calls special meetings, and performs any other duties that pertain to the office of Governor.

2.  **Lieutenant Governor.** The Lieutenant Governor has duties as assigned by the Governor.

3.  **Secretary.** The Secretary shall:

    a.  Keep the records of the District, including but not limited to the minutes of all District Board of Managers and Executive Committee meetings and copies of all District Sport Committee meetings and District Sport Committee Operating Rules.

    b.  Issue or approve issue of all District and District Sport Committee meeting notices. Forward a copy of District Board of Managers notices to the National Office.

    c.  Prepare meeting minutes for approval at all Board of Managers and District Executive Committee meetings. Forward a copy of all minutes to the National Office.

    d.  Prepare a report of activities for the District Board of Managers Biennial Legislative meeting.

    e.  Prepare and submit the District reports required by the Constitution and Bylaws.
    f.  Turn over all minutes and records to the succeeding Secretary upon end of term of office.

EXHIBIT F

**EX A, PART 1**

4. **Treasurer.** The Treasurer shall be responsible for and oversee the following:

   a. Payment or authorization of payment of the District membership (charter) fee to the National Office.

   b. Receipt and deposit of all monies of the District into District accounts.

   c. Payment of all bills approved by an authorized officer or by the Board of Managers provided they are within the authorized current budget of the District.

   d. Execution of all checks, notes, and drafts as prescribed by District policy.

   e. Preparation of the District's financial report (including budget) to the Board of Managers.

   f. Comply with the requirements of the AAU Business Practices by in filing the required District and Sport Committee IRS 990 forms. A copy of the form(s) shall be available at the District's Biennial Legislative Meeting.

   g. Consult with the Finance Chair to prepare the District's budget.

   h. Furnish to the Board of Managers or Finance Committee when requested all monies, accounts, books, papers, vouchers and records pertaining to the office for audit or other purposes, and turn over all records to the successor when elected.

5. **Registrar.** The Registrar shall:

   a. Review and then approve or deny applications for membership.

   b. Credential eligible voters at all District Board of Managers meetings (as outlined in National Policies.)

   c. Monitor any event to assure compliance with AAU requirements.

   d. Insure a quorum of voting members exists at all management meetings and submit a credentials report to the District Secretary.

   e. Consider the transfer of athletes pursuant to the Bylaws.

6. **Additional Officers.** The duties of additional officers as established by the Board of Managers shall be specified by the Board of Managers.

f. **Removal.** An elected Officer may be removed by a two-thirds (2/3) vote of the Board of Managers at the Biennial Legislative meeting, provided that the Notice of the meeting specifies that a motion to remove is on the agenda or on the order of the National Board of Review following the filing of a complaint and the Board's proceedings. [Rev. 10/07]

g. **Vacancies.** In the event of the death, resignation, removal or incapacity of an officer, the District Executive Committee shall appoint an individual to serve in the position until

EXHIBIT F

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

the next Board of Managers meeting where an election will be held to fill the balance of the unexpired term.

**4. Meetings.** The meetings of the District are:

    **a. Biennial Legislative Meeting.** The Biennial Legislative meeting of the Board of Managers shall be held during the month of May or June in even years on a date selected by the Board of Managers two years in advance. If the Biennial Legislative meeting minutes do not reflect the date of the next Biennial Legislative meeting, the date shall be the first Saturday or Sunday in June. The Executive Committee shall select the time and location of the meeting.

    **b. Special.** The Board of Managers shall have special meetings upon the call of the Governor or upon the written request of at least one-third (1/3) of the Board of Managers.

    **c. Executive Committee.** The Executive Committee shall meet at least once a year and at other times as it may designate.

        **1.** The Executive Committee shall have designated meetings upon the call of the majority of the Officers or by written request of 1/3 of the Executive Committee.

    **d. Notices.**

        **1. Time.** Notice of the Biennial Legislative or special meetings of the Board of Managers shall be given by the District Secretary, to all members at least thirty (30) days before the meeting (but no more than sixty (60) days.) . Notice for meetings or the District Executive Committee shall be not less than fifteen days or more than thirty (30) days.

        **2. Information.** The notice of a meeting shall contain the time, date, and site. For special meetings the purpose shall be given.

        **3. Address.** The Notice shall be sent to the electronic address last given to the National Office by each member entitled to Notice who has furnished an electronic address.

    **e. Quorum.** At all meetings of the Board of Managers, a quorum shall consist of representatives from at least five (5) member clubs. At all meetings of the Executive Committee, a quorum shall consist of twenty percent (20%) of its members.

