IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF IOWA

DAVENPORT DIVISION

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>           Plaintiffs,<br><br>v.<br><br>GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC., and ADIDAS AMERICA, INC.,<br><br>           Defendants. | Case No. 3:20-cv-0005-JAJ-CFB<br><br>**BRIEF IN SUPPORT OF DEFENDANT ADIDAS AMERICA, INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION AGAINST ADIDAS**<br><br>**ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

Plaintiff should be compelled to arbitrate his claim against adidas America, Inc. ("adidas") because it is subject to an agreement to arbitrate. Plaintiff alleges he was the direct beneficiary of a sponsorship agreement between adidas and his basketball team, which (plaintiff alleges) created a duty for adidas to protect him from harm. But that same agreement also requires arbitration of "any dispute arising out of or related to" it.

For three reasons, plaintiff is bound by the arbitration provision regardless of whether he signed the sponsorship agreement. First, plaintiff is bound because he alleges that he is a third-party beneficiary of that agreement. Second, plaintiff ratified the agreement by accepting its benefits. Third, plaintiff is estopped from arguing the Sponsorship Agreement is not binding because he received direct benefits from that agreement and continues to use it as the basis for his claim.

1

# BACKGROUND

### A.  Factual allegations.

Plaintiff is a former member of a youth basketball team organized and run by Barnstormers Basketball, Inc. ("BBI"), an amateur basketball program. (*See* Third Amended Class Action, Petition at Law ("TAP") ¶¶ 21, 31, 164, Dkt. No. 1-4, at 111-147.)[1] As part of that program, BBI's basketball teams participated in basketball tournaments held across the United States. (TAP ¶ 5.) BBI's directors and coaches were authorized to enter into sponsorship agreements that provided direct benefits to BBI's players in exchange for those players wearing specific brands of athletic wear. (TAP ¶¶ 37, 84.)

adidas is a sportswear company headquartered in Portland, Oregon. (TAP ¶ 25.) As part of its business, adidas sponsors athletic competitions and teams, including youth basketball teams. (TAP ¶ 25.) BBI is one of the youth programs that adidas sponsored. (TAP ¶ 36.) BBI's athletes—including plaintiff—were "direct beneficiaries of [a]didas' sponsorship of BBI." (TAP ¶ 18.) As members of an adidas-sponsored team, BBI's athletes received "free shoes, sportswear, and [a]didas gear." (TAP ¶ 81.) adidas also paid costs for BBI teams to travel to tournaments. (TAP ¶ 81.) For their part, BBI's players subject to the sponsorship were required to "wear [a]didas gear exclusively while participating in [a]didas tournaments." (TAP ¶ 37.) Other than providing travel funding and gear, plaintiff does not allege that adidas or any adidas employee had any involvement with plaintiff or BBI.

---

[1] The allegations in plaintiff's Third Amended Class Action, Petition at Law are accepted as true for the limited purpose of this motion only. *See Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc.*, 468 F.3d 523, 525 (8th Cir. 2006) ("For the purpose of ruling on [defendant's] motion to dismiss or in the alternative to compel arbitration, the district court assumed the truth of the allegations in [plaintiff's] complaint. With the limited purpose of reviewing the district court's ruling, we, too, view [plaintiff's] allegations as true."). adidas reserves its right to deny plaintiff's allegations for all other purposes.

Plaintiff alleges that during a trip to play in a basketball tournament, defendant Stephen surreptitiously made a recording of him. (TAP ¶¶ 165-72.) Plaintiff has alleged that that recording is the source of his harm. (TAP ¶¶ 81-84, 237.)

### B. Plaintiff's claim against adidas.

Plaintiff asserts a single claim against adidas, alleging that adidas was negligent in connection with its sponsorship of BBI and its athletes, including plaintiff. (TAP ¶¶ 225-237.) In support of that claim, plaintiff alleges that "at the time Defendant [a]didas entered into a sponsorship relationship with BBI, it owed Plaintiff Doe and the Class Members a duty to exercise reasonable care to protect them . . . ." (TAP ¶ 235.) Plaintiff further alleges that adidas breached that duty by failing to "interview, investigate, or otherwise engage in any due diligence to determine whether BBI employed any protocols or procedures that would ensure the minor athletes it was sponsoring were being adequately chaperoned and protected from breaches of their safety and privacy of exactly the type perpetuated by Defendant Gregory Scott Stephen." (TAP ¶ 236.)

