## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## DAVENPORT DIVISION

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GREGORY SCOTT STEPEHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC., and ADIDAS AMERICA, INC.,<br><br>Defendants. | Civil No.        3:20-cv-00005<br><br><br>**DEFENDANT BARNSTORMERS BASKETBALL, INC. D/B/A BARNSTORMERS BASKETBALL OF IOWA'S RESISTANCE TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

**COMES NOW** the Defendant, Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa ("BBI"), by and through its attorneys, Betty, Neuman & McMahon, P.L.C., and for its Resistance to Plaintiffs' Motion for Class Certification, states as follows:

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ...................................................................................................1

**ADDITIONAL FACTUAL BACKGROUND** ...................................................................2

**LEGAL STANDARD APPLICABLE TO CLASS CERTIFICATION** ...............................5

**ARGUMENTS** ...............................................................................................................5

   **I.    PLAINTIFFS' PROPOSED CLASS IS OVERBROAD** ...............................................5

   **II.    PLAINTIFFS FAIL TO MEET THEIR BURDENS OF PROOF UNDER THE RIGOROUS ANALYSIS STANDARD OF RULE 23(a) AND (b)(3)** ...............................6

     **A.    Rule 23(a) Requirements** ...........................................................................6

     **1.    Numerosity Is Not Satisfied** .....................................................................6

       **a.    Plaintiffs' Evidence Is Insufficient To Know Or Ascertain The Size Of Plaintiffs' Proposed Class** ...........................................................................6

       **b.    Alleged Unwillingness To Sue Individually Should Be Given Little To No Weight** .....................................................................................................8

      **c.**   **Any Inability To Identify Alleged Class Members Was Not Caused By BBI** ....8

      **d.**   **Geographical Disbursement Of Alleged Class Members Has Not Been Proven** ................................................................................................9

   **2.**   **Commonality Is Not Satisfied** ...............................................................9

   **3.**   **Typicality Is Not Satisfied** .................................................................10

   **4.**   **Adequacy Is Not Satisfied** .................................................................11

  **B.**   **Rule 23(b)(3) Requirements** .................................................................12

   **1.**   **Individual Issues Predominate Any Common/Class Wide Issues** .......................12

   **2.**   **Class Action Is Not Superior To Individual Suits** ...............................................14

## ADDITIONAL FACTUAL BACKGROUND

The only information Plaintiffs have produced regarding the alleged class is testimony and other information gleaned from the criminal proceedings of Gregory Stephen, Criminal Case No. 1:18-cr-31 (N.D. Iowa). Stephen's plea agreement indicates he had over 400 file folders of photographs and/or recordings of different minor boys (victims). (Deft. Appendix 6). Stephen's victims include (but is not necessarily limited to) basketball players, friends of basketball players, and minors involved in other sports. (Deft. Appendix 6). Stephen's criminal proceedings, however, do not provide any type of break-down of the number of victims who were former or current basketball players for BBI.

Law enforcement concluded that Stephen began victimizing minors as far back as the late 1990's. (Deft. Appendix 26 – Depo. pg. 169). Law enforcement identified the following types/categories of visual depictions of minors in Stephen's electronic devices: (1) nude minors secretly recorded through covert recording devices placed in bathrooms; (2) minors who photographed/recorded themselves masturbating or in a nude state and provided it to Stephen; and (3) visual depictions made by Stephen of unconscious minors. (Deft. Appendix 6).

To obtain visual depictions made by the minors themselves, Stephen used fake social media profiles (*i.e.* Facebook and Snapchat) wherein he posed as a young female to induce minors to provide sexually explicit images of themselves. (Plea, pg. 6; Deft. Appendix 27 – Depo. pg. 174). Iowa Division of Criminal Investigation special agent Ryan Kedley testified during Stephen's sentencing hearing that the "***vast majority***" of the several hundred minors were victimized by Stephen through his use of fake social media accounts posing as a young female on the internet. (emphasis added) (Deft. Appendix 22 – Depo. pg. 132; Deft. Appendix 24 – Depo. pgs. 161-2).

