IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
(EASTERN DIVISION)

| | |
|---|---|
| JOHN DOE, and all others similarly situated, | CASE NO. 3:20-CV-0005-JAJ-CFB |
| Plaintiffs, | |
| v. | |
| GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC., and ADIDAS AMERICA, INC., | **PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION** |
| Defendants. | |

COMES NOW, Plaintiff John Doe, by and through the undersigned counsel, and submits his renewed motion for class certification pursuant to Federal Rule of Civil Procedure 23.[1]

## I.      INTRODUCTION

On March 1, 2021, Plaintiff filed a Motion for Class Certification. Defendant Barnstormers Basketball, Inc. ("BBI") filed its Resistance to Plaintiff's Motion for Class Certification on March 31, 2021. Plaintiff filed its reply on April 7, 2021. A hearing was held on May 3, 2021. On May 24, 2021, the Court denied Plaintiff's Motion for Class Certification without prejudice based on the conclusion that Plaintiff's proposed class was overbroad. In doing so, the Court granted

---

[1] Most of the analyses pertaining to individual elements required by Rule 23 were not affected by the amended class definition. Where an analysis has changed, it is addressed herein. That being said, Plaintiff incorporates its original motion for class certification (Pl.'s Mot. Class Cert., ECF No. 58) and reply (Reply Def.'s Resis. Class Cert. & Req. Evidentiary Hearing, ECF No. 60) by reference as if fully set forth herein.

1

Plaintiff the opportunity to recraft the proposed class. For the reasons set forth below, Plaintiff respectfully requests that the Court grant its Renewed Motion for Class Certification.

## II.       FACTUAL BACKGROUND

A comprehensive factual background is provided in Plaintiff's original motion for class certification. (Pl.'s Mot. Class Cert., ECF No. 58). For ease of reference, the pertinent facts for class certification purposes are as followed:

- Barnstormers Basketball, Inc ("BBI") is a non-profit corporation founded/organized under the laws of the State of Iowa in 2004. (App. 1-2; Articles of Incorporation).

- BBI fields club basketball teams for local youth athletes ranging from 4th through 11th grade. (App. 10; Johnson Depo, p. 109; lines 18-25).

- From approximately March to July, BBI's teams travel to various tournaments around the country to compete against other traveling club teams. (App. 4 and 12; Johnson Depo, p. 32; lines 12-22 and p. 136; lines 20-23).

- Jamie Johnson, the founder and director of BBI, hired Greg Stephen in 2005 to help coach/run the program. (App. 6; Johnson Depo, p. 40; lines 16-25).

-  On April 5, 2018, Stephen was indicted by a Grand Jury in the United States District Court for the Northern District of Iowa and was charged with violating Title 18 U.S.C. §§ 2252(a)(1) and 2252(b)(1), for acts related to the transportation of child pornography. (App. 42-43; Stephen Indictment).

- A superseding indictment was filed on June 27, 2018. (App. 44-51; Stephen Superseding Indictment).

- On June 28, 2018, Stephen was arraigned and charged with seven counts, including five counts of Sexual Exploitation of a Minor – Production of Child Pornography, in violation

of 18 U.S.C. § 2251(a) & (e), one count of Possession of Child Pornography in violation of 18 U.S.C. 20 § 2252(a)(4)(B), and one count of Transporting Child Pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(2).

- The criminal investigation into Greg Stephen's conduct revealed he had "sexually exploited more than 400 minor boys by way of covertly obtaining nude images of them." (App. 87; Kedley Affidavit dated 6/21/21, p. 3; ¶ 1).

- In reviewing Greg Stephen's computer files, it was discovered "Greg Stephen had individually organized folders for the illicit images on a per victim basis. In other words, Stephen labeled each folder with the name of the victim associated with the illicit photographs." (App. 88; Kedley Affidavit dated 6/21/21, p. 2; ¶ 6).

