IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, and all others similarly situated, Plaintiffs, <br><br> vs. <br><br> GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC., and ADIDAS AMERICA, INC., Defendants. | No. 3:20-cv-5-JAJ <br><br><br> **ORDER** |

This case comes before the Court on Plaintiff's Renewed Motion for Class Certification filed on June 23, 2021.[1] Pl.'s Renewed Mot. Class Cert., ECF No. 65. Defendant Barnstormers Basketball, Inc ("BBI") resisted Plaintiff's Renewed Motion on July 16, 2021. Def. Barnstormers Basketball, Inc. Resis. Pls.' Renewed Mot. Class Cert., ECF No. 68. Plaintiff replied on July 23, 2021. Pl.'s Reply Def.'s Resis. Class Cert., ECF No. 69. For the reasons that follow, Plaintiff's Renewed Motion for Class Certification is **granted.**

## I. Background

BBI is an Iowa, nonprofit organization. Jamie Johnson founded BBI in 2004 and serves as the director. BBI has several club basketball teams for youth athletes ranging from 4th grade to 11th grade. BBI hosts yearly tryouts to select youth athletes for its teams. The BBI teams travel to various tournaments across the country to compete against other club teams.

Johnson met Gregory Stephen in 2005 at a youth basketball tournament. Stephen was coaching his own youth boys' basketball club at the time, the Iowa Mavericks. Johnson asked Stephen to join BBI to coach and help run the program, and Stephen agreed. Stephen worked in this capacity with BBI from approximately 2005 to 2018, apart from an absence while he pursued

---

[1] In a previous order, the Court denied, without prejudice, Plaintiff's original Motion for Class Certification. Order, ECF No. 64. In so doing, the Court permitted Plaintiff to recraft his proposed class based on the Court's specifications.

a coaching job at Upper Iowa University, when he was terminated after a criminal investigation into him commenced.

During the course of the criminal investigation into Stephen, police discovered over 400 sexually explicit photographs of minor boys on Stephen's hard drive. Law enforcement discovered three different categories of visual depictions of minors on Stephen's electronic devices: 1) minors who were secretly recorded with recording devices placed in bathrooms, 2) minors who photographed or recorded themselves engaged in sexually explicit activities and who were induced or persuaded by Stephen to send these images, and 3) visual depictions of unconscious minor boys taken by Stephen. Stephen was indicted and pleaded guilty to five counts of sexual exploitation of a minor, one count of possession of child pornography, and one count of transporting child pornography.

Much of the information about Stephen's victims comes from the criminal proceedings against him. Pursuant to a plea agreement, Stephen admitted to all of the charges and further admitted he had access to minor boys from age 9 to 17 through basketball programs like the Barnstormers. He also admitted to having access to personal information for many of the minors based on his involvement with basketball programs. Stephen admitted to using fake, female social media accounts to solicit sexually explicit images from minor boys. He also admitted to hiding secret devices to take photographs of nude boys when he traveled with them to various sporting events. At Stephen's sentencing, DCI Special Agent Ryan Kedley testified that the majority of the minor victims that were identified had been victimized by means of Stephen's fake social media profiles. Special Agent Kedley also indicated that approximately 15 of the minor victims had been physically touched by Stephen.

During the course of this case, Johnson testified that BBI did not have basketball camps. He also testified that BBI did not conduct meetings or events at Stephen's personal residence or his lake house. Johnson further testified that BBI did not organize or hold events to take players to NBA basketball games. Plaintiff's Renewed Motion for Class Certification seeks certification of the following class:

> All past or present Barnstormer Basketball, Inc. participants who:
>
> 1. were affiliated with a Barnstormer Basketball, Inc. team at any point in time between 2005 and April 5, 2018 while Greg Stephen was involved with the organization; and

2. fell victim to Greg Stephen's illicit acts of secretly procuring nude images and/or recordings of minors.

Pl.'s Renewed Mot. Class Cert. 4, ECF No. 65 at 4.

