# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# DAVENPORT DIVISION

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GREGORY SCOTT STEPEHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC., and ADIDAS AMERICA, INC.,<br><br>Defendants. | Civil No.      3:20-cv-00005<br><br><br>**DEFENDANT BARNSTORMERS BASKETBALL, INC. D/B/A BARNSTORMERS BASKETBALL OF IOWA'S TRIAL BRIEF** |

**COMES NOW** the Defendant, Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa ("BBI"), by and through its attorneys, Betty, Neuman & McMahon, P.L.C., and for its Trial Brief in this matter states as follows[1]:

**1. Plaintiffs' Underlying Tort Claims Against Stephen - Invasion of Privacy By Way Of Intrusion Upon Seclusion Must Be Proven As To Each Class Member**

It is well established that each plaintiff must have suffered from some tortious or wrongful conduct by Gregory Stephen to be able to proceed with a cause of action against BBI for negligent hiring, supervision and/or retention. *See IMT Ins. Co. v. Crestmoor Golf Club*, 702 N.W.2d 492, 496 (Iowa 2005) ("A necessary element of a claim for negligent supervision or retention is an underlying tort or wrongful act committed by the employee."); *Struck v. Mercy Health Services-Iowa Corp.*, 973 N.W.2d 533, 544 (Iowa 2022) (holding same with regards to negligent hiring

---

[1] The Court is aware of numerous other legal and factual issues and contentions of the parties through previously filed motions and briefing, which is not be duplicated herein for purposes of brevity.

1

claims). Plaintiffs assert that Stephen committed an "intrusion upon seclusion" tort against them. Plaintiffs must prove this underlying tort claim with respect to each class member.

An intrusion upon seclusion occurs when "one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns…if the intrusion would be highly offensive to a reasonable person." *In re Marriage of Tigges*, 758 N.W.2d 824, 829 (Iowa 2008). In the context of secretive recordings or photographs of another, liability stems "not from the specific nature of the recorded activities" but from the recording being taken without the plaintiff's "knowledge and consent at a time and place and under circumstances in which she [he] had a reasonable expectation of privacy." *Id*. at 830.

While this particular type of tort claim may pertain to class members who were victimized through surreptitious recordings taken of them without their knowledge through hidden recording devices placed by Stephen in private/intimate settings, there is a substantial question as to the tort's applicability to the majority of the alleged class. The evidence will show most victims were duped by Stephen into self-filming and transmitting nude recordings and/or images to fake online accounts operated by Stephen in which he posed as a youth female. There is no evidence that these online-persona victims had these images or recordings hacked, accessed or taken from their devices without their knowledge. There is also no evidence that Stephen further transmitted or disseminated the images or recordings to anyone else after receipt.

The self-filming and self-transmission of the materials into question whether there was any "intrusion" into a place of privacy of the online-persona victims to establish tortious liability. It does not appear that the Iowa courts have addressed how the intrusion upon seclusion tort applies, if at all, under these factual circumstances. The Iowa courts have only applied the tort in the context of a person that was recorded without the person's knowledge or consent by some type of recording

device implemented by another actor. *See e.g. Koeppel v. Speirs*, 2010 WL 200417 (Iowa Ct. App. 2010). Upon information and belief, class members that fell victim to these social media ruses knowingly provided their private images and recordings to another person (albeit not knowing at the time the actual recipient was Stephen).

2. **Plaintiffs Negligence Claims Against BBI – The Time Periods And Methods Of Victimization Significantly Impact The Evaluation Of Negligence, Foreseeability, And Scope Of Duty.**

    A.    <u>The Standard Of Care Is Ordinary Care Under The Circumstances And Evidence Of Alleged Customs/Practices/Policies Is Not Conclusive Proof Of Negligence</u>

Law enforcement officers determined Stephen victimized various youth minors from approximately the late 1990s until his arrest in 2018. The class definition only concerns those victims who were injured between 2005 and 2018 who were part of a Barnstormers' team and while Stephen was involved in BBI.[2]

As with any negligence case in Iowa, Plaintiffs must prove the standard of care and breach thereof. The "standard of care" is simply "ordinary care under the circumstances" and there is no bright-lined rule or test for the jury. *See Gibson v. Shelby County Fair Ass'n*, 65 N.W.2d 433, 435-6 (Iowa 1954). Evidence of an industry custom or practice, while admissible on the question of negligence, must not be confused with the "standard of care" and such evidence "cannot be substituted for [the standard of care]." *Id*. In other words, an alleged breach of a custom or practice may be evidence in support, but is not conclusive evidence, of negligence.

In this case, Plaintiffs intend to rely upon an expert, Michelle Peterson, to discuss various alleged customs and/or practices she contends should have been utilized by BBI. However, the evidence will show these customs and practices existed at different times and evolved over time.

---

[2] Stephen left BBI from August 1, 2007 to April 11, 2009 to pursue a coaching career at Upper Iowa University.

This affects the alleged liability to different class members or groups of class members. In example, Ms. Peterson relies in part upon certain provisions in the AAU Handbook which was created (at the earliest) in 2012 to assert similar policies and/or procedures should have been utilized by BBI. While that evidence could be used to argue a standard of care and breach affecting class members *after* it existed, such evidence cannot be used to apply retrospectively to class members falling within earlier time periods.

