IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
(EASTERN DIVISION)

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC., and ADIDAS AMERICA, INC.,<br><br>Defendants. | CASE NO. 3:20-CV-0005-JAJ-CFB<br><br><br><br>**PLAINTIFFS' TRIAL BRIEF** |

COMES NOW, Plaintiff John Doe and all others similarly situated, by and through the undersigned counsel, and for this Trial Brief, states as follows:

## I.   INTRODUCTION

Plaintiff, John Doe, on behalf of class members he represents, seeks to hold Barnstormers Basketball, Inc. ("BBI"), responsible for its negligent failure to protect minor youth athletes from falling victim to the illicit acts of Gregory Scott Stephen in secretly procuring nude images and recordings of them.

## II.   FACTUAL BACKGROUND

BBI is a non-profit corporation founded/organized under the laws of the State of Iowa in 2004 with its principal place of business located at 1235 Deerfield Drive, North Liberty, Johnson County, Iowa, 52317. BBI fields club basketball teams for local youth athletes ranging from 4th through 11th grade. BBI hosts yearly tryouts to identify and select minor athletes to join its various

teams. From approximately March to July, BBI's teams travel to various tournaments around the country to compete against other traveling club teams. Jamie Johnson is the founder and director of BBI. In 2005, Stephen became the first-person Jamie Johnson hired to assist him in running the program.

The evidence at trial will establish Defendant exhibited a complete indifference to protecting youth athletes. Despite industry standards requiring that safeguards be in place to reduce the risk of harm to youths, Defendant did nothing. As Jamie Johnson admits, keeping youths safe from sexual abuse was not even on BBI's radar. This indifference allowed Stephen to use Defendant's program as a never-ending stream of new youth to victimize. After Stephens arrest, law enforcement found a hard drive containing over 400 file folders labeled by first and last name of minors. Each file folder contained nude images of the named minor that Stephen himself procured.

On May 2, 2019, Stephen was sentenced to 180 years prison. In doing so, Judge C.J. Williams opined:

> The harm caused to the children is incalculable and profound. He violated their innocence, as was mentioned by one of the victims here today, and warped their sense of what is acceptable sexual conduct in relationships. His abuse of a position of trust has jeopardized the victims' mental health, and these children will now grow up and have grown up with feelings of being violated by somebody they trusted, and it's going to affect adversely their ability to trust others and form healthy relationships with other people. [Greg Stephen's] conduct has and will continue to cause these victims to feel embarrassment, shame, and self-doubt.

On January 4, 2021, the Eighth Circuit affirmed Stephen's sentence, emphasizing the "seriousness and magnitude of his offense." *United States v. Stephen*, 984 F.3d 625, 632 (8th Cir. 2021).

### III. PLAINTIFFS' THEORIES OF LIABILITY

Defendant Barnstormers Basketball, Inc. was negligent in the hiring, retention, and supervision of Stephen. The unrefuted evidence shows industry standards required, amongst other things, an

adequate screening of Stephen's background to ensure he did not exhibit common pedophilic traits. Industry standards further required ongoing supervision to ensure Stephen did not exhibit pedophilic traits during his tenure with the organization. BBI did not abide by industry standards. In fact, BBI had no policies or procedures governing the hiring, supervision, or retention of its coaches. Had BBI abided by industry standards, it would have discovered:

- Stephen had a history of centering his work life and free time around minor boys (basketball coach, youth camp director, youth athletic trainer, etc.);
- Stephen had no kids and/or family of his own;
- Despite having no kids of his own, Stephen had no identifiable hobbies outside of being a volunteer youth basketball coach and spending time with minor boys at his lake home;
- Stephen had no identifiable friends or dating interests outside of youth basketball;
- Stephen exhibited a preference to hang out with minor boys over someone his age;
- Stephen knowingly slept in the same bed as minors;
- BBI witnessed Stephen exhibiting controlling behavior over youth participants under his supervision;
- BBI was aware Stephen spent alone time with youth participants;
- Stephen's brother was a registered sex offender;
- Stephen frequently hung out with minor male athletes outside of organized practices and trips, including welcoming minors into his home and bringing them on out-of-town trips;
- Stephen exhibited interests relatable to minors;
- Stephen engaged in public, peer-to-peer banter with minors on social media, including inquiries into who the minors hung out with at school and players saying, "I love you."
- Stephen provided gifts and groomed minor athletes.

As cited by Plaintiff's expert Michelle Peterson in her report, in 2005, when Stephen was hired, industry standards required volunteers be screened and supervised to identify certain known dangerous characteristics exhibited by pedophiles. In this case, corroborating literature reveals Stephen had adequate characteristics to label him as an "obvious and extreme" example of someone who should not be left in the care and custody of minors.[1] Had Defendant adhered to the requisite standard of care in hiring, supervising, and/or retaining Stephen, they would have identified these "obvious and extreme" dangers, and thus protected their minor youth athletes from harm.

