# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GREGORY SCOTT STEPHEN; BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA; AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.; and ADIDAS AMERICA, INC.,<br><br>Defendants. | No. 3:20-cv-00005-SHL<br><br>**ORDER DENYING DEFENDANT BBI'S MOTION TO DECERTIFY CLASS** |

Between 2005 and 2018, Greg Stephen secretly took or obtained sexually explicit photographs or videos of hundreds of minors, many of whom participated in programs through Stephen's employer, Defendant Barnstormers Basketball, Inc. ("BBI"). Plaintiff John Doe alleges that BBI negligently hired and retained Stephen and therefore seeks damages from BBI for invasion of privacy, among other theories. The Court (Jarvey, J.) previously certified a class of similarly situated individuals, but BBI asks the Court to revisit this decision. BBI argues the class is not ascertainable and individual issues predominate because Stephen victimized minors at different times and in different places.

The Court concludes that BBI's ascertainability argument is inconsistent with binding Eighth Circuit precedent and the requirements of Fed. R. Civ. P. 23 and therefore rejects it. The Court further concludes that Plaintiff's theory of the case and trial management plan: (a) confirm that common issues predominate; (b) protect BBI's due process rights; and (c) ensure the jury's verdict will establish liability (or the absence thereof) not just as to Plaintiff John Doe, but also all other members of the class. The Court therefore DENIES BBI's Motion to Decertify.

## I.    BACKGROUND

Named Plaintiff John Doe, on behalf of himself and all others similarly situated, filed suit against BBI and other defendants on November 2, 2018, in the Iowa District Court for Johnson County. (ECF 1, ¶ 1.) Plaintiff Doe later amended his pleading several times, culminating with the filing of his Third Amended Class Action Petition at Law ("Third Amended Petition"), which was

1

the operative version of his pleading until a very recent amendment that makes changes of no relevance to this Order. This Background section will recite the allegations of the Third Amended Petition to provide context. This recitation should not, however, be interpreted as findings of fact.

As alleged, BBI is a youth basketball organization in the State of Iowa. (ECF 1-4, p. 117.) Defendant Stephen co-founded BBI in 2005 with Iowa City-based AAU organizer Jamie Johnson. (ECF 1-4, p. 126.) Defendant Stephen acted as a coach for BBI's boys' basketball teams starting in 2005. (Id., p. 126). Defendant Stephen left BBI in July 2007, but he returned to the program and began coaching again in April 2009. (ECF 168, p. 2.)

In 2018, following an investigation and prosecution, Defendant Stephen pled guilty to five counts of Sexual Exploitation of a Minor – Production of Child Pornography. (ECF 1-4, p. 130.) In his Plea Agreement, Defendant Stephen admitted to using a hidden camera to secretly record nude minor boys in hotel rooms. (Id.) He also admitted to assuming the identity of teenage females to initiate contact with minor boys on social media and entice the minor boys to provide sexually explicit images of themselves. (Id., pp. 132-33.) Defendant Stephen further admitted to having physical, sexual contact with some minors. (Id., pp. 133-134.) Defendant Stephen was sentenced to 180 years' imprisonment for his offenses. (Id., p. 134.)

In his Plea Agreement, Defendant Stephen admitted that "from 2008 or earlier, [he] had access to minors age 9 to age 17 through basketball programs commonly referred to as Barnstormers or by other team names." (Id., p. 131.) He admitted to traveling to "various sporting events, including basketball games and tournaments, with the minors and many times had the minors stay in hotel rooms with him and sleep in the same bed with him." (Id.) He admitted to possessing more than 400 file folders with titles in the names of the minor victims. (Id.) He "admitted the victims include basketball players (and friends of players) from as recent as 2018 and former basketball players and their friends from past seasons going back several years and also include[] minors involved in other sports." (Id., p. 132.)

