# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### DAVENPORT DIVISION

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC., and ADIDAS AMERICA, INC.,<br><br>Defendants. | Civil No.  3:20-cv-00005<br><br><br>**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE** |

This Class Action Settlement Agreement and Release dated August 24, 2022 (the "Agreement"), is made and entered into by and among: (i) Class Representative Plaintiff John Doe ("Class Plaintiff"), on behalf of himself and each of the Class Members (as defined herein), by and through his counsel of record in the instant action and (ii) Defendant Barnstormers Basketball, Inc., d/b/a Barnstormers basketball of Iowa ("Barnstormers," or "Defendant"), by and through its counsel of record. The Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein) as against Barnstormers and Related Parties (as defined herein), subject to the approval of the Court (as defined herein) and the terms and conditions set forth in this Agreement.

## I.    The Lawsuit, the Claims, and the Class.

Whereas this lawsuit is styled *John Doe, and all others similarly situated v. Barnstormers Basketball, Inc. d/b/a Barnstormers Basketball of Iowa*, No. 3:20-cv-5-SHL (the "Lawsuit" or "the Litigation"). The Lawsuit is pending in the United States District Court for the Southern District of Iowa before United States Judge Stephen Locher (the "Court");

Whereas the Lawsuit was filed by Class Plaintiff John Doe, on behalf of himself and other current and former Barnstormers participants, arising out of acts by former Barnstormers co-director and coach Gregory Scott Stephen, who was arrested and pled guilty to illicit acts concerning minors, including some Barnstomers participants. The Lawsuit asserts claims that Barnstormers was negligent in its hiring, retention, and supervision of Gregory Scott Stephen by

failing to implement appropriate safeguards to protect minor athletes from sexual exploitation. Barnstormers and its Related Parties deny the Claims (as defined herein);

Whereas by Order dated September 23, 2021 the Court ruled that the Claims against Barnstormers can proceed as a Class Action, and defined the Class ("the Class") as follows:

All past or present Barnstormers Basketball, Inc. participants who:

1. Were affiliated with a Barnstormers Basketball, Inc. team at any point in time between 2005 and April 5, 2018 while Greg Stephen was involved with the organization; and

2. fell victim to Greg Stephen's illicit acts of secretly procuring nude images and/or recordings of minors.

Whereas also by virtue of the Order dated September 23, 2021, this is an "opt-out" class, meaning that members of the Class ("Class Members") who do nothing will remain in the class;

Whereas in a Class Notice published on March 8, 2022, ("Class Notice") Class Members were notified they may receive compensation from a future trial or settlement, and also notified they will be legally bound by orders that the Court issues and judgments that the Court enters regarding the Class, and the Claims;

Whereas in the Class Notice, Class Members were advised that regardless of whether the Class wins or loses the Claims, Class Members will not be able to sue Barnstormers in a separate action for the Claims made in this Lawsuit or Litigation;

Whereas trial of the Claims in the Lawsuit was scheduled to begin August 1, 2022;

Whereas in entering into this Agreement, Class Plaintiff and Barnstormers recognize and acknowledge the expense and time it would take to prosecute this action through trial and any subsequent appeals;

Whereas Barnstormers and its Related Parties have asserted and would assert numerous defenses to the Claims alleged by Class Plaintiff and expressly denies each of the Claims and allegations asserted against Barnstormers and its Related Parties and any and all liability arising out of the conduct alleged in the Lawsuit;

and expensive, and Barnstormers has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as this;

Whereas by entering into this Agreement, Barnstormers does not admit any wrongdoing and this Agreement is not and shall not constitute an admission of liability by Barnstormers or its Related Parties; and

Whereas Class Plaintiff and Barnstormers have therefore each independently determined that it is desirable and beneficial for the Lawsuit to be fully and finally resolved in the manner and upon the terms and conditions set forth in this Agreement.

