IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GREGORY SCOTT STEPHEN; BARNSTORMERS BASKETBALL, INC., d/b/a BARNSTORMERS BASKETBALL OF IOWA; AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.; and ADIDAS AMERICA, INC.,<br><br>Defendants. | No. 3:20-cv-00005-SHL-HCA<br><br><br>ORDER REGARDING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

**I.      INTRODUCTION**

Between 2005 and 2018, Greg Stephen secretly took or obtained sexually explicit photographs or videos of hundreds of minors, many of whom participated in programs through Stephen's employer, Barnstormers Basketball, Inc. ("BBI"). Plaintiff John Doe, individually and on behalf of others similarly situated ("Plaintiffs"), brought claims against BBI for allegedly negligently hiring and retaining Stephen, among other theories. BBI denies liability.

On the proverbial (and almost literal) eve of trial, Plaintiffs and BBI submitted a Joint Notice of Settlement. (ECF 178.) On August 24, 2022, the parties moved for preliminary approval of their settlement agreement and asked for Court-authorized notice to be sent to class members. (ECF 180, p. 1.) The Court has carefully reviewed the settlement agreement and is largely inclined to grant the motion for preliminary approval. Before it can do so, however, it needs additional information from the parties on three issues: (1) the breadth of the release given to BBI and "Related Parties" (as defined in the agreement); (2) the impact of the proposed dismissal "with prejudice" on claims against Defendants Greg Stephen and adidas America, Inc. ("adidas"); and (3) the mechanics of the settlement fund, including who will hold the money pending final settlement approval. Further detail is provided below.

## II.   BACKGROUND

*A. Factual and Procedural Background.*

BBI is an Iowa-based youth basketball organization. (ECF 1-4, p. 117.)[1] Stephen co-founded BBI in 2005 with Jamie Johnson, an organizer for the Amateur Athletic Union of the United States, Inc. ("AAU"). (ECF 1-4, p. 126.) Stephen began coaching BBI boys' basketball teams shortly thereafter. (Id.)

In 2018, Stephen pled guilty to five counts of Sexual Exploitation of a Minor. (ECF 1-4, p. 130.) In his Plea Agreement, Stephen admitted to: using hidden cameras to record nude minors in hotel rooms; assuming the identity of teenage females to solicit explicit images from minors; and having inappropriate physical contact with minors. (Id., pp. 130, 132–134.) He admitted engaging in this conduct from 2005 to 2018 and acknowledged that his position with BBI gave him opportunities to victimize minors, including in connection with travel to sporting events and shared hotel rooms. (Id., pp. 131–132.) In 2019, Stephen was sentenced to 180 years' imprisonment. (Id., p. 134.)

Plaintiffs filed suit on November 2, 2018, in the Iowa District Court for Johnson County. (ECF 1, ¶ 1.)[2] It was later removed to this Court. (Id.) On September 23, 2021, over BBI's objection, the Court certified the following class under Fed. R. Civ. P. 23(b)(3):

> All past or present Barnstormer Basketball, Inc., participants who:
>
> 1. were affiliated with a Barnstormer Basketball, Inc., team at any point in time between 2005 and April 5, 2018, while Greg Stephen was involved with the organization; and
>
> 2. fell victim to Greg Stephen's illicit acts of secretly procuring nude images and/or recordings of minors.

(ECF 70.) The Court later denied BBI's motion to decertify. (ECF 171.)

Trial was scheduled to begin August 1, 2022. The parties were clearly well prepared and willing to go to trial, as illustrated by their extensive pretrial filings, which included dozens of motions in limine and detailed trial briefs, jury instructions, and related materials. (ECF 119, 120, 131, 151, 154, 156.) However, on July 29, 2022, Plaintiffs and BBI notified the Court that they

---

[1] This background section is included only to provide context for the parties' proposed settlement. It is not a finding of fact.
[2] AAU and adidas have both successfully moved to compel arbitration and stay this action as to them. (ECF 1, ¶ 2; ECF 23.)

had reached settlement in principle. (ECF 178.) Plaintiffs filed their motion for preliminary approval of the settlement agreement a few weeks later. (ECF 180.)

