IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
(EASTERN DIVISION)

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY SCOTT STEPHEN, BARNSTORMERS BASKETBALL, INC. d/b/a BARNSTORMERS BASKETBALL OF IOWA, AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC., and ADIDAS AMERICA, INC.,<br><br>Defendants. | CASE NO. 3:20-CV-0005-JAJ-CFB<br><br><br><br><br>**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD** |

COME NOW, Plaintiff John Doe, and for his Motion for Final Approval of Class Action Settlement, Attorneys' Fees, Expenses, and Incentive Award, states:

## I.   INTRODUCTION

After nearly four (4) years of litigation, and one (1) business day before a jury trial was scheduled to commence, Plaintiff John Doe and Defendant BBI reached a settlement on behalf of class members who were subject to Gregory Scott Stephen's illicit acts of secretly procuring nude images and/or recordings of minors. On September 29, 2022, the Court granted preliminary approval of the aforementioned settlement. *See* ECF No. 188. On or before October 7, 2022, the parties issued notices in the manner prescribed by the Court. For the reasons stated herein, the Court should (1) grant final approval of the settlement; (2) award class counsel's reasonable attorneys' fees in the amount of $760,000.00; (3) order reimbursement of all reasonably incurred

1

expenses of $76,586.15; and (4) award Plaintiff John Doe an incentive payment in the amount of $7,500.00.

## II.   ARGUMENT

### A.   Final Approval of Class Action Settlement is Appropriate

#### 1.   Legal Standard

In order to grant final approval of a class action settlement, the Court must make a determination that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Settlement is the preferred means of resolving class action lawsuits. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993) ("The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context"). As a result of the policy in favor of class action settlements, settlement agreements are "presumptively valid." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 626 (S.D. Iowa 2016). Therefore, the Court's task is limited to ensuring "that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015). In doing so, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

  (D) the proposal treats class members equitably relative to each other.

Fed R. Civ. P. 23(e)(2). In addition to the elements prescribed in Rule 23, the Eighth Circuit has focused on the following four factors: (1) "the merits of the plaintiff's case, weighed against the terms of the settlement"; (2) "the defendant's financial condition"; (3) "the complexity and expense of further litigation"; and (4) "the amount of opposition to the settlement." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). The Court will need to analyze both the Rule 23 elements and Eight Circuit factors in evaluating this class action settlement. *Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019).

  **2. The Proposed Settlement is Fair, Reasonable, and Adequate**

  For the reasons stated in Plaintiff's Brief in Support of Preliminary Approval (ECF No. 180), Joint Supplemental Briefing in Support of Preliminary Approval (ECF No. 187), and the Court's Order Granting Preliminary Approval (ECF No. 188), the proposed settlement is fair, reasonable, adequate, and satisfies both the Rule 23(e)(2) elements and Eighth Circuit factors. There is no evidence of conflicts of interest or other deficiencies pertaining to class representation. The case was vigorously prosecuted and defended. A settlement was reached one business day before trial was scheduled to commence. Given the secretive nature of Gregory Stephen's abhorrent behavior, both sides were presented with substantial risk had the case proceeded to trial. Even if Plaintiffs obtained a favorable verdict, given the insurance coverage challenges, there were significant questions as to the recoverability of any monetary award.[1] Moreover, the agreement

---

[1] As the Court rightfully identified, "BBI is a small non-profit organization with limited resources outside of insurance proceeds." See ECF No. 188, p. 7.

treats class members equitably in relation to one another. Outside of the class representatives incentive award, all class members are treated the same.

### B.      Award of Attorney's Fees From the Common Fund

In connection with approval of the Settlement in the above-captioned litigation, class counsel respectfully move the Court for an award of attorneys' fees of $760,000.00. The requested award will be paid from the $1,900,000.00 Gross Settlement Fund and represents 40% of the Gross Settlement. This request is fair, reasonable, and thus, should be approved.

