IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GREGORY SCOTT STEPHEN; BARNSTORMERS BASKETBALL, INC., d/b/a BARNSTORMERS BASKETBALL OF IOWA; AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.; and ADIDAS AMERICA, INC.,<br><br>Defendants. | 3:20-cv-00005-SHL-HCA<br><br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVING CLASS COUNSEL'S FEE AND EXPENSES REQUEST AND NAMED PLAINTIFF'S INCENTIVE AWARD** |

**I.      INTRODUCTION**

Between 2005 and 2018, Greg Stephen secretly took or obtained sexually explicit photographs or videos of hundreds of minors, many of whom participated in programs through Stephen's employer, Barnstormers Basketball, Inc. ("BBI"). Plaintiff John Doe, individually and on behalf of others similarly situated ("Plaintiffs"), brought claims against BBI for allegedly negligently hiring and retaining Stephen, among other theories. BBI denies liability.

The Court certified a class, and Plaintiffs and BBI prepared for trial. Shortly before trial, Plaintiffs and BBI submitted a Joint Notice of Settlement. (ECF 178.) After careful review of the settlement agreement and the parties' briefing in support of the agreement, the Court GRANTS Plaintiffs' motion for final approval of the agreement, class counsel's fee and expenses request, and Named Plaintiff John Doe's incentive award.

**II.     BACKGROUND**

*A.  Factual and Procedural Background.*

BBI is an Iowa-based youth basketball organization. (ECF 1-4, p. 117.) Stephen co-founded BBI in 2005 with Jamie Johnson, an organizer for the Amateur Athletic Union of the United States, Inc. ("AAU"). (ECF 1-4, p. 126.) Stephen began coaching BBI boys' basketball teams shortly thereafter. (Id.)

In 2018, Stephen pled guilty to five counts of Sexual Exploitation of a Minor. (ECF 1-4, p. 130.) In his Plea Agreement, Stephen admitted to: using hidden cameras to record nude minors in hotel rooms; assuming the identity of teenage females to solicit explicit images from minors; and having inappropriate physical contact with minors. (Id., pp. 130, 132–134.) He admitted engaging in this conduct from 2005 to 2018 and acknowledged that his position with BBI gave him opportunities to victimize minors, including during team-related trips and in shared hotel rooms. (Id., pp. 131–132.) In 2019, Stephen was sentenced to 180 years' imprisonment. (Id., p. 134.)

Named Plaintiff John Doe filed suit on November 2, 2018, in the Iowa District Court for Johnson County. (ECF 1, ¶ 1.)[1] The case was later removed to this Court. (Id.) On September 23, 2021, over BBI's objection, the Court certified the following class under Fed. R. Civ. P. 23(b)(3):

All past or present Barnstormer Basketball, Inc., participants who:

1. were affiliated with a Barnstormer Basketball, Inc., team at any point in time between 2005 and April 5, 2018, while Greg Stephen was involved with the organization; and

2. fell victim to Greg Stephen's illicit acts of secretly procuring nude images and/or recordings of minors.

(ECF 70.) The Court later denied BBI's motion to decertify. (ECF 171.)

Trial was scheduled to begin August 1, 2022. The parties were clearly well prepared and willing to go to trial, as illustrated by their extensive pretrial filings, which included dozens of motions in limine and detailed trial briefs, jury instructions, and related materials. (ECF 119, 120, 131, 151, 154, 156.) However, on July 29, 2022, Plaintiffs and BBI notified the Court that they had reached settlement in principle. (ECF 178.) The Court preliminarily approved the proposed settlement on September 29, 2022 (ECF 188), and the parties provided notice to class members on October 7, 2022 (ECF 189–90).

The Court held a final approval hearing on December 5, 2022 (ECF 196). There were no objections to the settlement agreement filed with the Court, sent to class counsel, or presented at the final approval hearing.

---

[1] AAU and adidas have both successfully moved to compel arbitration and stay this action as to them. (ECF 1, ¶ 2; ECF 23.)