**5. Committees.**

    **a. Required Committees.** Each District shall have the following Committees:

        **1. Finance Committee.**

            **a. Composition.** The Governor appoints the members and the Chair.  The District Treasurer may not act as Chair of the Finance Committee.

            **b. Duties.** The duties of the Finance Committee are to:

Article II

EXHIBIT F

15

**EX A, PART 1**

E-FILED 2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

1. Examine the accounts of the Treasurer, and report to the Executive Committee;
2. Prepare the budget of the District and provide it to the Board of Managers for approval.

## 2. Nominations and Elections Committee.

a. **Composition.** The Board of Managers shall elect three (3) members to the Nominations and Elections Committee who shall serve a term of four (4) years. The Chair of the Committee shall be appointed by the Governor from among the elected members.

b. **Duties:** The duties of the Nominations and Elections Committee are to conduct the election for District Officers, delegates to Congress, Review Committee and the Nominations and Elections Committee. The Committee shall follow the election procedures established by National Policy.

## 3. Review Committee

a. **Composition.** The Board of Managers shall elect three (3) members to the Review Committee, who shall serve a term of four (4) years. The Chair of the Committee shall be appointed by the Governor from among the elected Committee members. No more than two (2) members may be from the same sport.

b. **Duties.** The duties of the Review Committee are :

1. Investigate and review complaints regarding violations of the AAU Code, and to conduct hearings in accordance with Article III and procedures established by National AAU Policy.
2. Upon the request of the applicant, review any decision of the Registrar to deny a membership application.
3. The Committee may delegate in writing its authority to a Sport Director, or Sport Infractions Committee, subject to the right of parties to appeal to the Committee.

4. **District Sport Committees.** In each approved AAU sport in which the District has athletes actively participating, there may be a Committee to manage competition within the District.

a. **Composition.** The District Sport Committee shall include the following :

1. Each club member which registers at least five individual members in the sport shall have one representative on the District Sport Committee;
2. District Sport Committee Officers and Chairmen of Committees as defined by that sport's operating rules. [Added 10/07]
3. The Governor may appoint up to five (5) at-large members.

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

b. **Duties.** The duties of the District Sport Committee are to :

   1. In even years, hold a Biennial meeting, the date, time and location of which shall be approved by the District Executive Committee. [Added 10/08]
   2. Adopt at the Biennial Meeting, rules of operation of the Committee to be submitted to the Executive Committee for approval and which shall not conflict with the provisions of the AAU Constitution, Bylaws, National Policies or National Sport Committee rules.
   3. Determine whether to establish a Committee operating account and if so to comply with all relevant AAU procedures and policies.
   4. Conduct of the District championships.
   5. If the District Sport Committee is organized as an administrative club under the AAU, it shall annually file the Location of Assets Report with the District Office, and forward a copy to the National Office.

c. **District Sport Director.** In each approved sport in which the District has athletes actively participating, there may be a Director.

   1. **Election.** In each sport committee in which five or more club members have designated the sport as its primary sport, the Director shall be elected by the Committee at its Biennial Meeting. The District Sport Director takes office upon election.

   2. **Appointment.** When there are fewer than five clubs registered to the Sport, the Sport Director may be appointed by the Governor with the approval of the National Sport Committee Chair. The District Sport Director takes office upon appointment.

   3. **Term of Office.**

      a. The term of office for an elected District Sport Director shall be four (4) years to run concurrently with the District Officers.
      b. The term of office for an appointed District Sport Director shall be one year; or until removed by the Governor; or until the Sport Committee has met the criteria to elect a Director.
      c. **Vacancies.** A vacancy occurring in a District Sport Director position shall be filled by the Governor with the approval of the National Sport Committee Chair.

   4. **Duties.** The Sport Committee Director shall :

      a. Develop a budget for the Sport Committee to file with the District Executive Committee if required;
      b. Perform the duties set forth in the Committee Rules of Operation.
      c. Approve event licenses in the sport.
      d. Maintain the records of the District Sport Committee, including but not limited to the minutes of all meetings, the budget, location of assets report (if required), and the District Sport Committee operating rules. [Added 10/08]
      e. Preside at Sport Committee meetings ;

EXHIBIT F                    **EX A, PART 1**

f. Prepare, or have prepared, meeting minutes (which shall be approved at all District Sport Committee meetings). Forward a copy of all minutes to the National Office and District Secretary no later than 30 days following the District Sport Committee meeting. District Sport Directors who do not comply may be removed by the National Board of Review Chair. [Added 10/08]

g. File a copy of all records with the District Secretary and the AAU National Office Compliance Department no later than 30 days following District Sport Committee meetings. District Sport Directors who do not comply may be removed by the National Board of Review Chair. [Added 10/08]

h. At the conclusion of service as Sport Director turn over all records to the successor to the position.