### C. The arbitration agreement.

adidas' sponsorship of BBI and its athletes is governed by an Endorsement, Sponsorship, and Supplier Agreement (the "Sponsorship Agreement"). (Declaration of Stanton R. Gallegos, Ex. 1 ("Gallegos Decl.").)[2] The Sponsorship Agreement was entered into between adidas and BBI and its "coaches, staff and *players*" (collectively defined as the "Team"). (Gallegos Decl., Ex. 1 at 1 (emphasis added).) The Sponsorship Agreement was signed by Jamie Johnson, a director and co-founder of BBI, on behalf of

---

[2] For reasons of confidentiality, the Sponsorship Agreement has been redacted to remove terms not relevant to this Motion.

BBI and its coaches, staff and players, and was effective as of January 1, 2017. (Gallegos Decl., Ex. 1 at 1, 3; TAP ¶ 100.)[3]

The Sponsorship Agreement contains the following arbitration provision, which requires all disputes related to adidas' sponsorship of BBI to be resolved through arbitration:

> **Dispute Resolution/Injunctive Relief.** Excluding equitable relief as provided below, the parties agree that any dispute arising out of or related to this Agreement shall be submitted to a mutually agreed upon mediator for non-binding confidential mediation in Portland, Oregon. If the dispute cannot be resolved through mediation, it shall be submitted to final, binding and confidential arbitration before the Arbitration Service of Portland in Portland, Oregon. Team further acknowledges that the Team Endorsement and the services provided hereunder are special and unique, that the breach of this Agreement will cause irreparable harm to adidas and that adidas shall be entitled to injunctive relief to prevent Team from breaching or continuing to breach this Agreement. The parties agree that the procedures outlined in this Section are the exclusive methods of dispute resolution.

(Gallegos Decl., Ex. 1 at 10.)

## ARGUMENT

**I.   The Federal Arbitration Act requires enforcement of this agreement to arbitrate.**

The Federal Arbitration Act (the "FAA") establishes a "liberal federal policy favoring arbitration agreements." *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983)). Under the FAA, "[a] dispute must be

---

[3] adidas recognizes that there is some incongruence between the date of the Sponsorship Agreement and the dates plaintiff alleges he was involved with the BBI program. Plaintiff alleges that he was last associated with the BBI program in 2016. (TAP ¶ 21.) adidas' sponsorship of BBI was not announced until December 2016 and did not commence until January 2017. (Gallegos Decl., Ex. 1 at 1, Ex. 2 (news report announcing the adidas sponsorship of BBI).) As plaintiff is proceeding under a pseudonym, adidas has no way to verify the timeframe of plaintiff's association with BBI. But accepting the allegations that he was a direct beneficiary of the adidas sponsorship and that adidas owed him (and other putative class members) a duty arising out of that sponsorship relationship, adidas assumes for purposes of this motion only that plaintiff was a member of the team during the course of the sponsorship as alleged in the petition.

submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement." *Lyster*, 239 F.3d at 945; 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."). Any claims subject to arbitration must be stayed pending the resolution of arbitration. 9 U.S.C. § 3; *see also W. Liberty Foods, L.L.C. v. Moroni Feed Co.*, 753 F. Supp. 2d 881, 890 (S.D. Iowa 2010) (granting pre-answer Motion to Compel Arbitration and staying all proceedings pending resolution of arbitration).

In deciding whether to compel arbitration, district courts must assess "(1) whether there is a valid agreement to arbitrate between the parties, and (2) whether the claims asserted fall within the arbitration agreement." *Fields v. NCR Corp.*, 683 F. Supp. 2d 980, 984 (S.D. Iowa 2010). When these conditions are met, the FAA leaves no discretion to a district court—it "mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (emphasis original).