Approximately 15 of Stephen's victims were "hands-on" victims, meaning that they had been physically touched by Stephen. (Deft. Appendix 24 – Depo. pg. 159; Deft. Appendix 25 – Depo. pg. 163). Law enforcement further hypothesized that visual depictions of minors could have occurred in hotel rooms during BBI basketball tournaments, during basketball camps attended to by minors, in hotel rooms while attending NBA basketball games, at Stephen's residence in Monticello and/or his lake house in Delhi, and on vacation-style trips. (Deft. Appendix 26 – Depo. pgs. 168-170).

BBI founder and director, Jamie Johnson, testified that BBI participated in competitive basketball tournaments but it did not participate in "basketball camps." (Deft. Appendix 35). Basketball camps were invitations made by other organizations to specific players, and BBI did not participate in these as an organization. (Deft. Appendix 44-45). BBI also did not organize or hold events to take players to NBA games or have events/meetings at Stephen's residences. (Deft. Appendix 45). Those were things Stephen did on his own.

Stephen also ran his own basketball organization, the Iowa Mavericks. The Iowa Maverick's organization existed prior to 2005 and continued even after Stephen had joined BBI.

(Deft. Appendix 31-32; 38-39). BBI was not involved in the organization or activities of the Iowa Mavericks. (Deft. Appendix 45-46). Prior to and during his coaching at BBI, Stephen worked at Mercy Acceleration and providing performance training to high school athletes across multiple sports. (Deft. Appendix 33-34). Stephen was not part of or coaching in BBI for a couple of years while he pursued a coaching position with Upper Iowa University. (Deft. Appendix 36-37).

Prior to Stephen's arrest, no player or parent made any complaint to BBI regarding alleged or suspected inappropriate conduct between Stephen and any BBI athletes/participants. (Deft. Appendix 46-47; 58). There is no evidence Stephen had ever been criminally convicted of anything prior to his federal criminal arrest and conviction. (Deft. Appendix 57). After Stephen's arrest, only five or six minor athletes with BBI left the organization out of the approximate 125 participants existing at that time. (Deft. Appendix 40-41).

Plaintiffs' liability expert, Michelle Peterson, does not know when or where the various victims of Stephen were photographs, recorded or physically touched (other than any information contained in Stephen's criminal pleadings/hearings). (Deft. Appendix 50-51). To the extent victims were basketball players, she does not know whether the players were part of BBI versus non-BBI teams coached by Stephen. (Deft. Appendix 52-53; 59-60). She does not know how many minors victimized by Stephen's use of fictitious online personas were basketball players. (Deft. Appendix 54-55). She does not know whether any of Stephen's victims were met by him through his employment as a fitness specialist with Mercy Medical Center. (Deft. Appendix 56).

To the extent any basketball players received gifts from Stephen, Ms. Peterson does not know whether those players were also victimized by Stephen. (Deft. Appendix 60). She is not

aware of BBI contributing any money to Stephen towards gifts, food, NBA basketball games, or non-basketball activities with minors. (Deft. Appendix 61-62). She is also not aware of BBI providing money or electronic devices to Stephen used in any victimization of minors. (Deft. Appendix 62). She is not aware of any instances where Stephen told players he would limit their playing time or refuse to speak to recruiters on their behalf unless they allowed him to photograph, video record or touch them in a sexual manner. (Deft. Appendix 63).

## LEGAL STANDARD APPLICABLE TO CLASS CERTIFICATION

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The Court must engage in a 'rigorous analysis' to determine whether all the prerequisites of Rule 23(a) are satisfied" and it "must examine the factual basis for the plaintiff's claims and may examine not only the pleadings but also the evidentiary record, including any affidavits and results of discovery." *Sanft v. Winnebago Indus.*, 214 F.R.D. 514, 519 (N.D. Iowa 2003) (internal citations omitted).