- The 400+ victims were "positively identified, contacted, and assigned a victim identification number." (App. 88; Kedley Affidavit dated 6/21/21, p. 2; ¶ 7).Upon being informed they had been sexually exploited by Greg Stephen the "overwhelming majority (if not all) of the victims" exhibited what law enforcement interpreted to be "high levels of embarrassment, shame, and/or other forms of mental anguish." (App. 84; Kedley Affidavit dated 5/3/21, p. 2; ¶ 7).

- The "vast majority of the 400+ minor victims were, or at one time were, members of the Iowa Barnstormers and/or Iowa Mavericks youth basketball programs." (App. 83; Kedley Affidavit dated 5/3/21, p. 1; ¶ 5).

- "Of the 400+ victims, there were more individuals identified that were affiliated with the Iowa Barnstormers than there were affiliated with the Iowa Mavericks." (App. 88; Kedley Affidavit dated 6/21/21, p. 2; ¶ 7).

- Law enforcement concluded "Greg Stephen used his position of trust and recognition as a youth basketball coach to gain access to minors and perpetrate his crimes." (App. 88; Kedley Affidavit dated 6/21/21, p. 2; ¶ 7).

- On October 18, 2018, a plea agreement was filed wherein Stephen admitted to all of the aforementioned charges (App. 27-33; Stephen Plea Agreement), as well as secretly taking, recording, or soliciting visual depictions of the 400 minor boys identified on his computer files. (App. 30; Stephen Plea Agreement, p. 6; sub ¶ "e").

## III.    AMENDED PROPOSED CLASS

Plaintiff John Doe proposes to certify the following class:

All past or present Barnstormer Basketball, Inc. participants who:

1.      were affiliated with a Barnstormer Basketball, Inc. team at any point in time between 2005 and April 5, 2018 while Greg Stephen was involved with the organization; and

2.      fell victim to Greg Stephen's illicit acts of secretly procuring nude images and/or recordings of minors.

The proposed class definition meets each and every parameter outlined by the Court in its May 24, 2021 Order. Specifically, it (1) excludes Iowa Mavericks players who did not play on a BBI team; (2) explicitly tailors the class to individuals who were affiliated with a Barnstormer Basketball, Inc. team; (3) excludes individuals who did not play on a BBI team while Greg Stephen was involved with the organization; and (4) is not reliant on obtaining a list of victims created by law enforcement agencies during their investigation.

## IV.    ARGUMENT

### A.    Legal Standard

Class certification is controlled by Federal Rule of Civil Procedure 23, which requires that a class action satisfies the four elements of Rule 23(a), and at least one of the provisions of Rule

23(b). District Courts are tasked with engaging in a "rigorous analysis to ensure that the requirements of Rule 23 are met." *Bennet v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011). That being said, "there are limits to a court's analysis of the merits of a matter at the class certification stage. A court's inquiry on a motion for class certification is tentative, preliminary, and limited." Cope v. Let's Eat Out, Inc., 319 F.R.D. 544, 551 (W.D. Mo. 2017) (citing *In re Zum Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011)).

### B. The proposed class satisfies the requirements of Rule 23(a)

Pursuant to Rule 23(a), a class must satisfy the requirements of "numerosity, commonality, typicality, and fair and adequate representation." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013).

#### 1. Numerosity

##### a. Legal Standard

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed R. Civ. P. 23(a)(1). It does not require the "impossibility of joinder." *United States Fid. & Guar. Co. v. Lord,* 585 F.2d 860, 870 (8th Cir.1978). Evidence of the exact number of the class is not required. *See Frazier v. PJ Iowa, L.C.*, 337 F. Supp. 3d 848, 869 (S.D. Iowa 2018); 1 *Newberg on Class Actions*, § 3:13 (5th ed. 2019).