## II.    Legal Standard

Class actions are governed by Federal Rule of Civil Procedure 23. Plaintiff "has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.2d 255, 259 (8th Cir. 1994) (citing *Smith v. Merch. and Farmers Bank of W. Helena, Ark.*, 574 F.2d 982, 983 (8th Cir. 1978)). "District courts must engage in a 'rigorous analysis' to determine whether the requirements of Rule 23 have been satisfied." Postawko v. Missouri Department of Corrections, 910 F.3d 1030, 1036 (8th Cir. 2018). Rule 23(a) sets forth the four prerequisites for any class action:

1. The class is so numerous that joinder of all members is impracticable;
2. There are questions of law or fact common to the class;
3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4. The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4). Requirements two, three, and four are referred to as commonality, typicality, and adequate representation, respectively. A class is appropriate for certification when its claims "depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

In addition to satisfying the requirements of Rule 23(a), Plaintiff must demonstrate that the proposed class falls within one of categories established by Federal Rule of Civil Procedure 23(b). Plaintiff argues class certification is appropriate under Rule 23(b)(3). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### III.    Analysis

#### A.  Rule 23(a) Factors

Stated more simply, the four prerequisites outlined in Rule 23(a) for a class action are numerosity, commonality, typicality, and adequate representation. While Plaintiff asserts that all four requirements are met, here, BBI argues that the putative class does not meet the commonality requirement of Rule 23(a)(2). Although BBI only challenges the commonality requirement of 23(a), the Court addresses each factor in turn below.

##### 1.  Numerosity

Rule 23(a)(1) requires that the proposed class "is so numerous that joinder of all members is impracticable." *Id.* 23(a)(1). No specific number of members is required—the United States Court of Appeals for the Eighth Circuit has upheld class certification for classes with as few as 20 class members. *See, e.g.*, *Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971). When analyzing numerosity, courts consider the number of class members, "the nature of the action, the size of individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559–60 (8th Cir. 1982).

Plaintiff contends joinder is impracticable in this case based on the size of the prospective class, the willingness and ability of prospective class members to bring a claim individually, the inability to identify all prospective class members, and the geographical disbursement of the prospective class. Although BBI contested numerosity in its resistance to Plaintiff's original motion for class certification, it did not dispute this factor in its Resistance to Plaintiff's Renewed Motion. Nevertheless, the Court briefly addresses this factor.

The Court finds that several factors weigh in favor of a finding of numerosity, including the size of the prospective class, the willingness of prospective class members to bring a claim individually, and the inability to identify all prospective class members. Law enforcement officers investigating Stephen discovered that he had victimized more than 400 boys. Although the exact number of the victims' participation in BBI is unknown, the majority of the victims were affiliated with BBI or the Iowa Mavericks. Of these victims, more victims were affiliated with BBI than the Mavericks. Further, it is the Court's understanding that not all of the prospective class members have been identified and cannot be easily identified. Finally, the Court notes that prospective class members may be unwilling to bring their claims individually based on the nature of the

4

victimization in the criminal case. Based on a consideration of these factors the Court concludes joinder is impracticable, this prong is therefore satisfied.

### 2. Commonality

Plaintiff contends commonality is satisfied because common issues of law and fact include the applicable standard of care; whether BBI breached the standard of care; whether BBI knew or should have known of Stephen's unfitness; the existence of an agency relationship between BBI and Stephen; and whether BBI's negligent hiring, retention, or supervision proximately caused Plaintiff's injuries. BBI argues evidence of BBI's liability can only be determined by individualized, fact-specific determinations. BBI argues that individual issues, such as the location, manner, and date of Stephen's tortious activity, defeat commonality. BBI contends these facts impact the scope of the duty owed by BBI, proximate cause, and legal liability as to each individual plaintiff. Because "[p]redominance subsumes the commonality requirement," the Court analyzes this factor "through the lens of predominance" below. *Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020).

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As the Eighth Circuit noted, typicality "is fairly easily met so long as other class members have claims similar to the named plaintiff." *Postawko*, 910 F.3d at 1039 (quoting *DeBoer v. Mellon Mort. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.* (quoting *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)).