It is vital in this case that jurors be required to determine liability on at least a year-by-year basis to avoid potential confusion and/or a misleading verdict on liability as to what purported "standards" existed or should have been implemented. Additionally part of Plaintiffs' claims include negligent supervision/retention of Stephen, which are dependent upon what BBI knew or should have known regarding a particular risk of harm at the time the plaintiff was injured. BBI is entitled to argue, and the jury is free to evaluate, whether ordinary care and the risk of harm to be expected may have been different in 2005 versus 2006 versus 2007 and so on.

B.    <u>Small Changes/Variations Of Fact Significantly Impact Foreseeability</u>

The foreseeability of harm depends on the facts and circumstances of each victimization. "Small changes in the facts may make dramatic changes in how much risk is foreseeable, and thus we leave the breach question's foreseeability determination to juries unless no reasonable person could differ on the matter." *Hoyt v. Gutterz Bowl & Lounge, L.L.C.*, 829 N.W.2d 772, 780 (Iowa 2013). Given the varying time periods and methods Stephen used to victimize youths, the circumstances of each type of victimization must be presented to the jury for it to competently evaluate the foreseeability of each type of harm with respect to each alleged class member.

      C.      <u>Scope Of Duty – Any Arising From A Claimed Special Relationship Does Not Extend Beyond The Temporal Nature Of The Custodial Relationship</u>

In Iowa "[t]he 'law of duty [is] alive and well.' " *Morris v. Legends Fieldhouse Bar and Grill*, LLC, 958 N.W.2d 817, 819 (Iowa 2021). The Restatement (Third) of Torts—Liability for Physical and Emotional Harm § 40 recognizes there are certain special relationships wherein an actor "owes the other a duty of reasonable care with regard to risks that arise within the scope of that relationship". One such relationship exists between "a custodian with those in its custody." *Id*. at (b)(7). However, as the comments make clear "[t]he duty imposed by [§ 40(b)(7)] is conditioned on a legal obligation or on voluntarily assuming custody. **It does not extend beyond the temporal limits of the custodial relationship**, for example a nursing-home resident taken home for Thanksgiving by his children." (emphasis added) *Id*. at cmt. n.

These principles are important in evaluating whether and to what extent BBI owed a legal duty of care to certain victims depending on the facts and circumstances of their victimization. While a legal duty may exist with respect to a victim who was participating in a BBI event or tournament at the time the victimization occurred (i.e. was in BBI's "custody" at the time), a general "duty of protection" does not exist beyond the temporal relationship between the victim and BBI. In example, there may not be a duty of care owed by BBI to attempt to protect a victim who is victimized at home through Stephen's fake online personas if there is little-to-no temporal relationship to BBI's organizational activities at the time of victimization.

BETTY, NEUMAN & McMAHON, P.L.C.

By:   */s/ Martha L. Shaff*
      Martha L. Shaff       #AT0007215

By:   */s/ Brandon W. Lobberecht*
      Brandon W. Lobberecht       #AT0011918

1900 East 54th Street
Davenport, IA 52807-2708
T: 563-326-4491
F: 563-326-4498
E: martha.shaff@bettylawfirm.com
   brandon.lobberecht@bettylawfirm.com

**ATTORNEYS FOR DEFENDANT, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA**

**CERTIFICATE OF SERVICE FOR ELECTRONIC FILINGS**

I hereby certify that on _____June 28, 2022_____, I electronically filed the foregoing document with the Clerk of Court using the ECF system and a true copy of the foregoing was served either electronically or by U.S. First Class Mail upon the following:

| | |
|---|---|
| Guy R. Cook<br>Adam D. Zenor<br>Michael C. Kuehner<br>Michael D. Currie<br>Grefe & Sidney, P.L.C.<br>500 E. Court Ave., Suite 200<br>Des Moines, IA  50309<br>T: 515-245-4300<br>F: 515-245-4452<br>E: gcook@grefesidney.com<br>   azenor@grefesidney.com<br>   mkuehner@grefesidney.com<br>   mcurrie@grefesidney.com<br>**ATTORNEYS FOR PLAINTIFFS** | Jeffrey L. Goodman<br>Nicole L. Keller<br>Goodman Law, P.C.<br>1501 W. 42nd Street, Suite 300<br>West Des Moines, IA  50266<br>T: 515-267-8600<br>F: 515-224-2075<br>E: jeff@golawpc.com<br>**ATTORNEYS FOR DEFENDANT,**<br>**AMATEUR ATHLETIC UNION OF**<br>**THE UNITED STATES, INC.** |
| Connie Alt<br>Shuttleworth & Ingersoll, P.L.C.<br>115 3rd Street SE, #500<br>Cedar Rapids, IA  52401<br>T: 319-365-9461<br>F: 319-365-8443<br>E: cma@shuttleworthlaw.com<br>   dlo@shuttleworthlaw.com | Matthew A. Levin *(Pro Hac Vice)*<br>Stanton R. Gallegos *(Pro Hac Vice)*<br>Markowitz Herbold P.C.<br>1455 SW Broadway, Suite 900<br>Portland, OR  97201<br>T: 503-295-3085<br>F: 503-323-9105<br>E: stantongallegos@markowitzherbold.com<br>   mattlevin@markowitzherbold.com<br>**ATTORNEYS FOR ADIDAS AMERICA, INC.** |

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Brandon W. Lobberecht*