### IV. COMPLIANCE WITH RULE 23[2]

Defendant has made several attempts to decertify this class. Plaintiffs expect Defendant will continue their pursuit of decertification during the course of trial. The court should be mindful that Defendant bears the difficulty of showing that decertification is warranted. *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 832 (8th Cir. 2016). In order to successfully obtain decertification, Defendant must meet an "onerous burden" to show that some change in circumstances warrants decertification. *Id*. (*citing* 3 William B. Rubenstein, *Newberg on Class Actions* § 7:39 (5th ed. 2013) ("defendant seeking decertification or modification ought to be required to make some showing of *changed circumstances* or *law*, which would then trigger a plaintiffs' obligation to defend certification") (emphasis added)). In this case, Defendant is unable to show any change of circumstances. The class was certified after the close of discovery, allowing the Court to fully consider all relevant facts. Judge Jarvey carefully considered Rule 23's rigorous

---

[1] For additional detail, *see* ECF No. 65 at pp. 13 – 14.

[2] In addition to the commonality and predominance attacks, Defendant has made repeated attacks on the ascertainability requirement. As Judge Jarvey rightfully held, there is no ascertainability issue. Each and every victim was identified by law enforcement. Indeed, Stephen himself organized all victims by first and last name on his personal hard drive. Law enforcement has a legal obligation to inform citizens if they are victims to a crime. *See* 18 U.S.C. § 377. The fact that law enforcement was unable to make direct contact with these individuals has no bearing on them being able to objectively state whether someone was a victim.

standards, even denying Plaintiff's first attempt at certification. As such, pursuant to Eighth Circuit precedent, decertification would be improper.

Notwithstanding Defendant's inability to satisfy its "onerous burden," the facts of this case meet the requirements of Rule 23. It is anticipated Defendant will attempt to relitigate their claim that the class fails to meet the overlapping commonality and predominance requirements. *See Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020) ("[p]redominance subsumes the commonality requirement, so both can be analyzed through the lens of predominance). Judge Jarvey's certification ruling is afforded broad discretion, reversible only for abuse of that discretion. *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013). Defendant does not appear to dispute Judge Jarvey was within his discretion certifying the class, as no appeal was sought. *See* Fed. R. Civ. P. 23(f) ("A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order."); *see also Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1077 (7th Cir. 2014) (holding that a district court's refusal to decertify a class is not appealable under Rule 23(f)). Indeed, as Judge Jarvey acknowledged, the factual circumstances giving rise to Plaintiff's claim involve a common, organization wide policy or scheme involving Defendant's employment practices. When a cause of action involves common organization actions applicable to all class members, predominance and commonality are satisfied. *See e.g., Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594, (1997) ("[M]ass tort cases arising from a **common cause** or disaster may, depending upon the circumstances, satisfy the predominance requirement"); *Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020) (Affirming district court's certification of a Rule 23(b)(3) class in which plaintiffs sought to recover on breach of contract, fraudulent concealment, and civil racketeering

theories. Despite variances amongst class members claims, because all claims dealt with a "common scheme" exercised by the defendant, commonality and predominance were satisfied); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 241 F.R.D. 435, 447 (S.D.N.Y. 2007) ("[C]ourts have certified classes claims arising out of a single event or **course of conduct** such as a train crash, a fire in a convention hall or nightclub, an explosion, food poisoning on a ship, a nuclear reactor accident, and chemical or radiation seepage onto adjoining property from a plant or waste burial site"); 7 Newberg on Class Actions § 23:33 (6th ed.) ("[P]redominance in employment cases is rarely defeated on the grounds of differences among employees so long as liability arises from a common practice or policy of an employer. Accordingly, some courts have noted that the **presence of a company policy or practice is a strong indication that common issues predominate**.").

### V. INTRUSION UPON SECLUSION CLAIMS

Defendant has made the assertion that victims of Stephen's illicit social medial "ruse" do not have a valid intrusion upon seclusion claim, and that they are entitled to judgment as a matter of law. This interpretation is inconsistent with Iowa law, and the Restatement (Second) of Torts § 652B, that the Iowa Supreme Court modeled the intrusion upon seclusion claim after. *In re Marriage of Tigges*, 758 N.W.2d 824, 829 (Iowa 2008) ("We have adopted the invasion of privacy principles set out in Restatement (Second) of Torts (1977)"). As the Restatement provides, an intrusion upon seclusion can involve "the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs." Restatement (Second) of Torts § 652B, cmt. b. This tort "is based upon the manner in which an individual obtains information." *Ali v. Douglas Cable Commc'ns*, 929 F. Supp. 1362, 1382 (D. Kan. 1996) (citing Restatement (Second) of Torts § 652B). The means by which Stephen obtained the nude photographs constitutes an

intrusion because he impersonated a teenage girl in order to directly obtain nude images from the children. He did not receive the photographs from another person; nor did he receive photographs that were intended for him at all. The manner by which Stephen obtained the photographs was through lies and deception, actions that are highly offensive to a reasonable person. Obtaining the photographs under this false pretense is in intrusion upon seclusion. *See e.g.*, *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 292 (3d Cir. 2016) (holding that an intrusion upon seclusion can occur when a defendant gains access to plaintiff's private affairs using "false pretenses")