Plaintiff Doe became a member of BBI in February 2014 and "last associated with BBI in 2016." (Id., pp. 116, 135.) Plaintiff Doe alleges, upon information and belief, that Defendant Stephen secretly recorded him and his teammates in a hotel room in Las Vegas, Nevada in July 2016. (Id., p. 135.) Plaintiff Doe later was informed that he had been identified as a victim of Defendant Stephen's acts. (Id., p. 136.) Plaintiff Doe alleges that BBI negligently hired and/or retained Defendant Stephen and that this negligence proximately caused injury. (Id., pp. 140-141.).

In December 2019, Plaintiff Doe was granted leave to file his Third Amended Class Action Petition at Law adding adidas America, Inc. ("adidas") as a party. (ECF 1, ¶ 3.) This created minimal diversity of citizenship (to the extent it did not exist already), and, thus, on January 9, 2020, Defendant adidas removed the case to federal court pursuant to 28 U.S.C. § 1441 and the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). (Id.) This Court later granted Defendant adidas's Motion to Compel Arbitration and Stay Action Against adidas. (ECF 23.)[1]

Plaintiff Doe moved to certify the class on March 1, 2021. (ECF 58.) BBI resisted. (ECF 59.) The Court denied Plaintiff Doe's motion to certify the class without prejudice on May 24, 2021, concluding the proposed class definition was too broad. (ECF 64.) On June 23, 2021, Plaintiff Doe filed a renewed and amended motion to certify the class. (ECF 65.) BBI again resisted (ECF 68), but this time the Court granted the motion and certified the following class pursuant to Fed. R. Civ. P. 23(b)(3):

> All past or present Barnstormer Basketball, Inc. participants who:
>
> 1. were affiliated with a Barnstormer Basketball, Inc. team at any point in time between 2005 and April 5, 2018 while Greg Stephen was involved with the organization; and
>
> 2. fell victim to Greg Stephen's illicit acts of secretly procuring nude images and/or recordings of minors.

(ECF 70, pp. 9–10.) The Court concluded, *inter alia*, that "[a]ll prospective class members' claims are premised on BBI's alleged failure to adopt policies and procedures to protect participants from sexual predators like Stephen. Common questions regarding these procedures, or lack thereof, predominate over individual issues." (Id., p. 8.)

In subsequent months, the parties litigated related issues, including the form of notice that should be provided to unnamed class members. (ECF 72, 73, 74.) The Court granted in part BBI's request to include a questionnaire as part of the notice to unnamed class members, although the Court ordered that the questionnaire be voluntary and not a precondition to class membership. (ECF 91.) At a June 30, 2022 Motion Hearing, counsel indicated they had received questionnaire responses from 21 class members. In addition, four or five class members are reported to have opted out.

---

[1] Prior to removal of the case to federal court, Defendant Amateur Athletic Union of the United States, Inc. ("AAU") also successfully moved to compel arbitration. Litigation against adidas and AAU has therefore been stayed, and Plaintiff's case has actively proceeded only against BBI.

The Court later granted in part BBI's motion to require Plaintiff to prepare and file a trial management plan. (ECF 107.) In accordance with the Court's ruling, Plaintiff's Trial Management Plan explained that Plaintiff intends to try the case in phases, with liability and general damages handled together in the first phase and special damages (including emotional distress) handled in one or more subsequent proceedings. (ECF 108, p. 2.) The Trial Management Plan further explained, largely through the proposed use of special interrogatories, how Plaintiff believes he can prove the claims of all class members from 2005 to 2018 despite himself having participated in BBI's programs only from 2014 to 2016. (Id., pp. 6-7.) The proposed special interrogatories would ask when (if ever) BBI was first shown to have been negligent with respect to hiring or retaining Stephen. Similarly, the Trial Management Plan proposed the use of special interrogatories to ensure that any jury verdict on proximate cause would apply to all class members regardless of how or where Defendant Stephen obtained illicit images of them. (Id., pp. 7-8.)

BBI filed objections and counterproposals to Plaintiff's Trial Management Plan. (ECF 109.) The same day, BBI moved to decertify the class, arguing: Plaintiff Doe's claims are not common to those of all class members; individual issues predominate over common issues; and class membership is not ascertainable through objective evidence. (ECF 110.) The Court heard argument on BBI's motion to decertify on June 30, 2022. (ECF 164.)