## II.    TERMS OF AGREEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Class Plaintiff (for himself and the Class Members) and Barnstormers, by and through its counsel, that, subject to the approval of the Court, the Lawsuit and the Released Claims shall be finally and fully compromised, settled, and released, and the Lawsuit shall be dismissed with prejudice, as to all Settling Parties and their Related Parties, upon and subject to the terms and conditions of the Agreement, as follows.

### 1. Definitions

As used in the Agreement the following terms have the meanings specified below:

"Agreement" or "Settlement Agreement" or "Settlement" means this Settlement Agreement and Release.

"Authorized Claimant" means any class member whose claim for recovery has been allowed pursuant to the terms of the Agreement.

"Claims" mean those claims asserted by Class Plaintiff in the Lawsuit herein against Barnstormers and its Related Parties.  .

"Effective Date," or the date upon which this settlement becomes "effective," means the date the Court has entered the Final Order and Judgment and the Final Order and Judgment has been upheld through the resolution of all appeals and writs of certiorari, and through the expiration of all time to appeal and file writs of certiorari, except that the Effective Date shall not be delayed by a modification of or appeal from those parts of the Final Order and Judgment that (i) pertains to either the Plan of Allocation or the Fee and Expense Award; and (ii) has no effect on this Agreement

becoming binding, effective, and final in its entirety between Releasing Plaintiffs, Class Members, and Defendant.

"Fee and Expense Award" means the order awarding attorneys' fees and reimbursement of actual costs and expenses incurred by Lead Counsel and other plaintiffs' counsel in the Lawsuit.

"Final Approval Hearing" means the hearing to be requested by the Settling Parties and conducted by the Court, following notice to the Class and an opportunity for Class Members to exclude themselves from the Class or object to the settlement, at which time Plaintiffs will request the Court to finally approve the fairness, reasonableness and adequacy of the Settlement and to enter the final approval order.

"Final Order and Judgment" means an order to be entered by the Court in this Action granting final approval of this Settlement Agreement and dismissing the Lawsuit with prejudice.

"Lead Counsel" means Attorney Guy R. Cook.

"Lead Plaintiff" means John Doe.

"Defendant" or "Barnstormers" means Barnstormers Basketball, Inc., d/b/a Barnstormers Basketball of Iowa and its insurers Lexington Insurance Company and New Hampshire Insurance Company, parents, subsidiaries, subordinates, affiliates, agents, representatives, predecessors-in-interest, successors-in-interest, insurers, reinsurers, retrocessionaires, attorneys and assigns.

The "Lawsuit" or the "Litigation means the action entitled *John Doe, and all others similarly situated v. Barnstormers Basketball, Inc., d/b/a Barnstormers Basketball of Iowa,* No. 3:20-cv-5-SHL.

"Net Settlement Fund" means the Settlement Fund less any Fee and Expense Award approved by the Court and less Notice and Administration Expenses, Taxes and Tax Expenses, and other Court-approved deductions.

"Notice" means the Notices of Proposed Settlement of Class Action, which, subject to approval of the Court, shall be substantially in the forms attached hereto as **Exhibit A**.

"Notice and Administration Expenses" means reasonable costs and expenses incurred by the Claims Administrator in connection with providing notice to Class Members, locating Class Members, soliciting claims, assisting with the submission of claims, processing Claim Forms, administering and distributing the Net Settlement Fund to Authorized Claimants, and paying escrow fees and costs, if any, and reasonable and necessary time charges incurred in the performance of the Claims Administrator position at a reasonable rate for the services to be performed, which shall be Notice and Administration Expenses.

"Objection Date" means the date set forth in the Notice by which Class Members must object to the Settlement, which shall be 45 days after entry of the Preliminary Approval Order or such other time as may be set by the Court.

"Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and including any of their heirs, successors, representatives, or assigns.

"Plan of Allocation" means the plan for allocating the Net Settlement Fund set forth in **Exhibit B** hereto, or such other plan for allocating the Net Settlement Fund approved by the Court.

"Preliminary Approval Order" means the Order Preliminarily Approving Settlement and Providing for Notice, substantially in the form attached hereto as **Exhibit C**.