  B. *Summary of the Proposed Settlement Agreement.*

  The proposed agreement includes a broad release in favor of BBI and "Related Parties," including, *inter alia*, AAU and its insurers. (ECF 181, p. 5.)[3] The release covers all "Released Claims," which is broadly defined to include "all claims, rights, causes of action, liabilities, actions, suits, damages, or demands of any kind whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that relate to the Claims made in the Lawsuit and that were or could have been alleged in the Lawsuit against Barnstormers or Related Parties…" (Id.)

  In exchange for this broad release, BBI will pay $1.9 million within 60 days of this Court preliminarily approving the proposed agreement. (Id., p. 6.) The agreement does not specify who will hold the money pending final approval and throughout the claims allocation process.[4] BBI further agrees "to strictly adhere to any and all youth protection policies and protocols for athlete welfare and misconduct prevention mandated by any organization [it] is a member of or otherwise affiliates itself with." (Id.)

  The amount available for distribution to class members will be $1.9 million minus (1) administrative expenses, (2) attorney fees and expenses awarded, and (3) enhancement payments awarded by the Court. (Id., p. 1.) According to class counsel, there are currently "98 confirmed victims that could fall within the class definition." (ECF 180, p. 4.) Counsel estimates that each class member will receive approximately $10,000. (Id.) Although not explicit in the agreement, it appears from other documents that Plaintiffs' counsel will seek a 40% fee award, as well as reimbursement of reasonable expenses. (Id., p. 4 n. 1; ECF 181-1.)

  The agreement acknowledges that class members may timely object to the fairness, reasonableness, or adequacy of the settlement and fee award for class counsel. (ECF 181, pp. 2, 7.) The parties propose the week of November 13, 2022, for a final approval hearing. (ECF 181-1.) The "Effective Date" of the agreement is the date the Court enters a Final Order and Judgment

---

[3] AAU is nominally a defendant in the case, although the Iowa District Court for Johnson County (Case No. LACV080354) granted AAU's motion to compel arbitration, and thus the case against AAU has been stayed since October 16, 2019. (ECF 1, ¶ 2.)

[4] The proposed agreement states the "Court shall have and retain exclusive jurisdiction over the Settlement Fund." (181, 8.) It is not clear, however, whether this statement is meant to imply that the parties intend the Court to hold the Settlement Funds.

and any appeals are resolved (or the time for appeal expires), except that the Effective Date will not be delayed by modification or appeal "from those parts of the Final Order and Judgment that (i) pertains to either the Plan of Allocation or the Fee and Expense Award; and (ii) has no effect on this Agreement becoming binding, effective, and final in its entirety between Releasing Plaintiffs, Class Members, and Defendant." (ECF 181, pp. 3–4.) Following the Effective Date, Plaintiff John Doe will dismiss the Lawsuit with prejudice, and class members will be barred from raising any Released Claim against BBI and Related Parties (including AAU, but not adidas). (Id. at 5, 7.)

Plaintiffs also submitted a "Plan of Allocation" describing how claims will be processed and settlement funds disbursed. (ECF 181-2.) Pursuant to this Plan, a claims administrator shall, subject to Court supervision, oversee the administration and calculation of class member claims and distribute settlement funds to authorized claimants. (Id., p. 8.) To be eligible for payment, individuals claiming to be class members must timely submit a claim form and supporting documents to the claims administrator. (Id., pp. 8–9.) The claim form will be created by the claims administrator and set out the proof required for a successful claim. (ECF 181-2, p. 1.) Plaintiffs' lead counsel, Guy R. Cook, has discretion to accept late-submitted claims, provided this does not materially delay the distribution of settlement funds to previously authorized claimants. (Id., p. 8.) Lead counsel also may allow the claims administrator to waive "de minimis or formal or technical defects" in claim forms. (Id., pp. 8–9.)

### III. LEGAL STANDARD

Court approval is required for a class-wide settlement. Fed. R. Civ. P. 23(e). The approval process involves two stages. First, the Court conducts preliminary review of the settlement agreement. *Id*. If the Court concludes it likely will approve the agreement, it must "direct notice [of the settlement] in a reasonable manner to all class members who would be bound by the proposal." *Id.* Second, after notice has been provided, and "[i]f the proposal would bind class members," the Court must hold a final approval hearing to determine whether it is "fair, reasonable, and adequate" under factors set forth in Fed. R. Civ. P. 23(e)(2).