#### 1.      Legal Standard

It is well established that "a litigant or a lawyer who recovers a common fund to the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). In the Eighth Circuit, there are two different approaches used to analyze the reasonableness of attorney's fees to be awarded, namely: (1) a percentage of the common fund; and (2) the lodestar methodology. *Johnson v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996). With regard to the Percentage-of-the-Fund Method, the Eighth Circuit has relied on the twelve-factor test established by the Fifth Circuit. *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018). These factors include:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719-20 (5th Cir. 1974). Regardless of the factors considered, the "most critical factor" is the "degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

Under the Lodestar Method, "the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Johnson v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996). As the Court recently noted, "courts in the Eighth Circuit have approved lodestar multipliers ranging anywhere from 1.8 to 5.6." *See* ECF No. 188, p. 9. Even when the Percentage-of-the-Fund Method is used, district courts will still use the Lodestar Method to "cross-check" the reasonableness of the percentage fee. *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016).

Given district courts' "superior understanding of the litigation," they are given "substantial deference" in determining the attorney's fees to be provided to class counsel. *Quoting In re Genetically Modified Rice Litig.*, 764 F.3d 864, 871 (8th Cir. 2014). This discretion extends to which of the aforementioned methods to utilize in its analysis. *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019). A district court's award of class counsel fees is subject to appellate review

only for an abuse of discretion. *Quoting In re Genetically Modified Rice Litig.*, 764 F.3d 864, 871 (8th Cir. 2014).

### 2. The "Percentage-of-the Fund" Method Supports the Requested Fees

#### a. Class Members Received a Substantial Benefit

The $1,900,000.00 settlement provides a substantial benefit to the Class. It creates a net common fund worth over $1,000,000.00.[2] The total amount to be received by each class member will depend on how many class members fill out valid claim forms. Pursuant to information received from the Iowa Department of Criminal Investigation, there are potentially approximately 98 confirmed victims that could fall within the class definition. Thus, even assuming each and every victim fills out a valid claim form, they will receive over $10,000.00 in compensation.[3]

Given the context in which this monetary award is realized, the importance, worth, and value cannot be overstated. Class members were sexually exploited by a person many considered family. This exposure has caused a great deal of shame and embarrassment, making it highly unlikely the minor victims would be willing or psychologically able to bring individual suits and relive the trauma through the rigors of litigation, including but not limited to answering interrogatories, producing documents, and providing deposition testimony. Indeed, in the almost five (5) years since Gregory Stephen's illicit behaviors were discovered, not a single victim has pursued a claim independent of this class action proceeding. Through John Doe's willingness to pursue this action on behalf of others, as well as class counsel's efforts, the vulnerable class members received compensation that they would not otherwise have received.[4]

---

[2] $1,900,000.00 (gross settlement) - $760,000.00 (attorney fees) - $76,586.15 (current expenses) - $7,500 (incentive payment) = 1,055,913.85.
[3] Of note, to date, 19 claim forms have been received by the claim administrator. If the claims process ended today, each class member who submitted a claim form would receive more than $50,000.00.
[4] It is also noteworthy that class counsel's efforts in obtaining a settlement prior to trial provided a substantial benefit. Specifically, had the case proceeded to trial, it is likely additional litigation would commence pertaining to coverage

### b. The Factual and Legal Issues in this Action are Complex

This case involved a number of complex factual and legal issues. First, class certification status in mass tort cases is difficult to obtain. As the Supreme Court noted in *Amchem Prod., Inc. v. Windsor*, mass tort cases are "ordinarily not appropriate for class treatment." 521 U.S. 591, 594 (1997). Through extensive research, leg-work,[5] and analysis, class counsel carefully crafted and created a class certification proposal that adhered to Eighth Circuit precedent. Subsequent to obtaining certification, given the aforementioned barriers to individual victims bringing claims on their own behalf, class counsel was forced to develop a framework that was susceptible to obtaining recovery without mandating class member involvement (*i.e.*, without class members having to present for individual hearing on damages to obtain recovery).[6] Through countless hours of legal work, class counsel was able to craft a framework that allowed for general damages based on damages that naturally flow from the conduct at issue. Lastly, despite being involved in the program for over ten (10) years, there was no evidence anyone made a formal complaint about Gregory Stephen. Class counsel was faced with the complex challenge of proving that, BBI should have known of Gregory Stephen's dangerous propensities. *See Godar v. Edwards*, 588 N.W.2d 701, 708 (Iowa 1999) (noting that Iowa law requires a plaintiff to show the employer knew or should have known of its employee's unfitness). This was done through countless hours of reviewing the history of sexual abuse in youth serving organizations, consulting expert witnesses, and reviewing the historical development of youth protection protocols in the industry.