### B. Summary of the Settlement Agreement.

The agreement includes a broad release in favor of BBI and "Related Parties," including, *inter alia*, AAU and its insurers. (ECF 181, p. 5.)[2] The release covers all "Released Claims," which is broadly defined to include "all claims, rights, causes of action, liabilities, actions, suits, damages, or demands of any kind whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that relate to the Claims made in the Lawsuit and that were or could have been alleged in the Lawsuit against Barnstormers or Related Parties . . . ." (Id.)

In exchange for this broad release, BBI will pay $1.9 million within 60 days of this Court's Order preliminarily approving the settlement. (Id.) This amount represents policy limits of the governing insurance policy. (ECF 187, p. 2; ECF 192, p. 3 n.1.) BBI further agrees "to strictly adhere to any and all youth protection policies and protocols for athlete welfare and misconduct prevention mandated by any organization [it] is a member of or otherwise affiliates itself with." (ECF 181, p. 5.) The agreement does not specify who will hold the money pending final approval and throughout the claims allocation process. The parties have since clarified that the funds will be deposited in Grefe & Sidney, P.L.C.'s trust account and distributed to class members with the assistance of Atticus Administration, LLC. (ECF 187, p. 4.)

The amount available for distribution to class members will be $1.9 million minus (1) administrative expenses, (2) attorney fees and expenses awarded, and (3) incentive payments awarded by the Court. (ECF 181, p. 1.) According to class counsel, there are currently "98 confirmed victims that could fall within the class definition." (ECF 180, p. 4.) Counsel estimates that each class member will receive approximately $10,000 if all victims submit claims. (Id.) However, as of the final approval hearing, far less than 98 victims had submitted claim forms. Class counsel seeks a 40% fee award, as well as reimbursement of reasonable expenses. (Id., p. 4 n. 1; ECF 181-1; ECF 192.)

The "Effective Date" of the agreement is the date the Court enters a Final Order and Judgment and any appeals are resolved (or the time for appeal expires), except that the Effective Date will not be delayed by modification or appeal "from those parts of the Final Order and Judgment that (i) pertains to either the Plan of Allocation or the Fee and Expense Award; and (ii)

---

[2] AAU is nominally a defendant in the case, although the Iowa District Court for Johnson County (Case No. LACV080354) granted AAU's motion to compel arbitration, and thus the case against AAU has been stayed since October 16, 2019. (ECF 1, ¶ 2.)

has no effect on this Agreement becoming binding, effective, and final in its entirety between Releasing Plaintiffs, Class Members, and Defendant." (ECF 181, pp. 3–4.) Following the Effective Date, Named Plaintiff John Doe will dismiss the Lawsuit with prejudice, and class members will be barred from raising any Released Claim against BBI and Related Parties (which include AAU, but not adidas). (Id., pp. 5, 7.)

Plaintiffs also submitted a "Plan of Allocation" describing how claims will be processed and settlement funds disbursed. (ECF 181-2.) Pursuant to this Plan, a claims administrator shall, subject to Court supervision, oversee the administration and calculation of class member claims and distribute settlement funds to authorized claimants. (Id., p. 8.) To be eligible for payment, individuals claiming to be class members must timely submit a claim form and supporting documents to the claims administrator. (Id., pp. 8–9.) The claim form will be created by the claims administrator and set out the proof required for a successful claim. (Id., p. 1.) Class counsel has discretion to accept late-submitted claims, provided this does not materially delay the distribution of settlement funds to previously authorized claimants. (Id., p. 8.) Class counsel also may allow the claims administrator to waive "de minimis or formal or technical defects" in claim forms. (Id., pp. 8–9.)

### III. LEGAL STANDARD

Court approval is required for a class-wide settlement. Fed. R. Civ. P. 23(e). The approval process involves two stages. First, the Court conducts preliminary review of the settlement agreement. *Id*. If the Court concludes it likely will approve the agreement, it must "direct notice [of the settlement] in a reasonable manner to all class members who would be bound by the proposal." *Id.* Second, after notice has been provided, and "[i]f the proposal would bind class members," the Court must hold a final approval hearing to determine whether the agreement is "fair, reasonable, and adequate" under factors set forth in Fed. R. Civ. P. 23(e)(2).