5. **Removal.** District Sport Directors may be removed as follows:

a. **By District Sport Committee**. An elected Sport Committee Director may be removed by a two-thirds (2/3) vote of the Sport Committee at the Biennial meeting provided that the Notice of the meeting specifies that a motion to remove is on the agenda.

b. **By National Sport Chair.** Each National Sport Chair shall annually review the number of events held in their sport. If the number of licensed events, excluding practice licenses, are below five (5), the National Sport Chair may remove the District Director with the consent of the Governor. If the District Governor does not agree with the removal, the President shall appoint an arbiter who will make the final decision which shall be binding.

c. **By National Board of Review.** An elected Sport Director may be removed by order of the National Board of Review following the filing of a complaint and the Board's proceedings.

d. **Meetings.**

1. **Notice.** Notice of Biennial Meeting of the District Sport Committee will be given by the District Secretary, to all clubs with members registered in the sport.
   a. **Timing of Notice.** Notice shall be sent not less than thirty (30) days prior to the meeting (or more than sixty (60) days).

2. **Quorum.** Five (5) member clubs with voting eligibility must be present to constitute a quorum of the Biennial Sport Committee meeting.

5. **Special Committees/Ad Hoc Committees**. The Governor or Board of Managers may appoint Special Committees or Ad Hoc Committees and designate the responsibilities to further the interests of the District. The Governor shall appoint the Chair.

e. **Voting.** Each club which has registered at least five (5) individual members in the sport during the current year shall appoint one (1) representative to serve on the

District Sport Committee.  The representative shall be designated on the club membership application.

1. The club by written notice to the District Sports Director may withdraw its representative and submit a new club representative.  Written notice to the District Sports Director of the withdrawal and replacement must be received seven (7) days prior to the meeting.  The Club Replacement shall be at least eighteen (18) years of age as of the date of the meeting.

2. There shall be no voting by proxy.

3. Each member of the Sports Committee shall have one vote unless weighted voting has been established.

   a. **Weighted Voting.**  The following system of weighted voting may be adopted by a Sports Committee by a two-thirds (2/3) vote at a District Sport Committee Biennial Meeting.  Weighted voting privileges may be assiend to a club based on registered membership in the sport.  One representative may cast all the votes to which the club is entitled.

      1. Each club shall receive one (1) vote for the first five (5) members attached to the club.  The club shall receive one (1) additional vote for each additional fifteen (15) members attached.

## 6. District Championships.

   a. District Championships shall be conducted in accordance with National Sport Committee rules.

   b. **District** Championship participation shall be open to any member athlete or club who fulfills the entry requirements. The District Sport Committee may not establish special eligibility criteria beyond the rules and regulations established by the National Sport Committee.

## F. Dissolution.

1. **District.** Upon dissolution of a District member, the net assets will not inure to the benefit of any private shareholder, individual or corporation, but will be distributed to the Amateur Athletic Union of the United States, Inc. If the Amateur Athletic Union of the United States, Inc. is not then in existence, the assets of the District shall be distributed to another organization operated exclusively for exempt purposes as described under IRS Code Section 501(c) or corresponding sections as may from time to time be in force.

2. **District Sports Committee.** Upon the dissolution of any District Sport Committee, the net assets of the committee shall be transferred to the District.

**EX A, PART 1**

E-FILED 2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

# ARTICLE III
## JUDICIARY OF THE AAU AND ITS ADMINISTRATIVE REMEDIES

A. **Judicial Entities.** The Judicial Entities of the AAU shall enforce the provisions of the AAU Code and ensure that members and affiliates are afforded due process by this Code.