Because both elements are met here, this Court must compel plaintiff to arbitrate his claim against adidas and stay that claim pending resolution of the arbitration.

**II.    The Sponsorship Agreement is a valid agreement requiring plaintiff to arbitrate his claim against adidas.**

Under either Oregon or Iowa law, the Sponsorship Agreement is valid and binding.

"[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists." *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). The Sponsorship Agreement states that it "shall be governed by and construed in accordance with the laws of the state of Oregon." (Gallegos Decl., Ex. 1 at 10.) Under Iowa's choice of law rules, parties are permitted to select the law applying to their contract provided it does not override the public policy of a state that has a

5

materially greater interest in the transaction. *See Joseph L. Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317, 328 (Iowa 1977). Because plaintiff alleges he was a BBI athlete during the sponsorship period, and is thus a party to the contract, Oregon law should govern. *See id.* In any case, adidas cites authority from both Oregon and Iowa because the result is the same under the law of either state. *Cf. Linden v. CNH Am. LLC*, 753 F. Supp. 2d 860, 862 (S.D. Iowa 2010) ("[C]hoice-of-law analysis is only undertaken when a true conflict exists between the possible governing laws." (citing *Modern Equip. Co. v. Cont'l W. Ins. Co.*, 355 F.3d 1125, 1128 n.7 (8th Cir. 2004)).

The Sponsorship Agreement contains an arbitration provision requiring that all disputes arising out of or relating to adidas' sponsorship be submitted to arbitration. While plaintiff did not personally sign the Sponsorship Agreement, the arbitration provision is binding on him for three separate and independent reasons: (1) plaintiff is a third-party beneficiary of the Sponsorship Agreement; (2) plaintiff is a party to the Sponsorship Agreement because he ratified that agreement; and (3) plaintiff is bound by the Sponsorship Agreement under the principles of estoppel.

### A. Plaintiff is bound to arbitrate his claim against adidas as a third-party beneficiary to the Sponsorship Agreement.

Because plaintiff has affirmatively alleged that he was a third-party beneficiary of the Sponsorship Agreement, he is bound by its arbitration requirement.

Under both Oregon and Iowa law, "an arbitration provision may be enforced against a third-party beneficiary." *Bates v. Andaluz Waterbirth Center*, 447 P.3d 510, 515 (Or. App. 2019); *DB Acoustics, Inc. v. Great River Contractors, L.L.C.*, 784 N.W.2d 201 (Table), 2010 WL 1375319, at *3 (Iowa Ct. App. Apr. 8, 2010) (affirming an order compelling arbitration and holding that "[a]s a third-party beneficiary of the contract, [the party] can be compelled to arbitrate its claim").

In determining whether an individual is a third-party beneficiary, courts look to whether "the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir.

6

2006); *RPC Liquidation v. Iowa Dept. of Transp.*, 717 N.W.2d 317, 319-20 (Iowa 2006) (explaining that the test for determining whether a person is a third-party beneficiary is "whether the contract manifests an intent to benefit a third party"). "The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended by the parties to benefit from the contract." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999).

Courts routinely hold that recipients of sponsorship benefits are third-party beneficiaries. For example, in *Jumbo v. Alabama State University*, 229 F. Supp. 3d 1266, 1274 (M.D. Ala. 2017), the court held that students who stood to benefit from a sponsorship contract between the nation of Nigeria and Alabama State University were third-party beneficiaries. The court explained that "[a]s the intended recipients of the sponsorship money, the [p]laintiff [s]tudents were the intended beneficiaries of the contract." *See also Macedonia Church v. Lancaster Hotel Ltd. Partnership*, 560 F. Supp. 2d 175, 181-82 (D. Conn. 2008) (holding that plaintiff church members were third-party beneficiaries of a room rental agreement between a church and a hotel because "the proposed contract was an agreement pursuant to which the [hotel] would have assumed a direct obligation to individual plaintiffs, *i.e.* the obligation to provide them with accommodations during the retreat").