Rule 23 only allows the Court to certify a class when all elements of Rule 23(a) are established and one of the elements of Rule 23(b) are established. *See* Fed. R. Civ. P. 23. Accordingly, a plaintiff's failure to establish any element of Rule 23(a) or the asserted provision of Rule 23(b) requires the Court to deny certification as a matter of law.

## ARGUMENTS

## I.   PLAINTIFFS' PROPOSED CLASS IS OVERBROAD

Plaintiffs' proposed class is overbroad because it seeks to include minors victimized by Stephen who were not victimized while participating in BBI, such as minors victimized by

Stephen while participating in the Iowa Mavericks basketball organization. Plaintiffs' claims against BBI for negligent hiring, supervision and retention of Stephen requires proof of an employment relationship between BBI and Stephen and a causal nexus between the employment relationship and the harm sustained by the Plaintiffs. *See Godar v. Edwards*, 588 N.W.2d 701 (Iowa 1999). There is no evidence that BBI was involved with the Iowa Mavericks or that it hired, supervised or had the ability to terminate Stephen in his role(s) with Iowa Mavericks. The evidence shows that Stephen was the sole owner/operator of that organization. Therefore, the Court should require Plaintiffs to redefine their class and limit it to those individuals who could theoretically prosecute a cause of action against BBI.

## II.   PLAINTIFFS FAIL TO MEET THEIR BURDENS OF PROOF UNDER THE RIGOROUS ANALYSIS STANDARD OF RULE 23(a) AND (b)(3)

### A.  Rule 23(a) Requirements

#### 1.  Numerosity Is Not Satisfied

##### a.  Plaintiffs' Evidence Is Insufficient To Know Or Ascertain The Size Of Plaintiffs' Proposed Class

The only evidence Plaintiffs have been able to produce regarding any victims of Gregory Stephen is through publicly accessible materials from Stephen's criminal proceedings. Plaintiffs assert that Stephen has victimized approximately 400 youths but are unable to provide any evidence as to how many of those victims were participants of BBI, as required to be part of their proposed class.

Stephen's criminal filings offer little in support Plaintiffs' numerosity claims and raise more questions than answers. Stephen's criminal filings indicate law enforcement officers concluded he had victimized approximately 400 youths between approximately 1999 and through his arrest in approximately 2018. But there is little-to-no information as to how many

6

youths were victimized between 1999 and the time he joined BBI in 2005. Victimization of

minors occurring before Stephen joined BBI would not be part of the proposed class.

Stephen's criminal filings further indicate, through the testimony of investigating Iowa

DCI agent Ryan Kedley, that the "***vast majority***" of Stephen's victims were through his

deceptive use of false social media accounts posing as a young female. But Stephen's criminal

filings fail to delineate how many of these victims were or were not BBI athletes. Plaintiffs have

not provided any additional evidence or information as to how many of these victims were or

were not BBI athletes.

The Court cannot assume in this case that all or even most of Stephen's victims were BBI

participants. Stephen's access to minors was not limited to his coaching activities at BBI. He

coached athletes outside of BBI (*i.e.* Iowa Mavericks). He performed sports fitness therapy on

minors at Mercy Medical Center. He served as a coach for Upper Iowa University for a period of

time and was not coaching for BBI during that time. He used electronic devices and fictitious

personas to contact minors through the internet. Plaintiffs and their liability expert are unable to

say with any degree of certainty which methods Stephen used to contact his alleged victims to

perpetuate his criminal acts and how many victims he obtained through each method.

Plaintiffs offer mere speculation as to how large the class potentially could be. But

Plaintiffs have not set forth any meaningful way that the parties will be able to ascertain the

number and identity of class members. "Although the identity of individual class members need

not be ascertained before class certification, the membership of the class must be ascertainable."