##### b. Analysis

The numerosity analysis from Plaintiff's original motion for class certification is essentially the same. The only portion of the analysis potentially affected by the modified class definition is the size of the prospective class. As articulated by Special Agent Ryan Kedley, the lead investigator assigned to oversee the investigation into Greg Stephen's criminal conduct at issue in this lawsuit, the vast majority of the 400+ victims were affiliated with the Iowa

Barnstormers and/or Iowa Mavericks. (App. 83; Kedley Affidavit dated 5/3/21, p. 1; ¶ 5). Moreover, there were more individuals identified that were affiliated with the Iowa Barnstormers than there were affiliated with the Iowa Mavericks. (App. 88; Kedley Affidavit dated 6/21/21, p. 2; ¶ 7). The modified proposed class easily surpasses the 40-member threshold. *See Murphy v. Piper*, 2017 WL 4355970, at \*3 (D. Minn. 2017) (quoting Newberg on Class Actions) ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone."). Thus, as fully outlined in Plaintiff's original motion for class certification, joinder is impracticable due to (1) the size of the prospective class; (2) the willingness and ability of prospective class members to bring a claim individually; (3) the inability to identify all potential class members; and (4) the geographical disbursement of the prospective class.

### 2. Commonality

#### a. Legal Standard

Under Rule 23(a)(2), before a court may certify a class, it must find that "there are questions of law or fact common to the class. "Commonality is not required on every question raised in a class action." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Instead, commonality is present when a legal question "linking the class members is substantially related to the resolution of the litigation." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982). Only a single common question is required. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Vernon Gries v. Stand. Ready Mix Concrete, L.L.C.*, 2009 WL 427281, at \*7 (N.D. Iowa Feb. 20, 2009). The commonality requirement is generally easily satisfied. 1 *Newberg on Class Actions*, § 3:20 (5th ed. 2019); *Vernon Gries v. Stand. Ready Mix Concrete, L.L.C.*, 2009 WL 427281, at \*7 (N.D. Iowa Feb. 20, 2009).

### b. Analysis

The commonality analysis from Plaintiff's original motion for class certification is not affected by the amended class definition. The proposed class satisfies the Rule 23(a)(2) commonality requirement. While only one common question of law or fact is required, as fully outlined in the predominance analysis, this case has several, including but not limited to:

- The applicable standard of care applicable to youth serving organizations in regards to hiring, retaining, and supervising its coaches;

- Whether BBI breached the applicable standard of care;

- Whether BBI knew or should have known of Greg Stephen's unfitness;

- Whether BBI's negligent hiring, retention, and/or supervision proximately caused the resulting injuries;

- Whether an employment or agency relationship between BBI and Greg Stephen.

Each of the aforementioned issues is common to the class. Specifically, they will be answered by referencing the organization's overarching hiring, retention, and supervision policies and procedures that applied indistinguishably to each and every class member. *J.S.X. Through Next Friend D.S.X. v. Foxhoven*, 330 F.R.D. 197, 209 (S.D. Iowa 2019) ("It is well-established that when policies and practices 'uniformly subject members of the putative class to a *substantial risk of serious harm*,' commonality is satisfied even if the 'presently existing risk may ultimately result in different future harm for different [class members] ranging from no harm at all to death.'") (internal citations omitted).

### 3. Typicality

#### a. Legal Standard

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). This requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff." *Postawko v. Missouri Dept. of Corrections*, 910 F.3d 1030, 1039 (8th Cir. 2018) (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.* (quoting *Alpern v. UtiliCorp United, Inc.*, 84 F.3d. 1525, 1540 (8th Cir. 1996)).

#### b. Analysis

The typicality analysis remains the same. Plaintiff's claims are identical to the prospective class in that they arise from the same course of conduct and rely on the same legal theories. At the certification hearing, the Court questioned whether the variances in factual circumstances amongst class members (variances in location of victimization, variances in the number of illicit photographs, and variances in injury severity) defeats typicality. The Eighth Circuit has consistently held these kinds of variances among class members do not defeat typicality. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562 (8th Cir. 1982) (A group of African American persons alleged they were denied promotions or given lesser promotions. The Court concluded the typicality requirement was satisfied even though the class members worked different jobs, had different qualifications, and were exposed to different promotional opportunities); *Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 370 (E.D. Ark. 2007) (A group of unsuccessful African American applicants filed Title VII claiming Defendant's hiring practices were discriminatory.