Plaintiff contends typicality is satisfied because his claims are identical to those of the prospective class because they arise from the same course of conduct and invoke the same legal theories. BBI does not contest the typicality factor in its Resistance to Plaintiff's Renewed Motion for Class Certification. Nevertheless, the Court briefly addresses this factor here.

The Court concludes Plaintiff's claims are sufficiently typical to meet this "fairly easy" threshold requirement. *Id.* Plaintiff's claims are similar to those of the prospective class members, in that they arise from the same course of conduct and rely on the same legal theories—negligent hiring, retention, and supervision of Stephen by BBI. Typicality is therefore satisfied.

5

### 4. Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As part of this analysis, courts consider whether the named representatives "have common interests with the members of the class" and whether they "will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982). Courts should attempt to uncover any conflicts of interest while considering these factors. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

First, Defendant does not dispute that Plaintiff's counsel can adequately represent the class members, and the Court finds Plaintiff's counsel is experienced and can adequately represent the class. Next, the Court considers whether the named Plaintiff can adequately represent the interests of the class. The Court finds no indication that Plaintiff's interests will be antagonistic to those of the rest of the class. While the method of victimization may differ slightly between class members, Plaintiff and prospective class members all share a common interest in establishing liability and obtaining damages. Finally, Plaintiff has "demonstrated a willingness to prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 563 (8th Cir. 1982). Adequacy of representation is satisfied.

### B. Rule 23(b)(3) Factors

Next, the Court considers whether Plaintiff has demonstrated that common questions of law or fact predominate over individual questions and whether proceeding as a class action is superior to other available methods. While Plaintiff contends both predominance and superiority are satisfied, BBI contends Plaintiff cannot demonstrate predominance or superiority. The Court addresses these factors below.

### 1. Predominance & Commonality

The Court next considers predominance and commonality. As noted above, the predominance analysis subsumes commonality. *Custom Hair Designs by Sandy*, 984 F.3d at 601. To certify a class pursuant to Rule 23(b)(3) the court must find, first, "that questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). A court may certify a class based on common issues "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453

(2016) (quoting 7AA Charles Alan Wright et al., *Federal Practice and Procedure* § 1778, at 123–24 (3d ed. 2005)). Individual questions arise when "members of a proposed class will need to present evidence that varies from member to member." *Id.* (citation omitted). Common questions are questions where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (citation omitted).

Plaintiff contends predominance is satisfied here because the elements of Plaintiff's claims for negligent hiring, retention, and supervision are susceptible to class-wide proof. Plaintiff argues the following are susceptible to class-wide proof: the applicable standard of care, whether BBI breached the standard of care, whether BBI should have known of Stephen's unfitness, causation, the existence of an agency relationship, and whether BBI's acted with willful and wanton disregard for the rights or safety of its players. BBI argues evidence of BBI's liability can only be determined by individualized, fact-specific determinations. BBI argues that individual issues, such as the location, manner, and date of Stephen's tortious activity, defeat commonality. BBI contends these facts impact the scope of the duty owed by BBI, proximate cause, and legal liability as to each individual plaintiff.

Plaintiff's theory of liability is that BBI was negligent in its hiring, supervision, and retention of Stephen. To prevail on a negligent hiring claim, Plaintiff must prove:

> (1) that the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time of hiring;
>
> (2) that through the negligent hiring of the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused the resulting injuries; and
>
> (3) that there is some employment or agency relationship between the tortfeasor and the defendant employer.

*Godar v. Edwards*, 588 N.W.2d 701, 708–09 (Iowa 1999) (quoting 27 Am. Jur. 2d *Employment Relationship* § 473 at 913–14 (1996)). The elements of Plaintiff's negligent supervision and retention claims are similar to the elements of the negligent hiring claim. The first element of Plaintiff's negligent supervision and retention claims considers what the employer knew at the time of the tortious conduct. *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 680 (Iowa 2004); *see Godar*, 588 N.W.2d at 709. The second elements for these claims consider whether the negligent supervision or retention proximately caused Plaintiff's injuries. *Estate of Harris*, 679 N.W.2d at 680; *Godar*, 588 N.W.2d at 709.