## VI. MICHELLE PETERSON'S EXPERT TESTIMONY

In arguing for decertification, Defendant has made the claim that Ms. Peterson has not "defined" the standard of care applicable to Barnstormers. This is an erroneous claim crafted to decertify the class. Ms. Peterson's authored a comprehensive, 14-page report. Not only does she specifically state that the "standard of care includes providing mandatory hiring policies, prevention polices, and training policies," she (1) provides a detailed historical context of sexual abuse in sports/youth serving organizations; (2) a detailed analysis regarding what the applicable standard of care is; and (3) a detailed analysis of how Defendant breached the applicable standard of care (**including the specific facts to be relied on**); and (4) that the standard of care was breached in 2005. Any claim that Ms. Peterson did not fully articulate her opinions or meet the requirements are baseless. Rule 26 does not require an expert report to "contain each and every underlying detail. At trial, the expert is not limited to merely reciting the exact content of the report but may explain and elaborate upon the opinions fairly stated therein." *Quoting* Steven S. Gensler, 1 Federal Rules of Civil Procedure: Rules and Commentary, Rule 26 (2021 ed.); *see also Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009) ("The purposes of [expert] reports is not to replicate every word that the expert might say on the stand.").

## VII. CONCLUSION

At this time, Plaintiff is unaware of any further legal issues that have not been previously addressed and briefed. The unresolved issues remaining are factual issues for the jury to consider and decide.

| | |
|---|---|
| **Certificate of Service**<br>The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys listed as receiving notice on June 28, 2022, by CM/ECF.<br><br>*/s/ Sharon Cox*<br><br>Copies to:<br><br>Martha L. Shaff<br>Brandon W. Lobberecht<br>Betty, Neuman & MCMahon, P.L.C.<br>1900 East 54th Street<br>Davenport, IA 52807-2708<br>martha.shaff@bettylawfirm.com<br>brandon.lobberecht@bettylawfirm.com<br><br>ATTORNEYS FOR DEFENDANT,<br>BARNSTORMERS BASKETBALL, INC. d/b/a<br>BARNSTORMERS BASKETBALL OF IOWA<br><br>Matthew A. Levin, *Pro Hac Vice*<br>Stanton Gallegos, *Pro Hac Vice*<br>MARKOWITZ HERBOLD PC<br>1455 SW Broadway, Suite 1900<br>Portland, OR 97201<br>MattLevin@MarkowtizHerbold.com<br>StantonGallegos@MarkowitzHerbold.com<br><br>Connie Alt<br>Molly Parker<br>SHUTTLEWORTH & INGERSOLL, P.L.C.<br>115 3rd St. SE, #500<br>Cedar Rapids, IA 52401<br>cma@shuttleworthlaw.com<br>mmp@shuttleworthlaw.com<br><br>ATTORNEYS FOR DEFENDANT ADIDAS AMERICA, INC.<br><br>Jeffrey L. Goodman | GREFE & SIDNEY, P.L.C.<br><br>By: */s/ Guy R. Cook*<br>    Guy R. Cook, AT0001623<br><br>By: */s/ Laura N. Martino*<br>    Laura N. Martino, AT0005043<br><br>By: */s/ Benjamin T. Erickson*<br>    Benjamin T. Erickson, AT0012927<br><br>By: */s/ Michael D. Currie*<br>    Michael D. Currie, AT0012256<br><br>500 E. Court Ave., Ste. 200<br>Des Moines, IA 50309<br>Phone: 515/245-4300<br>Fax: 515/245-4452<br>gcook@grefesidney.com<br>lmartino@grefesidney.com<br>berickson@grefesidney.com<br>mcurrie@grefesidney.com<br><br>ATTORNEYS FOR PLAINTIFF |

Nicole L. Keller
Goodman Law, P.C.
1501 42nd Street. Suite 300
West Des Moines, IA 50266
jeff@golawpc.com
nicole@golawpc.com

ATTORNEYS FOR DEFENDANT AMATEUR
ATHLETIC UNION OF THE UNITED STATES,
INC.