**II. LEGAL ANALYSIS.**

*A. Legal Background and Standards.*

"Class certification is inherently tentative." *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 830-31 (8th Cir. 2016). District courts have a "duty to assure that a class once certified continues to be certifiable under Fed. R. Civ. P. 23(a)." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999). While the initial burden of satisfying the requirements for class certification is borne by the plaintiff, *see Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994), the burden shifts to the defendant when it moves to decertify an already-certified class, *see Day*, 827 F.3d at 832. "Moreover, a defendant bears a more onerous burden in challenging certification where, as here, the initial certification decision was carefully considered and made after certification-related discovery." *Id.*[2] "A decision to decertify a class should arise based on changed circumstances that

---

[2] Although *Day* places the burden on BBI to prove the class should be decertified, the Court's decision to deny BBI's motion would be unchanged even if Plaintiff bore the burden, as was the case when Plaintiff moved to certify in the first place.

4

were not present when the class was certified." *Karsjens v. Piper*, 336 F. Supp. 3d 974, 988 (D. Minn. 2018) (vacated in part on other grounds).

The requirements for class certification include: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition, the Court must "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"[Rule 23] 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Day*, 827 F.3d at 833 (quoting *Amchem. Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)) (internal quotation omitted)). "When there are issues common to the class that predominate, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)) (emphasis removed).

B. *BBI Has Not Shown that Ascertainability of the Class Is a Reason to Decertify.*

In its motion to decertify and related briefing, BBI argues, in part, that decertification is required because: (a) the class is not ascertainable through objective criteria; and therefore (b) Plaintiff must prove class membership at trial as to each of Stephen's victims. The first part of BBI's argument arises out of the recognition in Eighth Circuit precedent and elsewhere that a proposed class must be "clearly ascertainable." (ECF 113, pp. 24-28; ECF 109, pp. 5-7.) *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016). "A class may be ascertainable when its members may be identified by reference to objective criteria." *McKeage v. TMBC, LLC*, 847 F.3d 992, 998-99 (8th Cir. 2017). "Though ascertainability is an implicit requirement that our court enforces through 'a rigorous analysis of the Rule 23 requirements,' a dispute regarding the method for identifying class members calls for an independent discussion of whether a class is ascertainable." *Id.* at 998 (quoting *Sandusky*, 821 F.3d at 996) (internal citation omitted)).

5

Here, the class is "clearly ascertainable" through a straightforward, two-step process. The first step is based on the undisputed fact that Stephen organized his illicit images by saving them in folders on his computer labeled with the victims' names. According to Plaintiff, there were approximately 400 such victims, all of whom received letters from the Government identifying them as victims in the federal criminal case against Stephen. Plaintiff proposes, and the Court agrees, that only people who received victim letters from the Government are eligible to be class members. This is an objective method of narrowing potential class membership to a group of approximately 400.

BBI correctly points out that not all 400 victims are members of the class because some of them never participated in BBI's programs and instead encountered Stephen through other programs or activities. But this problem can be solved with a simple second step for identifying class members: determining which of the 400 or so victims participated in a BBI program.

BBI argues the second step is not as simple as it seems because BBI does not have a complete or reliable list of people who participated in BBI programs dating back to 2005. The Court does not believe, however, that a defendant's deficient recordkeeping is a reason to decertify a class. Moreover, and more generally, BBI is not the only source of information as to who participated in its programs. The victims themselves of course will know whether they participated in a BBI program and almost certainly will have some information—emails, photographs, registration forms, or the like—that can be used to verify participation in the event BBI wants to dispute it.

This process for determining class membership is well in line with what the Eighth Circuit has deemed appropriate; in fact, if anything, the Court would abuse its discretion under recent Eighth Circuit precedent by *not* allowing the class to remain certified here. In *Sandusky Wellness Center*, for example, the plaintiff brought a putative class action against the defendant for sending unsolicited faxes without appropriate opt-out language. 821 F.3d at 997-998. The district court refused to certify the class because some of the fax recipients would not have been part of the class, and thus the class, in the district court's view, was not clearly ascertainable. *Id.* The Eighth Circuit reversed and held that fax logs "are objective criteria that make the recipient clearly ascertainable" even if some of those recipients did not have valid claims for damages. *Id.* Victim letters, like fax logs, are an "objective criteria" that help ascertain class membership.

Similarly, in *McKeage*, the Eighth Circuit affirmed class certification in a case involving a boat seller's use of a form contract that was illegal under Missouri law but apparently would have been legal in other states. 847 F.3d at 996-97. A nationwide class of customers was certified, but the class was limited to customers whose sales contracts were governed by Missouri law. *Id.* To determine class membership, the district court authorized an "intensive file-by-file review process" to determine which contracts contained a Missouri choice-of-law provision. *Id.* at 999. The Eighth Circuit affirmed class certification, noting that the intensive review process "worked" for identifying class members and separating out customers who might have been subject to individual defenses. *Id. McKeage* and *Sandusky Wellness Center* illustrate that the two-step process described above is sufficient and appropriate for ascertaining class membership.

One aspect of BBI's argument remains. In addition to arguing there is no objective criteria for determining class membership, BBI insists the jury must decide at trial who is included in the class. In making this argument, BBI relies heavily on treatises stating that class membership is a "question of fact." (ECF 150-1, p. 3 (citing 7 C. Wright & A. Miller, Federal Practice and Procedure § 1760 (1972)).) BBI extrapolates that, because issues of fact generally must be decided by the jury, the issue of class membership also must be decided by the jury.

BBI does not cite a single case holding that the jury must decide who is in the class. To the contrary, cases overwhelmingly recognize that class membership may be determined by the court any time before final judgment is entered, even if trial has already occurred or liability has been established in some other manner. *See, e.g.*, *McKeage*, 847 F.3d at 996-97 (engaging in "intensive file-by-file review process" for determining class membership in case where no trial was held and summary judgment was granted in the class's favor); *Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1273, 1297–98 (D. Kan. 2012), *aff'd*, 770 F.3d 1300 (10th Cir. 2014) (modifying class definition after jury trial); *Victorino v. FCA US LLC*, No. 16CV1617-GPC(JLB), 2020 WL 2306609, at *4 (S.D. Cal. May 8, 2020), *reconsideration denied*, No. 16CV1617-GPC(JLB), 2021 WL 662264 (S.D. Cal. Feb. 19, 2021) ("[D]etermination of class membership and protecting the defendant's due process rights can be done during the claims administration process."); *Lyngaas v. Curaden AG*, No. 17-10910, 2019 WL 6210690, at *16–18 (E.D. Mich. Nov. 21, 2019), *aff'd sub nom. Lyngaas v. Ag*, 992 F.3d 412 (6th Cir. 2021) (ordering post-trial claims administration process to determine class membership); *Wakefield v. ViSalus, Inc.*, No. 3:15-CV-1857-SI, 2019 WL 3945243, at *10 (D. Or. Aug. 21, 2019) ("[W]hether an individual is a member of the class is

independent of [the defendant's] liability."); *Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2017 WL 3206324, at *4 (M.D. N.C. July 27, 2017) ("[C]ourts have not found that due process or any other principle entitled defendants to a jury trial on individual class members' identity."); *Petrone v. Werner Enterprises, Inc.*, No. 8:11CV401, 2017 WL 11681365, at *1–3 (D. Neb. Sept. 29, 2017) (authorizing post-trial process for determining class membership). Simply put, there is no requirement that class membership be determined by the jury at trial. The Court therefore rejects BBI's position that the jury must determine class membership on a victim-by-victim basis.

    C. *Common Issues of Law and Fact Predominate Over Individualized Issues.*

BBI's remaining arguments for decertification essentially just rehash issues that were briefed and addressed during prior motion practice on class certification. The only difference is that Plaintiff has now submitted a Trial Management Plan to provide additional information as to how Plaintiff expects trial to proceed. The Trial Management Plan reinforces the Court's conclusion that the requirements of Fed. R. Civ. P. 23 have been satisfied, particularly thanks to the Plan's proposed use of special interrogatories on issues of negligence and proximate cause.

    1. <u>The Use of Special Interrogatories Ensures that Common Issues Predominate.</u>

Plaintiff's overarching argument as to negligence is that BBI negligently hired or retained Stephen without enacting appropriate safeguards to protect minors from sexual abuse. Whether Plaintiff negligently hired Stephen in 2005 is a paradigmatic example of a class-wide issue: if Plaintiff convinces the jury to accept his position, negligence will have been established with respect to the entire class, all of whom joined BBI programs in 2005 or later. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (affirming class certification where evidence "could have been sufficient to sustain a jury finding . . . if it were introduced in each employee's individual action"). Similarly, if Plaintiff proves negligent retention starting sometime after 2005, he will have established the presence or absence of negligence as to every class member—some of whom, in this scenario, will not be entitled to recover from BBI if their involvement in BBI's programs pre-dated the negligence. *See id.* Either way, the use of special interrogatories helps ensure that common issues predominate. *See Allapattah Servs., Inc. v. Exxon Corp.*, 188 F.R.D. 667, 673 (S.D. Fla. 1999) ("A claim or defense can implicate common issues and be litigated collectively, despite the existence of . . . variations, so long as the elements of the claim or defense are substantially similar and any differences fall into a limited number of predictable patterns

which can be handled by special interrogatories or special verdict claims."); *Hanks v. Lincoln Life & Annuit Co. of New York*, 330 F.R.D. 374, 385 (S.D.N.Y. 2019) (same).

The Trial Management Plan's proposed approach to proximate cause further supports the Court's conclusion that common issues predominate and the class should remain certified. BBI's concern about proximate cause revolves around the fact that Stephen victimized minors in different ways (hidden cameras and the use of false online personas) and different places (hotel rooms and Stephen's private property). But the Trial Management Plan proposes that the Court specifically ask the jury whether BBI's negligence (if proven) proximately caused each type of victimization in each category of location. This assures the jury's verdict will establish the presence (or absence) of proximate cause as to each class member. *See Allapattah Servs.*, 188 F.R.D. at 673 (finding predominance to be satisfied where special interrogatories would resolve variations in claims of individual class members); *Hanks*, 330 F.R.D. at 385 (same).

2. There Is Not a Rift in the Class With Respect to Plaintiff's Intrusion Upon Seclusion Claims.

BBI argues that class members who were victimized through Stephen's use of false social media personas do not have claims for intrusion upon seclusion under Iowa law. In BBI's view, intrusion upon seclusion is not a valid cause of action for people who "voluntarily" or "affirmatively" send explicit images of themselves to others, even if the victims were lured to do so through false pretenses. BBI argues that this creates a rift in the class between those who were victimized through the fake social media personas and those victimized through hidden cameras.

The Court rejects this argument for three reasons. First, the Court does not interpret Iowa Supreme Court precedent as limiting the tort of intrusion upon seclusion in the manner BBI argues. The Iowa Supreme Court has held that the tort applies when there is an "intentional intrusion into a matter the plaintiff has a right to expect privacy" and the act is "highly offensive to a reasonable person." *Koeppel v. Speirs*, 808 N.W.2d 177, 181 (Iowa 2011). Liability is based in the method used to obtain the information, not the content or how it was used. *Id.* When considering whether a particular action falls within the tort, "it is important to keep in mind that the tort protects against acts that interfere with a person's mental well-being by intentionally exposing the person in an area cloaked with privacy." *Id.* at 184. There is nothing in *Koeppel* or any other Iowa case suggesting that victims who are duped into "affirmatively" providing explicit images of themselves would lack a cause of action for intrusion upon seclusion; to the contrary, the Iowa Supreme Court has

9

interpreted the tort broadly. *See id.* (holding that a plaintiff may recover for intrusion upon seclusion based on presence of hidden cameras even if they were never actually used).

Other courts have recognized that intrusion upon seclusion has occurred when photographs or videos that were taken with the subject's consent are later shared beyond the scope of the that consent. *See Socha v City of Joliet*, Case No. 18 C 5681, 2019 WL 2576545, at *3 (N.D. Ill. 2019) (concluding plaintiff had viable intrusion upon seclusion claim in "revenge porn" case involving explicit photographs and videos that were taken with the victim's consent but shared with others); *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 235 (Minn. 1998) (holding that intrusion upon seclusion is viable theory where plaintiff alleged unauthorized sharing of photograph that originally was taken with consent); *Doe v. Eisenberg*, No. H-16-1149, 2021 WL 4310601 (S.D. Tex. July 23, 2021) (awarding attorney's fees following unauthorized sharing of consensual photos under intrusion upon seclusion theory); *Malott v. Goodlett*, No. 3:17-CV-00578-CHB-RSE, 2020 WL 12968413, at *4 (W.D. Ky. Dec. 30, 2010) ("Goodlett's search and then publication of the contents of Plaintiffs' private photographs is a clear violation of Plaintiffs' 'right to be let alone.'"). The Court is confident the Iowa Supreme Court would conclude there has been an intrusion upon seclusion when a person is duped into providing explicit images of themselves to a third-party.

### 3. Individualized Issues as to Damages Does Not Defeat Class Certification.

Plaintiff has never disputed that there are *some* individualized issues in the case, particularly as it relates to special damages. Here again, however, Plaintiff's Trial Management Plan provides a satisfactory mechanism for handling those issues. Specifically, Plaintiff proposes either the appointment of a special master or some other form of process (such as post-trial decertification) to determine special damages on a victim-by-victim basis after class-wide issues have been resolved at trial. (ECF 108, p. 11.) There is nothing inherently problematic with this approach. *See Bouaphaekeo*, 577 U.S. at 453 (holding that class certification may be appropriate when common issues predominate "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members") (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123-124 (3d ed. 2005) (footnotes omitted)). Other courts have recognized that it is acceptable to try general damages on a class-wide basis, then decertify the class to try special damages for individualized harm such as emotional damages separately. *See Audet v. Fraser*, No. 3:16-CV-00940 (MPS), 2020 WL 2113620, at *8 (D. Conn. May 4, 2020); *Pineda v. Skinner*

*Servs., Inc.*, No. CV 16-12217-FDS, 2019 WL 3754015, at *9 (D. Mass. Aug. 8, 2019); *Barnes v. D.C.*, 278 F.R.D. 14, 22 (D.D.C. 2011); *Bokusky v. Edina Realty, Inc.*, No. 3-92 CIV. 223, 1993 WL 515827, at *6 (D. Minn. Aug. 6, 1993). Decertification after liability is proven is another tool in a trial judge's toolbox to facilitate efficient case management. *Garcia v. E.J. Amusements of New Hampshire, Inc.*, 98 F. Supp. 3d 277, 291 (D. Mass. 2015). Plaintiff's proposals regarding individual damages are acceptable and workable in concept, and thus reinforce the Court's conclusion that the requirements of Fed. R. Civ. P. 23 have been satisfied.[3]

        4.   The Remaining Elements of Fed. R. Civ. P. 23 Remain Satisfied.

To the extent not addressed in this Order, the Court reaffirms its original ruling on class certification (ECF 70) with respect to all other arguments made by BBI in support of decertification.

**III.   CONCLUSION.**

For reasons set forth above, BBI's motion to decertify is DENIED.

IT IS SO ORDERED.
Dated: July 19, 2022

_____
Stephen H. Locher
UNITED STATES MAGISTRATE JUDGE

---

[3] The Court will decide later exactly how to move forward with individual damages if liability is established at trial.