"Related Parties" means, as applicable, each of a person or entity's respective present and former parents, subsidiaries, divisions, affiliates, and each of their and a person or entity's respective present and former employees, members, partners, principals, agents, officers, directors, controlling shareholders, attorneys, agents, related or affiliated entities, predecessors, successors, spouses, estates, heirs, executors, trusts, trustees, administrators, agents, representatives, and assigns, in their capacity as such, and any entity in which a person or entity has a controlling interest. "Related Parties" includes Amateur Athletic Union of the United States, Inc. and its insurers Lexington Insurance Company and New Hampshire Insurance Company, Commerce & Industry Insurance Company, American International Specialty Lines Insurance Company, parents, subsidiaries, subordinates, affiliates, agents, representatives, predecessors-in-interest, successors-in-interest, insurers, reinsurers, retrocessionaires, attorneys and assigns. "Related Parties" does not include Adidas American, Inc.

"Released Claims" means any and all claims, rights, causes of action, liabilities, actions, suits, damages, or demands of any kind whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that relate to the Claims made in the Lawsuit and that were or could have been alleged in the Lawsuit against Barnstormers or Related Parties, including insurers Lexington Insurance Company and New Hampshire Insurance Company and their parents, subsidiaries, subordinates, affiliates, agents, representatives, employees, claims adjusters, predecessors-in-interest, successors-in-interest, insurers, reinsurers, retrocessionaires,

attorneys and assigns, including Unknown Claims as defined. "Released Claims" does not include claims relating to the enforcement of the settlement.

"Released Plaintiffs" means Class Plaintiff and each Class Member.

"Releasing Plaintiffs" means Class Plaintiff and each Class Member.

"Settlement Amount" means $One Million Nine-Hundred Thousand Dollars and No Cents ($1,900,000.00).

"Settling Parties" means, collectively, Class Plaintiff, all other Class Members, and Barnstormers.

"Summary Notice" means the summary form of notice for postcard mailing, which, subject to approval of the Court, shall be substantially in the form attached hereto as **Exhibit D.**

"Unknown Claims" means any Released Claims that Releasing Plaintiffs do not know or suspect to exist in his favor at the time of the release, which, if known by him might have affected his settlement with and release of Defendant, or might have affected his decision not to object to this settlement or seek exclusion from this settlement. Releasing Plaintiffs may hereafter discover facts in addition to or different from those which he now knows or believes to be true with respect to the subject matter of the Released Claims, but Class Plaintiff shall expressly settle and release and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, disclosed or undisclosed, matured or unmatured, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Releasing Plaintiffs acknowledge that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

**2.      The Settlement**

Within 60 days after the entry of the Preliminary Approval Order, Barnstormers will pay or cause to be paid $ One Million Nine-Hundred Thousand Dollars and No Cents ($1,900,000.00).

**3.      Preliminary Approval Order and Final Approval Hearing**

Promptly after execution of the Agreement, Lead Plaintiff shall submit the Agreement together with its Exhibits to the Court and shall apply for entry of the Preliminary Approval Order, requesting, inter *alia*, the preliminary approval of the settlement set forth in the Agreement; setting

of dates for the mailing of the Notice, Claims Deadline, Objection Date, and Final Approval Hearing; approval of the Claims Administrator; approval of the Notice; approval of the Claim Form; and approval of the publication of the Summary Notice. The Notice shall include general information regarding the terms of the settlement set forth in the Agreement and the proposed Plan of Allocation and the date of the Final Approval Hearing.

Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, or the application of Lead Counsel for a Fee and Expense Award and/or for service awards for Lead Plaintiff, must timely do so in the manner specified in the Court's Preliminary Approval Order.

Lead Plaintiff will request that after notice to Class Members is given, the Court hold the Final Approval Hearing and approve the settlement of the Litigation as set forth herein. At the Final Approval Hearing, Lead Counsel will also request that the Court approve the proposed Plan of Allocation and the Fee and Expense Award.

For purposes of this Agreement and Lead Plaintiff's motion for preliminary approval and final approval of the Settlement, Lead Plaintiff and Barnstormers agree that Iowa law applies to all Class Members' claims.

**4.     Releases**

Upon the Effective Date, Releasing Plaintiffs and anyone claiming through or on behalf of them, shall be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims against Defendant Barnstormers and Related Parties. Upon the Effective Date, the Releasing Plaintiffs will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any Released Claim against Defendant Barnstormers and Related Parties.

In exchange for the releases and other consideration set forth herein, including full payment of the Settlement Amount, Lead Plaintiff will dismiss the Lawsuit with prejudice as set forth herein.

The Settling Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Settling Parties and the Class Members to interpret and enforce the terms, conditions, and obligations under this Agreement.

The Settling Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Settling Parties and the Class Members to interpret and enforce the terms, conditions, and obligations under this Agreement.

5.    **Administration and Calculation of Claims, Final Awards and Supervision and Distribution of the Settlement Fund**

The Claims Administrator, subject to such supervision and direction of the Court as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

The Court shall have and retain exclusive jurisdiction over the Settlement Fund, which shall be applied as follows:

(a)    to pay all Notice and Administration Expenses;

(b)    after entry of the Final Order and Judgment, to pay the Fee and Expense Award, and any service award to Lead Plaintiff; and

(c)    after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as allowed by the Agreement, the Plan of Allocation, or the Court.

After the Effective Date, and in accordance with the terms of the Agreement, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

Within 120 days after the written objection deadline, or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Claim Form, supported by such documents as are specified in the Claim Form.

Except as otherwise ordered by the Court, all Class Members who fail to timely submit a valid Claim Form within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Agreement and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Agreement, the releases contained herein, and the Final Order and Judgment. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. Lead Counsel shall also have the right, but not the obligation, to advise the Claims Administrator to waive

what Lead Counsel deems to be de minimis or formal or technical defects in any Claim Form submitted.

Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a claim in whole or in part, the Claims Administrator shall communicate with the claimant to give him, her, or they the opportunity to remedy any curable deficiencies in the claim submitted. The Claims Administrator shall notify all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements below.

The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation attached hereto, summarized in the Notice, and approved by the Court.

Defendant and its Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, or calculation of claims to be paid to Authorized Claimants from the Settlement Fund; or (v) the payment or withholding of taxes or tax expenses, or any expenses or losses incurred in connection therewith. No Person shall have any claim of any kind against Defendant or its Related Parties with respect to the matters set forth in below hereof; and the Class Members, Lead Plaintiff, and Lead Counsel release Defendant and its Related Parties from any and all liability and claims arising from or with respect to the administration, investment or distribution of the Settlement Fund.

No Person shall have any claim against Lead Plaintiff, Lead Counsel or the Claims Administrator, or any other Person designated by Lead Counsel, based on determinations or distributions made substantially in accordance with this Agreement and the settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement set forth in this Agreement, and any order or proceeding relating to the Plan of Allocation shall not

operate to terminate or cancel the Agreement or affect the finality of the Court's Final Order and Judgment approving the Agreement and the settlement set forth herein.

## 6.    Lead Counsel's Attorneys' Fees and Expenses

Lead Counsel may submit a Fee and Expense Application to the Court for distributions from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) expenses or charges incurred in connection with prosecuting the Litigation; plus (c) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court.

Any fees and expenses awarded by the Court shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes the Final Order and Judgment and an order awarding such fees and expenses.

In the event that the Effective Date does not occur, or the Final Order and Judgment or the order making the Fee and Expense Award is reversed or modified, or this Agreement is canceled or terminated for any other reason, and such reversal, modification, cancellation, or termination becomes final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then Lead Counsel, including its partners and/or shareholders who have received any portion of the Fee and Expense Award shall, within twenty (20) days after receiving notice from counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund.

The procedure for and the allowance or disallowance by the Court of any applications by any plaintiff's counsel for attorneys' fees and expenses, or any Lead Plaintiff for a service award to be paid out of the Settlement Fund, are not part of the settlement set forth in this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement set forth in this Agreement, and any order or proceeding relating to the Fee and Expense Application, or application for service award, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Agreement, or affect or delay the finality of the Final Order and Judgment approving the Agreement and the settlement of the Litigation set forth herein.

Any fees and/or expenses and/or service awards, including the Fee and Expense Award, awarded by the Court shall be paid solely from the Settlement Fund. Defendant and its Related Parties shall have no responsibility for any payment of attorneys' fees and/or expenses to Lead Counsel, or any other plaintiff's counsel, or service award to any Lead Plaintiff(s).

Defendant and its Related Parties are not entitled to any award of fees or expenses from the Settlement Fund.

Defendant and its Related Parties shall have no responsibility for the allocation among Lead Counsel, or any other plaintiff's counsel, and or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

**7.      Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

This Agreement shall be conditioned on the occurrence of all of the following events:

(a)      the Court has entered the Preliminary Approval Order;

(b)      the Court has entered the Final Order and Judgment; and

(c)      the Settlement Amount has been deposited into an escrow account.

If the Effective Date does not occur, or if the Agreement is terminated pursuant to its terms, neither Lead Plaintiff nor any of their counsel shall have any obligation to repay any Notice and Administration Expenses already incurred hereof at the time of such termination or cancellation, but which have not been paid, and such expenses shall be paid by the Claims Administrator in accordance with the terms of the Agreement prior to the balance being refunded to Defendant in accordance with the terms of the Agreement.

**8.      Protection of Youth Athletes**

Defendant Barnstormers agrees to strictly adhere to any and all youth protection policies and protocols for athlete welfare and misconduct prevention mandated by any organization Defendant Barnstormers is a member of or otherwise affiliates itself with.

**9.      Miscellaneous Provisions**

**9.1** The Settling Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Agreement.

**9.2** The Settling Parties and their respective counsel agree that they will act in good faith and will not engage in any conduct that could frustrate the purposes of this Agreement.

**9.3** The Settling Parties and their respective counsel will not make any public statement that disparages the settlement.

**9.4** The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement have been by mutual understanding after negotiation, with consideration by, and participation of, the Settling Parties and their counsel. This Agreement shall

not be construed against any Settling Party on the basis that it was the drafter or participated in the drafting. Any statute or rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in the implementation of this Agreement and the Settling Parties agree that the drafting of this Agreement has been a mutual undertaking.

**9.5** The Settling Parties intend this Agreement to effect a final and complete resolution of all disputes and claims between Releasing Plaintiffs, on the one hand, and Defendant and its Related Parties, on the other hand, with respect to the Litigation. The settlement resolves claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties agree that during the course of the Litigation, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the Settlement Amount and the other terms of the settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel. Neither this Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Agreement or the Settlement (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, the truth of any of the allegations in the Litigation of any wrongdoing, fault, or liability of Defendant or its Related Parties, or that Lead Plaintiff or any Class Members have suffered any damages, harm, or loss; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission on the part of Defendant or its Related Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

**9.6** Defendant and its Related Parties may file this Agreement and/or the Final Order and Judgment in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim or issue preclusion or similar defense or counterclaim.

**9.7** All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Agreement.

**9.8** All of the Exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

**9.9** The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

**9.10** The Agreement and the Exhibits attached hereto constitute the entire agreement among the parties hereto and no representations, warranties or inducements have been made to any party concerning the Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

**9.11** Lead Counsel, on behalf of the Class, is expressly authorized to take all appropriate action required or permitted to be taken by the Class Members they represent pursuant to the Agreement to effectuate its terms.

**9.12** Each counsel or other Person executing the Agreement or any of its Exhibits on behalf of any party hereto warrants that such Person has the full authority to do so.

**9.13** The Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

**9.14** The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

**9.15** The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement and matters related to this settlement.

**9.16** Pending approval of the Court of the Agreement and its Exhibits, all proceedings in the Litigation shall be stayed and all class Members shall be barred and enjoined from prosecuting any of the Released Claims against Defendant.