"A settlement agreement is 'presumptively valid.'" *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1,* 921 F.2d 1371, 1391 (8th Cir.1990)). "That said, preliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement." *Martin v.*

4

*Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013). Instead, under Fed. R. Civ. P. 23(e), "the district court acts as a fiduciary, serving as a guardian of the rights of absent class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). In determining whether to approve a class settlement, the Court must consider the factors set forth in Fed. R. Civ. P. 23(e)(2), which include whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) the agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

*Id.*

In the course of evaluating these factors, the Eighth Circuit has directed district courts to consider: "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Id.* (quoting *Van Horn*, 840 F.2d at 607). The Court may not unilaterally modify a proposed settlement agreement, but it may advise the parties that it will not approve a proposed settlement until certain modifications are made. *Evans v. Jeff D.*, 475 U.S. 717, 726–27, (1986); *see also Rawa v. Monsanto Co.*, 934 F.3d 862, 871 (8th Cir. 2019).

## IV.   LEGAL ANALYSIS

### A. Many of the Relevant Factors for Preliminary Approval Are Satisfied.

The Court is largely satisfied, for purposes of preliminary approval, that the proposed settlement is "fair, reasonable, and adequate," taking into account the factors set forth in Eighth Circuit precedent and Fed. R. Civ. P. 23(e)(2). The Court is confident, for example, that the class representative and class counsel have adequately represented the class. There is no indication that any conflicts of interest or other deficiencies have arisen in counsel's representation of the class.

5

Moreover, judging by the pretrial filings and hearings, counsel clearly devoted substantial time and energy to the case and were fully prepared to go to trial unless acceptable settlement terms were reached. The Court is likely to find the adequate representation factor satisfied.

Similarly, the record shows the proposal was negotiated at arm's length. In some circumstances, such as when parties present a settlement for court approval before meaningful litigation has occurred, concerns develop that the agreement might be the product of collusion—i.e., the defendant might be paying off plaintiff's counsel to free itself from liability without providing meaningful value to the class. *See Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017) ("The court's role in reviewing a negotiated class settlement is . . . to ensure that the agreement is not the product of fraud or collusion . . . .") (quoting *Marshall*, 787 F.3d at 509); *see also Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1168 (5th Cir. 1978) (holding class interests must not be "wrongfully compromised, betrayed, or 'sold out'"). The Court has no such concerns here. In the months before trial, the two sides intensely litigated issues ranging from class certification to admissibility of evidence to governing legal standards—and even who could be in the courtroom during *voir dire*. The Court is confident the parties negotiated settlement with similar intensity.

The Court also is comfortable with the "service award" of $7,500 for the class representative. Such an award is likely to be justified given the length of the class representative's involvement with the suit and his "substantial action to step forward and pursue the present litigation." *Jones v. Casey's Gen. Stores, Inc.*, 266 F.R.D. 222, 231 (S.D. Iowa 2009) (approving $10,000 "incentive compensation" for class representatives). Given the nature of the underlying sexual abuse, it was no small act of courage to proceed with the case.

B. *There Are Three Issues the Court Needs to Have Addressed in a Supplemental Brief.*

Although many of the factors the Court must consider appear to be satisfied, there are three areas where the Court needs additional information from the parties before it can grant preliminary approval.

First, the Court has questions about the scope of the release relative to the size of the benefit each class member is expected to receive. Leading up to trial, one of the hotly disputed issues was the difference between general invasion of privacy damages (i.e., those that could be awarded to class members on a one-size-fits-all basis) and special damages (i.e., those that required individualized analysis, such as emotional distress). Based on how the issue was litigated, the Court inferred that there might be some class members who suffered more severe forms of

emotional distress than others. But the settlement agreement grants a broad release to BBI and Related Parties that appears to terminate the ability of class members across-the-board to pursue claims for any form of harm—special damages, general damages, and all others. (ECF 181, pp. 5–6 (releasing "any and all claims, rights, causes of action, liabilities, actions, suits, damages, or demands of any kind whatsoever . . . that relate to the Claims made in the Lawsuit and that were or could have been alleged in the Lawsuit against [BBI] or Related Parties. . .").) Moreover, by extending the definition of "Related Parties" to include AAU, the release extinguishes not just claims against BBI, but also claims against a co-defendant whose case has been stayed since 2019 pending arbitration.

This broad release may be in the best interests of class members. *See In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.*, 357 F.3d 800, 805 (8th Cir. 2004) (broad releases are not facially improper). For example, if the settlement exhausts available insurance proceeds and BBI is unlikely to have the resources to pay anything more, there may be no realistic scenario where a class member who suffered an acute form of emotional distress can hope to recover more than the proposed settlement agreement already provides.[5] Or, perhaps, there are no class members with meaningful claims for special damages, and the Court was wrong in inferring otherwise. Similarly, if there is some connection between AAU and BBI for insurance or business purposes, or AAU is contributing to the settlement in a significant way, or claims against AAU are unlikely to be successful (or some combination thereof), the Court may be comfortable concluding the settlement is "fair, reasonable, and adequate" despite releasing the potential liability of BBI and AAU alike. On the existing record, however, the Court cannot quite get there. *See, e.g., Lusk v. Five Guys Enterprises LLC*, No. 117CV00762AWIEPG, 2019 WL 7048791, at *10 (E.D. Cal. Dec. 23, 2019) (denying preliminary approval when plaintiff did not adequately address breadth of release).

Second, the Court has questions about the scope of the "with prejudice" dismissal contemplated by the settlement agreement. (ECF 181, 3–4, 7.) In context, it seems clear the dismissal would apply to Plaintiffs' claims against BBI, as well as, in all likelihood (given the

---

[5] Plaintiffs already have essentially made this point, noting that that BBI is a non-profit organization with "limited, if any, financial ability to pay a judgment." (ECF 180, p. 4.) Plaintiffs further assert that there were "[c]omplex insurance coverage issues" that would have complicated post-judgment recovery from BBI's insurers. (Id., pp. 4–5.) Finally, Plaintiffs acknowledge significant hurdles on the merits, including challenges associated with proving BBI "knew or should have known" of Stephen's actions despite allegedly not receiving any formal complaints about his conduct prior to or during his tenure. (Id., p. 4.) The additional information the Court needs is whether—and why—these arguments justify the release of claims for special and general damages alike, as well as why AAU should be included in the definition of "Related Parties."

definition of "Related Parties"), the claims against AAU. Except for questions regarding AAU, discussed above, the Court is not troubled by these aspects of the with prejudice dismissal provision. The Court is concerned, however, that dismissing the case with prejudice may impair Plaintiffs' ability to pursue relief against Defendants Gregory Stephen and adidas. The Court would like to better understand the parties' position as to how the dismissal would affect those Defendants.[6]

Third, the Court has questions about the logistics of the settlement payment. The Court understands the payment will be made within sixty (60) days of preliminary approval. The Court cannot, however, determine where the payment is to be made or what will happen to the money if final approval is not granted. These details are unlikely to impact the Court's substantive evaluation of the settlement agreement, but they will help the Court for planning purposes, particularly if the parties anticipate Court or Clerk's Office involvement in handling funds.[7]

On or before September 12, 2022, the Court directs the parties to submit a supplemental brief that addresses the three issues identified above. In particular, and without limitation, the supplemental brief should do the following: (a) expressly confirm (or not) that the Court's interpretation of the release is correct—i.e., that it broadly releases claims for general and special damages alike, including emotional distress damages, as well as releasing all claims against both BBI and AAU, among other "Related Parties"; (b) explain why the release should cover AAU as a "Related Party," including discussion of: AAU's involvement in settlement negotiations; the status of Plaintiffs' arbitration against AAU; the relationship, if any, between recovery against BBI (and its insurer(s)) and recovery against AAU (and its insurer(s)); and any other details the parties believe the Court should consider; (c) explain in greater detail why the release should include claims not just for general invasion of privacy damages, but also special damages such as emotional distress; (d) explain the parties' positions as to the impact of the dismissal with prejudice on Defendants Gregory Stephen and adidas; and (e) provide logistical details regarding where the settlement payment will be sent and what will happen if final approval is not granted. Should the

---

[6] Like AAU, adidas successfully moved to compel arbitration, and therefore the case against it is stayed. (ECF 23.) It strikes the Court as possible, however, that a with prejudice dismissal of an entire case would extinguish Plaintiffs' claims against all Defendants, notwithstanding the stay.

[7] To be clear, the Court would prefer *not* to have the Clerk's Office involved in handling or distributing funds, given the time and energy that likely would be required.

parties decide changes are necessary to the proposed settlement agreement to address these issues, the Court will of course review the revised settlement agreement at that time.

### C. Issue for Class Counsel to Address in Greater Detail at the Final Approval Hearing.

At the final approval hearing, the Court will evaluate the same factors discussed above to ensure the settlement agreement is "fair, reasonable, and adequate" under Eighth Circuit precedent and Fed. R. Civ. P. 23(e). As part of this analysis, the Court will have to decide whether to approve class counsel's request for attorney's fees. Plaintiffs' filings suggest counsel will request a fee in the amount of 40% of the total common fund, plus fees and expenses. (ECF 180, 4 n. 1; ECF 180-1.)

The Court has discretion whether to apply a lodestar or percentage-of-the-fund method when assessing the reasonableness of a fee request. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 245–46 (8th Cir. 1996). When employing the percentage of the fund method, district courts determine whether the requested percentage is "in line with other awards in the Eighth Circuit." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016), *aff'd sub nom. Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017), and *aff'd sub nom. Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017). Even when the percentage method is applied, district courts often verify the reasonableness of an award under the lodestar approach. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). Courts in the Eighth Circuit "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005). An award of 36 to 38% of the common fund is not unreasonable *per se* but "on the high end of the typical range." *Huyer*, 849 F.3d at 399 (8th Cir. 2017); *see also In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award of 36% in class action settlement).

"The Eighth Circuit has not established factors that a district court must consider when awarding fees under the percentage-of-the-fund method, however, some cases have relied on the twelve-factor test from *Johnson v. Georgia Highway Express,* 488 F.2d 714, 719–20 (5th Cir.1974)." *Huyer*, 314 F.R.D. at 629; *see also Zoll v. E. Allamakee Cmty. Sch. Dist.*, 588 F.2d 246, 252 (8th Cir. 1978) (acknowledging the Eighth Circuit's "express approval" of the *Johnson* factors).[8] These factors include:

---

[8] This Court has also applied the *Johnson* factors to lodestar calculations. *See, e.g.*, *Sun Media Sys., Inc. v. KDSM, LLC*, 587 F. Supp. 2d 1059, 1075 (S.D. Iowa 2008). For frame of reference, courts in the Eighth Circuit have approved

1. The time and labor required,
2. The novelty and difficulty of the question,
3. The skill requisite to perform the legal services properly,
4. The preclusion of other employment due to acceptance of the case,
5. The customary fee,
6. Whether the fee is fixed or contingent,
7. Time limitations imposed by the client or the circumstances,
8. The amount involved and the results obtained,
9. The experience, reputation, and ability of the attorneys,
10. The undesirability of the case,
11. The nature and length of the professional relationship with the client, and
12. Awards in similar cases.

*Zoll*, 588 F.2d at 252 n. 11. The Court need only apply relevant *Johnson* factors, not all twelve. *Huyer*, 314 F.R.D. at 629.

At the time of the final approval hearing, class counsel should substantiate their request for fees by addressing as many of the *Johnson* factors as counsel believes are relevant. In particular, and without limitation, counsel should provide the Court with the number of hours spent on this case and the rates at which those attorneys otherwise would have billed those hours.

## V.   CONCLUSION

On or before September 12, 2022, the parties are directed to submit a supplemental brief addressing the issues identified in Section IV.B, above. The Court then will complete its review of the proposed settlement agreement and issue a ruling on the motion for preliminary approval.

**IT IS SO ORDERED.**

Dated: September 2, 2022.

_____
Stephen H. Locher
UNITED STATES DISTRICT JUDGE

---

lodestar multipliers ranging anywhere from 1.8 to 5.6. *See Huyer*, 849 F.3d at 399 (multiplier of 1.8); *In re Xcel Energy*, 364 F. Supp. 2d 980, 999 (D. Minn. 2005) (multiplier of 4.7); *In re Charter Commc'ns, Inc.*, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (multiplier of 5.6); *In re St. Paul Travelers Secs. Litig.*, 2006 WL 1116118, at *1 (D. Minn. April 25, 2006) (multiplier of 3.9).