---

issues. As a result of the settlement, class members will receive settlement benefits years before they would receive awards obtained after trial and likely appeal.

[5] Developing the factual justification for the desired class involved interviewing fact witnesses, reviewing criminal pleadings, and researching the make-up of BBI.

[6] Of note, most, if not all victims were nervous and concerned about the prospect of testifying in open court. Class counsel only received assurance from a small percentage of victims on their willingness to travel to Davenport, Iowa to testify at trial.

      **c.**      **Class Counsel Undertook Significant Risk**

Class counsel agreed to pursue this matter on a contingency basis. The risk undertaken by class counsel in taking this case was particularly unique in that there were multiple stages that presented a substantial risk of no recovery. As in the previous subsection, there were significant barriers to recovery pertaining to class certification, establishing damages on behalf of the class, and establishing liability against BBI. Despite class counsel dedicating several years and countless hours to this case, there was a substantial risk of no recovery.

      **d.**      **Class Counsel Spent Considerable Time and Effort Litigating this Case**

Class counsel spent nearly four (4) years litigating this case. As fully outlined in Exhibits 1 (detail work-in-process report) and 2 (lodestar calculations) contemporaneously filed herewith, a total of 2,783 hours were poured into prosecuting this case on behalf of class members. The time and effort expended by class counsel was reasonable and supports the requested attorney's fees.

      **e.**      **No Class Member Has Objected to the Requested Attorney's Fees**

On or before October 7, 2022, pursuant to the Court's Order (ECF No. 188), notice of settlement was provided to class members. The notices fully described the fees sought by class counsel. To date, no objections to the requested fees have been formally made or articulated to class counsel. The absence of objections is a strong indicator of the reasonableness of the requested fee. *See e.g.*, *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010).

      **f.**      **A 40% Contingency Fee is Customary**

At the commencement of this action, class counsel and John Doe agreed that the case would be prosecuted on a contingent fee basis, with class counsel forwarding the costs of the lawsuit, in return for attorney's fees equivalent to 40% share of the total recovery in the event a successful

result was obtained. Said fee is customary for large contingent fee cases. *See Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (labeling a contingency fee equivalent to 40% of the award as the "market rate"). The customary nature of a 40% fee applies to class action lawsuits. *See Knowles v. Standard Fire Ins. Co.*, 2013 WL 3968490, at *6 (W.D. Ark. Aug. 2, 2013) (approving 40% contingent fee in class action lawsuit)*; Greene v. Emersons Ltd.*, 1987 WL 11558 (S.D.N.Y. May 20, 1987) (court awarded 42.6% of common fund for attorney's fees, noting the settlement was "achieved virtually upon the courthouse steps"); *Salinas v. U.S. Xpress Enterprises, Inc.*, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) (class counsel's request for attorney's fees totaling 40% of $2,200,000.00 settlement fund was reasonable); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (mixed questions of fact and law supported award of attorneys' fees representing approximately 40% of the common fund); *Espinosa v. California Coll. of San Diego, Inc.*, 2018 WL 1705955, at *9 (S.D. Cal. Apr. 9, 2018) (citing Newberg on Class Actions) ("With respect to the percentage method, case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small."). *Chieftain Royalty Co. v. Marathon Oil Co.*, 2019 WL 7758915, at *7 (E.D. Okla. Mar. 8, 2019) (finding that "40% fee is consistent with the market rate" in class actions).

Moreover, when the size of the common fund is relatively modest, the circumstances warrant a higher percentage. As one secondary source notes:

> When the fund is modest in comparison to hours expended, the small size of the fund is necessarily a limiting factor in the amount of any fee that will be awarded from that fund. The amount of the fee award may be insufficient to compensate for reasonable hours expended, though the percentage of the fund which is awarded

may be higher than the normal range of percentage awards, in order to reach a reasonable fee that may not even cover time spent.

1 *Attorney Fee Awards* § 2:9 (3d ed.).

### 3. Lodestar Cross Check Clearly Supports the Reasonableness of the Requested Fees

The reasonableness of class counsel's attorney's fees request is confirmed by applying the Lodestar Method. As outlined in Exhibits 1 (detail work-in-process report) and 2 (lodestar calculations), class counsel has expended a total of 2,783 hours. These hours were diligently monitored to ensure reasonableness. Class counsel's representation included (1) extensive fact investigation; (2) extensive research and briefing on mandatory arbitration clauses; (3) extensive research and briefing on class certification standards; (4) extensive research and briefing on notice and discovery issues; and (5) extensive research and briefing on pre-trial motions. Moreover, given this case was settled on the eve of trial, hundreds of hours were spent preparing the case for trial.[7] As outlined in Exhibits 1 (detail work-in-process report) and 2 (lodestar calculations), utilizing extremely reasonable rates, class counsel's collective lodestar is within the range of $817,650.00 to 1,012,690.00. Therefore, the requested attorney's fee award of $760,000.00 represents a significant negative multiplier. As the Court correctly notes, courts in the Eighth Circuit generally apply lodestar multipliers "ranging anywhere from 1.8 to 5.6." See ECF No. 188, p. 9.

### C. The Incurred Litigation Expenses are Reasonable

As itemized in Exhibit 3 (itemization of expenses) contemporaneously filed herewith, Plaintiff has incurred $76,586.15 in expenses. These expenses include expert witness fees,

---

[7] Of note, this was unusual given this case's class action status. As has been widely cited, it is extremely rare for class action lawsuits to proceed to trial. *See* Federal Judicial Center, Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 8 (2d. ed. 2009) (noting that 90% of certified classes settle before trial).

expenses incurred in effectuating notice to class members pursuant to court order, and claims administration fees. These expenses are reasonable and appropriate, and are substantially less than those approved in other class action lawsuits. *See In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (approving reimbursement of $481,422.94 in expenses for costs related to photocopying, postage, messenger services, document depository, telephone and facsimile charges, filing and witness fees, computer assisted legal research, and expert fees); *see also In re Zurn Pex Plumbing Products Liability Litig.*, 2013 WL 716460, at *5 (D. Minn. Feb. 27, 2013) (classifying $1,783,193.34 in costs and expenses as reasonable).

### D. The Requested Incentive Payment for Named Plaintiff is Reasonable

As part of the request for final approval of this settlement, Plaintiff requests that an incentive payment in the amount of $7,500.00 to class representative John Doe be awarded for his time and efforts undertaken on behalf of the class. "Courts routinely recognize and approve inventive awards for class representatives and deponents." *Wineland v. Casey's Gen. Stores*, *Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009). In determining whether to award an inventive award, relevant factors include (1) plaintiff's actions in protecting the class's interests, (2) the extent to which the class has benefited; (3) amount of time and effort the plaintiff expensed; and (4) the extent the incentive award will diminish the recovery of other class members. *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002).

In this case, despite the highly sensitive nature of the factual circumstances, John Doe pursued this class action lawsuit on behalf of other similarly situated victims. As the Court noted, "it was no small act of courage to proceed with the case." See ECF No. 188, p. 8. He obtained a substantial monetary award for individuals who were victimized by a sexual predator. These circumstances justify a modest incentive payment in the amount of $7,500.00. *See Huyer v. Wells*

*Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016) (finding an award of $10,000.00 per named Plaintiff appropriate).

### III. CONCLUSION

For the reasons stated herein, the undersigned respectfully request that the Court enter an order (1) granting final approval of the settlement; (2) awarding class counsel a reasonable attorney's fees in the amount of $760,000.00; (3) ordering reimbursement of all reasonably incurred expenses of $76,586.15; and (4) awarding Plaintiff John Doe an incentive payment in the amount of $7,500.00.

**Certificate of Service**

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys listed as receiving notice on November 14, 2022, by CM/ECF.

*/s/ Rose Field*

GREFE & SIDNEY, P.L.C.

By: */s/ Guy R. Cook*
    Guy R. Cook, AT0001623

By: */s/ Laura N. Martino*
    Laura N. Martino, AT0005043

By: */s/ Benjamin T. Erickson*
    Benjamin T. Erickson, AT0012927

By: */s/ Michael D. Currie*
    Michael D. Currie, AT0012256

   500 E. Court Ave., Ste. 200
   Des Moines, IA  50309
   Phone:  515/245-4300
   Fax: 515/245-4452
   gcook@grefesidney.com
   lmartino@grefesidney.com
   berickson@grefesidney.com
   mcurrie@grefesidney.com

ATTORNEYS FOR PLAINTIFF