"A settlement agreement is 'presumptively valid.'" *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir.1990)). However, under Fed. R. Civ. P. 23(e), "the district court acts as a fiduciary, serving as a guardian of the rights of absent class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). In determining whether to approve a class settlement, the Court must consider the factors set forth in Fed. R. Civ. P. 23(e)(2), which include whether

      (A) the class representatives and class counsel have adequately represented the class;
      (B) the proposal was negotiated at arm's length;
      (C) the relief provided for the class is adequate, taking into account:
          (i) the costs, risks, and delay of trial and appeal;
          (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
          (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
          (iv) the agreement required to be identified under Rule 23(e)(3); and
      (D) the proposal treats class members equitably relative to each other.

*Id.*

In the course of evaluating these factors, the Eighth Circuit has directed district courts to consider: "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (quoting *In re Uponor*, 716 F.3d at 1063). "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Id.* (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)).

## IV. LEGAL ANALYSIS

### A. The Settlement Agreement Is Fair, Reasonable, and Adequate.

The Court is satisfied that the settlement is "fair, reasonable, and adequate" considering the factors set forth in Eighth Circuit precedent and Fed. R. Civ. P. 23(e)(2). The Court is confident that the class representative and class counsel have adequately represented the class. There is no indication that any conflicts of interest or other deficiencies have arisen in counsel's representation of the class. Moreover, judging by the pretrial filings and hearings, counsel clearly devoted substantial time and energy to the case and were fully prepared to go to trial unless acceptable settlement terms were reached.

Similarly, the record shows the proposal was negotiated at arm's length. In some circumstances, such as when parties present a settlement for court approval before meaningful litigation has occurred, concerns may arise that the agreement is the product of collusion—i.e., the defendant might be paying off plaintiff's counsel to free itself from liability without providing meaningful value to the class. *See Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017) ("The court's role in reviewing a negotiated class settlement is . . . to ensure that the agreement is not the product

of fraud or collusion . . . .") (quoting *Marshall*, 787 F.3d at 509); *see also Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1169 (5th Cir. 1978) (holding class interests must not be "wrongfully compromised, betrayed, or 'sold out'"). The Court has no such concerns here. In the months before trial, the two sides intensely litigated issues ranging from class certification to admissibility of evidence to governing legal standards—and even who could be in the courtroom during *voir dire*. The Court is confident the parties negotiated settlement with similar intensity.

On the merits, both sides would have risk if this case went to trial. It is, of course, undisputed that Gregory Stephen engaged in abhorrent behavior, and Plaintiffs are "victims" in every sense of the word. But BBI is not automatically liable for Stephen's behavior: Plaintiffs would have to prove BBI knew or should have known of Stephen's propensity for abuse and hired or retained him anyway. Given the inherently secretive nature of Stephen's conduct (e.g., hiding cameras in hotel rooms), Plaintiffs may not have succeeded in convincing a jury that BBI knew or should have known of his abusive conduct. Indeed, some of his illicit acts occurred in a private residence, separate and apart from BBI-sanctioned events. Moreover, even if Plaintiffs established BBI's liability, the jury would have had wide discretion in awarding damages. The analysis for AAU is similar except that it was even further removed from day-to-day involvement in Stephen's activities than BBI. Thus, again, there would be risk to Plaintiffs if they proceeded to trial.

Weighed against the merits, the Court finds the relief described by the agreement is adequate, particularly considering BBI's and AAU's financial condition. The release contemplated by the agreement is broad, extinguishing all potential claims against BBI and AAU. (ECF 187, pp. 2–3.) But broad releases are sometimes in the best interests of class members. *In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.*, 357 F.3d 800, 805 (8th Cir. 2004). The Court concludes this is the case here. BBI is a small non-profit organization with limited resources outside of insurance proceeds. AAU is a larger organization, but still a non-profit—and, as noted above, much further removed from day-to-day oversight of Greg Stephen's actions. So Plaintiffs have relatively strong claims against an entity with little or no capacity to satisfy a judgment and relatively weak claims against an entity with somewhat (but only somewhat) deeper pockets. Under these circumstances, a policy-limits settlement is a fair, reasonable, and adequate outcome. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (finding proposed class settlement was fair, reasonable, and adequate when, *inter alia*, the only available source of funds were insurance policies and those limits were likely exhausted by the settlement); *see also In re Enron Corp. Sec.,*

*Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 558–59 (S.D. Tex. 2005) (same); *Fed. Ins. Co. v. Caldera Med., Inc.*, No. 215CV00393SVWPJW, 2017 WL 11037391, at *8 (C.D. Cal. Jan. 31, 2017) (same); *Spencer v. Comserv Corp.*, No. CIV 4-84-794, 1986 WL 15155, at *7 (D. Minn. Dec. 30, 1986) (same).

For essentially the same reasons, the Court is satisfied the settlement is fair, reasonable, and adequate despite releasing claims for general and special damages alike. With policy limits having been exhausted, there is a relatively low likelihood that a class member who suffered an acute form of emotional distress—to the extent there are such class members at all—would be able to recover more from AAU or BBI than the settlement agreement already provides.

The parties also have satisfied the Court regarding the impact (or, more precisely, lack thereof) of the settlement on claims against Greg Stephen and adidas America, Inc. ("adidas"). The parties agree it is not their intent to release any claims against Stephen or adidas and note that adidas is specifically carved out of the release. (ECF 187, pp. 3–4.) The Court understands that the dismissal of the case "with prejudice" refers only to the case against BBI and AAU, and not against adidas or Stephen.

The other factors set forth in Fed. R. Civ. P. 23(e)(2) are also satisfied. The "costs" and "risks" of trial include not just the possibility that Plaintiffs' claims against BBI and AAU would be unsuccessful, but also the emotional "costs" to victims associated with having to testify about serious invasions of privacy. Moreover, class counsel has established an efficient and straightforward process of handling class member claims and distributing money. Thanks to the settlement, class members will receive the same amount they were likely to receive anyway, except months or years sooner and without the need for stressful testimony.

Finally, the Court finds the settlement agreement treats class members equitably in relation to one another. Other than the "service award" of $7,500 for the class representative, class members are treated the same. (ECF 181-1, pp. 2, 8–10); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999) ("It seems to us that almost every settlement will involve different awards for various class members.").

> B. *The Court Approves the Payment of Class Counsel's Fees and Expenses and Named Plaintiff's Service Award from the Settlement Fund.*

Class counsel requests a fee in the amount of 40% of the total common fund, plus expenses. (ECF 180, p. 4 n. 1; ECF 180-1; ECF 192.) The Court has discretion over whether to apply a

lodestar or percentage-of-the-fund method when assessing the reasonableness of a fee request. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996). When employing the percentage of the fund method, district courts determine whether the requested percentage is "in line with other awards in the Eighth Circuit." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016), *aff'd sub nom. Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017), and *aff'd sub nom. Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017). Even when the percentage method is applied, district courts often verify the reasonableness of an award under the lodestar approach. *Petrovic*, 200 F.3d at 1157. Courts in the Eighth Circuit "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005). An award of 36 to 38% of the common fund is not unreasonable *per se* but "on the high end of the typical range." *Huyer*, 849 F.3d at 399 (8th Cir. 2017); *see also In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award of 36% in class action settlement).

"The Eighth Circuit has not established factors that a district court must consider when awarding fees under the percentage-of-the-fund method, however, some cases have relied on the twelve-factor test from *Johnson v. Georgia Highway Express,* 488 F.2d 714, 719–20 (5th Cir.1974)." *Huyer*, 314 F.R.D. at 628–29; *see also Zoll v. E. Allamakee Cmty. Sch. Dist.*, 588 F.2d 246, 252 (8th Cir. 1978) (acknowledging the Eighth Circuit has "expressly approved" the *Johnson* factors). These factors include:

1. The time and labor required,
2. The novelty and difficulty of the question,
3. The skill requisite to perform the legal services properly,
4. The preclusion of other employment due to acceptance of the case,
5. The customary fee,
6. Whether the fee is fixed or contingent,
7. Time limitations imposed by the client or the circumstances,
8. The amount involved and the results obtained,
9. The experience, reputation, and ability of the attorneys,
10. The undesirability of the case,
11. The nature and length of the professional relationship with the client, and
12. Awards in similar cases.

*Zoll*, 588 F.2d at 252 n. 11. The Court need only apply relevant *Johnson* factors, not all twelve. *Huyer*, 314 F.R.D. at 629. This Court has also applied the *Johnson* factors to lodestar calculations. *See, e.g.*, *Sun Media Sys., Inc. v. KDSM, LLC*, 587 F. Supp. 2d 1059, 1075 (S.D. Iowa 2008).

In their motion for approval of class counsel's fee request, Plaintiffs cite several cases, including one in the Eighth Circuit, in which a court approved a 40% or higher fee request. (ECF 192, pp. 8–10); *see Knowles v. Standard Fire Ins. Co.*, No. 4:11-CV-04044, 2013 WL 3968490, at *5–6 (W.D. Ark. Aug. 2, 2013). After considering the relevant *Johnson* factors, the Court concludes the 40% fee request is appropriate in the circumstances presented here. Measured as a percentage of the fund, the fee award is on the high end of what courts in the Eighth Circuit have approved. Measured on a lodestar basis, however, the fee award is quite low; indeed, the lodestar multiplier is less than one. *Compare, e.g.*, *Huyer*, 849 F.3d at 399 (multiplier of 1.8); *In re Xcel Energy*, 364 F. Supp.at 999 (multiplier of 4.7); *In re Charter Commc'ns, Inc.*, No. MDL 1506, 4:02-CV-1186 CAS, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (multiplier of 5.6); *In re St. Paul Travelers Secs. Litig.*, No. Civ. 04–3801 JRTFLN, 2006 WL 1116118, at *1 (D. Minn. April 25, 2006) (multiplier of 3.9). This is a function of the thousands of hours class counsel spent litigating the case over the past four years, stopping only a few days before trial when settlement was reached. If ever there were an appropriate case for a 40% percentage of the fund fee, this is it.

Class counsel also requests reimbursement of $76,586.15 in expenses. (ECF 192, p. 10.) "Courts have discretion to reimburse for expenses such as travel, photocopying, computer legal research, postage, and consulting and expert witness fees." *Mergens v. Sloan Valve Co.*, No. CV1605255SJOSKX, 2017 WL 9486153, at *12 (C.D. Cal. Sept. 18, 2017). The Court is satisfied, after reviewing class counsel's itemization of expenses (ECF 195), that most of the expenses described are non-duplicative and appropriate. Class counsel requests, however, reimbursement of $1,806.10 for travel expenses to and from a CLE on class actions. (Id.) These expenses are not reimbursable. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (holding expenses are "properly chargeable to the Settlement fund" only when they "are the type for which the 'paying, arms' length market' reimburses attorneys"); *see also Steven N.S. Cheung, Inc. v. United States*, No. C04-2050RSM, 2007 WL 174042, at *5–6 (W.D. Wash. Jan. 17, 2007)

(holding prevailing party was entitled to litigation costs but not reimbursement of CLE-related expenses). Class counsel's expense request will therefore be reduced by $1,806.10 to $74,780.05.[3]

Finally, Named Plaintiff John Doe's $7,500 incentive award is justified given the length of his involvement with the suit and his "substantial action to step forward and pursue the present litigation." *Jones v. Casey's Gen. Stores, Inc.*, 266 F.R.D. 222, 231 (S.D. Iowa 2009) (approving $10,000 "incentive compensation" for class representatives). Given the nature of the underlying abuse, it was no small act of courage for him to proceed with the case. The incentive award is well earned.

## V.      CONCLUSION

The Court concludes the settlement agreement is fair, reasonable, and adequate. The Court therefore GRANTS Plaintiffs' motion for final approval of the class action settlement, class counsel's fee request in the amount of $760,000, class counsel's request for expenses in the amount of $74,780.05, and Named Plaintiff's incentive award in the amount of $7,500.

IT IS SO ORDERED.

Dated: December 9, 2022

STEPHEN H. LOCHER
U.S. DISTRICT JUDGE

---

[3] Class counsel also included several CLE-related entries in its lodestar calculation totaling roughly 20 hours. (ECF 194.) While these "fees" similarly would not be recoverable, the relatively small amount of time described does not materially affect the lodestar calculation.