1. **National Board of Review**

   a. **Composition.** The National Board of Review shall consist of a maximum of five (5) members of the AAU composed as follows:

      1. The President shall appoint the Chair from a panel of three (3) candidates nominated by the Board of Directors.
      2. The Board of Directors shall nominate two (2) resident members from each of the four (4) zones from which Congress shall elect one (1) member from each zone.

   b. **Powers**: The National Board of Review has the powers to:

      1. Upon its own initiative, or pursuant to an appeal or a complaint, investigate any act or omission regarding violations of the AAU Constitution, Bylaws, Policies or Sport Rules.
      2. Require the production of documents, oral or written statements, or any information or material relative to any matter before the Board.
      3. Dismiss a complaint or appeal or conduct hearings and enter decisions relative to any matter before the Board.
      4. Vacate, modify, sustain, or reverse any decision, mandate or order or refer matters to another entity for resolution.
      5. Impose and enforce penalties, which may include but are not limited to suspension, expulsion, probation, fines, or disqualification.
      6. Assess costs and expenses against the party creating such expenses.
      7. Order an audit of a District, and depending upon the findings of the audit, refer cases for civil and/or criminal proceedings.
      8. Establish, amend, rescind, interpret, review and enforce rules and procedures utilized by the AAU judicial bodies.
      9. Interpret and enforce the provisions of the Constitution, Bylaws and National AAU Policies.

   c. **Jurisdiction.** The Board of Review may review any decision, action, or omission by a member or other entity (other than the Congress) which is a part of the Union or any of its activities. The Board of Review may exercise original jurisdiction in any matter including the actions or omissions of a District member.

   d. **Eligibility to Serve.** Any member of the AAU shall be eligible to serve on the Board of Review except voting members of the Board of Directors, members of the Board of Appeals, and National Sport Committee Chairs.

   e. **Term of Office.** Members of the Board of Review shall serve until their terms expire, or until they resign, become disqualified, or are removed by a three-fourths (3/4) vote of the Congress. The term of office for those elected shall be four (4) years. The term of

EXHIBIT F

**EX A, PART 1**

office for the appointed chair shall be six (6) years. All members of the Board of Review shall be eligible for re-election or re-appointment.

f. **Vacancies.** Vacancies on the Board of Review may be filled by the President who will appoint a member to serve until the next meeting of Congress at which time the vacancy shall be filled as prescribed in this article.

## 2. National Board of Appeals.

a. **Composition.** The National Board of Appeals shall be composed of the Chair of the Legislation Committee, the Chair of the Registration Committee and three other members of the AAU appointed from time to time by the President. The Chair of the Legislation Committee shall act as Chair.

b. **Powers.** Any decision of the National Board of Review may be appealed to the National Board of Appeals. The National Board of Appeals may:

   1. Vacate, modify, sustain, reverse or remand any decision of the Board of Review in which the appellant sustains one or more of the following bases of appeal:
      a. Misapplication or misinterpretation of AAU Code or policies;
      b. Newly discovered evidence;
      c. Findings of fact contrary to the evidence presented; or
      d. Excessive penalties.

   2. Assess costs and expenses against the unsuccessful party.

c. **Standard of Review.** The standard of review of the Board of Appeals shall be whether there is substantial evidence to uphold the decision of the Board of Review and/or whether the Board of Review abused its discretion.

d. The Congress may assume appellate jurisdiction to review any decision of the Board of Appeals at the next regularly scheduled meeting of Congress.

## 3. District Review Committee

a. **Composition.** The Board of Managers shall elect three (3) members to the Review Committee, who shall serve a term of four (4) years. The Chair of the Committee shall be appointed by the Governor from among the elected Committee members. No more than two (2) members may be from the same sport.

b. **Powers.** The District Review Committee powers are:

   1. Investigate allegations regarding violations of any regulation to which District members are subject;
   2. Review any decision of a District Committee;
   3. Hold hearings in accordance with procedures established by the National Board of Review.
   4. Impose penalties, which may include suspension, expulsion, censure, reprimand, fines, restitution, warning, probation, or other appropriate penalty.

**Article III**

EXHIBIT F

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

    **c. Jurisdiction.** Complaints against club or individual members of the AAU in regard to a matter at the District level may be heard by the Review Committee.

4. **Infractions Committees and Disciplinary Officers.** If provided for by its operating rules, National Sport Committees and District Sport Committees may designate individuals as disciplinary officers, or establish an Infractions Committee for the purpose of enforcing the rules of the sport. The authority of such officers or committee is subject to the requirements of this article of due process and the right to appeal.

B. **Authority.** The appropriate judicial body may exercise its authority as to any member, entity, or affiliate of the AAU which is determined to have violated the AAU Code including but not limited to the following:

1. **Fraud.** The falsification of the truth for the purpose of participation in any competition, or acts of deceit, misrepresentation, concealment, or a misstatement of fact or intention.

2. **Competing for Money.** Under no circumstances will the AAU allow, approve, or encourage any awards, prizes or payments that would violate any rules or restrictions established by the State or local school districts for sports activities under their jurisdiction; nor will any such presentation be provided in any sport that would act to negate the ability of an athlete to receive college athletic scholarship in that sport.

3. Aid or abet any athlete to disqualify himself.

4. **Doping.** Doping or the use of drugs before or during competition is prohibited. Doping is the administration of or the use by a competing athlete of any substance foreign to the body or of any physiological substance taken in abnormal quantity or taken by an abnormal route of entry into the body, with the intention of increasing performance in competition in an artificial and unfair manner.

5. Aid or abet the use of controlled substances or doping by athletes.

6. Unfair dealing in connection with athletic competition.

7. Violation of AAU rules or policies.

8. Aid or abet any person to violate the AAU Code. A club member may be held responsible for violations by persons acting as a representative of the club.

9. Fail to cooperate with an AAU Judicial Body relative to the investigation of any matter; or fail to give evidence in any inquiry when so directed by the Judicial Body.

10. Any act which disturbs or obstructs a competition or which disrupts the interests of the AAU, or which brings the AAU into disrepute.

**EX A, PART 1**

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

**C. Procedures.**

1. **Hearings.** If a Judicial Body finds reasonable cause to believe the AAU Code has been violated, it shall provide an opportunity for a hearing to the person(s) or entity charged before making any decision or imposing any penalty.

   a. Hearings may be waived by the party entitled to the hearing.

   b. Reasonable notice must be given of the violation(s) charged, and the time, place and format of the hearing.

   c. The Board of Review shall establish standard operating procedures for the Judicial Bodies, which upon approval by the Board of Directors shall become National Policy.

2. **Appeals.** Any decision of an AAU entity (except Congress) may be appealed to the appropriate Judicial Body. The Board of Review shall establish standard appeal procedures which upon approval by the Board of Directors shall become National Policy.

3. **Reinstatement.** Any member or other entity which has been disqualified, suspended, or made ineligible, may seek reinstatement by submitting an affidavit and petition to the body which rendered the decision, setting forth the grounds for the request for reinstatement.

E-FILED  2019 FEB 01 2:47 PM JOHNSON - CLERK OF DISTRICT COURT

# BYLAWS

# OF THE

# AMATEUR ATHLETIC UNION USA, INC.

## BYLAW 1. OFFICIAL EMBLEM, SEAL, NATIONAL OFFICE.

1.1 The Official Seal of the AAU is two concentric circles approximately 1 ½" diameter and 1 7/8" diameter, respectively with a design representing "Fortuna" approximately "1-¼" high center in the circular rings. The words "Amateur Athletic Union of the United States MDCCCLXXXVIII" approximately 3/32" high are inscribed in a partial circle around the seal at a radius of approximately 5/8".

1.2 The Official Emblem of the AAU is a modified Heraldic shield outlined in gold with the upper part of the field (chief) containing the letters "AAU" in red with a white background superimposed on a blue field. A gold line separates the "chief" field from the bottom of the shield. Seven red and six white vertical bards of equal width alternately extend from the base of the "chief" field downward to the gold peripheral outline. Superimposed on these vertical bars is the letters "USA" in white on a blue bar extending diagonally from the "dexter flank" to the "sinister base." The blue diagonal bar is also outlined in gold.

1.3 Congress shall select a location for the business office of the AAU which shall be known as AAU National Office.

## BYLAW 2. FISCAL AND LEGAL.

2.1 **Fiscal Year.** The fiscal year of the AAU is September 1 through August 31.

2.2 **Bonds.** Corporate fidelity bonds shall be obtained in a form and amount approved by the Board of Directors, indemnifying the AAU against losses resulting from infidelity, defalcation or misappropriation, fraud, and/or theft by the National Officers, and/or Districts Officers, and all employees and/or agents, of funds, property or assets owned by or under the control of the AAU. Upon recovery, if any, such funds or property shall be restored to the AAU entity (ies) which suffered the loss; or, if more than one (1) such entity – and, if recovery is less than 100%, any such restoration shall be on a pro rata basis.

2.3 **Bank Accounts and Depositories.** The Board of Directors shall designate depositories for the funds, property, and assets belonging to or under the control of the AAU and by title designate the persons who are responsible for the control of such assets.

2.4 **Checking, Savings and Depository Accounts.** All cash receipts must be deposited in to a designated checking account (in the General Fund). Funds on deposit in this bank account can be withdrawn only by check or letter of transmittal with the signature of any two (2) Officers (President, Vice-Presidents, Secretary or Treasurer), or their designees. Other assets or property of the AAU may be physically transferred from one financial institution to another by action of the Board of Directors.

EXHIBIT F

**EX A, PART 1**

**2.5 Auditor and Audit Report.** The Board of Directors shall select a Certified Public Accountant to audit the books and financial records of the AAU for the ensuing year. The auditor submits its report to the Board of Directors through the Finance Committee. A copy of the audit report shall be made available to each member of Congress at the next Meeting.

**2.6 Budget.** Budgets shall be prepared by the Treasurer, provided to the Board of Directors for review and submitted to Congress for approval at the Meeting.

   **2.6.1** The Finance Committee may review and revise the budget of the Union submitted by the Treasurer and Staff for the ensuing year.

   **2.6.2** The Finance Committee shall assist and advise the Officers and Staff in the planning function concerning long-term budgets, capital expenditures and long-term financial obligations, and keeping Congress regularly informed of the general financial·status of the Union.

### 2.7 Audit Committee

   **2.7.1 Composition.** The Audit Committee shall consist of three (3) members appointed by the President. One of the members is required to be a Certified Public Accountant (CPA).

   **2.7.2 Duties.** To fulfill the requirements as set out under IRS guidelines for taxes and organizations which include a review of the AAU's form 990.

### 2.8 Finance Committee Audits.

   **2.8.1** Within a reasonable time after the end of the fiscal year and the completion of the outside audit, the Committee may audit and examine the accounts of the Treasurer. A report on the fiscal year will be made to the Board of Directors at the next meeting occurring after the close of the fiscal year and the completion of the outside audit.

   **2.8.2** Examine the accounts of the Treasurer at any times as requested by the Congress and reports to the Congress, and can in such cases require the Treasurer to turn over all records pertaining to the office.

   **2.8.3** The Finance Committee shall approve the financial audit by an outside accounting firm.

**2.9 Accounts Receivable.** The Finance Committee may analyze the accounts receivable and recommend a final disposition of such accounts as may appear uncorrectable.

**2.10 Investment Sub-Committee.** The Finance Committee may establish an Investment Sub-Committee.

   **2.10.1 Composition.** The Sub-Committee shall consist of the Treasurer, the Chair of the Finance Committee, and two (2) at-large members appointed by the President.

   **2.10.2 Duties.** Has authority over and controls the investment and reinvestment, purchases, sale and management of securities and other invested assets of the AAU.

EX A, PART 1

**2.11   General Counsel.** The President, with the approval of a majority of the Board of Directors, may select a member of the legal profession as General Counsel. General Counsel advises and consults with the Officers and agents of the AAU, renders legal advice and assistance as may be requested, and performs any other duties delegated.

**2.12   Special Counsel.** The Board of Directors or President may authorize the appointment of special legal counsel when in the best interests of the AAU.

**2.13   Contracts.** All contracts to which the AAU is a party must be examined and approved as to form by Counsel of the AAU prior to execution. Any contracts over the value of $2,500.00 are to be signed by the President and the Secretary. Any other contract may be signed by the staff as authorized by the President and Secretary.

**2.14   Conflict of Interest.** If any Officer, member of the Board of Directors, **National** Sport Chair, District Officer, District Executive Committee member, District Sport Director, or key employee has a financial interest in any transaction involving the AAU, such individual shall;

**2.14.1** File a disclosure statement with the Compliance Department of the National AAU. The disclosure shall be filed as provided in AAU National Policy.

**2.15   Salaries.** Salaries of all paid personnel of the AAU will be approved by the National Officers. Any salary of an elected officer must be approved by the Board of Directors.

## BYLAW 3. EVENT LICENSE.

**3.1** No event shall be conducted under the auspices of the AAU unless a written license has been issued for the activity. An license is the written approval of the AAU for the conduct of the activity.

**3.2** Only AAU members shall be allowed to participate in licensed events unless otherwise provided in the Bylaws.

**3.3** A license may be issued to any club in good standing and which meets the membership criteria. A license may be reviewed by the District Sport Committee Director or the Governor if there is no District Sport Director. If the license is reviewed and rejected, the organization submitting the license application shall be notified.

**3.4** No license shall take effect until approved or until the 15-day review period has expired.

**3.5** The National Registration Executive Committee has the authority to:

**3.5.1** Issue a license for events in locations where there is no active District member.

**3.5.2** Issue a license for events in Districts where there is no current active participation. (No District Championship in the prior membership year).

EXHIBIT F

**EX A, PART 1**