Indeed, plaintiff's claim against adidas *depends* on his allegations that he was a third-party beneficiary of the Sponsorship Agreement. Plaintiff explicitly alleges that adidas was sponsoring BBI's athletes and that those athletes (himself included) were "direct beneficiaries of adidas' sponsorship of BBI." (TAP ¶ 18; *see also* TAP ¶¶ 84 ("[a]didas is aware that the BBI's minor athletes were the direct beneficiaries of [its] sponsorship dollars"), 178(F) (defining a subclass of BBI athletes that were "the direct beneficiaries of [adidas'] sponsorship"), 236 (alleging that adidas did not take steps to "ensure the minor athletes *it was sponsoring* were being adequately chaperoned" (emphasis added)).) Plaintiff's allegations that he was a direct beneficiary of the adidas sponsorship is further supported by the provisions of the Sponsorship Agreement itself,

7

which states that BBI's players would receive adidas gear and the right to buy additional adidas products at wholesale prices. (Gallegos Decl. Ex. 1 at 1.)

As a third-party beneficiary of the Sponsorship Agreement, plaintiff is bound by its arbitration provision. *Comer*, 436 F.3d at 1102; *RPC Liquidation*, 717 N.W.2d at 319-20.

### B. Plaintiff is bound by the arbitration provision because he ratified the Sponsorship Agreement.

Plaintiff is also bound by the arbitration provision because he ratified the Sponsorship Agreement. The Sponsorship Agreement was signed by a director of BBI acting on behalf of BBI's "coaches, staff and *players*," which included plaintiff. (Gallegos Decl., Ex. 1 at 1, 3 (emphasis added).) Even if plaintiff did not authorize BBI's director to enter into the Sponsorship Agreement, plaintiff is still bound by that agreement because he ratified it when he accepted its benefits.

"Ratification occurs when a principal either manifests assent to be bound or engages in conduct indicative of consent by the principal." *Lemley v. Lemley*, 188 P.3d 468, 473 (Or. Ct. App. 2008) (quoting Restatement (Third) of Agency § 4.01 (2006)); *see also NuTech Seed, LLC v. Roup*, 212 F. Supp. 3d 783, 791 (S.D. Iowa 2015) ("Iowa law states that a principal may 'ratify' an unauthorized signature through 'conduct that justifies a reasonable assumption that the person so consents.'" (quoting *Life Investors Ins. Co. of Am. v. Estate of Corrado*, 838 N.W.2d 640, 646 (Iowa 2013)). "For example, knowing acceptance of the benefit of a transaction ratifies the act of entering into the transaction. This is so even though the person also manifests dissent to becoming bound by the act's legal consequences." *Lemley*, 188 P.3d at 173 (quoting Restatement (Third) of Agency § 4.01 commend d).).

In *NuTech*, the court held that a farmer had ratified and was thus bound by a contract for corn seed. 212 F. Supp. 3d at 791. There, a corn seed seller sued an individual farmer for failing to pay for seed delivered pursuant to a contract that he did not sign. *Id.* at 785. The contract was instead signed by his spouse. *Id.* at 785 & n.1.

8

The court concluded that even if the farmer's spouse was not authorized to sign on his behalf, that the farmer "clearly ratified the Agreement . . . when he accepted and used the seed." *Id.* at 791.

The same analysis applies here. Plaintiff's complaint shows that he was aware of the material terms of the sponsorship—that adidas would provide gear and travel funding in exchange for BBI's players agreeing to wear adidas gear. (TAP ¶¶ 37, 81.) And plaintiff repeatedly alleges that he (and other BBI players) received the direct benefits of the Sponsorship Agreement. (TAP ¶¶ 18, 84, 178(F), 236.) Indeed, plaintiff continues to ratify the Sponsorship Agreement by relying on the very relationship it created as the basis for his claims against adidas. (TAP ¶¶ 94, 235.) By accepting the benefits of the Sponsorship Agreement, plaintiff has ratified that agreement and is bound by its arbitration provision.

   **C. Plaintiff is estopped from disclaiming the arbitration agreement, because he alleges he was a direct beneficiary of the Sponsorship Agreement and asserts claims dependent upon that agreement.**

Third, and finally, plaintiff is bound by the arbitration provision in the Sponsorship Agreement under the principles of estoppel.

A non-signatory to an arbitration agreement may be compelled to arbitrate where there is "a showing that the non-signatory obtained a 'direct benefit' from the underlying contract." *Legacy Wireless Services, Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1056 (D. Or. 2004); *see also Roth v. The Evangelical Lutheran Good Samaritan Society*, 147 F. Supp. 3d 806, 811 (N.D. Iowa 2015) (recognizing that estoppel applies "(1) where the non-signatory knowingly seeks and obtains 'direct benefits' from the contract containing the arbitration clause, and (2) where the non-signatory seeks to enforce the terms of the contract containing the arbitration clause or asserts claims that must be determined by reference to the contract containing the arbitration clause").

In *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349 (2d Cir. 1999), a certification company ("ABS") sought to compel the owners of a newly

constructed ship to arbitrate their claims based on a contract between ABS and the shipyard that constructed the vessel. *Id.* at 351-52. The owners sought to avoid arbitration by arguing that they were not signatories to the contract containing the arbitration agreement. *Id.* at 352-53. In response, ABS argued that the owners of the vessel had received direct benefits from the certification contract, including lower insurance rates and the ability to sail under the French flag. *Id.* at 353. The district court denied the motion to compel arbitration, but the Second Circuit reversed holding that "it [was] patent that on the actual facts the Owners received direct benefits from the [contract]" and thus were "required to arbitrate their claims against ABS." *Id.*

Plaintiff here should be estopped from arguing that he is not bound by the arbitration clause in the Sponsorship Agreement for two reasons.

First, plaintiff alleged that he obtained direct benefits from the Sponsorship Agreement while he was a BBI athlete. In his complaint, plaintiff explicitly—and repeatedly—states that BBI's athletes (himself included) were "direct beneficiaries" of the Sponsorship Agreement. (TAP ¶¶ 18, 84; 178(F).) Plaintiff goes on to specifically identify those benefits, including "free shoes, sportswear, and [a]didas gear" (TAP ¶ 81); costs to travel to tournaments held across the country (TAP ¶ 81); and "significant prestige" (TAP ¶ 228). Under the terms of the Sponsorship Agreement, BBI's athletes also received the benefit of purchasing adidas products at "wholesale prices." (Gallegos Decl. Ex. 1 at 1.) Like the ship owners in *American Bureau*, plaintiff received direct benefits under the Sponsorship Agreement and should be estopped from seeking to disclaim his obligation to arbitrate.

Second, plaintiff is continuing to avail himself of the benefits of the Sponsorship Agreement in this litigation by relying on the relationship that agreement created as the basis for his claim that adidas owed a duty to BBI's athletes. Plaintiff repeatedly asserts that adidas' sponsorship of BBI's athletes is the source of adidas' duty to him and other potential class members. (TAP ¶ 94 ("At the time Defendant Adidas entered into a sponsorship relationship with BBI, it owed Plaintiff Doe and the Class Members a duty to

10

exercise reasonable care to protect them . . . ."), TAP ¶ 235 ("at the time Defendant Adidas entered into a sponsorship relationship with BBI, it owed Plaintiff Doe and the Class Members a duty to exercise reasonable care to protect them").) In doing so, plaintiff continues to seek to benefit from the Sponsorship Agreement, and his claims cannot be determined without reference to that agreement.

Because plaintiff acknowledges that he (and all other BBI players) obtained a direct benefit from the Sponsorship Agreement, and plaintiff continues to rely on the Sponsorship Agreement to establish his claims, he should be estopped from seeking to avoid the obligation to arbitrate.

### III. Plaintiff's claim against adidas falls within the scope of the arbitration clause.

"[T]he federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." *Donaldson Co.*, 581 F.3d at 731. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983).

The Sponsorship Agreement obligates plaintiff to arbitrate "any dispute arising out of or related to" that agreement. (Gallegos Decl., Ex. 1 at 10.) Where, as here, the arbitration clause is broad, the "liberal federal policy favoring arbitration agreements requires that a district court send a claim to arbitration . . . as long as the underlying factual allegations simply touch matters covered by the arbitration provision." *3M Co v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008). Plaintiff's claim against adidas not only touches on matters covered by the arbitration provision—it is entirely dependent on the Sponsorship Agreement. As explained above, the sponsorship relationship created by that contract is the entire basis for plaintiff's allegation that adidas owed him and other BBI players a duty of care. (TAP ¶¶ 18, 94, 235.) And adidas' supposed liability is premised on the assertion that adidas breached the duty that arose from that sponsorship.

(*Id.* at ¶¶ 95-96, 236.)  Plaintiff's claim thus both "aris[es] out of" and "relate[s] to" the Sponsorship Agreement.  He should be compelled to arbitrate this claim.

### IV.     Plaintiff must arbitrate his claims individually.

The FAA requires that the Court "make an order directing the parties to proceed to arbitration *in accordance with the terms of the agreement*" to arbitrate.  9 U.S.C. § 4 (emphasis added).  Court must enforce contractual limits on class arbitration and cannot reserve the question of class arbitrability for the arbitrator.  *Catamaran Corporation v. Towncrest Pharmacy*, 864 F.3d 966, 971-72 (8th Cir. 2017) ("[W]e conclude that the question of class arbitration belongs with the courts as a substantive question of arbitrability.").

The Supreme Court has held that a party cannot be compelled to submit to class arbitration where the arbitration agreement is silent or ambiguous on the issue of class arbitration.  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416, 1419 (2019).  Instead, parties must be compelled to individual arbitration unless there is an "affirmative 'contractual basis for concluding that the part[ies] agreed to [class arbitration].'"  *Id.* at 1419 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)).  The arbitration agreement between plaintiff and adidas simply states that disputes must be arbitrated before the Arbitration Service of Portland; it does not contain any affirmative and unambiguous basis for concluding that the parties agreed to class arbitration.  (Gallegos Decl., Ex. 1 at 10.)  Indeed, the Arbitration Service of Portland—the arbitration service mandated by the Sponsorship Agreement—does not even have a procedural mechanism for class arbitration.  *See* Procedural Rules for Arbitration: Arbitration Service of Portland, *available at* http://www.arbserve.com/pdfs/ procedural_rules_14.pdf.  The lack of any rule providing for class arbitration in the chosen arbitration service is further evidence that adidas has not agreed to class arbitration.  Accordingly, the Court should enter an order directing that plaintiff arbitrate his claim on an individual and not a class-wide basis.

///

## CONCLUSION

For the foregoing reasons, adidas respectfully requests that this Court enter an order compelling plaintiff to arbitrate his claim against adidas on an individual basis and stay the claim against adidas pending the resolution of that arbitration.

Dated this 16th day of January, 2020.

                              SHUTTLEWORTH & INGERSOLL, P.L.C.

                              By:   *Connie Alt*
                                    Connie Alt      AT0000497
                                    Dana L. Oxley   AT0005917
                                    cma@shuttleworthlaw.com
                                    dlo@shuttleworthlaw.com
                                    115 3rd St. SE, #500
                                    Cedar Rapids, IA 52401
                                    Telephone: (319) 365-9461
                                    Fax: (319) 365-8443

                              MARKOWITZ HERBOLD PC

                              Matthew A. Levin, *Pro Hac Vice*
                              MattLevin@MarkowitzHerbold.com
                              Stanton R. Gallegos, *Pro Hac Vice*
                              StantonGallegos@MarkowitzHerbold.com
                              1455 SW Broadway, Suite 1900
                              Portland, OR 97201
                              Telephone: (503) 295-3085
                              Fax: (503) 323-9105

                          OF ATTORNEYS FOR ADIDAS AMERICA, INC.

---

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of this document was served upon counsel of record for each party to the action in compliance with FRCP 5 on <u>January 16, 2020</u> **by:**

[X] Electronically via ECF for ECF registrants
[ ] U.S. Mail _____
[ ] Fax _____
[ ] Email _____
[ ] Hand Delivered _____
[ ] other _____

    <u>/s/    /s/ Paula Pohlpeter</u>