*Brown v. Kerkhoff*, 279 F.R.D. 479, 496 (S.D. Iowa 2012). It is not likely that federal or state law

enforcement agencies will provide the parties with lists of youth victims and whether they were

participants of BBI. To date, Plaintiffs have not identified to BBI any victims beyond the single

class representative. "A court should not engage in 'an exercise of sheer speculation' when making a finding of numerosity." *Copp*, 2012 U.S. Dist. LEXIS 59634 at \*8 (internal citation omitted). Without knowing the size of the proposed class or having a meaningful way to ascertain its size, the Court must determine it is unable to say whether the class is so large that joinder would be impracticable.

  **b. Alleged Unwillingness To Sue Individually Should Be Given Little To No Weight**

  Iowa DCI Agent Kedley testified at Stephen's sentencing that *some* victims declined to be interviewed by law enforcement but he did not elaborate as to how many declined or how many of those victims, if any, were former or current BBI participants. (emphasis added) (Deft. Appendix 23 – Depo. pg. 141). Plaintiffs have not identified specific individuals/proposed class members who claim to be interested in suing BBI but-for some sort of fear, such as embarrassment or humiliation. To the extent a "fear to sue" is a relevant factor, this Court should view it with limited consideration given the lack of evidence in support of the contention. *See Lucas v. Mike McMurrin Trucking, Inc.*, 2015 U.S. Dist. LEXIS 135338, at \*8 (N.D. Iowa 2015) (finding the Court will give limited consideration to plaintiffs fear of retaliation argument when they have not presented any evidence demonstrating a basis for the argument beyond mere speculation).

  **c. Any Inability To Identify Alleged Class Members Was Not Caused By BBI**

  Contrary to their suggestion, BBI did not fail to maintain records of its participants. BBI's records regarding its athletes were in possession of Stephen and electronically stored by him on his electronic devices. (Deft. Appendix 64). To BBI's knowledge, any such materials were destroyed by law enforcement agencies if such materials existed on Stephen's electronic devices containing child pornography. (Deft. Appendix 65-66).

### d. Geographical Disbursement Of Alleged Class Members Has Not Been Proven

Plaintiffs have not proven the proposed class participants are geographically disbursed to make joinder impracticable. Plaintiffs have only been able to provide BBI with the name of a single victim, the class representative, and that individual is located in Cedar Rapids, Iowa. BBI's team alumni photographs from its website only provides information as to colleges attended by athletes. It does not inform the Court anything about where class members are domiciled or where they currently reside. Most importantly, there is no evidence regarding whether any of the athletes in the team photographs are in-fact victims of Mr. Stephen and therefore part of the proposed class. Without even knowing these athletes qualify for the proposed class it would be an inappropriate, broad generalization for the Court to conclude this evidence shows geographical disbursement of class members to make joinder impracticable.

For all of these reasons, the Court should find that numerosity has not been proven by the Plaintiffs and deny the class certification request.

### 2. Commonality Is Not Satisfied

As noted by the U.S. Supreme Court, the "commonality" factor requiring class wide common questions of law or fact can be easily misread/misinterpreted. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (noting "any competently crafted class complaint literally raises common questions."). The common contentions "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. For the reasons stated in more detail in the "predominance" analysis of this Resistance, the claims of each alleged victim in this case are very particularized and individualized and not subject to class wide resolution.

In support of commonality, Plaintiffs argue the proposed class members have asserted the same legal theories against BBI. However, "[a] proponent of class certification cannot show commonality by demonstrating merely that the class members have all suffered a violation of the same provision of law." *Frazier v. PJ Iowa, L.C.*, 337 F. Supp. 3d 848, 869 (S.D. Iowa 2018) (internal citations omitted). What matters for purposes of commonality is whether common questions and evidence, if proven by the plaintiffs, establishes liability for each of their claims. Proximate causation for the claims alleged against BBI is not capable of such proof in this case.

As noted by the Northern District of Iowa Court, the negligent hiring, retention and supervision analysis set forth by the Iowa Supreme Court in *Godar* indicates there is a "knowledge" element concerning "what the employer knew *at the time of the alleged wrongful conduct* by the employee." (emphasis original) *Stricker v. Cessford Const. Co.*, 179 F. Supp. 2d 987, 1018 (N.D. Iowa 2001). Each class member therefore would need to set forth when, where and how their victimization occurred to be able to establish what information, if any, was known or should have been known by BBI and the connection, if any, between Stephen's coaching activities at BBI and the acts of victimization. As discussed later herein, it is difficult, if not impossible, for those types of issues and questions to be resolved through common evidence or through resolution on a class wide basis. Accordingly, the Court should find that commonality has not been proven by Plaintiffs and deny the class certification.

### 3.   Typicality Is Not Satisfied

Regarding typicality, "[t]he proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Duchardt v. Midland Nat'l Life Ins. Co.*, 265 F.R.D. 436, 445 (S.D. Iowa 2009). "[S]ignificant

factual and legal variations requiring extensive individualized inquiries may impede typicality."

*Id*. at 446 (citing *Elizabeth M. v. Montenez*, 458 F.3d 779, 786-7 (8th Cir. 2006)).

The course of conduct at issue in this case is particularized and individualized to each alleged Plaintiff. The acts at issue committed by Stephen occurred over decades, at varying times, and in various locations/settings. The evidence supports many of Stephen's acts occurred through non-BBI related functions. In example, any victims photographed, recorded or physically abused at Stephen's residence(s), during NBA basketball trips, during basketball camps, and on vacation-style trips occurred during non-BBI functions and events. BBI did not hold events, meetings or practices at Stephen's residence, did not organize or offer trips to its athletes to attend NBA basketball games, did not participate in basketball camps, and did not have vacation-style trips. Additionally, any victims induced to provide nude images or recordings of themselves did so through Mr. Stephen's conduct from his own personal and private electronic devices. There is no evidence BBI provided any such devices for Stephen to use. Additionally, Stephen victimized youths in a variety of different ways, ranging from covert recordings taken without their knowledge, physical unwanted touching, and inducing youths to record themselves and provide images and recordings to him under the ruse that he was a young female.

For these reasons, the Court should find that typicality has not been proven by Plaintiffs and deny class certification.

### 4.   Adequacy Is Not Satisfied

It is questionable whether the Plaintiff representative can adequately protect the interests of the entire proposed class. The Plaintiff representative is an alleged victim of secretive pictures or recordings Stephen took of him without his knowledge. However, the Plaintiff

representative's experience is not necessarily the same as others in the proposed class. In

example, Stephen's criminal proceedings indicate there were victims who were induced by

Stephen (posing as a young female through online personas) to send him images and recordings

of themselves engaging in sexual acts, such as masturbation. There were also "hands-on" victims

who were physically touched by Stephen instead of, or in addition to, being photographed or

recorded. There is a lack of evidence in this case regarding how many times or on how many

occasions each victim was victimized. The differing nature of these types of conduct and

experiences potentially leads to a conflict of interest between the various Plaintiffs regarding trial

strategy, alleged damages and the values of their respective claims.

## B.  Rule 23(b)(3) Requirements

### 1.  Individual Issues Predominate Any Common/Class Wide Issues

The Hon. Judge Robert Pratt adequately summarized the predominance analysis under

Rule 23(b)(3) as follows:

> The predominance requirement "'tests whether proposed classes are
> sufficiently cohesive to warrant adjudication by
> representation.'" *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th
> Cir. 2005) (quoting *Amchem Prods., Inc.,* 521 U.S. at 623). "The
> predominance inquiry requires an analysis of whether a prima facie
> showing of liability can be proved by common evidence or whether
> this showing varies from member to member." *Halvorson v. Auto-
> Owners Ins. Co.,* 718 F.3d 773, 778 (8th Cir.
> 2013) (citing *Avritt,* 615 F.3d at 1029); *accord Novak v. Home
> Depot U.S.A., Inc.,* 259 F.R.D. 106, 114 (D.N.J. 2009) (holding that
> to satisfy predominance, the party seeking certification must "show
> that the essential elements of the cause of action are capable of proof
> through evidence that is common to the class, rather than evidence
> that is unique to each individualized class member").
>
> Thus, "[i]f, to make a prima facie showing on a given question, the
> members of a proposed class will need to present evidence that
> varies from member to member, then it is an individual
> question." *Avritt,* 615 F.3d at 1029 (quoting *Blades,* 400 F.3d at
> 566); *cf. Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1433, 185 L.

> Ed. 2d 515 (2013) ("[Because respondents' model falls far short of establishing that damages are capable of measurement on a classwide basis, . . . [q]uestions of individual damage calculations will inevitably overwhelm questions common to the class."). "If, [on the other hand,] the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Avritt,* 615 F.3d at 1029 (quoting *Blades,* 400 F.3d at 566). In determining "whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings, . . . so . . . as to determine whether, given the factual setting of the case, if the plaintiffs general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Blades,* 400 F.3d at 566 (internal citations omitted).

*Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 346-7 (S.D. Iowa 2013).

Proximate causation between Stephen's employment and his acts of victimization cannot be readily proven on a class wide basis. Stephen's acts of victimization occurred across decades, in various locations (including during activities/events that were not part of BBI's operations), and under varying circumstances. A fact finder will need to know when, where and how the incidents occurred to be able to determine if there is a causal link between those incidents to the alleged negligence of BBI.

The evidence supports the "vast majority" of Stephen's victims resulted from his use of fake online personas. There is no evidence to link those actions or conduct to BBI's hiring, supervision or retention of Stephen. There is no evidence BBI knew or should have known Stephen was posing as a young female online to solicit/induce youth males to provide him with sexually explicit images or video recordings. Stephen's use of fictitious online personas was done in such a manner to disguise what he was doing and to evade detection, including from anyone at BBI.

The evidence also supports that at least some of Stephen's victims were photographed or recorded through covert electronic devices that he purchased and installed in his residence(s) and/or in hotel rooms. There is no evidence BBI knew or should have known Stephen purchased

13

and was using such devices which are, by their nature, intended to escape detection. There is also evidence that hotel rooms were used by Stephen regarding non-BBI events/activities, such as basketball camps, NBA game trips, and vacation-style trips.

Analogous cases have found individual issues predominate in proposed sexual abuse class actions, and the predominance requirement of Rule 23 therefore fails. Recently the New York Southern District Court found a proposed class action settlement in the Harvey Weinstein sexual abuse case contained individual questions that predominated over common questions because class members were abused/harmed in different manners, in different locations, and across a span of decades. *See Geiss v. Weinstein Co. Holdings LLC*, 474 F. Supp. 3d 628, 636 (S.D.N.Y. 2020). This is very similar to the facts and circumstances surrounding Stephen's victims. Similarly, the Eastern District of Michigan Court denied class certification brought by former or current female prisoners claiming discrimination, sexual abuse and degrading treatment through alleged failures of the prison to properly train and supervise male guards. *Mason v. Granholm*, 2007 U.S. Dist. LEXIS 64992, at *2-3 (E.D. Mich. 2007). The *Mason* court held "individualized issues of proof with respect to both liability and damages predominate" and, notwithstanding proof of a common policy/practice of sexual misconduct and retaliation, each Plaintiff will have to demonstrate individualized harm and damages. *Id*. at *8-9.

## 2.  Class Action Is Not Superior To Individual Suits

Superiority means that advancing the case through a broad class is a superior means of adjudication over individual, separate suits. "The individualized determinations necessary to decide whether any individual would even belong in the class or could establish liability or damages demonstrate that individuals have a strong interest in controlling the prosecution of separate actions." *Rattray v. Woodbury County*, 253 F.R.D. 444, 464 (N.D. Iowa 2008), *aff'd*,

614 F.3d 831 (8th Cir. 2010). This holding from *Rattray* exemplifies why this type of case is not suitable for class action status.

As previously discussed, there are significant individualized determinations necessary to decide whether individuals belong in the proposed class and to resolve the issue of liability against BBI. Additionally, the claims for damages in this case are very individualized. The compensatory damages sought by Plaintiffs is primarily for emotional distress. There is no one-size-fits-all, formulaic or scientific method that can be applied on a class wide basis for emotional distress damages. An experience that is very emotionally distressing to one individual may only be minimally distressing to another, or even not distressing at all.

The individualized issues in this case are substantial and it is more superior to try the cases individually rather than as a class. Simply bifurcating all the individualized issues will result in having separate, mini-trials for each individual Plaintiff. This would be the same effect as if each Plaintiff filed separate, individualized lawsuits and shows why proceeding as a class is inferior in this case.

For all of these reasons, the Court should find Plaintiffs have failed to establish its burden under Rule 23(b)(3) and deny class certification.

**WHEREFORE**, Defendant, Barnstormers Basketball, respectfully requests the Court DENY Plaintiffs' Motion for Class Certification and for such other and further relief the Court deems equitable and just.

BETTY, NEUMAN & McMAHON, P.L.C.


By:   */s/ Martha L. Shaff*
　　　　Martha L. Shaff　　　　　　　#AT0007215

By:   */s/ Brandon W. Lobberecht*
Brandon W. Lobberecht        #AT0011918

1900 East 54th Street
Davenport, IA 52807-2708
T: 563-326-4491
F: 563-326-4498
E: mls@bettylawfirm.com
   bwl@bettylawfirm.com

**ATTORNEYS FOR DEFENDANT,
BARNSTORMERS BASKETBALL, INC. d/b/a
BARNSTORMERS BASKETBALL OF IOWA**

## CERTIFICATE OF SERVICE FOR ELECTRONIC FILINGS

I hereby certify that on _____ March 31, 2021 _____, I electronically filed the foregoing document with the Clerk of Court using the ECF system and a true copy of the foregoing was served either electronically or by U.S. First Class Mail upon the following:

Guy R. Cook
Adam D. Zenor
Michael C. Kuehner
Michael D. Currie
Grefe & Sidney, P.L.C.
500 E. Court Ave., Suite 200
Des Moines, IA  50309
T: 515-245-4300
F: 515-245-4452
E: gcook@grefesidney.com
   azenor@grefesidney.com
   mkuehner@grefesidney.com
   mcurrie@grefesidney.com
**ATTORNEYS FOR PLAINTIFFS**

Jeffrey L. Goodman
Nicole L. Keller
Goodman Law, P.C.
1501 W. 42nd Street, Suite 300
West Des Moines, IA  50266
T: 515-267-8600
F: 515-224-2075
E: jeff@golawpc.com
**ATTORNEYS FOR DEFENDANT,
AMATEUR ATHLETIC UNION OF
THE UNITED STATES, INC.**

16

Connie Alt
Shuttleworth & Ingersoll, P.L.C.
115 3rd Street SE, #500
Cedar Rapids, IA  52401
T: 319-365-9461
F: 319-365-8443
E: cma@shuttleworthlaw.com
   dlo@shuttleworthlaw.com

Matthew A. Levin *(Pro Hac Vice)*
Stanton R. Gallegos *(Pro Hac Vice)*
Markowitz Herbold P.C.
1455 SW Broadway, Suite 900
Portland, OR  97201
T: 503-295-3085
F: 503-323-9105
E: stantongallegos@markowitzherbold.com
   mattlevin@markowitzherbold.com
**ATTORNEYS FOR ADIDAS AMERICA, INC.**


_____*/s/ Martha L. Shaff*_____