Even though each class member's claim relied on subjective hiring decisions made by different hiring managers, typicality was satisfied because each class member was exposed to the same general course of conduct and relied on the same legal theory); *Mathers v. Northshore Mining Co.*, 217 F.R.D. 474, 486 (D. Minn. 2003) (Typicality requirement satisfied in suit by female employees alleging gender discrimination even though the class was composed of employees working in eight different departments, and class members were subjected to varying degrees of discrimination, including disparities in overtime, promotions, and compensation); *Robinson v. Sears, Roebuck and Co.*, 111 F. Supp. 2d 1101, 1124 (E.D. Ark. 2000) (Because the alleged employment discriminatory acts and the legal theories were "essentially the same between class members," typicality was satisfied even though class members were each exposed to a unique set of individualized circumstances giving rise to their discrimination claims); *Perez-Benites v. Candy Brand*, LLC, 267 F.R.D. 242, 249 (W.D. Ark. 2010) ("The fact that each class member may be owed a different amount of money or back wages does not defeat class certification."). Other jurisdictions have followed suit. *See e.g.*, *Klein v. O'Neal, Inc.*, 222 F.R.D. 564, 567 (N.D. Tex. 2004) ("Individual variations among class members' claims with respect to individual causation, medical history, general health, extent of injury, or damages, do not defeat typicality, provided that the claims arise from the same events or course of conduct and are based on the same legal theories."). Therefore, because the class members' claims arise from the same course of conduct and rely on the same legal theories, typicality is satisfied.

### 4. Adequacy

#### a. Legal Standard

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." In other words, Rule 23(a)(4) is satisfied if the representatives "have

common interests with the members of the class, and . . . will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982).

### b.    Analysis

The adequacy analysis remains the same. The named Plaintiff in this case is an adequate representative because he shares the prospective class's interest in establishing liability and obtaining compensatory and punitive damages from Defendants. Plaintiff is a member of the class he represents in that he was (1) affiliated with an Iowa Barnstormer team during Greg Stephen's tenure; (2) exposed to the same negligent conduct and policies (hiring, retention, and supervision); and (3) was a victim of Greg Stephen's illicit acts of secretly procuring nude images and/or recording. At the certification hearing, the Court posed the question as to whether the variances in factual circumstances amongst class members (variances in location of victimization, variances in the number of illicit photographs, and variances in injury severity) defeats adequacy. Again, the Eighth Circuit has consistently held these kinds of variances among class members do not defeat adequacy. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562 (8th Cir. 1982) (A group of African American persons alleged they were denied promotions or given lesser promotions. The Court concluded the adequacy requirement was satisfied even though the class members worked different jobs, had different qualifications, and were exposed to different promotional opportunities); *J.S.X. Through Next Friend D.S.X. v. Foxhoven*, 330 F.R.D. 197, 209 (S.D. Iowa 2019) (Where class members were challenging the adequacy of a school's mental health care services, adequacy satisfied even though class members were not necessarily harmed by the same specific service. The Court reasoned that all class members are "challenging broad policies and practices that apply equally to all class members."); *see also* 1 *Newberg on Class Actions*, § 3:60

(5th ed. 2019) ("The size of a plaintiff's individual claim as compared to those of other class members is immaterial to the adequacy inquiry under Rule 23."). Nor does the prospect of a "fixed pie" with regard to insurance proceeds defeat adequacy. *See e.g.*, *Mell v. Anthem, Inc.*, 264 F.R.D. 312, 318 (S.D. Ohio 2009) (Holding that the "pie argument" is not a factor when considering adequacy. An alternative conclusion "would make all actions with limited funds uncertifiable, a result clearly contrary to Rule 23((b)(1)(B)."). Therefore, because Plaintiff is challenging the overarching policies of BBI (negligent hiring, retention, and supervision) that equally applied to other class members, adequacy is satisfied.

## C. The proposed class satisfies the requirements of Rule 23(b)(3)

Rule 23(b)(3) provides that a class seeking money damages may be certified if:

> the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3) (emphasis added).

### 1. Predominance

#### a. Legal Standard

Rule 23(b)(3) requires "that questions of law or fact common to class members predominate over any questions affecting only individual members." The Eighth Circuit has succinctly articulated the predominance requirement as follows:

> The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Certification is appropriate if "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, —— U.S. ——, 136 S.Ct. 1036, 1045, 194 L.Ed.2d 124 (2016) (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:49, at 195–96 (5th ed. 2012)). A class may be certified based on common issues "even though other important matters will have to be tried separately, such as damages or

some affirmative defenses peculiar to some individual class members." *Id.* (quoting 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1778, at 123–24 (3d ed. 2005)).

*Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 374–75 (8th Cir. 2018).

"An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, ⸺ U.S. ⸺, 136 S.Ct. 1036, 1045, 194 L.Ed.2d 124 (2016). The predominance inquiry ultimately turns on "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

### b.    Plaintiff's Liability Theory

Plaintiff claims BBI was negligent in the hiring, retention, and supervision of Stephen. Pursuant to Iowa law, to establish a claim for negligent hiring, Plaintiffs must establish:

1.    that the employer knew or in the exercise of ordinary care should have known of its employee's unfitness at the time of hiring;

2.    that through the negligent hiring, the employee's incompetence, unfitness, or dangerous characteristics proximately caused the resulting injuries; and

3.    that there is some employment or agency relationship between the tortfeasor and the defendant employer.

*Godar v. Edwards*, 588 N.W.2d 701, 708 (Iowa 1999).

To bring a claim for negligent supervision and retention, a plaintiff must prove similar elements except he or she must show the employer knew, or in the exercise of ordinary care should have known, of the employee's unfitness at the time the employee engaged in the wrongful or tortious conduct. *See Stricker v. Cessford Construction Co*., 179 F. Supp. 2d 987, 1018-19 (N.D. Iowa 2001). To establish a claim for negligent hiring, supervision, and/or retention, plaintiff must

present "evidence of a specific standard of care" and its breach. *Alcala v. Marriott Intern., Inc.*, 880 N.W.2d 699, 708 (Iowa 2016).

Although a merits determination is not required at the certification stage, it is clear BBI was negligent in the hiring, retention, and supervision of Stephen. The unrefuted evidence[2] shows industry standards required, amongst other things, an adequate screening of Stephen's background to ensure he didn't exhibit common pedophilic traits. Industry standards further required ongoing supervision to ensure Stephen didn't exhibit pedophilic traits during his tenure with the organization. BBI did not abide by industry standards. In fact, BBI had no policies or procedures governing the hiring, supervision, or retention of its coaches. Had BBI abided by industry standards, it would have discovered:

- Stephen had a history of centering his work life and free time around minor boys (basketball coach, youth camp director, youth athletic trainer, etc.);

- Stephen had no kids and/or family of his own;

- Despite having no kids of his own, Stephen had no identifiable hobbies outside of being a volunteer youth basketball coach and spending time with minor boys at his lake home;

- Stephen had no identifiable friends or dating interests outside of youth basketball;

- Stephen exhibited a preference to hang out with minor boys over someone his age;

- BBI witnessed Mr. Stephen exhibiting controlling behavior over youth participants under his supervision;

- BBI was aware Stephen spent alone time with youth participants;

- Stephen's brother was a registered sex offender;

---

[2] Defendant has not retained and/or designated any experts in this case to challenge Plaintiff's expert Michelle Peterson's opinions regarding the requisite standard of care.

- Stephen frequently hung out with minor male athletes outside of organized practices and trips, including welcoming minors into his home and bringing them on out-of-town trips;

- Stephen exhibited interests relatable to minors;

- Stephen engaged in public, peer-to-peer banter with minors on social media, including inquiries into who the minors hung out with at school and players saying, "I love you."

- Stephen provided gifts to minor athletes.[3]

As cited by Plaintiff's expert Michelle Peterson, Anna C. Salter, PhD,[4] in her book published in 2004 titled, *Predators: Pedophiles, Rapists, and other Sex Offenders*, provides the following example pertaining to pre-arrest signs exhibited by convicted pedophiles.

> A man who had no family of his own and did not appear to date adults of either sex had become affiliated with a group that sponsored youth activities. He not only took kids on trips and activities but also welcomed them to his home at other times as well. He had several arcade machines that the kids could play for free. There were always teenage boys hanging around, and they were often invited to spend the night, even the weekend. But girls were never invited over.

Dr. Salter calls the aforementioned scenario an "obvious and extreme" example of a person who should not be left in the care and custody of youths. As outlined in Ms. Peterson's report, Stephen exhibited traits consistent with Dr. Salter's scenario, making him an "obvious and extreme" risk to BBI youth participants. (Pl. App. 62; Michelle Peterson Expert Report). Given the open and obvious risk posed by Stephen, he should not have been granted continued access to BBI youth participants.

---

[3] *See* App. 52-65 (Michelle Peterson Expert Report) for full list of identifiable pedophilic traits exhibited by Stephen.
[4] Of note, opinions from Anna C. Salter, PhD were offered by the U.S. Attorney's Office and discussed at Greg Stephen's sentencing hearing. Dr. Salter is a well-recognized expert on sexual predators/pedophiles. She obtained her PhD from Harvard University.

**c.** **Analysis**

The amended class definition did not change the predominance analysis. As fully outlined in Plaintiff's original motion for class certification, this case has several issues susceptible to class wide proof, including but not limited to:

- The applicable standard of care applicable to youth serving organizations in regards to hiring, retaining, and supervising its coaches;

- Whether BBI breached the applicable standard of care;

- Whether BBI knew or should have known of Greg Stephen's unfitness;

- Whether BBI's negligent hiring, retention, and/or supervision proximately caused the resulting injuries;

- Whether an employment or agency relationship between BBI and Greg Stephen;

- whether a coach/person of authority obtaining nude photographs of Plaintiff and the prospective class would be "offensive to a reasonable person";

- Whether BBI's conduct resulted in a willful and wanton disregard for the rights or safety of its youth participants.

As cited in Plaintiff's original motion for class certification, numerous courts have found predominance satisfied in analogous fact patters. This is far from an exhaustive list. *See e.g.*, *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 538 (N.D. Cal. 2012) (Certifying a class of female employees in action against their employer seeking compensatory damages for gender discrimination in the employer's promotion and management practices. Even though liability required each person to individually prove they were discriminated against based on their unique circumstances, because the employer had companywide policies that allegedly caused disparity in promotion, common issues "dwarf[ed]" individual issues. As a result, predominance was

15

satisfied); *see also In re Johnson*, 760 F.3d 66, 75 (D.C. Cir. 2014) (Certifying a class of African Americans who sought back pay and compensatory damages as a result of not receiving promotions from defendant in the period from 1995 to 2005. Common issues predominated because class members theory was based on defendant engaging in an organization wide pattern or practice of racial discrimination that similarly affected all class members).

To defeat predominance, Defendant relies on the meritless suggestion that individual inquires are necessary given the fact that the specific act of Stephen secretly photographing the minors occurred over an extended period of time and in various locations. Plaintiff's theory is not based on the suggestion that Defendant should have uncovered the specifics of each particular instance in which Stephen perpetrated his criminal activity (i.e., secretly recording nude minors). As fully outlined in Michelle Peterson's expert report, sexual predators infiltrating youth sports programs is a known risk. (Pl. App. 55-57; Michelle Peterson Expert Report). Voyeurism is a known tactic used by sexual predators who infiltrate youth sports. (Pl. App. 72; Michelle Peterson Depo p. 88, lines 12 – 18). Given the inherently secret nature of sexual predator conduct, the requisite standard of care focuses on/requires youth serving sports organizations to implement overarching policies and procedures to prevent persons who have a sexual interest in minors from infiltrating their program and engaging in known pedophile activities such as voyeurism (Pl. App. 59-63; Michelle Peterson Expert Report).[5] As illustrated by the numerous cases cited by Plaintiff (herein and in its original motion for class certification), the fact that the specific act of Stephen secretly photographing the minors occurred over an extended period of time and in various locations does not defeat predominance.

---

[5] Of note, the AAU Handbook applicable to BBI's program specifically identifies voyeurism as a known risk/tactic used by pedophile.

### 2. Superiority

#### a. Legal Standard

Rule 23(b)(3) also requires Plaintiff to show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). As recently noted by the United States District for the Southern District, the superiority analysis requires the Court to "compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Guy v. Ford Storage & Moving Co.*, 2019 WL 4804644, at *16 (S.D. Iowa Aug. 9, 2019) (citations omitted). Rule 23(b)(3) provides the following factors to aid the Court in its analysis:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed R. Civ. P. 23(b)(3)(A)-(D).

#### b. Analysis

The superiority analysis remains the same. As articulated in Plaintiff's original motion for class certification and illustrated in the cases cited therein,[6] the facts of this case satisfy the factors provided by Rule 23(b)(3).

---

[6] In addition to the case law specifically cited under the superiority heading, the cases cited under the predominance heading also discuss superiority and further support a finding of superiority in this case.

### D.    The Proposed Class is Ascertainable

Although Rule 23 does not explicitly address the question, in addition to satisfying the requirements of Rule 23(a) and 23(b), the 8th Circuit has generally recognized that a proposed class definition must be ascertainable, meaning that it must be "adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir, 2016 (citation omitted). This simply requires that class members can "be identified by reference to objective criteria." *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017). The issue pertains simply to the "class definition itself." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). It is not an analysis into "whether, given an adequate class definition, it would be difficult to identify particular members of the class." *Id*.; *see also J.S.X. Through Next Friend D.S.X. v. Foxhoven*, 330 F.R.D. 197, 206 (S.D. Iowa 2019) ("Ascertainability does not require that a plaintiff must be able to identify all class members at the time of class certification; rather, a plaintiff need only show that class members can be identified.") (quotation omitted).[7] In this regard, "[t]he standard for ascertainability is not demanding." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 353 (S.D.N.Y. 2015) (internal citations omitted).

In this case, whether someone was affiliated with a Barnstormer team is a verifiable fact. This determination does not necessitate a merits inquiry or consideration of an individual class member's state of mind. To the contrary, the definition contemplates plainly objective criteria that can be verified for each class member who comes forward to make a claim. Specifically, there are numerous mechanisms permitting class members to objectively confirm their affiliation with a

---

[7] Indeed, Rule 23(c)(2) specifically allows for situations in which the specific identify of class members is unknown, requiring that absent class members be given the best "notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Barnstormer team, including but not limited to; (1) rosters posted on BBI's website;[8] (2) public photographs displayed on BBI's numerous social media accounts;[9] (3) past correspondence from Greg Stephen and/or other BBI agents confirming their affiliation with a BBI team;[10] (4) Jamie Johnson's sworn testimony confirming the identity of certain Barnstormer players; (5) receipts confirming payment of the fees associated with being a member of a BBI team; (6) AAU registration information identifying a player's affiliation with a BBI team.[11]

Likewise, whether or not a class member fell victim to Greg Stephen's illicit acts is a verifiable fact. Subsequent to Greg Stephen's arrest, it was discovered he had individually organized folders for the illicit images on a per victim basis, individually labeling each folder with the name of the victim associated with the images. (App. 87; Kedley Affidavit dated 6/21/21, p. 1; ¶ 4). Pursuant to the requirements enumerated in 18 U.S.C. § 377[12], the victims were positively identified, contacted, and assigned a victim identification number. (App. 88; Kedley Affidavit dated 6/21/21, p. 2; ¶ 6). By way of illustration, victims received official correspondence from the U.S. Attorney's office confirming their status as a victim. (App. 81-82; U.S. Department of Justice correspondence sent to Plaintiff John Doe). Therefore, the determination as to whether a class member was a victim of Greg Stephen's illicit acts can be objectively verified for each class

---

[8] BBI lists over 100 past and present BBI players on its website dating back to 2007. https://barnstormersbasketball.com/alumni/

[9] BBI has posted hundreds of photographs on public social media platforms of past and present BBI players (including multiple team photos) dating back to 2006 (Stephen's first season with the program). *See* https://www.facebook.com/gostormers/

[10] As illustrated in the attached correspondences, BBI communicated directly with its players through a number of channels, including text message, email, Team Snap, *etc.* to relay team related messages. (App. 89-92; Correspondences from Greg Stephen to BBI players and family members).

[11] Each BBI participant was required to be an AAU member. The AAU application requires players to indicate what club team they are affiliated with. https://play.aausports.org/joinaau/membershipapplication.aspx AAU's website allows individuals to look up their membership information. https://find.aausports.org/ArticalView/ArtMID/10914/ArticleID/398?sSport_cd=ZZ&district=NO

[12] Pursuant to 18 U.S.C. § 3771(a)(10), law enforcement was required to contact victims and inform them of certain rights.

member who comes forward to make a claim by way of the individual providing objective evidence from the U.S. Attorney's office.[13]

## V.  CONCLUSION

At the hearing for class certification, the Court asked the undersigned to provide the Court a one sentence response as to why this class should be certified. Simply put, resolution of the issues uniquely common to all class members drives the resolution of this action. This case resolves once the issues common to all class members are determined.

For the reasons set forth herein, Plaintiff respectfully asks this Court to (1) certify the class described in this motion; and (2) appoint Grefe & Sidney, P.L.C. as class representatives.

**Certificate of Service**

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys listed as receiving notice on June 23, 2021, by CM/ECF.

*/s/  Guy R. Cook*

Copies to:

Martha L. Shaff
Brandon W. Lobberecht
Betty, Neuman & McMahon, P.L.C.
1900 East 54th Street
Davenport, IA 52807-2708
martha.shaff@bettylawfirm.com
brandon.lobberechtl@bettylawfirm.com

ATTORNEYS FOR DEFENDANT, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA

Matthew A. Levin, *Pro Hac Vice*
Stanton Gallegos, *Pro Hac Vice*
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
MattLevin@MarkowtizHerbold.com
StantonGallegos@MarkowitzHerbold.com

GREFE & SIDNEY, P.L.C.

By: */s/  Guy R. Cook*  _____
    Guy R. Cook, AT0001623

By: */s/  Laura N. Martino*_____
     Laura N. Martino, AT0005043

By: */s/  Benjamin T. Erickson*_____
     Benjamin T. Erickson, AT0012927

    500 E. Court Ave., Ste. 200
    Des Moines, IA  50309
    Phone:  515/245-4300
    Fax: 515/245-4452
    gcook@grefesidney.com
    lmartino@grefesidney.com
    berickson@grefesidney.com

ATTORNEYS FOR PLAINTIFF

---

[13] Of note, Plaintiff is not asking the Court for permission to access confidential victim information. Rather, Plaintiff is simply illustrating the ability of the class to be ascertained by objective criteria.

Connie Alt
Molly Parker
SHUTTLEWORTH & INGERSOLL, P.L.C.
115 3rd St. SE, #500
Cedar Rapids, IA 52401
cma@shuttleworthlaw.com
mmp@shuttleworthlaw.com

ATTORNEYS FOR DEFENDANT ADIDAS AMERICA,
INC.

Jeffrey L. Goodman
Nicole L. Keller
Goodman Law, P.C.
1501 42nd Street. Suite 300
West Des Moines, IA 50266
jeff@golawpc.com
nicole@golawpc.com

ATTORNEYS FOR DEFENDANT AMATEUR
ATHLETIC UNION OF THE UNITED STATES, INC.