The Court concludes "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(3). All prospective class members' claims are premised on BBI's alleged failure to adopt policies and procedures to protect participants from sexual predators like Stephen. Common questions regarding these procedures, or lack thereof, predominate over individual issues. Further, the same evidence will generally suffice for each class member to make a prima facie showing of negligent hiring, retention, and supervision. This includes, but is not limited to, evidence regarding the applicable standard of care, whether BBI breached the standard of care, whether BBI should have known of Stephen's unfitness, whether BBI's negligence proximately caused the resulting damages, and the existence of an agency relationship. The presentation of this common evidence will drive the resolution of the underlying claims. Although some issues, such as damages, may need to be individually analyzed, this does not defeat predominance. *Bouaphakeo*, 577 U.S. at 453. The Court therefore concludes commonality and predominance are satisfied.

## 2. Superiority

Rule 23(b)(3) also requires the representative to demonstrate that a class action is superior to other methods of resolving the controversy. Fed. R. Civ. P. 23(b)(3). When analyzing this factor, the Court "must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." 7AA Charles Alan Wright et al., *Federal Practice and Procedure* § 1779, 159–61. Rule 23(b)(3) provides several factors to be considered in the analysis, including:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.* 23(b)(3)(A)–(D).

Plaintiff contends superiority is satisfied for the following reasons: (1) proceeding with individual lawsuits could flood the court with duplicitous lawsuits and result in differing outcomes, (2) proceeding as a class action will result in savings for all parties, (3) prospective class members may not proceed in individual suits because of the nature of the case, (4) a class action would

concentrate the litigation in a single forum, and (5) no known litigation concerning this matter exists. BBI contends this factor fails for the same reasons that commonality and predominance fail, namely that the prospective class members' claims are individualized and trying their claims together would result in miniature trials for each plaintiff on numerous issues.

Here, none of the four factors weigh against class certification. First, there is no indication that the individual class members would have a particular interest in individually controlling the prosecution of their individual claims. Prospective class members may prefer to proceed in a class action based on the nature of the victimization in this case. Any prospective class members who do wish to proceed individually may utilize the Rule 23 opt-out provisions. *Id.* 23(b)(3)(A); *see id.* 23(c)(2)(B). As to the second factor, neither party contends that other litigation regarding this matter has commenced elsewhere. Third, the Southern District of Iowa is a desirable forum because Plaintiff contends that BBI is domiciled in the Southern District of Iowa and that the majority of the events giving rise to this action occurred in the Southern District of Iowa. Finally, common issues predominant and any individualized inquiries for damages would be minimal and manageable. Because Plaintiff identifies a common, class-wide failure by BBI to have adequate policies and procedures in place to protect participants from predators like Stephen, judicial economy supports adjudicating these claims together. Proceeding as a single, class action on common issues also eliminates the risk of inconsistent outcomes. After considering the four factors, the Court concludes that superiority is satisfied.

### IV.    Conclusion

After considering all of the arguments and evidence, the Court concludes Plaintiff has satisfied the demands of Rule 23 for certification of their proposed class.

Upon the foregoing,

**IT IS ORDERED** that Plaintiff's Renewed Motion for Class Certification [ECF No. 65] is granted.

**IT IS FURTHER ORDERED** that the following class actions is certified:

All past or present Barnstormer Basketball, Inc. participants who:

1. were affiliated with a Barnstormer Basketball, Inc. team at any point in time between 2005 and April 5, 2018 while Greg Stephen was involved with the organization; and

2. fell victim to Greg Stephen's illicit acts of secretly procuring nude images and/or recordings of minors.

**IT IS FURTHER ORDERED** that the named plaintiff is designated as the class representative and that the following attorney is appointed as lead counsel for the class:

Guy Cook
Grefe & Sidney PLC
500 E. Court Avenue, Suite 200
Des Moines, IA 50309

**IT IS FURTHER ORDERED** that Plaintiff shall file a proposed notice that meets the requirements of Rule 23(c)(2)(B) no later than October 8, 2021. Defendant shall file any response to Plaintiff's proposed notice by Friday October 15, 2021. The Court will then finalize the proposed notice.

**DATED** this 23rd day of September, 2021.

_____
JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA